ACCEPTED
06-15-00002-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/12/2015 4:29:33 PM
DEBBIE AUTREY
CLERK

06-15-00002-CV

No. _____

_____

IN THE COURT OF APPEALS FOR THE
SIXTH DISTRICT OF TEXAS
AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

1/12/2015 4:29:33 PM

DEBBIE AUTREY
Clerk

_____

IN RE KENNETH VERN GIBBS,
  CANDACE GIBBS WALTON

      Defendants / Relators,         Cause no. CV-14-41665

HONORABLE LAURINE J. BLAKE,      The 336th Judicial District Court

      Respondent, and         Fannin County, Texas

PENTEX FOUNDATION and
  JOSHUA UNGER, TRUSTEE of GBU
  FRIENDS AND ASSOCIATES TRUST

      Plaintiffs and Real Parties in Interest.

## RELATORS' PETITION FOR WRIT OF MANDAMUS

ROBERT G. HOGUE, P.C.
4514 Cole Avenue, Suite 600
Dallas, Texas 75205-4193
Phone: (214) 559-7107
Fax:  (214) 559-7101
Email:  robhogue@msn.com

LAW OFFICES OF CHRISTY LEE, P.C.
777 Main Street, Suite 600
Fort Worth, Texas  76102
Telephone: (817) 504-6075
Telecopier: (800) 437-7901
Email:  clee@christyleelaw.com

ATTORNEYS FOR RELATORS / DEFENDANTS KENNETH
  VERN GIBBS AND CANDACE GIBBS WALTON      JANUARY 12, 2015

_____

IN THE COURT OF APPEALS FOR THE
SIXTH DISTRICT OF TEXAS
AT TEXARKANA
_____

IN RE KENNETH VERN GIBBS,
  CANDACE GIBBS WALTON

              Defendants / Relators,             Cause no. CV-14-41665

HONORABLE LAURINE J. BLAKE,         The 336th Judicial District Court

              Respondent, and           Fannin County, Texas

PENTEX FOUNDATION and
  JOSHUA UNGER, TRUSTEE of GBU
  FRIENDS AND ASSOCIATES TRUST

              Plaintiffs and Real Parties in Interest.

## RELATORS' PETITION FOR WRIT OF MANDAMUS

### IDENTITY OF PARTIES AND COUNSEL

KENNETH VERN GIBBS AND CANDACE GIBBS WALTON       RELATORS / DEFENDANTS

ROBERT G. HOGUE, P.C.          LAW OFFICES OF CHRISTY LEE, P.C.

4514 Cole Avenue, Suite 600        777 Main Street, Suite 600
Dallas, Texas 75205-4193          Fort Worth, Texas  76102
Phone: (214) 559-7107           Telephone: (817) 504-6075
Fax:  (214) 559-7101             Telecopier: (800) 437-7901
Email:  robhogue@msn.com        Email:  clee@christyleelaw.com

  ATTORNEYS FOR RELATORS / DEFENDANTS KENNETH GIBBS AND CANDACE GIBBS WALTON

HONORABLE LAURINE J. BLAKE    336TH JUDICIAL DISTRICT COURT     RESPONDENT

PENTEX FOUNDATION AND JOSHUA UNGER, TRUSTEE OF GBU
FRIENDS AND ASSOCIATES TRUST       PLAINTIFFS AND REAL PARTIES IN INTEREST

- 2 -

Mr. T. Scott Smith
Attorney and Counselor at Law
120 S. Crockett Street
Sherman, Texas  75090

ATTORNEY FOR THE PLAINTIFFS / REAL PARTIES IN INTEREST


Howard Kirk Gibbs
9929 Crawford Farm Drive
Fort Worth, TX 76244

DEFENDANT, PRO SE

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

THE TRIAL COURT WAS WITHOUT JURISDICTION TO SIGN ITS
NOVEMBER 21, 2014 "ORDER ON MOTION TO RECONSIDER ORDER
TO TRANSFER VENUE," AND ACCORDINGLY MANDAMUS SHOULD
ISSUE.

    A.    The trial court signed an Order transferring venue more
than 30 days prior to signing the "Order on Motion to
Reconsider Order to Transfer Venue" . . . . . . . . . . . . . . . . . . . . . 8

    B.    Texas courts consistently hold that  a trial court's plenary
power over a venue transfer order expires after 30 days,
despite the filing of a motion to reconsider the transfer . . . . . . . 8

    C.    Nowhere in the trial court's record did the Relator modify,
reconsider, or vacate the transfer Order within thirty days . . . . . 9

    D.    When an order is void, the relator need not show that
it lacks an adequate appellate remedy, and mandamus
relief is appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    E.    The Court of Appeals should grant temporary and
mandamus relief in order to avoid waste of judicial and
party resources in a trial court that has lost jurisdiction,
issue a writ of mandamus staying all further proceedings
and discovery in the Fannin County trial court, and

       direct the trial court's clerk to physically transfer the
       file to the transferee court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION AND PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VERIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


APPENDIX  (Clerk's Record)                        Pages 1 to 758

Reporter's Record (September 30, 2014 hearing on motion to transfer)

Reporter's Record (November 12, 2014 hearing on motion to reconsider)

# INDEX OF AUTHORITIES

## Case Authorities

*HCA Health Servs. of Tex., Inc. v. Salinas*,
    838 S.W.2d 246 (Tex. 1992) (orig. proceeding) (per curiam) . . . . . . . . 10, 11

*In re Cerberus Capital Mgmt., L.P.*,
    164 S.W.3d 379 (Tex. 2005) (orig. proceeding) (per curiam) . . . . . . . . . . . . . 9

*In re Chester*, 309 S.W.3d 713
    (Tex. App.—Houston [14th Dist.] 2010, original proceeding) . . . . . 9, 10, 12-14, 15

*In re Darling Homes*, No. 05–05–00497–CV, 2005 WL 1390378
    (Tex. App.—Dallas June 14, 2005, orig. proceeding) . . . . . . . . . . . . . . . 11-12, 14

*In re Lumbermens Mut. Cas. Co.*,
    184 S.W.3d 729 (Tex. 2006) (orig. proceeding) . . . . . . . . . . . . . . . . . . 16-17

*In re Reed*, 901 S.W.2d 604
    (Tex. App.–San Antonio 1995, orig. proceeding). . . . . . . . . . . . . . . . . . . . . 17

*In re Southwestern Bell Tel. Co.*,
    35 S.W.3d 602 (Tex. 2000) (orig. proceeding) (per curiam) . . . . . . . . . . 9, 11

*In re Team Rocket, L.P.*,
    256 S.W.3d 257 (Tex. 2008) (orig. proceeding). . . . . . . . . . . . . . . . . . . . 9, 10

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) (orig. proceeding) . . . . . . . . . . . . . 9

*Zimmerman v. Ottis*, 941 S.W.2d 259
    (Tex. App. —Corpus Christi 1996, orig. proceeding) . . . . . . . . . . . . . . . . . . 15

## Additional Authorities

Tex. Const. art. 5, §6(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex. Gov't Code §22.221(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATEMENT OF THE CASE

This is a lawsuit for alleged breach of a realty and mineral rights contract.

The Respondent is the Honorable Laurine J. Blake, 336th Judicial District Court, Fannin County Texas (referred to herein as "the Respondent" or "the trial court").

The Respondent signed an Order transferring venue, and then, more than 30 days later, signed an "Order on Motion to Reconsider Order to Transfer Venue" that purported to vacate the prior transfer Order. The Relators seek mandamus relief from the "Order on Motion to Reconsider Order to Transfer Venue" because it is void and the Respondent was without jurisdiction to sign it.

## STATEMENT OF JURISDICTION

The Court has jurisdiction to issue a writ of mandamus. TEX. CONST. art. 5, §6(a); TEX. GOV'T CODE §22.221(b)(1).

## ISSUE PRESENTED

Did the trial court abuse its discretion in signing the "Order on Motion to Reconsider Order to Transfer Venue" more than 30 days after signing the original Order transferring venue?

## STATEMENT OF FACTS

This is a lawsuit for alleged breach of a realty and mineral rights contract. (Appendix pages 7 to 25.) The Relators / Defendants sought transfer of venue by motion, on grounds of proper venue in Tarrant County rather than Fannin County. (Appendix pages 37 to 38.) After a hearing on the Relators' motion to transfer, the Fannin County trial court, Honorable Laurine J. Blake, Respondent, granted the motion to transfer venue and ordered the case transferred to Tarrant County by Order signed on September 30, 2014. (Appendix page 650.) The trial court then held a hearing on the Plaintiffs / Real Parties in Interest's motion to reconsider the transfer, and on November 21, 2014 — more than thirty days after signing of the September 30, 2014 transfer Order — signed an "Order on Motion to Reconsider Order to Transfer Venue," which purported to vacate the transfer Order and retain venue in Fannin County. (Appendix page 751.)

## ARGUMENT AND AUTHORITIES

THE TRIAL COURT WAS WITHOUT JURISDICTION TO SIGN ITS NOVEMBER 21, 2014 "ORDER ON MOTION TO RECONSIDER ORDER TO TRANSFER VENUE," AND ACCORDINGLY MANDAMUS SHOULD ISSUE.

A. The trial court signed an Order transferring venue more than 30 days prior to signing the "Order on Motion to Reconsider Order to Transfer Venue."

B. Texas courts consistently hold that a trial court's plenary power over a venue transfer order expires after thirty days, despite the filing of a motion to reconsider the transfer.

C.    Nowhere in the trial court's record did the Respondent modify, reconsider, or vacate the transfer Order within thirty days.

Because the Respondent's November 21, 2014 "Order on Motion to Reconsider Order to Transfer Venue" was signed after the trial court lost plenary jurisdiction on October 30, 2014 (i.e., thirty days after signing of the original transfer Order), the November 21, 2014 reconsideration Order is void.  *See In re Chester*, 309 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2010, original proceeding) ("The trial court abused its discretion by vacating its . . . transfer order after its plenary power had expired.  The trial court's [vacating] order is void").

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and there is no adequate remedy by appeal.  *In re Team Rocket, L.P.,* 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding).  A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law.  *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  When an order is void, the relator need not show that it did not have an adequate appellate remedy, and mandamus relief is appropriate.  *In re Southwestern Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam).

The Respondent's November 21, 2014 "Order on Motion to Reconsider Order to Transfer Venue" order is void because the trial court had lost plenary jurisdiction

to set aside the September 30, 2014 transfer Order thirty days after the transfer Order was signed. The trial court has plenary power to grant a new trial or vacate, modify or reform a judgment within thirty days after the judgment is signed. TEX. R. CIV. P. 329b(d). Although a transfer order such as September 30, 2014 transfer Order in this case does not fall within the purview of a judgment under Rule 329b, the Supreme Court of Texas has applied Rule 329b(d) to such venue transfer orders. *See HCA Health Servs. of Tex., Inc. v. Salinas*, 838 S.W.2d 246, 248 (Tex. 1992) (orig. proceeding) (per curiam).

Under Rule 329b(e), if a motion for new trial is timely filed, the trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform a judgment until thirty days after all such timely-filed motions are overruled, either by written and signed order or by operation of law, whichever occurs first. TEX. R. CIV. P. 329b(e). However, Rule 329b(e) does not apply to motions for reconsideration of venue transfer orders — such as that filed by the Plaintiffs / Real Parties in Interest and considered and granted by the Respondent in the present case — as several Texas cases have expressly recognized. *See, e.g., In re Chester*, 309 S.W.3d at 719.

Once the trial court has ruled on proper venue, that decision cannot be the subject of an interlocutory appeal. *In re Team Rocket*, 256 S.W.3d at 259. Rule 87 provides that "if an action has been transferred to a proper county in response to a motion to transfer, then no further motions to transfer shall be considered.'" *Id.* at 260 (quoting TEX. R. CIV. P. 87(5)). Although a trial court's ruling transferring venue is interlocutory for the parties, and not subject to immediate appeal, the transfer

order is final for the transferring court as long as it is not altered within the court's thirty-day plenary jurisdiction. *Id.*; *see also* *In re Southwestern Bell*, 35 S.W.3d at 605. A court retains plenary jurisdiction to correct any error for thirty days, but no more than thirty days, after the transfer order is signed. *HCA v. Salinas*, 838 S.W.2d at 248.

The court of appeals in *In re Darling Homes* also addressed whether Rule 329b(e) extends the plenary power of the trial court to set aside a transfer order when a motion to reconsider is filed. *See* No. 05–05–00497–CV, 2005 WL 1390378 (Tex. App.—Dallas June 14, 2005, orig. proceeding [mand. denied]) (mem. op.). In *Darling Homes*, the trial court granted the defendants' motion to transfer the case to the transferee county on August 3, 2004. *Id.* at *1. On September 27, 2004, the trial court granted the plaintiff's motion to reconsider the transfer, vacating the transfer. *Id.* The plaintiff argued, as do the plaintiffs in the present case, that the filing of the motion to reconsider within thirty days of the signing of the transfer order functioned as a motion for new trial, and extended the trial court's plenary power over the transfer order by 105 days pursuant to Rule 329b(e). *See id.* at *2. The court of appeals disagreed, and declined to apply Rule 329b(e) to extend the trial court's jurisdiction after the signing of an order transferring venue to another county. *Id.*

The court of appeals in *In re Darling Homes* observed that (1) an objection to improper venue is waived if not made by written motion filed before or concurrently with any other plea, pleading, or motion except a special appearance; (2) once a

motion is filed, it is to be determined "promptly"; (3) except for the inability to obtain a fair trial, only one motion to transfer is allowed in any case; (4) even if a party is added after the first motion is filed, he cannot file a subsequent motion to transfer except on the ground of inability to obtain a fair trial; and (5) interlocutory appeals are prohibited. *Id.* (citing TEX. R. CIV. P. 86(1); 87(1), (5), and (6)). The court explained the rationale for not expanding the trial court's jurisdiction beyond thirty days with regard to a venue transfer order as follows:

> These restrictions reflect the supreme court's desire for rapid disposition of a motion to transfer. Were we to accept [the plaintiff's] argument, litigation could be stalled for 105 days while the transferring court decides whether it will rescind its order. During that time, the receiving court is not obligated to take any action. Such delay is not an efficient use of judicial resources. Accordingly, we conclude a trial court's plenary jurisdiction is not extended by a motion to reconsider an order transferring venue.

*Id.* at *3.

The court of appeals in *In re Chester* found the *Darling Homes* reasoning to be persuasive, and observed that allowing an extension of the trial court's plenary jurisdiction over a venue transfer order beyond thirty days would render meaningless Rule 89, which sets forth the procedures for the transferor and transferee courts to follow after the motion to transfer venue has been sustained. *See* TEX. R. CIV. P. 89. Rule 89, entitled "Transferred if Motion is Sustained," states, in relevant part:

> . . . After the cause has been transferred, as above provided for the clerk of the court to which the cause has been transferred shall mail notification to the plaintiff or his attorney that transfer of the cause has been completed, that the

filing fee in the proper court is due and payable within thirty days from the mailing of such notification, and that the case may be dismissed if the filing fee is not timely paid; and if such filing fee is timely paid, the cause will be subject to trial at the expiration of thirty days after the mailing of notification to the parties or their attorneys by the clerk that the papers have been filed in the court to which the cause has been transferred; and if the filing fee is not timely paid, any court of the transferee county to which the case might have been assigned, upon its own motion or the motion of a party, may dismiss the cause without prejudice to the refiling of same.

TEX. R. CIV. P. 89.

As the *In re Chester* court observed, Rule 89 triggers the timeframe in which the transferee court can take action on the transferred case. Under Rule 89, after the case has been transferred, the filing fee is due within thirty days from the mailing of the notification to the parties that the transfer of the case has been completed. *Id.* If the filing fee is not timely paid, the transferee court may dismiss without prejudice to refiling. *Id.* If the filing fee is timely paid, the case will be subject to trial thirty days after the mailing of the notification to the parties. *Id.*

Therefore, if a motion for rehearing of an order transferring venue were to extend the transferring court's plenary power beyond thirty days, the transferring court would have up to 105 days to set aside the venue transfer order, even though the case would be "subject to trial" in the transferee court long before the expiration of the 105 days. It would not be feasible for the transferee court to hold the transferred case in abeyance during the time in which the first court is deciding venue on rehearing. Such a procedure would be contrary to policy that the venue

determination be made early in the case. *See id.* at 718, citing *In re Darling Homes,* 2005 WL 1390378 at *2. Moreover, such a reading is not supported by the plain language of Rule 89.

In the present case, the Relator's clerk apparently did not actually effect transfer of the file materials to the transferee court. However, the clerk's duty in this regard is merely ministerial, and thus failure to actually transfer the trial court's physical file from the transferring court to the transferee court cannot have extended the former's jurisdiction. *See* TEX. R. CIV. P. 89 ("If a motion to transfer venue is sustained, the cause shall not be dismissed, but the court **shall** transfer said cause to the proper court; and the costs incurred prior to the time such suit is filed in the court to which said cause is transferred shall be taxed against the plaintiff. The clerk **shall** make up a transcript of all the orders made in said cause, certifying thereto officially under the seal of the court, and send it with the original papers in the cause to the clerk of the court to which the venue has been changed.") [emphases supplied].

If the transferring court's clerk's failure to physically transfer the file to the transferee court could extend the transferring court's plenary power, as the Plaintiffs / Real Parties in interest argued here, then in effect the transferring court and clerk could retain a "pocket veto" on the transfer order during whatever time period that the clerk failed to complete the ministerial duty of physically transferring the file. Such a result would be contrary to Rules 87 and 89, as well as the numerous case law decisions on this topic. *Cf. In re Chester* at 718 ("the [transferring] trial court's lack of jurisdiction is not based on when the [transferee] Court received the case file, but

- 14 -

on the expiration of [the transferring court's] plenary power after thirty days").

Nowhere in the trial court's record did the Respondent modify, reconsider, or vacate the transfer Order within thirty days of signing it on September 30, 2014. See Appendix pages 1 through 758. The filing and consideration of the plaintiffs' motion for reconsideration of the venue transfer did not extend the transferring court's plenary power. Therefore, the Respondent was without jurisdiction to set aside the transfer Order by November 21, 2014, and thus the "Order on Motion to Reconsider Order to Transfer Venue" of that date is void.

**THE TRIAL COURT WAS WITHOUT JURISDICTION TO SIGN ITS NOVEMBER 21, 2014 "ORDER ON MOTION TO RECONSIDER ORDER TO TRANSFER VENUE," AND ACCORDINGLY MANDAMUS SHOULD ISSUE.**

\*       \*       \*

D.    When an order is void, the relator need not show that it lacks an adequate appellate remedy, and mandamus relief is appropriate.

E.    The Court of Appeals should grant temporary and mandamus relief in order to avoid waste of judicial and party resources in a trial court that has lost jurisdiction, issue a writ of mandamus staying all further proceedings and discovery in the Fannin County trial court, and direct the trial court's clerk to physically transfer the file to the transferee court.

Because the Respondent's November 21, 2014 "Order on Motion to Reconsider Order to Transfer Venue" was void, Relators need not show prejudice or negate laches in order to obtain mandamus relief. *See In re Chester*, 309 S.W.3d at 718 ("laches is not applicable when the order subject to the mandamus proceeding is void") citing *Zimmerman v. Ottis*, 941 S.W.2d 259, 262 (Tex. App. —Corpus

Christi 1996, orig. proceeding) ("Since mandamus relief in the present case is premised on the entry of a void order, it would not serve the interests of justice or those of the parties to invoke laches as an excuse to ignore that order, and thus to allow the parties to expend further time and effort in connection with a lawsuit that must ultimately be dismissed by the [trial] court or reversed on appeal for want of jurisdiction."). However, even if a prejudice showing were required, the Relators would meet it in that absent emergency and mandamus relief, the Relators (as well as the Plaintiffs / Real Parties in Interest) will have to engage in discovery and prepare for trial in the Respondent's court, which lacks jurisdiction. *See id.*

Accordingly, and contemporaneously with this Petition, the Relators have sought an emergency stay from the Court of Appeals. A court of appeals may grant temporary relief pending its determination of an original proceeding. TEX. R. APP. P. 52.10(b); *see also* **In re Lumbermens Mut. Cas. Co.**, 184 S.W.3d 729, 730 (Tex. 2006) (orig. proceeding). In the present case, a stay of all litigation events and discovery relating to the Plaintiffs / Real Parties in Interest's case is necessary to avoid waste of judicial and party resources, ensure compliance with mandatory elements of the Texas Rules of Civil Procedure,[1] and preserve the transferee Court's jurisdiction

---

[1]  *See* TEX. R. CIV. P. 87 ("The determination of a motion to transfer venue shall be made promptly by the court") and TEX. R. CIV. P. 89 ("If a motion to transfer venue is sustained, the cause shall not be dismissed, but the court **shall** transfer said cause to the proper court; and the costs incurred prior to the time such suit is filed in the court to which said cause is transferred shall be taxed against the plaintiff. The clerk **shall** make up a transcript of all the orders made in said cause, certifying thereto officially under the seal of the court, and send it with the original papers in the cause to the clerk of the court to which the venue has been changed.") [emphases supplied]

to consider the merits of the case. *See* *In re Lumbermens*, 184 S.W.3d at 730; *see also* *In re Reed*, 901 S.W.2d 604, 609 (Tex. App.–San Antonio 1995, orig. proceeding).

## CONCLUSION AND PRAYER FOR RELIEF

Accordingly, in order to avoid waste of judicial and party resources in a trial court that has lost jurisdiction, the Relators respectfully petition the Court of Appeals for a temporary order staying all proceedings and discovery in the Fannin County trial court pending resolution of this Petition for Writ of Mandamus, and upon consideration of this Petition, for a writ of mandamus staying all further proceedings and discovery in the Fannin County trial court and directing the trial court's clerk to physically transfer the file to the transferee court.

WHEREFORE, PREMISES CONSIDERED, Relators respectfully petition the Court of Appeals for the temporary relief requested in their contemporaneous Motion for Emergency Stay, and for mandamus relief as requested in this Petition.

Respectfully submitted,

ROBERT G. HOGUE, P.C.

By:   s/ Robert G. Hogue
        State Bar No. 09811050

4514 Cole Avenue, Suite 600
Dallas, Texas 75205-4193
Phone: (214) 559-7107
Fax: (214) 559-7101

LAW OFFICES OF CHRISTY LEE, P.C.


By:     s/ Christy L. Lee

Texas State Bar No. 24052302

777 Main Street, Suite 600
Fort Worth, Texas  76102

ATTORNEYS FOR RELATORS / DEFENDANTS
KENNETH VERN GIBBS AND CANDACE GIBBS
WALTON


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Motion has been served on the Respondent, the parties and counsel listed below, on this 12th day of January, 2015, as indicated:

Honorable Laurine J. Blake                    Via USPS next-day mail
336th Judicial District Court
101 E. Sam Rayburn Drive, Suite 200
Bonham, Texas 75418

RESPONDENT


Mr. T. Scott Smith                            Via email per Rule 11 Agreement
Attorney and Counselor at Law
120 S. Crockett Street
Sherman, Texas  75090

ATTORNEY FOR THE PLAINTIFF / REAL PARTIES IN INTEREST


Howard Kirk Gibbs                             Via email per Rule 11 Agreement
9929 Crawford Farm Drive
Fort Worth, TX 76244

DEFENDANT, PRO SE

      s/ Christy L. Lee
        Christy L. Lee

- 18 -

# VERIFICATION

Before me, the undersigned notary, on this day personally appeared Christy L. Lee, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

My name is Christy L. Lee. I am over 18 years of age, and am competent to make this affidavit. I have personal knowledge of the facts set out in this affidavit, and they are all true and correct. I am an attorney who is licensed to practice law in the State of Texas. I am counsel of record for the Relators / Defendants in this litigation. The facts in this Petition are within my personal knowledge and are true and correct. All of the documents attached in the Appendix are true and correct copies, and the transcripts of the two relevant hearings conducted in the trial court below are true and accurate transcripts of those hearings.

_____
Christy L. Lee

STATE OF ALASKA                     §
                                    §
THIRD JUDICIAL DISTRICT             §

BEFORE ME, the undersigned authority, on this date personally appeared Christy L. Lee, known to me to be the person whose name is subscribed to the foregoing instrument, and swore and acknowledged that he executed the same and that the statements contained therein are within her personal knowledge and are true and correct.

TO CERTIFY WHICH WITNESS MY HAND AND SEAL OF OFFICE on this 9th day of January, 2015.

_____
Notary Public, in and for the State of Alaska
My Commission expires: June 15, 2015

LAURA M. HOGINS
NOTARY PUBLIC
June 15, 2016
STATE OF ALASKA

19

APPENDIX

# CIVIL DOCKET

| **Cause No.:** CV-14-41665 | **Court:** 336th District Court |
|---|---|
| **Kind of Action:** Contract - Other | **File Date:** 04/01/2014 |

## STYLE OF CASE
PENTEX FOUNDATION VS. KENNETH VERN GIBBS AND CANDACE GIBBS WALTON AND HOWARD KIRK GIBBS

| Attorneys:<br><br>Plaintiff: John Skotnik<br><br>Defendant: | Jury Demanded by: _____<br>Jury Fee Paid on: _____<br>Paid by: _____ |
|---|---|

| **Date of Orders**<br>Mo. Day Year | **ORDERS OF COURT** |
|---|---|
| 6-19-14 | Status hearing Set J.T. 1-5-15 8:30 pm; pretrial 12-3-14 1:00 pm; ct orders mediation ordered prior to pretrial - ct apts Sr. Retuned Cnt Henderson (299th) unless parties agree otherwise in writing in scheduling order; scheduling order due w/in 45 days; N/ate Motions hearing set on 9-30-14, 8:30 am |

# CIVIL DOCKET

| Cause No.: CV-14-41665 | Court: 336th District Court |
|---|---|
| Kind of Action: Contract - Other | File Date: 04/01/2014 |

## STYLE OF CASE
### PENTEX FOUNDATION VS. KENNETH VERN GIBBS AND CANDACE GIBBS WALTON AND HOWARD KIRK GIBBS

Attorneys:

Plaintiff:    John Skotnik

Defendant:

Jury Demanded by: _____
Jury Fee Paid on: _____
Paid by: _____

| Date of Orders<br>Mo. Day Year | ORDERS OF COURT |
|---|---|
| 6-19-14 | Status hearing  set J.T. 1-5-15 8:30 am; pretrial 12-3-14 1:00 pm; ct orders mediation ordered prior to pretrial - ct apt3 Su-Retainer Curt Henderson (2cqt)/ unless parties agree otherwise in writing in scheduling order); scheduling order due w/in 45 days; Plain Motions hearings set on 9-30-14, 8:30 am |
| 7-21-14 | Fiat setting Plaintiff's Motion to Compel on 9-30-14, 8:30am It |
| 9-15-14 | Fiat setting Plaintiff's Motion to Quash a for Protective Order Relating to Subpoenas and Deposition Notices 9-30-14, 8:30 a.m. It |
| 9-30-14 | Motions hearing; TT's ex 16 admitted; TT's ex 17 admitted; A ex A admitted; Partial SJ M not being heard - Set 10-14-14 9:00 am; motion to show authority set 10-21-14 8:00 am; motion to transfer Venue granted - transfer to Tarrant Co. Dist Court w/ jurisdiction; Plain Order signed; Oct 14 & 21 hearings in Fannin Co cancelled by virtue of this ruling Plain |

Cause No.:

**ORDERS OF COURT CONTINUED**

| Date of Orders | | |
| --- | --- | --- |
| Mo. | Day | Year |

# CIVIL DOCKET

| Cause No.: CV-14-41665 | Court: 336th District Court |
|---|---|
| Kind of Action: Contract · Other | File Date: 04/01/2014 |

## STYLE OF CASE
PENTEX FOUNDATION VS. KENNETH VERN GIBBS AND CANDACE GIBBS WALTON AND HOWARD KIRK GIBBS

Attorneys:

Plaintiff:   John Skotnik

Defendant:

Jury Demanded by: _____
Jury Fee Paid on: _____
Paid by: _____

| Date of Orders Mo. Day Year | ORDERS OF COURT |
|---|---|
| 6-19-14 | Status hearing Set J.T. 1-5-15 8:30 am; pretrial 12-3-14 1:00 pm; ct orders mediation ordered prior to pretrial - ct apts Sr. Retained cmt Henderson (209th)/ unless parties agree otherwise in writing; scheduling order; scheduling order due w/in 45 days; Plain Motions hearings set on 9-30-14, 8:30 a.m. |
| 7-21-14 | Fiat setting Plaintiff's Motion to Compel on 9-30-14, 8:30 a.m. ↑ |
| 9-15-14 | Fiat setting Plaintiff's Motion to Quash a for Protective Order Relating to Subpoenas and Deposition Notices 9-30-14, 8:30 a.m. ↑ |
| 9-30-14 | Motions hearing; P's ex 16 admitted P's ex 17 admitted; Δ ex A admitted, SJ m not being heard - Set 10-14-14 8:00 am; motion to show authority set 10-21-14 8:00 a.m.; motion to transfer venue granted - transfer to Tarrant Co Dist. court w/ jurisdiction. Plan Order signed; Oct 14 + 21 hearings in Fannin Co canceled by virtue of this ruling. Plan |

| Cause No.: CV-14-41665 | |
|---|---|
| **Date of Orders** Mo. Day Year | **ORDERS OF COURT CONTINUED** |
| 11-12-14 | Motion to Reconsider Venue Ruling; arguments; ct declines to transfer venue; scheduling order - Final/JT 4-1-15, 8:30am ; pretrial May 14, 2015, 1:00pm ct apts Curt Henderson mediator ; deadline for mediation 120 days from today; scheduling order due (at 3 days) 11-17-14, 1:00pm please |
| 11-17-14 | Scheduling Order signed PK |
| 11-21-14 | Order on Motion to Reconsider Order to Transfer Venue signed PK |

# CIVIL CASE INFORMATION SHEET

CAUSE NUMBER (FOR CLERK USE ONLY): CV-14-41665    COURT (FOR CLERK USE ONLY): 336

STYLED **PENTEX FOUNDATION V KENNETH VERY GIBBS, CANDACE GIBBS WALTON, AND HOWARD KIRK GIBBS**

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| **Name:**<br>John Skotnik | **Email:** | **Plaintiff(s)/Petitioner(s):**<br><br>Pentex Foundation | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: |
| **Address:**<br>P.O. Box 727 | **Telephone:**<br>903-640-4300 | | **Additional Parties in Child Support Case:** |
| **City/State/Zip:**<br>Bonham, TX 75418 | **Fax:**<br>903-640-4344 | **Defendant(s)/Respondent(s):**<br><br>Kenneth Very Gibbs<br>Candace Gibbs Walton<br>Howard Kirk Gibbs | **Custodial Parent:**<br><br>**Non-Custodial Parent:** |
| **Signature:**<br>/s/ | **State Bar No:**<br>18475150 | | **Presumed Father:** |
| | | [Attach additional page as necessary to list all parties] | |

**2. Indicate case type, or identify the most important issue in the case (select only 1):**

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-Judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☒ Other Debt/Contract:<br>  specific performance<br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional<br>  Liability:<br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability<br>  List Product:<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/<br>  Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus—Pre-indictment<br>☐ Other: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br>**Other Family Law**<br>☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Paternity/Parentage<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child: |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair<br>  Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☒ Tortious Interference<br>☐ Other: | | |

| **Tax** | **Probate & Mental Health** | |
|---|---|---|
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: |

**3. Indicate procedure or remedy, if applicable (may select more than 1):**

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought (do no select if it is a family law case):**

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☒ Over $1,000,000

Rev 2/13

No. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | § | IN THE DISTRICT COURT OF |
| Plaintiff | § | |
| Vs. | § | |
| VERN | § | FANNIN COUNTY, TEXAS |
| KENNETH ~~VERY~~ GIBBS | § | |
| CANDACE GIBBS WALTON | § | |
| HOWARD KIRK GIBBS | § | 336th JUDICIAL DISTRICT |
| Defendants | § | |

## ORIGINAL PETITION

**COMES NOW,** PENTEX FOUNDATION, Plaintiff, herein also "PENTEX", through its attorney John Skotnik, and files this suit for specific performance of a contract, and Tortious Interference with that Contract, against Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs,; and, would show the honorable court as follows:

## DISCOVERY CONTROL PLAN

Plaintiff intends that discovery be conducted under Discovery Level 2.

## PARTIES

1.   PENTEX FOUNDATION is a not for profit private foundation formed and operated under the laws of the Republic of Panama, Central America.   PENTEX does not have an office within the United States, but will accept service for this cause only through their attorney, John Skotnik, Bonham, Texas.

2.   Kenneth Vern Gibbs is a resident of Texas whose address is 4212 Wheeler St., Ft. Worth, Texas 76117, where service may be made.

3.   Candace Gibbs Walton is a resident of Texas, whose address is 500 Logan Drive in Azle, Texas  76020, where service may be made.

1



4. Howard Kirk Gibbs is a resident of Texas whose address is 4360 Western Center Blvd. #205, Ft. Worth, Texas 76137 where service may be made.

## JURISDICTION AND VENUE

5. The subject matter in controversy is within the jurisdictional limits of this Court.

6. The Court has jurisdiction over the parties because the Defendants are all Texas residents.

7. Venue is proper in Fannin County, Texas per Texas Civil Practice and Remedies Code § 15.035 (a), as the Defendants herein agreed in writing that:

  a. The contract was performable only in Fannin County, Texas; AND

  b. Any dispute would be resolved in the courts of Fannin County, Texas.

8. Furthermore, because venue is proper as to one Defendant, venue for this action with respect to all Defendants is proper under § 15.05 Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

9. On or about the 10th day of May, 2005, an agreement entitled *"Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s)"*, hereinafter **"Contract"**, was entered into between Albert Lynn Barcroft **["Barcroft"]**, Kenneth Vern Gibbs **["Ken"]**, Candace Gibbs Walton **["Candy"]**, and Howard Kirk Gibbs **["Howard"]**. The Contract was memorialized, executed and entered into the public record of Denton County, Texas, on or about May 24, 2005 as document number 2005-61443. A copy of the Contract (consisting of 9 pages) is attached hereto as **Exhibit "A"**, and is incorporated by reference for herein for all purposes.

2



10. On or about June 5, 2008, Barcroft sold his interests under the Contract to RENHAW. On or about June 6, 2008, that sale and transfer was executed and filed in the public record of Denton County, Texas as document number 2008-62063.

11. Subsequently on or about June 20, 2008, RENHAW transferred its rights under the Contract to its parent organization, PENTEX FOUNDATION, Plaintiff herein, in a private assignment.

12. Under the provisions of the Contract, Ken, Candy and Howard each sold Barcroft 30% of their inheritance from the estates and all related interests of both their father and mother for the consideration therein.[1]

13. Under the terms of the Contract, a business organization was to be created[2] solely to help facilitate the terms of the Contract.

14. The Contract also provided that any party could demand a split of the assets out of the business organization at any time[3].

15. Under the terms of the Contract, Barcroft would be liable for the expenses of one attorney to pursue a favorable settlement in the probate of Ken, Candy and Howard's father and mother. Barcroft would be solely responsible for paying for the attorney out of his own pocket

16. Under the terms of the Contract, if Ken, Candy and Howard hired any other attorneys, they would be solely responsible to pay those attorneys for whatever fees the attorneys charged[4].

---

[1] Contract, page 1, 1st para.: "... *is a contract for sale of thirty percent 30% of all land, mineral rights, royalties, and any other monies or assets which Gibbs, or any of the three individuals referred to collectively as "Gibbs" in this agreement, receives, or is due, from this date forward, either collectively or individually, as a result of any inheritance or estate proceeds, or any other property assets received from any trust(s) or transfers from Bert Hughes Gibbs and/or Kathryn G. Gibbs at any time, past, present, or future; including, but not limited to, the following..."*

[2] Contract, page 4 Number 5: "*It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or assets covered herein shall be deposited into a bank account in that entity's name...the only function of said business organization shall be to facilitate the agreement in this contract...*" [emphasis added]

17.	Sometime in September or October, 2008, a business organization known as GWB Family and Friends Trust ["GWB"], a purported trust, was created in compliance with the terms of the Contract to "help facilitate the terms of the contract".

	a.	Plaintiff has been unable to establish a date certain because Plaintiff has been unable to locate an original trust document that is signed and executed by the parties.

	b.	Plaintiff has seen at least three different copies of trust agreements, but none were properly executed.

	c.	If GWB is, in fact, a trust, it is a revocable trust pursuant to the terms of the Contract.

18.	Sometime in September, 2008, an agreement was reached by all interested parties as to how the estates of Bert Hughes Gibbs and Kathryn Houseworth Gibbs [Ken, Candy and Howard's father and mother] would be divided up.

19.	The agreement was called the Family Settlement Agreement ["FSA"], and it set the terms and conditions, as well as the respective shares due each heir, for the probate and disbursal of both estates.

20.	All parties, including Ken, Candy and Howard, agreed to and signed the FSA.

21.	The agreements contained in the Contract, subject of this suit, are recognized and confirmed in the FSA[5].

---

[3] Also on page 4 at no.5: "*Any party may demand a split of the assets of said business organization at any time.*"

[4] Contract, page 2, section (c): "*Barcroft will provide legal counsel by acquiring a single licensed attorney for any reasonable and prudent actions necessary to the collecting of the funds from the sources stated herein; however, should Gibbs, or any of the individual Gibbs, feel that their/his/her interests are not properly served by the one attorney Barcroft provides, that party will be responsible for the legal fees of any other attorney hired by Gibbs, or any individual Gibbs, to protect their/his/her individual interests.*"

[5] FSA, page 33, section 3.25 (c): "*Ken, Candy, and Howard Kirk represent that they have assigned an interest to Al Barcroft, who approves and ratifies all of the terms and provisions of this Agreement as represented by his execution of this Agreement. The Parties agree that the interest of Kathryn and the interest of Kip, respectively, is not and shall never be affected or reduced in any way because of any assignment of any interest made by Ken, Howard Kirk or Candy to Al Barcroft or any other person and that any such assignment shall only affect or reduce the interest of Ken, Howard Kirk and/or Candy in any Property covered by this FSA.*"

4

22.     The FSA also restates the fact that Ken, Candy and Howard are solely responsible for any attorney fees[6]; thereby confirming that provision in the contract.

23.     In August, 2013, Plaintiff learned that attorney fees that were agreed would be paid by Ken, Candy and Howard had actually been coming out of Plaintiff's share all along.

24.     Under the terms of the FSA, Ken, Candy and Howard were each awarded 25% of both their father's and mother's estates, totaling 75% of the total of the combined estates.

    a.  Each had previously sold 30% of their share to Barcroft under the Contract; meaning that Barcroft, or his assigns, had an unmitigated interest in the combined estates of 22.50% [30% of 75%].

25.     Through agreement and instruction from Plaintiff, the estate attorneys assigned 2.46% of Plaintiff's 30% share; leaving 20.04% belonging to Barcroft or his assigns [22.50% less 2.46%].

26.     Pursuant to the Contract, Ken, Candy, Howard and PENTEX [assignee of Barcroft's interests] all assigned their entire share to GWB.

27.     Unbeknownst to Plaintiff until October of 2013, the contingency fee attorneys were deducting their fees from the total due PENTEX, Ken, Candy and Howard, then issuing one check to GWB.

    a.  The result is that Plaintiff has paid over a million dollars in attorney fees that were due to be paid solely by and from Ken, Candy and Howard.

28.     When Plaintiff learned of this error, it immediately moved under the terms of the original Contract to demand a split of the assets of the business organization.

---

[6] FSA, page 22, section 3.15A:*"Attorney's fees of Ken, Candy and Howard Kirk. Parties acknowledge and agree that Ken, Candy and Howard have incurred with their attorneys, attorney's fees and expenses based upon a contingency fee contract of 50% of the amounts recovered and distributed to them as beneficiaries of the Estates of the Decedent and the Ward. The Parties agree that all attorneys' fees paid or owed by Ken, Candy and Howard Kirk shall be borne by and shall be the sole obligation of Ken, Candy and Howard Kirk and shall be paid solely*

29.     Demand was made upon Beverly Miller, the trustee of the purported GWB trust, to divide and distribute to PENTEX [or its assign] its 20.04% of the assets from the estates.

30.     Miller examined the demand and decided that it was a valid demand; where upon, she transferred enough property to equal 20.04% of the estate distribution to GWB [mineral interests] out of the property received from the estates, to a trust designated by Plaintiff.

31.     Ken and Candy hired an attorney, to try to take back the share rightfully due PENTEX.

32.     The attorney for Ken and Candy also contacted the gas companies, with which PENTEX and others do business, by letter, tortiously interfering with the contracts between Plaintiff and the various oil companies; all in the name and at the command of Candy and Ken.

33.     As a direct result of the frivolous contacts made to the gas companies by the attorney for Ken and Candy, the gas companies discontinued payments of royalties rightfully due PENTEX.

## DAMAGES

34.     The actions on behalf of Ken and Candy have damaged Plaintiff by causing business associates to discontinue doing business with them, stop paying them money due under contract, and generally distrust them.

35.     PENTEX is being unjustly denied its money and assets all because of groundless, unproven, and false accusations made on behalf of Ken and Candy, both in conversation and in writing.

36.     Defendants' actions amount to Tortious interference with the Contract, subject of this suit.

---

*by them... These Attorney's fees will only be paid out of the percentage share allocated to Ken, Candy and Howard at the time of actual distribution to them.*

6



37.   Plaintiff has had over a million dollars of money rightfully due Plaintiff taken by Ken, Candy and Howard to pay the attorney fees that were due to be paid only by Ken, Candy and Howard under written agreement, i.e. the Contract here.

38.   In addition, under the terms of the Contract, Plaintiff was to receive 30% of all proceeds from any lawsuit involving Ken, Candy and Howard.  At the time the Contract was agreed to and executed, there was an Abstract of Judgment filed in Denton County [Document Number 2008-38029] against Ken, Candy and Howard in the amount of $911,252.87 plus $149,546.34 in interest, in favor of Kip H. Gibbs as NEXT FRIEND FOR Kathryn Houseworth Gibbs.

   a.   As a result of Plaintiff's efforts, that judgment was retired.

   b.   It is therefore proceeds from a lawsuit, and Plaintiff is entitled to its 30% share, equaling $318,239.76.

## SPECIFIC PERFORMANCE

39.   Plaintiff has a right to performance under the Contract.  Plaintiff has honored every consideration placed on it by the Contract; and, now, Plaintiff has a right to the consideration promised it.

40.   Plaintiff would ask the court to order that the provisions of the Contract be fully enforced without delay; and, that the proper gas companies be notified of the action.

41.   Plaintiff's only offense was in utilizing a provision within the Contract to withdraw its money and assets from a situation in which Plaintiff has been taken advantage of and stolen from since the outset.

42.   Plaintiff asks the court to grant specific performance under the Contract without delay.

## CONDITIONS PRECEDENT

43.   Plaintiff avers that all conditions precedent have occurred prior to filing of this suit.

13



## EXEMPLARY DAMAGES

44. Plaintiff would further show that the acts and omissions of Defendants, Ken and Candy, complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiff. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as provided by Section 41.003(1) of the Texas Civil Practice and Remedies Code.

## OTHER RELIEF REQUESTED

45. Specific Performance: Plaintiff seeks specific performance of the Contract as alleged and as will be proven.

46. Declaratory Judgment: Plaintiff[s] request[s] that declaratory judgment be entered under Chapter 37 of the Texas Civil Practice and Remedies Code, declaring the Contract between Plaintiff and the Defendants as parties to contract, valid and enforceable under the laws of the State of Texas.

47. Restitution: Plaintiff requests that the Court enter an order requiring Defendants to pay restitution to Plaintiff.

## ATTORNEY'S FEES

48. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as

14



provided by Chapter 38 of the Texas Civil Practice and Remedies Code and Section 37.009 of the Texas Civil Practice and Remedies Code, amongst others.

## ALTERNATIVE ALLEGATIONS

49.    Pursuant to Rules 47 and 48, Texas Rules of Civil Procedure and the rules of pleadings, allegations in this petition are made in the alternative.

## PLAINTIFF HEREBY DEMANDS TRIAL BY JURY!!

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered by this Court for Plaintiff and against the Defendants for the following:

A.    All actual damages; but, in any case, no less than one million dollars [$1,000,000.00];

B.    Restitution in the exact amount that has been unjustly taken from Plaintiff by defendants and used to pay Defendant's legal fees;

C.    Judgment against Defendant's for $318,239.76 plus interest as Plaintiff's share of the proceeds from the Abstract of Judgment referenced herein;

D.    Declaratory judgment at the earliest possible time to determine the proper ownership of the mineral interest put in dispute at the oil and gas company level by baseless letters from the Defendants;

E.    Specific Performance

F.    Grant any other relief to which plaintiff has shown itself entitled both at law and in equity, whether pled or unpled.

9



Respectfully submitted,

John Skotnik, sbn 18475150
P.O. Box 727
Bonham, Texas 75418
(903)640-4300 * FAX 640-4344
Attorney for Plaintiff,
PENTEX FOUNDATION

10





## Denton County
## Cynthia Mitchell
## County Clerk
## Denton, TX 76202

Instrument Number: 2005-61443

As

Recorded On: May 24, 2005                    Misc General Fee Doc

Parties: GIBBS KENNETH VERN                    Billable Pages: 9
To                                             Number of Pages: 9

Comment:

---

** Examined and Charged as Follows: **

Misc General Fee Doc            30.00
         Total Recording       30.00

---

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law

File Information:                              Record and Return To:
   Document Number   2005-61443
   Receipt Number    196064                    AL BARCROFT
   Recorded Date/Time   May 24, 2005 11:44A    P O BOX 168
                                               TRENTON TX 75490
         User / Station   J Morris - Cash Station 1

---



THE STATE OF TEXAS )
COUNTY OF DENTON )

I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas

         Cynthia

County Clerk
Denton County, Texas

Ex. A, p 1 oF 9



### Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust"

This agreement between Albert Lynn Barcroft, hereinafter **"Barcroft"**, and Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs, hereinafter collectively also "Gibbs", is a **contract for sale of thirty percent 30% of all land, mineral rights, royalties, and any other monies or assets which Gibbs**, or any of the three individuals referred to collectively as "Gibbs" in this agreement, receives, or is due, from this date forward, either collectively or individually, as a result of any inheritance or estate proceeds, or any other property assets received from any trust(s) or transfers from Bert Hughes Gibbs, Mary L. Houseworth, and/or Kathryn G. Gibbs at any time, past, present, or future; including, but not limited to, the following:

a) All proceeds from the Estate of Bert Hughes Gibbs, and/or;

b) All property and/or assets of any kind which are received as a result of any past or future transference from Bert Hughes Gibbs, Kathryn G. Gibbs, or any trust to which Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, are beneficiary; and/or,

c) All inheritance of any kind and in any form by Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement; and/or;

d) All proceeds from any lawsuit which currently exists, or may arise, because of, or in connection with, the relationship(s) with Bert Hughes Gibbs, Kathryn G. Gibbs, Kip Hughes Gibbs, Sandra Faye Gibbs, "The Mary L. Houseworth Irrevocable Trust", "The Kathryn Houseworth Gibbs Irrevocable Trust", and any other trust(s) to which Gibbs are beneficiary(ies) or trustee(s) in any form; and/or,

e) All property and/or assets which may have been previously passed to them by Bert Hughes Gibbs, Kathryn G. Gibbs, "The Mary L. Houseworth Irrevocable Trust", and/or "The Kathryn Houseworth Gibbs Irrevocable Trust"; and/or,

f) All other property and/or assets passed to Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, from any source involving Bert Hughes Gibbs, Kathryn G. Gibbs, "The Kathryn Houseworth Gibbs Irrevocable

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies 　　　　1　　　　Initials of all parties

18

Ex. A, p. 2 of 9



Trust", and/or "The Kathryn Houseworth Gibbs Irrevocable Trust"; or, any other trust(s) or business organization(s) of any kind, which might be uncovered or discovered in the future; and/or,

g) All property and/or other assets in any trust or former trust; and, any property or other assets in any corporation, limited liability company, partnership(s), sole proprietorship(s), or any other business organization of any kind in which one or more of the Gibbs are owners, trustee(s) or beneficiary(ies).

h.) Specifically exempted from this agreement are any properties and/or other assets which are currently under the full control of Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement; provided, however, that if any legal work is required to aid in the collection of said assets, or the sale or control of said property, then said property or other assets shall be subject to the terms, conditions, and considerations set forth within this agreement as part of the property and/or assets listed above, and shall have no exemption to the terms and considerations of this agreement. Also exempted from this agreement are any personal items that were passed to Gibbs from their father, which were not included in the divorce distribution between their mother and father.

**This sale of 30% of all land, property and other assets described herein above shall be governed by the following terms, conditions, and considerations:**

1 Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, shall give their/his/her full cooperation to all efforts by Barcroft to collect any of the funds referred to in this agreement. Said cooperation shall include, but not be limited to, providing necessary information and documentation, being available to give testimony, and giving full support to the overall effort of collecting funds and assets from the sources stated herein.

2. Any party hereto shall have the right to order a complete inventory of all property and other assets described herein at any time, and all parties agree to provide full cooperation to such an effort. Any costs shall be born by the party requesting the inventory.

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies

2

Initials of
all parties *AB KHG CBW DG*

Ex. A, p. 3 of 9



3. As full consideration, Barcroft agrees to provide, or has provided, the following:

   a) Barcroft has paid to Gibbs a total of twenty-one (21) silver dollars minted by the United States Mint, photocopy of said coins attached hereto as **Exhibit "A"**, and incorporated herein for all purposes as real consideration under this agreement, and Gibbs hereby acknowledges receipt of same with this signing; and,

   b) Barcroft will provide his services, knowledge and best efforts in the pursuit of all available funds, property, and/or other assets from the sources stated herein; and,

   c) Barcroft, at his expense, will provide legal counsel by acquiring a licensed attorney for any reasonable and prudent actions necessary to the collecting of the funds from the sources stated herein; however, should Gibbs, or any of the individual Gibbs, feel that their/his/her interests are not properly served by the attorney Barcroft provides, that party will be responsible for the legal fees of any other attorney(s) hired by Gibbs, or any individual Gibbs, to protect their/his/her individual interests. In that event, it is agreed by all parties hereto that the attorney hired by Barcroft will represent only Barcroft in all future action(s). Furthermore, it is specifically agreed that said attorney hired by Barcroft will represent only Barcroft should a dispute arise between the parties hereto; and, Gibbs, individually and collectively, agree not to claim conflict of interest should said attorney represent Barcroft in a conflict between the parties hereto; and, Gibbs, collectively and individually, hereby waive their/his/her right to claim conflict of interest with regards to said attorney in such instance.

4. It is understood and agreed that Gibbs may cancel or nullify this contract only under the following conditions:

   a) If Gibbs pays over to Barcroft the sum of five million dollars ($5,000,000.00 US) in full, in addition to any money received prior to said one time payment, as liquidated damages and full settlement of all consideration on Gibbs part.

   b.) If Barcroft voluntarily abandons the effort to collect the funds from the sources stated herein; however, in this event, Barcroft shall retain all amounts already received, and will continue to receive any future proceeds from any of the property or other assets, and will retain his ownership interest in any property

Contract for Sale of Land, Mineral Rights, Royalties and Other Assets and/or Monies                3                Initials of all parties

Ex. A, p. 4 of 9

which is covered by this agreement and has been brought into the control of Gibbs, or is paying benefits of any kind at the time of Barcroft's abandonment; or, which is brought into the control of Gibbs, or start paying benefits at a later date, provided that said control or payments is a result of actions prior to Barcroft's abandonment.

5. If Barcroft dies or becomes incapacitated, the contract will remain in force, and the assets which have been accessed and are paying at the time of Barcroft's death, or which are later accessed as a result of Barcroft's efforts, will go to his heirs and assigns.

6. It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or assets covered herein shall be deposited into a bank account in that entity's name, and that all expenses necessary to the continuation of revenue being paid to the parties hereto (i.e. property taxes on the royalties or property covered herein, and any necessary expenses such as well upkeep, etc.) shall be deducted and paid as required before the 70/30 division agreed to in this contract. Barcroft shall have a 50% vote in the operation of said business organization; and, the only function of said business organization shall be to facilitate the agreement in this contract. Any monies paid out of said business organization, other than the agreed upon split between the parties, shall be agreed upon by all parties hereto. The division shall be divided on a basis of 30% to Barcroft, 23.34% to Kenneth Vern Gibbs, 23.33% to Candace Walton Gibbs, and 23.33% to Howard Kirk Gibbs, at each instance of dispersal to the parties. Any party may demand a split of the assets of said business organization at any time.

7. If either party should break the terms of this agreement in any fashion, or attempt to render the contract invalid, in any way which would require legal action to correct or enforce, the party found at fault, or the party failing to prevail, shall pay all legal expenses of any type for himself/herself, and for the prevailing party.

8. This contract is written to comply with the laws of the State of Texas; and, any provision found by a court of competent jurisdiction to be in non-compliance shall be

Contract for Sale of Land, Mineral Rights, Royalties and Other Assets and/or Monies

4

Initials of all parties





automatically amended to comply with said laws in such a manner as to keep the original intent of the provision as closely in place as possible. In no event shall any such findings on one provision affect any other provision within the contract.

9. Notwithstanding any other provision under the law, it is expressly agreed that this contract shall be performable only in Fannin County, Texas; and, any dispute(s) will be resolved in the courts of Fannin County, Texas. The signing hereto of this contract by all parties completes the sale of 30% of all property and assets of Gibbs to Barcroft.

10. This agreement shall be binding on all heirs and assigns of the parties hereto.

11. No lien(s) may be placed upon any of the property covered herein unless such lien(s) is/are agreed to by all parties hereto, reduced to writing, and signed by all parties hereto before a notary public.

12. All agreements between the parties hereto are contained in writing in this contract, and no verbal agreements shall be deemed valid unless contained in writing herein. All amendments hereto must be in writing, and signed by all parties before a notary public.

13. Albert Lynn Barcroft, Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs, the principal parties hereto, hereby agree to this contract in its entirety without reservation; and, each pledge never to challenge the terms, conditions, intentions, and/or considerations under this contract with their respective signing hereunder.

WITNESS OUR HANDS this 10ᵗʰ day of May, 2005.

_____
Albert Lynn Barcroft

_____
Kenneth Vern Gibbs

_____
Candace Gibbs Walton

_____
Howard Kirk Gibbs

Initials of
all parties _____ KOG CGW H

22

Ex. A, p. b of 9



# ACKNOWLEDGEMENT

**STATE OF TEXAS**

**Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Albert Lynn Barcroft**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.

_____
Albert Lynn Barcroft

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

_____
Notary in and for the State of Texas

**STATE OF TEXAS**

**Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Kenneth Vern Gibbs**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.

_____
Kenneth Vern Gibbs

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

_____
Notary in and for the State of Texas

Contract for Sale of Land; Mineral Rights,
Royalties and Other Assets and/or Monies

6

Initials of
all parties

Ex. A, p. 7 of 9



**STATE OF TEXAS**

**Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Candace Gibbs Walton**, known to me, did personally appear before me; and, after taking the oath, deposes and says that she is the woman who executed the foregoing instrument; and, further stated that she executed the same as her free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that she agrees to abide by all said provisions.



Candace Gibbs Walton

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

**STATE OF TEXAS**

**Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Howard Kirk Gibbs**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.



Howard Kirk Gibbs

Subscribed and sworn to before me this 10th day of May in the year 2005

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies

7

Initials of
all parties    KUb  CMW  M

Ex. A., p. 8 of 9





Al Barcroft
40 P.O. Box 188
Trenton, Texas
75490 (no)

Exhibit "A"      KUC CAW W

Ex. A, p.9 of 9

*Attorney*

**THE STATE OF TEXAS**                                          CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION VS. KENNETH VERN GIBBS AND CANDACE GIBBS WALTON AND HOWARD KIRK GIBBS | § § § | IN THE DISTRICT COURT 336th JUDICIAL DISTRICT FANNIN COUNTY, TEXAS |

TO: **Kenneth Vern Gibbs**
**4212 Wheeler ST**
**Ft Worth TX 76117,** or wherever he/she may be found **DEFENDANT - GREETING**

**NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you."** *TRCP. 99*

You are hereby commanded to appear by filing a written answer to the Plaintiff's Petition at or before 10:00 o'clock A.M. on the Monday next after the expiration of 20 days after the date of service of this citation, before the Honorable 336th Judicial District Court of Fannin County, Texas, at the courthouse in said County in the City of Bonham, Fannin County, Texas. Said Plaintiff's Petition was filed in said court on the ; 1st day of April, 2014 in the above entitled cause.

The nature of Plaintiff's demand is fully shown by a true and correct copy of (OCA) - Original Petition - New Cases Filed accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Bonham, Fannin County, Texas this 3rd day of April, 2014.

Attorney for Plaintiff or Plaintiff:                    Clerk of the Court:
John Skotnik,                                          Nancy Young, District Clerk
Attorney at Law                                        101 E. Sam Rayburn Drive, Suite 201
PO Box 727                                             Bonham, Fannin County, Texas 75418
Bonham TX 75418

_____ Deputy

---

**OFFICER/AUTHORIZED PERSON RETURN**

Came to hand at _____ o'clock ____.M., on the _____ day of _____, 20____. Executed at (address) _____ in _____ County at _____ o'clock ____.M. on the _____ day of _____ _____, 20____, by delivering to _____ defendant, in person, a true copy of this Citation together with the accompanying copies of the (OCA) - Original Petition - New Cases Filed attached thereto and I endorsed on said copy of the Citation the date of delivery.

[ ] Not executed. The diligence use in finding defendant being _____

[ ] Information received as to the whereabouts of defendant being_____
To certify which I affix my hand officially this _____ day of _____, 20____.

Fees ........... $_____                              _____
                                                       Fannin County, Texas
Service ID No. _____        by _____ Sheriff/Deputy/Constable/Process Server

**VERIFICATION**

On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the Texas Rules of Civil Procedure. I am over the age of eighteen years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Fannin County Courts to serve process.

Subscribed and sworn to before me on this the _____ day of _____, 20__

_____Notary Public

**CERTIFICATE OF DELIVERY BY MAIL – TRC 106**

I hereby certify that on the _____ day of _____, 20____, at _____ o'clock __.M., I mailed to Kenneth Vern Gibbs 4212 Wheeler ST Ft Worth TX 76117, Defendant by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the (OCA) - Original Petition - New Cases Filed attached thereto. (Certified Mail Receipt and Green Card Attached)

_____ Deputy/Process Server

26

**THE STATE OF TEXAS**                                    **CAUSE NO. CV-14-41665**

| | | |
|---|---|---|
| PENTEX FOUNDATION VS. | § | IN THE DISTRICT COURT |
| KENNETH VERN GIBBS AND | | |
| CANDACE GIBBS WALTON AND | § | 336th JUDICIAL DISTRICT |
| HOWARD KIRK GIBBS | | |
| | § | FANNIN COUNTY, TEXAS |

TO:  Candace Gibbs Walton
500 Logan DR
Azle TX  76020, or wherever he/she may be found **DEFENDANT - GREETING**

**NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you."** *TRCP. 99*

You are hereby commanded to appear by filing a written answer to the Plaintiff's Petition at or before 10:00 o'clock A.M. on the Monday next after the expiration of 20 days after the date of service of this citation, before the Honorable 336th Judicial District Court of Fannin County, Texas, at the courthouse in said County in the City of Bonham, Fannin County, Texas. Said Plaintiff's Petition was filed in said court on the ; 1st day of April, 2014 in the above entitled cause.

The nature of Plaintiff's demand is fully shown by a true and correct copy of (OCA) - Original Petition - New Cases Filed accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Bonham, Fannin County, Texas this 3rd day of April, 2014.

Attorney for Plaintiff or Plaintiff:                          Clerk of the Court:
John Skotnik,                                                Nancy Young, District Clerk
Attorney at Law                                              101 E. Sam Rayburn Drive, Suite 201
PO Box 727                                                   Bonham, Fannin County, Texas 75418
Bonham TX  75418

_____ Deputy

---

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, 20____. Executed at (address) _____
_____ in _____ County at _____ o'clock ____.M. on the _____ day of _____
_____, 20____, by delivering to _____ defendant, in person, a true copy of this Citation together with the accompanying copies of the (OCA) - Original Petition - New Cases Filed attached thereto and I endorsed on said copy of the Citation the date of delivery.

[ ] Not executed. The diligence use in finding defendant being _____
_____

[ ] Information received as to the whereabouts of defendant being_____
To certify which I affix my hand officially this _____ day of _____, 20____.

Fees ……….. $_____                                    _____
                                                          Fannin County, Texas
Service ID No. _____          by _____ Sheriff/Deputy/Constable/Process Server

VERIFICATION

        On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the Texas Rules of Civil Procedure. I am over the age of eighteen years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Fannin County Courts to serve process.

        Subscribed and sworn to before me on this the _____ day  of _____, 20__

                                                          _____Notary Public

CERTIFICATE OF DELIVERY BY MAIL – TRC 106
I hereby certify that on the _____ day of _____, 20____, at _____ o'clock ___.M., I mailed to Candace Gibbs Walton  500 Logan DR  Azle TX  76020 , Defendant by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the (OCA) - Original Petition - New Cases Filed attached thereto. (Certified Mail Receipt and Green Card Attached)

_____ Deputy/Process Server

**27**

**CITATION** – personal service – TRC 99

**THE STATE OF TEXAS**                                                   **CAUSE NO. CV-14-41665**

| | | |
|---|---|---|
| PENTEX FOUNDATION VS. | § | IN THE DISTRICT COURT |
| KENNETH VERN GIBBS AND | | |
| CANDACE GIBBS WALTON AND | § | 336th JUDICIAL DISTRICT |
| HOWARD KIRK GIBBS | | |
| | § | FANNIN COUNTY, TEXAS |

TO:  Howard Kirk Gibbs
**4360 Western Center BLVD #205**
**Ft Worth TX  76137,** or wherever he/she may be found  **DEFENDANT - GREETING**

**NOTICE TO DEFENDANT: "You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you."** *TRCP. 99*

You are hereby commanded to appear by filing a written answer to the Plaintiff's Petition at or before 10:00 o'clock A.M. on the Monday next after the expiration of 20 days after the date of service of this citation, before the Honorable 336th Judicial District Court of Fannin County, Texas, at the courthouse in said County in the City of Bonham, Fannin County, Texas.  Said Plaintiff's Petition was filed in said court on the ; 1st day of April, 2014 in the above entitled cause.

The nature of Plaintiff's demand is fully shown by a true and correct copy of (OCA) - Original Petition - New Cases Filed accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Bonham, Fannin County, Texas this 3rd day of April, 2014.

Attorney for Plaintiff or Plaintiff:                                     Clerk of the Court:
John Skotnik,                                                       Nancy Young, District Clerk
Attorney at Law                                            101 E. Sam Rayburn Drive, Suite 201
PO Box 727                                            Bonham, Fannin County, Texas 75418
Bonham TX  75418

                                                          _____ Deputy

---

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, 20____. Executed at (address) _____
_____ in _____ County at _____ o'clock ____.M. on the _____ day of _____
_____, 20____, by delivering to _____ defendant, in person, a true copy of this Citation together with the accompanying copies of the (OCA) - Original Petition - New Cases Filed attached thereto and I endorsed on said copy of the Citation the date of delivery.

[ ] Not executed. The diligence use in finding defendant being _____
_____

[ ] Information received as to the whereabouts of defendant being_____
To certify which I affix my hand officially this _____ day of _____, 20____.

Fees ........... $_____

Service ID No. _____           by _____     Fannin County, Texas
                                                                 Sheriff/Deputy/Constable/Process Server

VERIFICATION

    On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the Texas Rules of Civil Procedure.  I am over the age of eighteen years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Fannin County Courts to serve process.
    Subscribed and sworn to before me on this the _____ day  of_____, 20__

                                                                     _____Notary Public

CERTIFICATE OF DELIVERY BY MAIL – TRC 106

I hereby certify that on the _____ day of _____, 20____, at _____ o'clock __.M., I mailed to Howard Kirk Gibbs  4360 Western Center BLVD #205  Ft Worth TX  76137, Defendant by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the (OCA) - Original Petition - New Cases Filed attached thereto. (Certified Mail Receipt and Green Card Attached)

                                          _____ Deputy/Process Server

**28**

**THE STATE OF TEXAS**  CAUSE NO. CV-14-41665

PENTEX FOUNDATION VS.  §  IN THE DISTRICT COURT
KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON AND  §  336th JUDICIAL DISTRICT
HOWARD KIRK GIBBS

§  FANNIN COUNTY, TEXAS

TO: Howard Kirk Gibbs
4360 Western Center BLVD #205
Ft Worth TX 76137, or wherever he/she may be found **DEFENDANT - GREETING**

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you." *TRCP. 99*

You are hereby commanded to appear by filing a written answer to the Plaintiff's Petition
Monday next after the expiration of 20 days after the date of service of this citation
Court of Fannin County, Texas, at the courthouse in said County in the City
Petition was filed in said court on the ; 1st day of April, 2014 in the above en

The nature of Plaintiff's demand is fully shown by a true and correct copy of
accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Bonham, Fannin C

Attorney for Plaintiff or Plaintiff:
John Skotnik,
Attorney at Law
PO Box 727
Bonham TX 75418

Came to hand at 1200 o'clock O .M., on the 3 day of April , 20 14 . Executed
in _____

_____ ew Cases Filed attached there

_____, 20____ .

_____ by _____

**VERIFICATION**
_____ kn
:going instrument has been c:
terested in the outcome of this suit, and have been authorized by the

_____, 20__

_____ Notary Public

'E OF DELIVERY BY MAIL – TRC 106
_____, 20 14 , at ___157___ o'clock P.M.. I mailed to Howard Kirk Gibbs 4360 Western
certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this
ched thereto. (Certified Mail Receipt and Green Card Attached)

_____ ~~Deputy~~/Process Server

Delivered By Cert. mail on
4/4/14 @ 1324 hrs
7013 2630 0000 4812 7600

**29**

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

FORT WORTH TX 76137

| | | |
|---|---|---|
| Postage | $ | $2.03 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $8.03 |

Sent To  Howard Kirk Gibbs
Street, Apt. No.; or PO Box No.  4360 Western Center Blvd #205
City, State, ZIP+4  Ft. Worth, Tx 76137

PS Form 3800, August 2006    See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Howard Kirk Gibbs
4360 Western Center
Blvd # 205
Ft. Worth, Tx 76137

2. Article Number (Transfer from service label)
7013 2630 0000 4812 7600

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X _____ ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery 4-4-14
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☒ Yes

**CITATION** – personal service – TRC 99

THE STATE OF TEXAS

CAUSE NO. CV-14-41665

PENTEX FOUNDATION VS. §
KENNETH VERN GIBBS AND §
CANDACE GIBBS WALTON AND §
HOWARD KIRK GIBBS §

IN THE DISTRICT COURT

336th JUDICIAL DISTRICT

FANNIN COUNTY, TEXAS

TO: Kenneth Vern Gibbs
4212 Wheeler ST
Ft Worth TX 76117, or wherever he/she may be found **DEFENDANT - GREETING**

**NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you."** *TRCP. 99*

You are hereby commanded to appear by filing a written answer to the Plaintiff's Petition at or before 10:00 o'clock A.M. on the Monday next after the expiration of 20 days after the date of service of this citation, before the Honorable 336th Judicial District Court of Fannin County, Texas, at the courthouse in said County in the City of Bonham, Fannin County, Texas. Said Plaintiff's Petition was filed in said court on the ; 1st day of April, 2014 in the above entitled cause.

The nature of Plaintiff's demand is fully shown by a true and correct copy of (OCA) - Original Petition - New Cases Filed accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Bonham, Fannin County, Texas this 3rd day of April, 2014.

Attorney for Plaintiff or Plaintiff:
John Skotnik,
Attorney at Law
PO Box 727
Bonham TX 75418

Clerk of the Court:
Nancy Young, District Clerk
101 E. Sam Rayburn Drive, Suite 201
Bonham, Fannin County, Texas 75418

_____ Deputy

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

HALTOM CITY TX 76117

| | | |
|---|---|---|
| Postage | $ | $2.03 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $8.03 |

Postmark Here  APR 3 - 2014

Sent To  Kenneth Vern Gibbs
Street, Apt. No.; or PO Box No.  4212 Wheeler St.
City, State, ZIP+4  Ft Worth, TX 76117

PS Form 3800, August 2006    See Reverse for Instructions

/AUTHORIZED PERSON RETURN
_____, 2014. Executed at (address) _____
_____ in _____ County at _____ o'clock ___ M. on the _____ day of _____
_____ defendant, in person, a true copy of this Citation
w Cases Filed attached thereto and I endorsed on said copy of the Citation the date of delivery.

_____

_____

_____, 20____.

_____
Fannin County, Texas
by _____ Sheriff/Deputy/Constable/Process Server

VERIFICATION

_____ known to me to be the person whose name is subscribed on the foregoing going instrument has been executed by me in this cause pursuant to the Texas Rules of Civil erested in the outcome of this suit, and have been authorized by the Fannin County Courts to serve

_____, 20__
_____ Notary Public

E OF DELIVERY BY MAIL – TRC 106
hereby certify that on the _____ day of _April_, 2014, at _157_ o'clock P.M., I mailed to Kenneth Vern Gibbs 4212 Wheeler ST Ft Worth TX 76117, Defendant by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the (OCA) - Original Petition - New Cases Filed attached thereto. (Certified Mail Receipt and Green Card Attached)

Delivered By Cert. Mail on
4/4/14 @ 1017 hrs
7013 2630 0000 4812 7594

_____ Deputy/Process Server

30

# Product Tracking System

| Home | Search | Reports | Manual Entry | Rates/ Commitments | PTS / EDW | USPS Corporate Accounts | April 23, 2014 |

## Track & Confirm Intranet Tracking Number Result

### Result for Domestic Tracking Number 7013 2630 0000 4812 7594

### Destination and Origin

**Destination**

| ZIP Code | City | State |
|---|---|---|
| 76117 | HALTOM CITY | TX |

**Origin**

| ZIP Code | City | State |
|---|---|---|
| 754189998 | BONHAM | TX |

### Tracking Number Classification

#### Class/Service
| | |
|---|---|
| Class/Service: | First-Class Certified Mail |
| Class of Mail Code/Description: | FC / First Class |

#### Service Delivery Information
| | |
|---|---|
| Service Performance Date: | Scheduled Delivery Date: Saturday, 04/05/2014 |
| Delivery Option Indicator: | 1 - Normal Delivery |
| Zone: | 01 |
| PO Box: | N |
| Other Information | Service Calculation Information |

#### Payment
| | |
|---|---|
| Payment Type: | Other Postage |
| Payment Account Number: | 000000000000 |
| Postage: | $2.03 |
| Weight: | 0 lb(s) 6 oz(s) |
| Rate Indicator: | SINGLE PIECE - FLAT |

### Extra Services

**Extra Services Details**

| Description | Amount |
|---|---|
| Certified Mail | $3.30 |
| Return Receipt | $2.70 |

### Events

| Event | Event Date | Event Time | Location | Input Method | Scanner ID | Carrier Route | Other Information |
|---|---|---|---|---|---|---|---|
| DELIVERED | 04/04/2014 | 10:17 | HALTOM CITY, TX 76117 | Scanned | 030SHK3213 | Scanned by route 6117C014 | View Delivery Signature and Address  Facility Finance Number: 483236  Request Delivery Record |
| OUT FOR DELIVERY | 04/04/2014 | 07:59 | HALTOM CITY, TX 76117 | System Generated | | | |
| SORTING/PROCESSING COMPLETE | 04/04/2014 | 07:49 | HALTOM CITY, TX 76117 | System Generated | | | Distribution Complete Label ID: DC14 3579 1000 1404 0407 5528 |
| ARRIVAL AT UNIT | 04/04/2014 | 07:26 | HALTOM CITY, TX 76117 | Scanned | 030SHK5295 | Scanned by route 6117P599 | |
| DISPATCHED TO SORT FACILITY | 04/03/2014 | 16:58 | BONHAM, TX 75418 | System Generated | | | Closeout Label ID: CT13 5539 7000 1404 0317 |



Ken

Ken Gibbs

**THE STATE OF TEXAS**

**CAUSE NO. CV-14-41665**

| | | |
|---|---|---|
| PENTEX FOUNDATION VS. | § | IN THE DISTRICT COURT |
| KENNETH VERN GIBBS AND | | |
| CANDACE GIBBS WALTON AND | § | 336th JUDICIAL DISTRICT |
| HOWARD KIRK GIBBS | | |
| | § | FANNIN COUNTY, TEXAS |

TO:  Candace Gibbs Walton
500 Logan DR
Azle TX 76020, or wherever he/she may be found **DEFENDANT - GREETING**

**NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you."** *TRCP. 99*

You are hereby commanded to appear by filing a written answer to the Plaintiff's Petition at or before 10:00 o'clock A.M. on the Monday next after the expiration of 20 days after the date of service of this citation, before the Honorable 336th Judicial District Court of Fannin County, Texas, at the courthouse in said County in the City of Bonham, Fannin County, Texas. Said Plaintiff's Petition was filed in said court on the ; 1st day of April, 2014 in the above entitled cause.

The nature of Plaintiff's demand is fully shown by a true and correct copy of (OCA) - Original Petition - New Cases Filed accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Bonham, Fannin County, Texas this 3rd day of April, 2014.

Attorney for Plaintiff or Plaintiff:
John Skotnik,
Attorney at Law
PO Box 727
Bonham TX 75418

Clerk of the Court:
Nancy Young, District Clerk
101 E. Sam Rayburn Drive, Suite 201
Bonham, Fannin County, Texas 75418

_____ Deputy

---

Came to hand at 1200 o'clock P.M., on the 3 day

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Pr*
For delivery information visit our website at www.usps

AZLE TX 76020

| | | |
|---|---|---|
| Postage | $ | $2.03 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $8.03 | 04/03/201 |

Sent To Candace Gibbs Walton
Street, Apt. No.; or PO Box No. 500 Logan Drive
City, State, ZIP+4 Azle, TX 76020

PS Form 3800, August 2006    See Revers

7013 2630 0000 4812 7617

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Candace Gibbs Walton
500 Logan Drive
Azle, TX 76020

2. Article Number
(Transfer from service label)
7013 2630 0000 4812 7617

PS Form 3811, February 2004    Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee
B. Received by (Printed Name) | C. Date of Delivery
Jim Walton
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☑ Yes

102595-02-M-1540

Deputy/Process Server

Delivered by Cert. mail on
4/7/14 @ 1331 hrs
7013 2630 0000 4812 7617

33

# Christy Lee P.C.



CHRISTY L. LEE
*Attorney*

225 E. FIREWEED LANE, STE. 200
ANCHORAGE, ALASKA 99503
MAIN: 907.339.9931
FAX: 800.437.7901

777 MAIN ST., STE. 600
FORT WORTH, TEXAS 76102
PHONE: 817.504.6075
FAX: 800.437.7901

clee@christyleelaw.com
www.christyleelaw.com

April 24, 2014

Clerk of the Court
101 E Sam Rayburn Drive, Suite 200
Bonham, TX 75418

Re: Cause No. CV-14-41665
Pentex Foundation vs. Kenneth Vern Gibbs, et al.
Motion to Show Authority

To Whom It May Concern:

Enclosed is the Motion to Show Authority, Motion for Change of Venue, Original Answer, Affirmative Defenses, Original Counterclaim, and Rule 13 Motion for Sanctions of Kenneth Vern Gibbs and Candace Gibbs Walton, in Cause No. CV-14-41665.

Please file the original document with the Court, and return the file-marked copy to the firm in the enclosed self-addressed, stamped mailer.

If you have any questions, please contact our office. Thank you for your assistance with this matter.

Very truly yours,

LAW OFFICES OF CHRISTY LEE, P.C.

Laura Hogins, Paralegal

Enclosure: Motion
Copy of Motion
SASE

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## MOTION TO SHOW AUTHORITY, MOTION FOR CHANGE OF VENUE, ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, ORIGINAL COUNTERCLAIM, AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND CANDACE GIBBS WALTON

TO THE HONORABLE JUDGE OF THE COURT:

COME NOW, KENNETH GIBBS and CANDACE WALTON, Defendants, by and through their Counsel of Record, Law Offices of Christy Lee, P.C., even though neither received proper service, and file this Motion to Show Authority, Motion for Change of Venue, Original Answer, Affirmative Defenses, Original Counterclaim, and Rule 13 Motion for Sanctions, and respectfully show the Court, as follows:

### I. PARTIES AND STATEMENT OF CAUSE

1.    Plaintiff is Pentex Foundation ("Pentex"), reportedly a nonprofit private entity formed and operated under the laws of the Republic of Panama, Central America.

2.    Defendants are Kenneth "Ken" Gibbs and Candace "Candy" Walton, who, along with Defendant Howard Kirk Gibbs ("Howard"), are siblings, and Heirs to the Estate of Bert

Hughes Gibbs ("the Estate").

3. Pentex brought suit against Defendants concerning long-contested assets original to the Estate.

4. The Estate is an open probate case in Statutory Probate Court No. 2, Tarrant County, Texas, Cause No. 2005-0000126-2.

## II. DEFENDANTS' MOTION REQUESTING JOHN SKOTNIK TO SHOW AUTHORITY TO ACT

5. On April 1, 2014, Pentex filed its Original Petition against Defendants.

6. Ken and Candy contend that the Original Petition is without authority.

7. Counsel of Record for Pentex is John Skotnik ("Skotnik"). This was the same Skotnik who was Counsel of Record for Ken and Candy in Estate proceedings, Cause No. 02-05-00184-CV, in the Second Court of Appeals, in Denton County, Texas. Skotnik's participation as Counsel of Record for Pentex in this matter poses a conflict of interest and constitutes a violation of Rule 1.06, Texas Rules of Professional Conduct.

8. Multiple times over the past several years, Ken and Candy requested evidence of Pentex's existence and proof of Albert Barcroft's alleged authority to act on Pentex's behalf. However, no such proof – no incorporation papers; no minutes of board meetings; no tax records; in fact, no documentation whatsoever – has ever been produced to indicate that Pentex exists or that Albert Barcroft has any authority to act on Pentex's behalf, let alone file a lawsuit.

9. Additionally, the Original Petition filed by Skotnik on behalf of Pentex highlighted the Contract for Sale of Land ("CSL").[1] The CSL was signed by Albert Barcroft

---

[1] The full title of the CSL is *Contract for Sale of Land, Mineral Rights and royalties, and all other Assets or*

MOTION TO SHOW AUTHORITY, MOTION FOR CHANGE OF VENUE,
ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, ORIGINAL COUNTERCLAIM,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
CAUSE NO. CV-14-41665

-2-



and Defendants, and recorded in Denton County, Texas, on May 24, 2005. Pentex was not a party to the CSL. Skotnik cannot sue, on Pentex's behalf, regarding a contract to which Pentex is not a party.

10. Under Rule 12 of the Texas Rules of Civil Procedures, Ken and Candy request that notice of their Motion to Show Authority be served on all parties to this case and on their Attorneys of Record, and that the Court set a hearing for this Motion for at least ten (10) days after notice requiring Skotnik to show authority for the Original Petition.

11. Ken and Candy further request that, upon the conclusion of such hearing, the Court enter an Order finding that Skotnik is without authority in this matter, and striking the Original Petition filed by Skotnik.

### III. MOTION TO CHANGE VENUE

12. Citing § 15.05 of Texas Civil Practice and Remedies Code, Pentex misinformed the Court as to appropriate venue for this Cause. (Since § 15.05 does not exist, it is assumed that Pentex intended to cite § 15.005.) All Defendants reside in Tarrant County, Texas. Therefore, Venue is proper in Tarrant County, Texas. Ken and Candy request that the Court transfer this case to Tarrant County, under the authority of Texas Civil Practice and Remedies Code § 15.002(a)(2).

13. The transfer to Tarrant County will not cause a hardship or an injustice for any other party, per Texas Civil Practice and Remedies Code § 15.002(b)(3), as Pentex is reportedly a foreign entity, and its Attorney of Record, John Skotnik, practices in Tarrant County and in

---

*Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust."*

MOTION TO SHOW AUTHORITY, MOTION FOR CHANGE OF VENUE,
ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, ORIGINAL COUNTERCLAIM,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
CAUSE NO. CV-14-41665

fact recently filed his own lawsuit against the Estate, concerning distribution of Estate Assets, in Statutory Probate Court No. 2, in Tarrant County.

14. John Skotnik, Attorney for Pentex, is a Fannin County municipal court judge. In addition, John Skotnik drafted the CSL document in dispute, and neither Ken nor Candy had legal representation when signing the document. The Court should transfer this case to Tarrant County because the prejudice in this county is so great that Ken and Candy cannot obtain a fair and impartial trial. Texas Rules of Civil Procedure 257(a); *see Dorchester Gas Producing Co. v. Harlow Corp.* 743 S.W.2d 243, 253 & n. 6 (Tex. App. - Amarillo, 1987, no writ). A trial in Fannin County will deprive Ken and Candy of their due process rights to a fair trial under both United States Constitution Amendment 14 and Texas Constitution Article 1, Section 19.

15. Furthermore, Pentex's arguments reference only the distributions of Estate assets as addressed in the Family Settlement Agreement ("the FSA"), dated October 5, 2008, and executed in Tarrant County, Texas. The Estate is currently administered in Tarrant County, Texas. Therefore, on April 18, 2014, Ken and Candy filed Motion to Transfer this Cause of Action to Statutory Probate Court Pursuant to Section 34.001 of the Texas Estate Code, in Cause No. 2005-0000126-2, in Tarrant County, Texas. *See* Exhibit A.

## IV. DEFENDANTS' ORIGINAL ANSWER

### A. General Denial

16. Ken and Candy deny each and every allegation of wrongdoing of Pentex's Original Petition, and demand strict proof of each allegation, as required by the Texas Rules of Civil Procedure.

## B. Affirmative Defenses

17.     Pentex based its complaint against Ken and Candy on the CSL, to which Pentex is not a party. Pentex therefore has no standing with regard to the CSL.

18.     The matter of the contested distributions formed the basis for the FSA, to which Pentex was not a party, and therefore Pentex has no standing with regard to the FSA.

19.     When Pentex transferred all its reported interest in GWB Friends and Family Trust ("GWB Trust"), it transferred it to GBU Friends and Associates Trust ("GBU Trust"), and no longer has any interest in the alleged Estate assets, and therefore Pentex has no standing to seek relief against Ken and Candy.

20.     Despite the reliance on the CSL and FSA in the Original Petition, Pentex's arguments of wrongdoing by Defendants specifically concerned distributions of Estate assets, which only the Estate had authority to distribute. Therefore, the Estate, not Ken and Candy, would be appropriately named Defendant in the Cause. *See* Original Petition, page 5, No. 27. The case should have been file against the Estate in Tarrant County, Texas.

## V. DEFENDANTS' COUNTERCLAIM

21.     Based upon the facts, a case and controversy exists that warrants declaratory relief for Ken and Candy. Ken and Candy raise the following issues and facts as a counterclaim against Pentex. *See* Plaintiff's Original Petition to Remove Trustee, Appoint Successor Trustee, Compel Trust Accounting, Preserve Assets, Compel Conversion of Assets, and Terminate Trust, attached as Exhibit B. Exhibit B should be incorporated in its entirety.

22.     **Fraud.** Pentex's wrongful taking of assets in GWB Trust, of which Ken and Candy hold a combined interest of more than 50%, constituted fraud, as that term is legally

MOTION TO SHOW AUTHORITY, MOTION FOR CHANGE OF VENUE,
ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, ORIGINAL COUNTERCLAIM,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
CAUSE NO. CV-14-41665                                                    -5-

defined, leading to conspiracy with Howard Kirk Gibbs and to the substantial loss of GWB Trust assets. By practicing law without a license, Albert Barcroft, a.k.a. Pentex, exerted undue influence over the Trusteeship of GWB Trust, to the extent that assets were illegally transferred, posing financial harm to Ken and Candy. Also, on August 20, 2013, the Internal Revenue Service filed a federal tax lien for $26,664.23 against Pentex. In order to avoid paying federal taxes, Pentex created a new trust, GBU Trust, and transferred all the ill-gotten GWB Trust oil and gas mineral rights into GBU Trust.

23. **Theft and Unjust Enrichment.** Pentex's actions resulted in the loss of significant GWB Trust assets and constituted a violation of the Theft Liability Act, in violation of Texas Penal Code Chapter 31.03, including theft by deception, deprivation, and appropriation.

24. **Embezzlement.** Albert Barcroft, a.k.a. Pentex, as Advisor to the GWB Trust Trustee, committed acts, legally defined as embezzlement, in violation of Texas Penal Code 31.03. The act of embezzlement deprived GWB Trust of its lawfully owned assets.

### VI. MOTION FOR SANCTIONS

The Original Petition seeking relief was signed in violation of Rule 13, as a reasonable inquiry by John Skotnik and his client would have shown that the allegations are false, frivolous, and meant solely for the purpose of harassment. Even a cursory review of the CSL, FSA, and recent ill-gotten transfers of GWB Trust assets would have revealed that the allegations are without any factual basis. Therefore, the court should award Sanctions available under Rule 215-2(b).

## VII. PRAYER FOR RELIEF

Based on the foregoing, Ken and Candy pray that this Court:

(1)     Transfer the case to the appropriate court, Statutory Probate Court No. 2, in Tarrant County;

(2)     Dismiss Pentex's complaint in its entirety with prejudice, as Skotnik has no authority to act, and Pentex lacks standing with regards to CSL and FSA; or, in the alterative, find Pentex committed fraud, theft and unjust enrichment, and embezzlement;

(3)     Award Ken and Candy costs and attorney fees;

(4)     Require Pentex and/or Albert Barcroft to account for, and to return, all proceeds received from GWB Trust or GBU Trust since November 28, 2013, in order to facilitate equitable distribution of income and expense from GWB Trust;

(5)     Enter all other Orders and further relief, legal and equitable, that the Court deems appropriate in this matter, including appropriate sanctions for the violation of Rule 13; and

(6)     For such further and additional relief as justice may require.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND
CANDACE WALTON

MOTION TO SHOW AUTHORITY, MOTION FOR CHANGE OF VENUE,
ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, ORIGINAL COUNTERCLAIM,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
CAUSE NO. CV-14-41665

-7-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 24th day of April, 2014:

Pentex Foundation                               Via mail and email
c/o John Skotnik, Attorney of Record
P.O. Box 727
Bonham, TX 75418

Howard Kirk Gibbs                          Via mail and email
9929 Crawford Farm Drive
Fort Worth, TX 76244

_____
Christy L. Lee

MOTION TO SHOW AUTHORITY, MOTION FOR CHANGE OF VENUE,
ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, ORIGINAL COUNTERCLAIM,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
CAUSE NO. CV-14-41665

-8-



| | | |
|---|---|---|
| CANDACE WALTON, AND KENNETH GIBBS, | ) ) ) | IN THE PROBATE COURT |
| PLAINTIFFS, | ) ) | |
| VS. | ) ) | |
| BEVERLY MILLER, INDIVIDUALLY AND AS TRUSTEE OF GWB FAMILY AND FRIENDS TRUST; ALBERT BARCROFT, INDIVIDUALLY AND AS LEGAL REPRESENTATIVE OF PENTEX ROYALTY TRUST AND PENTEX FOUNDATION; DANNY UNGER, AS TRUSTEE OF GBU FRIENDS AND ASSOCIATES TRUST; AND HOWARD KIRK GIBBS, | ) ) ) ) ) ) ) ) ) ) | No. 2 |
| DEFENDANTS. | ) | TARRANT COUNTY, TEXAS |

## MOTION TO TRANSFER CAUSE OF ACTION TO STATUTORY PROBATE COURT PURSUANT TO SECTION 34.001 OF THE TEXAS ESTATE CODE

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME, CANDACE WALTON AND KENNETH GIBBS, MOVANTS, and file this Motion to Transfer Cause of Action to Statutory Probate Court, pursuant to Section 34.001 of the Texas Estate Code, and would respectfully show the Court, as follows:

1. Movants are Plaintiffs in this proceeding, and are the Heirs to the Estate of Bert Hughes Gibbs ("the Estate," Cause No. 2005-0000126-2, in this Probate Court). Movant Kenneth Gibbs is the Independent Executor of the Estate. Thus, Movants are persons interested to this Cause and the Estate within the meaning of Sections 22.018.1 and 34.001 of the Texas Estate Code.

2. This ancillary Cause involves strongly contested assets original to the Estate ("the Estate Assets").

MOTION TO TRANSFER CAUSE OF ACTION TO STATUTORY
PROBATE COURT PURSUANT TO SECTION 34.001 OF THE TEXAS ESTATE CODE
CAUSE NO. 2005-0000126-2-D
-1-

43
Exhibit A, Page 1 of 4

3.      On April 1, 2014, Pentex Foundation filed suit against Movants and Howard Kirk Gibbs, in the 336th Judicial District Court of Fannin County, Texas. Cause No. CV-14-1665, *Pentex Foundation vs. Kenneth Vern Gibbs and Candace Gibbs Walton and Howard Kirk Gibbs ("Pentex vs. Gibbs")*. According to Pentex, Defendants were unjustly depriving Pentex of its rightful riches, all of which were described as having poured directly from the cushy coffers of the Estate.

4.      The attorney of record for Pentex is John Skotnik.

5.      The following week, on April 10, 2014, that same John Skotnik filed in this Probate Court "Movant's Reply to Executor's Pleading Entitled 'Independent Executor's Response to Objections to Section 149A Accounting' & Application to Remove Executor" ("the Reply"). Mr. Skotnik filed the Reply as Movant/Applicant, pro sé. Mr. Skotnik's Reply strenuously objected to the Estate's Accounting and strenuously petitioned the Court to remove the Independent Executor, all while simultaneously "applauding" Howard Kirk Gibbs for Howard Kirk Gibbs' similarly worded pro sé filing in the Estate matter.[1] The reason? In the end, it all came down to Estate Assets – what they were, where they were, who should have them, and why they had not already been sold in order to provide the Estate cash flow.

6.      In the Reply, Mr. Skotnik questioned Movants' respective percentages of Estate interest in relationship to demands made of the Estate by Pentex.[2] The Reply's reference to the Estate Assets clarified that, at the time he filed Pentex's Original Petition in Fannin County District Court, Mr. Skotnik was fully aware that *Pentex vs. Gibbs* should have rightfully been

---

[1] As counsel of record, Mr. Skotnik named Howard Kirk Gibbs as Defendant in the Pentex suit filed in Fannin County District Court.
[2] *See* Issue II, pages 11 – 12, of the Reply.

MOTION TO TRANSFER CAUSE OF ACTION TO STATUTORY
PROBATE COURT PURSUANT TO SECTION 34.001 OF THE TEXAS ESTATE CODE
CAUSE NO. 2005-0000126-2-D                                                    -2-

44

Exhibit A, Page 2 of 4

filed as an ancillary proceeding to the Estate in this Court, as the Cause was directly related to Estate Assets. Pentex's filing in Fannin County District Court points to a distinct disregard for efficiency and economy concerning related matters before this Court.

7.     Pursuant to Section 34.001 of the Texas Estate Code, Movants request that this Court transfer to itself Cause No. CV-14-41665, pending in the 336th Judicial District Court of Fannin County, Texas.

8.     Once the case has been transferred to this Court, Movants request that it be docketed as an adversary proceeding as part of the ancillary Probate action now pending.

WHEREFORE, PREMISES CONSIDERED, Movants pray that this Court grant this Motion and for such other and further relief to which Movants may be entitled.

Respectfully submitted,
LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR MOVANTS

MOTION TO TRANSFER CAUSE OF ACTION TO STATUTORY
PROBATE COURT PURSUANT TO SECTION 34.001 OF THE TEXAS ESTATE CODE
CAUSE NO. 2005-0000126-2-D                                                    -3-

45                                                        Exhibit A, Page 3 of 4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 18th day of April, 2014:

Pentex Foundation                                   Via facsimile and email
c/o John Skotnik, Attorney of Record
P.O. Box 727
Bonham, TX 75418

Howard Kirk Gibbs                                   Via mail and email
9929 Crawford Farm Drive
Fort Worth, TX 76244


_____
Christy L. Lee

MOTION TO TRANSFER CAUSE OF ACTION TO STATUTORY
PROBATE COURT PURSUANT TO SECTION 34.001 OF THE TEXAS ESTATE CODE
CAUSE NO. 2005-0000126-2-D                                              -4-

46                                                    Exhibit A, Page 4 of 4



| | | |
|---|---|---|
| CANDACE WALTON, AND<br>KENNETH GIBBS, | ) | IN THE PROBATE COURT |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| BEVERLY MILLER, INDIVIDUALLY AND AS | ) | |
| TRUSTEE OF GWB FAMILY AND FRIENDS TRUST;) | | |
| ALBERT BARCROFT, INDIVIDUALLY AND AS | ) | NO. 2 |
| LEGAL REPRESENTATIVE OF PENTEX ROYALTY | ) | |
| TRUST AND PENTEX FOUNDATION; | ) | |
| DANNY UNGER, AS TRUSTEE OF | ) | |
| GBU FRIENDS AND ASSOCIATES TRUST; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| | ) | |
| DEFENDANTS. | ) | TARRANT COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE, APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING, PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS, AND TERMINATE TRUST

TO THE HONORABLE JUDGE OF THE COURT:

COME NOW, CANDACE WALTON and KENNETH GIBBS, Plaintiffs in the above-styled and numbered cause, complaining of Defendants BEVERLY MILLER, individually, and as Trustee of GWB FAMILY AND FRIENDS TRUST ("GWB Trust"); ALBERT BARCROFT, Legal Representative of Pentex Royalty Trust and Pentex Foundation (collectively, "Pentex"); DANNY UNGER, as Trustee and Beneficiary of GBU Friends and Associates Trust ("GBU Trust"); and HOWARD KIRK GIBBS, Beneficiary of GWB Trust and GBU Trust; and petition the Court to remove Beverly Miller as Trustee of GWB Trust, and to appoint a successor trustee; to compel a trust accounting of both GWB Trust and GBU Trust; to preserve trust assets and to

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -1-

47



order conversion of trust assets; and to terminate the GWB Trust and distribute assets per each Beneficiary's interest. Plaintiffs would show the Court the following:

## I.

## LEVEL OF DISCOVERY

1. Discovery in this case is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## II.

## PARTIES

2. **CANDACE WALTON** is a Beneficiary of the GWB Trust and is a resident of Tarrant County, Texas.

3. **KENNETH GIBBS** is a Beneficiary of the GWB Trust and is a resident of Tarrant County, Texas.

4. **BEVERLY MILLER** is Trustee of the **GWB FAMILY AND FRIENDS TRUST** and is a resident of Fannin County, Texas. Beverly Miller may be served with process at:

> 6483 West Highway 56
> Savoy, Texas 75479

5. **DANNY UNGER** is Trustee and Beneficiary of the **GBU TRUST FRIENDS AND ASSOCIATES TRUST**, which is a trust sited in Anderson County, Texas, and may be served with process at:

> 410 Anderson County Road 154
> Palestine, Texas 75801

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST

-2-

48



6.    **ALBERT BARCROFT** is the Legal Representative of Pentex Royalty Trust and Pentex Foundation, and a Beneficiary of GBU Trust. Albert Barcroft may be served with process at:

> 410 Anderson County Road 154
> Palestine, Texas 75801

7.    **HOWARD KIRK GIBBS** is a Beneficiary of GWB Trust and GBU Trust. Howard Kirk Gibbs may be served with process at:

> 9929 Crawford Farm Drive
> Fort Worth, Texas 76244

## III.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction under Texas Estate Code § 32.007, as statutory probate court has concurrent jurisdiction with the district court in an action against a trustee, and this matter involves proceeds from the Estate of Bert Hughes Gibbs, Deceased, over which this court presides. Pursuant to Texas Civil Practice & Remedies Code 15.002 (a)(2), venue in Tarrant County, Texas, is appropriate, as Defendant Howard Kirk Gibbs resides in Tarrant County.

## IV.

## FACTS

9.    The Plaintiffs and Howard Kirk Gibbs are the natural children of Bert Hughes Gibbs.[1]

---

[1] Kip Gibbs is also a natural child of Bert Hughes Gibbs, but he is not party to this lawsuit.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -3-



10.     Bert Hughes Gibbs passed away, and Letters Testamentary were issued by Probate Court No. 2 in Tarrant County, Case No. 2005-0000126-2, on or about September 26, 2005.

11.     After years of litigation, a Family Settlement Agreement ("FSA") was signed on September 5, 2008, by all parties, including Plaintiffs, and Defendants Howard Kirk Gibbs, and Albert Barcroft.[2]  On May 10, 2005, in a Contract for Sale of Land ("the CSL"),[3] these same parties had agreed to create an entity to hold the Plaintiffs' and Howard Kirk Gibbs's interest in the Estate.

12.     On November 8, 2008, GWB Trust document was drafted by Albert Barcroft, who would prove to be a major player in the blood sport into which GWB Trust devolved. *See* Exhibit A. Albert Barcroft informed Plaintiffs that he was legally able to draft trust documents, as he had graduated from law school.  Possessing no formal training in the law, and facing complicated Estate settlement issues, Plaintiffs trusted Albert Barcroft and believed him to be knowledgeable and legally empowered to draft legal documents. Albert Barcroft confided in Plaintiffs that he elected not to become a full-fledged attorney on principle:  he felt that signing the attorney's oath for qualification would be immoral, as it went against his code of ethics. To date, there is no proof that Albert Barcroft actually attended or graduated from any law school.

13.     Albert Barcroft himself drafted the original GWB Trust agreement without legal assistance. After the agreement was signed by the Settlors,[4] on multiple occasions Albert

---

[2] Albert Barcroft was enlisted to assist Plaintiffs and Howard Kirk Gibbs in exchange for a percentage of their interest of the inheritance.

[3] The full title of the Contract was as follows:  Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust."

[4] Plaintiffs and Howard Kirk Gibbs signed as Settlors.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                    -4-

50

Barcroft requested that the Settlors add or remove certain provisions, although the edits he suggested were not presented as amendments, per se. On at least two (2) separate occasions, Albert Barcroft also produced and asked Beneficiaries of GWB Trust to sign entirely new documents for the already-existing trust; the Beneficiaries of GWB Trust did not do so. Despite openly continuing to engage in such legal practice, and despite openly claiming himself to be a "legal representative," Albert Barcroft is not licensed to practice law.

14. Immediately upon drafting the GWB Trust, Albert Barcroft created Pentex Foundation and Pentex Royalty Trust.[5] Albert Barcroft self-identifies as the Legal Representative of Pentex.[6] Even though requested, Albert Barcroft refuses to show any proof that these entities actually exist. Beverly Miller has no copies of documentation attesting to the existence of either one. Albert Barcroft managed Pentex in and from Panama because he feared the Internal Revenue Service ("I.R.S.") would seize assets as a result of successful litigation against him years ago. This instinct for self-preservation is not unknown to Albert Barcroft, who, in order to avoid further adverse and punitive action by the I.R.S., also transferred real property in Texas to Renhaw, Inc. ("Renhaw"), an entity owned by a close friend. (The strategy ultimately proved fruitless, as the courts deemed the transfer to be fraudulent and therefore allowed the I.R.S. to seize the property.)

15. Over the years, Albert Barcroft developed quite the appetite for transfers of the unsavory sort. Although he seemed blissfully unaware of it at the time, sating that appetite was a risky practice. Way back on June 5, 2008, months before the creation of GWB Trust, and even

---

[5] Albert Barcroft intended for Pentex Royalty Trust, rather than Pentex Foundation, to be Beneficiary of GWB Trust, a fact he demonstrated in February 2011 via a request to Beneficiaries to exchange an entire page of the trust agreement for another page which reflected a change to Pentex Royalty Trust as Beneficiary.

[6] In 2011, Pentex Foundation reportedly assigned its interest in GWB Trust to Pentex Royalty Trust, of which Albert Barcroft is the sole Beneficiary.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST

-5-

51

Exhibit B, Page 5 of 33

before the signing of the FSA, Albert Barcroft had transferred all his interest in the Estate to Renhaw. The Transfer was recorded the following day in Denton County, Texas. So on November 8, 2008, when Albert Barcroft established GWB Trust to receive Estate distributions, Albert Barcroft actually held no interest whatsoever to assign to GWB Trust via Pentex.[7]

16. The purpose of GWB Trust was to receive Plaintiffs' and Howard Kirk Gibb's inheritance, including royalties from assigned mineral and oil rights, from the Estate. The Beneficiaries of GWB Trust were named as follows:

| | |
|---|---|
| Howard Kirk Gibbs | 25.011613% interest |
| Candace Walton | 25.011613% interest |
| Kenneth Walton | 25.011613% interest |
| Pentex Foundation | 24.96516% interest |

Waymond Walton, husband of Plaintiff Candace Walton, was named Independent Trustee. Due to personal reasons, Waymond Walton resigned his appointment and was succeeded by Beverly Miller as Trustee on March 7, 2011.

17. In light of Albert Barcroft's assignment of interest in the Estate to Renhaw, the inclusion of Pentex as a Beneficiary was a devious move, especially since Albert Barcroft failed to disclose to Plaintiffs the transfer. Beverly Miller's succession as Trustee occurred within mere weeks of still another curious transaction: a Release of Rights under Contract, in which Renhaw transferred its interest in the Estate directly to GWB Trust. The Release was recorded February 18, 2011.

18. Whether Albert Barcroft realized it at the time or not, the Release effectively removed him from the picture as Beneficiary, both individually and in the much vaunted position

---

[7] It would be reasonable to surmise that Renhaw could have held the interest. But Renhaw was not mentioned in GWB Trust agreement, not as a Settlor, not as a Beneficiary.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST

-6-



Exhibit B, Page 6 of 33

of "Legal Representative" for Pentex, and rendered him a nonentity with regard to GWB Trust. At the time GWB Trust was created, Albert Barcroft was not legally entitled to funds from the Estate and therefore should never have named Pentex as Beneficiary to receive funds on his behalf. Renhaw's Release meant that the flow of ownership of interest in the Estate rightfully went as follows:

Albert Barcroft > Renhaw > GWB Trust

Since GWB Trust never assigned back to Albert Barcroft or to Pentex any interest from the Estate, Albert Barcroft currently holds no legal interest in GWB Trust.

19. The Release meant that the three (3) remaining Beneficiaries each held one-third (1/3) interest in GWB Trust. Sadly, since Albert Barcroft failed to inform Plaintiffs of his transfers, Plaintiffs had no way of determining the complete absence of interest he held in GWB Trust. Thus, from its inception, GWB Trust operated as if Pentex were a legitimate Beneficiary, with Pentex receiving regular distributions from the oil and gas royalties.

20. On or about the same day Renhaw recorded the Release, and very close to the date that Beverly Miller assumed Trusteeship, Albert Barcroft approached interested parties with the request that an entire page of the original GWB Trust agreement be swapped out with a page containing revisions that Albert Barcroft himself made. The revision in question? A change of Beneficiary from Pentex Foundation to Pentex Royalty Trust. Without concerning herself with the provisions that she would later claim prevented her from producing certain records, and without consulting the Beneficiaries of GWB Trust, Beverly Miller switched the pages, and in the process violated the intent of GWB Trust as well as her ethical duty as Trustee.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -7-

Exhibit B, Page 7 of 33



21. Beverly Miller was initially lauded as a possible replacement for Waymond Walton by Albert Barcroft. Albert Barcroft's close relationship with Beverly Miller spans more than three (3) decades. By her own admission, from the inception of her administration to the present, Beverly Miller has relied solely on the advice offered to her by Albert Barcroft, even though she has been repeatedly told by Plaintiffs to seek legal advice. In Beverly Miller's defense for listening to a person practicing law without a license, Beverly Miller claims that she is unlearned in financial law.[8] In turn, Albert Barcroft steadfastly continues to defend Beverly Miller's administration of GWB Trust as being conducted with the utmost diligence and with the very best of intent.

22. Albert Barcroft also is close to Danny Unger, who assisted Beverly Miller with GWB Trust accounting tasks, and with Howard Kirk Gibbs, who at one time was linked to shrinking the Estate of Bert Hughes Gibbs by almost $1 million, with no explanation as to where the funds went off to reside.[9]

23. In early 2013, upon Plaintiffs' realization that the GWB Trust agreement contained provisions not conducive to its original intent - provisions that in fact could undermine the entire entity - relationships among the interested parties in GWB Trust began to deteriorate rapidly. After consulting with a true attorney, one actually licensed to practice law, Plaintiffs repeatedly advised Beverly Miller that GWB Trust was at risk and that steps should be taken to ensure its longevity. Plaintiffs also made it plain to Beverly Miller that Plaintiffs wanted GWB Trust terminated, with the assets split *pro rata*. By way of reply, Beverly Miller quoted Albert

---

[8] Beverly Miller's attempts at downplaying her business and legal acumen are self-serving. Beverly Miller's employment history includes the title of "Executive Administrative Assistant to Chairman of the Board and President at Dal-Tile Corporation."

[9] Howard Kirk Gibbs is also unable to act as Executor of the Estate of Bert Hughes Gibbs, as Howard Kirk Gibbs refused to provide his social security number.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                -8-

54

Barcroft: GWB Trust provisions prohibited termination of GWB Trust. Beverly Miller stated that all GWB Trust actions - *everything, in fact, related to GWB Trust* - had to be agreed to by all parties. And Beverly Miller referred all Plaintiffs' other questions concerning GWB Trust to Albert Barcroft and Danny Unger.

24. Plaintiffs therefore questioned Albert Barcroft about the conflicting trust provisions and offered to obtain legal counsel to amend or to restate the agreement as necessary. Albert Barcroft replied in writing that GWB Trust could not be broken. And unfortunately, Albert Barcroft quickly grew openly resentful and hostile to Plaintiffs' inquiries and ultimately refused valuable communications to enable speedy resolution of the issues at hand. In effect, Albert Barcroft's take on the entire situation was that there was a grasping, greedy attorney (among other more choice, but less appropriate terminology) on the stage playing Puppet Master to the Plaintiffs' Pinocchio.

25. Likewise, Danny Unger's involvement with GWB Trust eventually proved highly suspicious to Plaintiffs. Danny Unger had assisted Albert Barcroft with settlement of some of the issues involved in the Estate, and to Plaintiffs, Albert Barcroft trumpeted Danny Unger as a responsible, trustworthy recordkeeper – this, in spite of the fact that, although Danny Unger once held the title of Certified Public Accountant, in order to avoid providing his social security number, Danny Unger allowed his credentials to lapse. Among other tasks, Danny Unger was charged with the responsibility for preparing IRS Form 1041 for GWB Trust. And while GWB Trust paid fees for Danny Unger's services, Albert Barcroft also personally paid Danny Unger for conducting research and general accounting issues concerning GWB Trust.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                 -9-

55



26.    Unfortunately for Plaintiffs, Danny Unger tended to follow Albert Barcroft's lead. When it came time to make available GWB Trust accounting records to *all* Beneficiaries, Danny Unger was not so helpful.  Like Albert Barcroft, Danny Unger failed to see the need for full financial disclosure and refused to cooperate with Plaintiffs by producing GWB Trust account information. Instead, he eventually simply refused to communicate with Plaintiffs, except through their counsel.

27.    Beverly Miller conspired with Howard Kirk Gibbs, Albert Barcroft, and Danny Unger in order to obtain assets unlawfully from GWB Trust. In order to execute illegal transfers from GWB Trust, Howard Kirk **G**ibbs, Albert **B**arcroft, and Danny **U**nger turned to **GBU** Trust, of which they are beneficiaries.  In concerted efforts with Beverly Miller, the three (3) gentlemen effected transfers of mineral rights from GWB Trust to GBU Trust, thereby gaining access to significant assets to which they were not entitled.

28.    On November 26, 2013, Beverly Miller noticed Plaintiffs that Albert Barcroft demanded a split of GWB Trust assets.  Erroneously citing the CSL, Albert Barcroft convinced Beverly Miller that she must effect the split he demanded and that she would be personally held liable for any losses in the event of an inaccurate split – all these demands, from a man who willingly transferred away his interest as far back as 2008 and never regained that interest.

29.    Albert Barcroft's demand was both peculiar and in violation not only of GWB Trust Provision 7.2, but also of Provision 3.3, which required:

> **Percentages of beneficial interest, or the method in which distribution are *[sic.]* are made, in the trust or its proceeds shall require a unanimous vote with all parties voting (30 votes).**

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                          -10-

56

Exhibit B, Page 10 of 33



Having drafted GWB Trust, Albert Barcroft would have been fully aware that he was demanding an action which could be legally executed only under an appropriate notice and unanimous vote by all Beneficiaries. Neither was ever conducted.

30.     Upon receipt of Beverly Miller's notice, Plaintiffs promptly, within mere hours, emailed Beverly Miller with the advice that Albert Barcroft was not the only member of GWB Trust and that, as Trustee, Beverly Miller would be accountable to *all* Beneficiaries. Plaintiffs further advised Beverly Miller not to disburse the assets and to seek legal counsel. Beverly Miller chose to ignore Plaintiffs' email, despite having full access to the GWB Trust agreement prohibiting transfers of the principal without unanimous authorization from all Beneficiaries. Beverly Miller never confirmed to Plaintiffs she ever transferred the assets.

31.     GWB Trust Provision 7.2 stated:

> *No part of the principal may be disposed of during the life of the trust unless first commanded by a written order in which beneficiaries with 30 votes (unanimous) concur and sign ordering such sale and disposal.*

32.     In violation of GWB Trust Provision 7.2, and against Plaintiffs' advice, on November 27, 2013, Beverly Miller signed and had notarized two (2) Mineral Deeds ("the Deeds"), which conveyed 57.19% of the mineral interests held by GWB Trust to GBU Trust. It remains unclear how Beverly Miller arrived at her calculations.[10] Plaintiffs had no opportunity to

---

[10] Plaintiffs do not deny that on the surface the involved calculations might be complicated enough to frustrate someone without basic computing skills. However, Plaintiffs nevertheless confess to being absolutely astounded at how Beverly Miller arrived at her 57.19% figure for the assignment of interest as reflected in the Deeds. Under the maker of the Deed's deft word-smithing and number-crunching abilities, Pentex's stated interest of less than 25% in GWB Trust suddenly and miraculously ballooned, like a trim lady in her sixth or seventh month of pregnancy, to more than twice the original size. Even if Howard Kirk Gibbs' interest had been added to Pentex's interest, the total would not reach 57.19%. Plaintiffs are left to assume that the supreme touch of Albert Barcroft's legal and math wizardry somehow managed to inseminate GWB Trust figures. The result was a thing very carefully and thoroughly nourished in the gestation period during Albert Barcroft's tutelage of Beverly Miller's Trusteeship.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST

-11-

57

protest the transaction or to call for a vote by the Beneficiaries of GWB Trust, as Plaintiffs were not informed of Beverly Miller's actions at the time. Plaintiffs obtained copies of the Deeds only much later and only under their own agency.

33. On or about December 2, 2013, certainly several days after the date the Deeds were notarized, Plaintiff Candace Walton received a letter from Albert Barcroft, which he also addressed to Plaintiff Kenneth Gibbs and Defendant Howard Kirk Gibbs. Albert Barcroft stated that, as Agent for Pentex and Renhaw, he was invoking his right to demand a split of the assets because Pentex wished to withdraw from GWB Trust.

34. On December 12, 2013, again without the knowledge of Plaintiffs and without any acknowledgement of the transfer of Renhaw's interest in the Estate to GWB Trust, the two (2) Deeds were recorded in Denton and Wise Counties. Again, Plaintiffs had no opportunity to protest the transaction, or to call for a vote by the Beneficiaries of GWB Trust. Plaintiffs do not know the total amounts of oil and gas royalties forwarded directly to GBU Trust from December 15, 2013, to March 15, 2014 from four (4) companies (collectively, "the oil companies") – Trio Consulting and Management, LLC ("Trio"); Devon Energy Company ("Devon"); JW Operating Company ("JW"); and Conoco Phillips, Inc. ("Conoco").

35. Meanwhile, with the Plaintiffs remaining ignorant of the transfers, relationships among the Beneficiaries of GWB Trust continued to be heavily strained, as Beverly Miller and Albert Barcroft were strongly resistant to hearing out the Plaintiffs' concerns regarding GWB Trust in general. Albert Barcroft denied that a Trustee was legally bound to produce accountings. Albert Barcroft also balked at Plaintiffs' request for verification that GWB Trust was tax-compliant. His responses to Plaintiffs' requests grew so acrimonious that Plaintiffs' suspicions of

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -12-

Exhibit B, Page 12 of 33

foul play greatly magnified. Beverly Miller continued to prove her loyalty to Albert Barcroft by deferring to his view that no production of records was required. Whenever challenged about her willingness to cede to Albert Barcroft's orders, Beverly Miller would pass herself off as an elderly, infirmed person, who was acting as Trustee for GWB Trust out of courtesy, with kindness and friendship, but without much compensation and without much knowledge of the obligations involved in the position.

36. Similarly, despite having been entrusted to prepare GWB Trust's tax returns, Danny Unger ignored Plaintiffs' repeated requests for production of records concerning income and expenses. Danny Unger also showed no initiative in taking a firm stand against Albert Barcroft's instructions to Beverly Miller to withhold financial disclosures about GWB Trust. As a former Certified Public Accountant, Danny Unger might not have been privy to the laws, but he definitely should have been privy to basic accounting principles, including accurate and honest records of an entity's financial status, open to parties legally entitled to review them.

37. Facing what Beverly Miller admitted was administration under Albert Barcroft's influence and guidance, on December 13, 2014, and still unaware of Beverly Miller's transfer of GWB Trust assets to GBU Trust, Plaintiffs formally requested copies of IRS Form 1041 for the years 2011 – 2012 and accounting of GWB Trust, to be produced only by a disinterested third party, such an accounting firm or a Certified Public Accountant, and according to standard accounting practices.

38. Plaintiffs specifically requested that the accounting not be completed by either Albert Barcroft or his associate, Danny Unger. However, Albert Barcroft and Howard Kirk Gibbs were equally adamant in their demands that *only* Danny Unger produce this accounting.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                    -13-

Exhibit B, Page 13 of 33



For her own part, Beverly Miller again quoted Albert Barcroft in that all GWB Trust provisions invoked had to be voted on by all parties. Ultimately, however, Beverly Miller asked Danny Unger to assist her with the task, as Danny Unger had previous knowledge of GWB Trust financials.

39. On December 18, 2013, Albert Barcroft, signing in the capacity of Legal Representative of Pentex, but not of Renhaw, noticed the Estate, including Executor Kenneth Gibbs and the Estate's three (3) attorneys, that a substantial portion of all future distributions from the Estate intended for GWB Trust must be distributed and made payable to GBU Trust. All relevant parties determined that they would not react to Albert Barcroft's demands, as his Notice to the Estate had no legal authority.

40. Plaintiffs continued the campaign to secure information about GWB Trust's financial standing, including its income and expenses. Finally, months after first being approached for an accounting, on February 3, 2014, Beverly Miller forwarded to the Plaintiffs a rudimentary accounting for 2011 – 2013, which consisted of only net income and distributions to the Beneficiaries of GWB Trust, but which included no other expenses, including administrative costs.

41. In a very small sentence at the end of a long tirade of explanations, the accounting reflected that 20.04% of GWB Trust's 35.04% interest in the Estate had been transferred to GBU Trust.[11] Because the accounting did not provide necessary details, the Plaintiffs again contacted

---

[11] Arriving at the correct percentages of interest of Beneficiaries in GWB Trust is a convoluted process. The origins of the numbers trace back to the FSA, which in turn contained figures based on the natural heirs' inheritances from the Estate of Bert Gibbs. GWB Trust received only approximately 35% of the Estate's assets, of which Albert Barcroft was to receive approximately 30%. In turn, of the roughly 30% of 35% of the Estate's assets, Albert Barcroft gave 5% to his attorney, John Skotnik, leaving Albert Barcroft with considerably less interest than what Beverly Miller ultimately assigned Pentex from GWB Trust. Beverly Miller failed to consider the substantial

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                          -14-

60



Beverly Miller for specifics. On February 14, 2014, Beverly Miller provided bank statements and monthly expense spreadsheets for 2012 and 2013. Included among the financial documentation was information related to administrative expense.

42. Due to Albert Barcroft's interference and insistence that providing financial records was not legally required of the Trustee, Beverly Miller failed to make available for review the two (2) tax returns in question. To date, Beverly Miller has offered no evidence that GWB Trust tax returns were ever filed, nor that Pentex, a foreign entity, paid all required U.S. Federal taxes, pursuant to Internal Revenue Code.

43. During a review of the rudimentary accountings, Plaintiffs discovered the transfer of assets from GWB Trust to GBU Trust. Plaintiffs immediately contacted Beverly Miller concerning the illegal assignment. Beverly Miller stated that she was told by "an attorney" that she must transfer these assets. To date, Beverly Miller refuses to provide Plaintiffs with the name of this phantom attorney. Beverly Miller also stated that she did not know the name of the party who gave her the Deeds to sign or who recorded the Deeds. According to Beverly Miller, such a flurry of emails was exchanged among various parties that it is simply impossible to recall who directed what.

44. Plaintiffs conducted an on-line search and located the two (2) very lengthy Mineral Deeds. Beverly Miller or Albert Barcroft may well have recorded other deeds of which

difference between a percentage of Estate assets and a percentage of GWB Trust assets. Beverly Miller's reliance on numbers in existence previous to the creation of GWB Trust is curious. Those numbers should not impact the Beneficiaries' percentages of interest as set forth in GWB Trust. Signed and agreed to years after the FSA was executed, GWB Trust's agreement took into account the various factors which initially affected the heirs' percentages of interest in the Estate, including assignments of interest from Albert Barcroft to John Skotnik. Any distribution or assignment from GWB Trust therefore must adhere to the percentages as established by GWB Trust, which takes precedent over previously signed agreements. Of course, in reality, none of the interest in GWB Trust should be owned by Albert Barcroft, as Renhaw transferred its interest in the Estate back to GWB Trust, not to Albert Barcroft, nor to Pentex.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -15-



the Plaintiffs are unaware. As the accountings did not include an inventory, it is not possible to determine the exact assets owned by GWB Trust.

45.     On March 7, 2014, Howard Kirk Gibbs filed an Application to Remove the Executor in the Estate matter ("the Application").[12] Plaintiff Kenneth Gibbs is Executor of the Estate. A large portion of the filing was devoted to the presumption that Albert Barcroft was not represented adequately in original Estate settlement activities. The settlement activities under discussion were those related to the principal assets funding GWB Trust. Howard Kirk Gibbs' Application also addressed the sale of multiple Estates' properties, transactions which Albert Barcroft himself argued for, as those sales stand to produce ready cash income for the Estate. Despite having transferred to Renhaw all his interest in the Estate, Albert Barcroft continued to argue that he was entitled to a percentage of Estate income.

46.     On March 12, 2014, Plaintiffs demanded that Beverly Miller (1) recall the GWB Trust assets assigned to GBU Trust, (2) produce account records, and (3) initiate the necessary procedures to terminate the GWB Trust and distribute the assets fairly, equitably, and legally. Plaintiffs provided a deadline of March 21, 2014, to comply with the demands. Plaintiffs' correspondence to Beverly Miller spelled out in detail Plaintiffs' reasoning for the demands, including evidence that the assignment from GWB Trust to GBU Trust was shockingly out of proportion to the amount of interest which Pentex allegedly holds in GWB Trust.

47.     Plaintiffs' demand to Beverly Miller also pointed out the damaging fact that direct payment of royalties to GBU Trust from the oil companies meant that royalties were not, and

---

[12] It is unclear if Howard Kirk Gibbs will continue to receive any portion from the Estate of Bert Hughes Gibbs, as Howard Kirk Gibb's Application violates a provision in the FSA. If the provisions in the FSA are upheld, Howard Kirk Gibbs will be disinherited.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                -16-

62



cannot be, appropriately submitted to GWB Trust. Thus, administrative costs, including property taxes, cannot be covered by all Beneficiaries of GWB Trust *pro rata*. Also, Beverly Miller was advised that her actions violated Plaintiffs' rights.

48. On March 14, 2014, via email and certified mail, Plaintiffs also noticed Albert Barcroft of the illegal transfers and of the March 12, 2014, demands made to Beverly Miller, and Plaintiffs addressed demands that would also be made of Albert Barcroft, Pentex, and GBU Trust, should Plaintiffs' concerns be ignored.

49. Beverly Miller did not respond to Plaintiffs' demands and to date continues to profess her innocence.

50. Thus, to preserve GWB Trust assets, on March 13, 2014, Plaintiffs requested that four (4) oil companies suspend all royalty payments to the GWB Trust and to GBU Trust, until the issue of the illegal transfer was resolved. All four (4) companies responded that royalties would be suspended pending further notice.

51. On March 22, 2014, Plaintiffs emailed Beverly Miller a courtesy reminder of the deadline for complying with Plaintiff's demands and notified her of the responses from the oil companies. Beverly Miller did not acknowledge the courtesy reminder.

52. On March 27, 2014, Plaintiffs were informed that Danny Unger represented himself as Trustee for GBU Trust before the oil companies and directed that royalties to GBU Trust must not be suspended until forced by the Court to do otherwise. Despite Danny Unger's order, however, the oil companies continued to honor their guarantee of suspension, meaning that neither GWB Trust nor GBU Trust will receive royalties until satisfactory resolution of the matter.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -17-

Exhibit B, Page 17 of 33



53.     On March 28, 2014, Beverly Miller acknowledged that legal counsel advised her of the inappropriate transfer of GWB Trust's assets. Beverly Miller admitted that she had spoken with all interested parties, who agreed to return the assets to the GWB Trust. Beverly Miller further affirmed that she would reassign the assets to GWB Trust. She continued refusing to admit knowledge of who drafted and recorded the Deeds, which she signed and had notarized. She maintained her innocence in regard to the transfer, and continued insisting that she was simply a kind, courteous person doing a good deed.

54.     Faced with certain legal action, on March 29, 2014, Albert Barcroft pledged that, provided no further adverse action would be taken against Defendants, he would "do what it takes to get the minerals returned as rapidly as possible." Albert Barcroft maintained that: (1) "the way she saw it," Beverly Miller acted in good faith regarding GWB Trust and the transfers; (2) Albert Barcroft's only duty was to return to GWB Trust the assignment of minerals rights to GBU Trust, as well as the royalties received by GBU Trust from the date of the assignment to the present; and (3) by his doing so, Plaintiffs would be "made whole." Albert Barcroft further promised that Beverly Miller "will not be easily influenced in the future" and emphasized that he could "see where [he, Albert Barcroft] might also become paranoid if [he were] on the other side." The pledge failed to address any possible redress for Plaintiffs beyond the return of the mineral rights to GWB Trust. It did not mention the importance of "making good" issues such as property taxes and the assignment of interest more than double the amount of Pentex's presumed interest.

55.     Within twenty-four (24) hours, on March 30, 2014, Albert Barcroft rescinded the conciliatory gesture to return the "minerals as soon as possible." He cited unnamed persons'

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                     -18-

Exhibit B, Page 18 of 33



advice that he did not represent either of the Trusts or Beverly Miller. Furthermore, Albert Barcroft maintained that he had "no authority to make any deal on the ongoing matter." He assured Plaintiffs that he would cooperate with Beverly Miller in ensuring that the wrong done to Plaintiffs would be righted.

56.     To date, no action has been taken by any of the Defendants to fulfill the promise of "making Plaintiffs whole."

## V.

## CAUSES OF ACTION

57.     Due to the duplicitous and underhanded manner by which GBU Trust seized ownership of GWB Trust assets, communications and relationships among the interested parties in GWB Trust have irrevocably broken down. Patterns of Defendants' conduct, including their communications, indicate that: (1) GBU Trustee is Danny Unger; (2) GBU Beneficiaries are Howard Kirk Gibbs, Albert Barcroft, and Danny Unger, and (3) a there is a conspiracy among Beverly Miller, Howard Kirk Gibbs, Albert Barcroft, and Danny Unger – a conspiracy designed specifically to gain GWB Trust assets unlawfully. Defendants clearly have no intention of honoring their pledges to restore stolen assets to GWB Trust unless there is court intervention.

58.     **Fraud.** Defendants' actions constituted fraud, as that term is legally defined, in that Albert Barcroft represented himself to Plaintiffs as empowered to offer legal services, leading to conspiracy with Beverly Miller, Howard Kirk Gibbs, and Danny Unger, and to the substantial loss of GWB Trust assets.[13] By practicing law without a license, Albert Barcroft

---

[13] Although not licensed to practice law, Albert Barcroft, self-described "Legal Representative" of both Pentex and GBU Trust, practiced law by drafting the GWB Trust document, thereby creating the potential for both unjust enrichment and undue influence on acting Trustees. He continues to practice law now. If Albert Barcroft truly ever matriculated at law school, as a presumably intelligent creature, he should be thoroughly ashamed for deluding

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                -19-



exerted undue influence over the Trusteeship of GWB Trust, to the extent that assets were illegally transferred, posing financial harm to Plaintiffs.

59.     **Conspiracy.** Beverly Miller, Howard Kirk Gibbs, Albert Barcroft, and Danny Unger committed acts that constituted a civil conspiracy, as those terms are legally defined, with the specific intent to deprive GWB Trust of its assets.[14]

60.     **Theft and Unjust Enrichment.** Defendants' actions resulted in the loss of significant GWB Trust assets and constituted a violation of the Theft Liability Act in violation of Texas Penal Code Chapter 31.03, including theft by deception, deprivation, and appropriation.[15]

---

himself that he could get away for long with participating in such an obviously illegal act, one that he seemed very proud of, one that he no doubt masterminded and instigated, one that he made absolutely no attempt to cover up beyond fending off Plaintiffs' repeated requests for full disclosure and deliberately withholding the accounting of GWB Trust. As crimes go, Albert Barcroft and Beverly Miller's was one no more and no less than inexplicably arrogant: it was the case of the Trustee and the Beneficiary, who allowed their (mis)Deeds to be recorded literally and publically for all to see.

[14] Plaintiffs' consistent requests for full disclosure, complete accountings, and assurance of tax compliance were all met, without exception, by Defendants' standard reply that no such production to Beneficiaries was necessary or required. Beverly Miller, Albert Barcroft, and Danny Unger were united in their opposition to submission of critical trust records to Beneficiaries. Beverly Miller conspired with Albert Barcroft and Danny Unger to dispose of GWB Trust assets in a manner favorable to Albert Barcroft. Both Albert Barcroft and Danny Unger benefited substantially from the unlawful acquisition of those assets. Upon Albert Barcroft's instruction and direction, Beverly Miller signed before a public notary two (2) lengthy Mineral Deeds assigning a majority portion of the interest in the GWB Trust to GBU Trust. The Deeds were filed for record on December 12, 2013. Beverly Miller's willing and deliberate cooperation with Albert Barcroft to obtain GWB Trust assets unethically and illegally is evidenced by the fact that Beverly Miller signed the Deeds prior to Plaintiffs' receipt of the Notice demanding the split of GWB Trust assets, leaving Plaintiffs with no ability to hold a vote, per GWB Trust agreement, or to seek court guidance. Beverly Miller's comments that she "always followed Al's advice" similarly reflect a shared intent to defraud GWB Trust. Howard Kirk Gibbs was also complicit in the conspiracy to obtain funds illegally from GWB Trust. His Application to Remove the Executor of the Estate was filed at a critical juncture during the Plaintiffs' inquiry into the financial status of GWB Trust – partly, no doubt, because Howard Kirk Gibbs sought to deflect attention away from the administration of GWB Trust. The argument promoted in the Application tied him to Albert Barcroft, who illegally benefited from the assignment of GWB Trust assets to GBU Trust. Additionally, Albert Barcroft's March 29, 2014, correspondence specifically stated that Plaintiffs would be "made whole" by the return of assets to GWB Trust. Albert Barcroft did not denote that, as a Beneficiary of GWB Trust, Howard Kirk Gibbs should also be made whole. It is reasonable to believe, therefore, that Howard Kirk Gibbs already profited from the transfer of GWB Trust assets to GBU Trust and that it is not necessary to "make him whole."

[15] GBU Trust, and its Beneficiaries – Howard Kirk Gibbs, Albert Barcroft, and Danny Unger – harmed Plaintiffs by knowingly and unlawfully gaining substantial assets which rightfully belong to GWB Trust. As Beneficiaries of GBU Trust, the three (3) gentlemen received an as-yet undetermined sum of royalties from the oil companies from December 15, 2013, through March 15, 2014, due to the illegal and unauthorized transfer of mineral rights. The extent of the theft is unknown at this time. Other GWB Trust assets unknown to Plaintiffs could now also be

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                      -20-

66



61.     **Embezzlement.** Beverly Miller, as Trustee to GWB Trust, and Albert Barcroft, as Advisor to Trustee, committed acts, legally defined as embezzlement, in violation of Texas Penal Code 31.03.[16] The act of embezzlement deprived GWB Trust of its lawfully owned assets.

62.     **Breach of Fiduciary Duty.** By her acts of heeding advice of a non-attorney and failing to product accountings as requested by Plaintiffs, and through the unauthorized disposition of GWB Trust assets, Beverly Miller breached fiduciary duty to the Beneficiaries of the GWB Trust, as the term is legally defined.[17]

---

recorded in GBU Trust's name. Due to Beverly Miller's, Albert Barcroft's, and Danny Unger's reluctance to provide accountings and inventory to Beneficiaries, Plaintiffs have no way of ascertaining which assets were originally held by GWB Trust. What is certain is that Plaintiffs will continue to be harmed by loss of assets in the future, unless the Court forces the return of the assets deeded to GBU Trust to GWB Trust. Howard Kirk Gibbs is fully aware of the unlawful enrichment to GBU Trust. In an email to Plaintiffs, Howard Kirk Gibbs gloated about the transfer and derided what he assumed was Plaintiffs' inability to take action against GBU Trust for the fraudulent transfer of assets.

[16] Beverly Miller and Albert Barcroft plotted, and succeeded, in embezzling substantial assets from GWB Trust. As a self-avowed "Legal Representative" (one apparently replete with education, but, sadly, not much else, no license to practice, for instance, and no principles which would allow him to sit for the Bar exam), Albert Barcroft, in a highly ironic state considering the trust issues at hand, managed to establish himself as an authority of all things trust-related. According to Beverly Miller herself, Albert Barcroft has long functioned as the brain behind GWB Trust's administration. As Devotee of Albert Barcroft, and simultaneous Trustee to GWB Trust, Beverly Miller had relatively unlimited access to presumably invaluable and much appreciated guidance from a Beneficiary with a penchant for self-interest, plus she enjoyed the ability to represent GWB Trust with the stroke of a pen before a notary public. The moment Beverly Miller signed the Deeds giving away 57.19% interest to a single Beneficiary, one whose advice she took above all others, all the elements of embezzlement – position, authority, motive, opportunity, access to assets, all of which Beverly Miller enjoyed, and all of which she was more than happy to share with good friend and Beneficiary Albert Barcroft - converged in an illegal act that should have been shockingly, embarrassingly, and painfully apparent, even to a self-avowed average and uneducated Trustee such as Beverly Miller herself. Even a high school student graduating from one of today's institutions of questionable quality would understand that Beverly Miller and Albert Barcroft, working together and without consent of the owners, stole something that did not belong to themselves.

[17] Beverly Miller relied on advice of a non-attorney, even while ignoring Plaintiffs' recommendation that she seek *bona fide* legal counsel. The choice to turn to a close personal friend, one who was vested in her administrative choices, created the classic conflict of interest, which ultimately imperiled GWB Trust. Beverly Miller also relied on the advice of Danny Unger, whose encouragement she followed not to produce accountings to Beneficiaries.

In the past, Beverly Miller's Trusteeship of GWB Trust has not benefited GWB Trust or Plaintiffs, who together hold more than 50% interest, nor will it benefit GWB Trust in the future. Beverly Miller's fiduciary duty has now been misdirected toward GBU Trust, although she allegedly holds no interest and no authority with GBU Trust. Her trusteeship of GWB Trust continues to reflect and to be influenced by her close relationship with Albert Barcroft, a Beneficiary of GBU Trust, to which she assigned GWB Trust assets. Her friendship with Albert Barcroft stands hand in hand with her duty to Plaintiffs as Beneficiaries of GWB Trust, all together in a very murky, muddy conflict of interest. At Albert Barcroft's behest, Beverly Miller disposed of substantial GWB Trust assets without authorization, contrary to Provision 7.2 of the GWB Trust agreement. Beneficiaries of GBU Trust were unjustly

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -21-

67

Exhibit B, Page 21 of 33

# VI.

## PRAYER FOR RELIEF

63. Pursuant to Texas Property Code Section 13.082.1, the Court is authorized to remove a trustee for breach of fiduciary duty. Plaintiffs pray to this Court to remove Beverly Miller as Trustee of GWB Trust. Waymond Walton, who originally acted as Trustee for GWB Trust, agrees to be appointed and will act under the Court's guidance if appointed. Or, in the alternative, Plaintiffs request that the Court appoint a non-interested third party as Successor Trustee

64. Plaintiffs pray to this Court to freeze all assets of GWB Trust and GBU Trust, so that assets are not intentionally dissipated and can be recovered and rightfully restored to GWB Trust.

65. Plaintiffs pray to this Court to compel an accounting, to be conducted according to standard accounting practices by a non-affiliated Certified Public Accountant or accounting firm, and to be submitted to all Beneficiaries for review. Plaintiffs further pray to this Court to order an inventory of all assets held by GWB Trust during the Trusteeship of Beverly Miller. In order to determine whether Beverly Miller transferred other assets unknown to Plaintiffs from GWB Trust, Plaintiffs request that Beverly Miller be compelled to disclose all transfers of assets to and from GWB Trust during her Trusteeship. Plaintiffs also request that Beverly Miller be compelled to disclose any remuneration received from GWB Trust or any other interested party for services involving the inappropriate transfer of assets from GWB Trust.

---

enriched through Beverly Miller's actions. Beneficiaries of GBU Trust are Howard Kirk Gibbs, Albert Barcroft, and Danny Unger, the same persons with whom she conspired.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -22-

68



66.     Plaintiffs pray to this Court to compel the conversion of the assets, including cash and mineral interests which GBU Trust received from GWB Trust, such that GWB Trust rightfully regains possession of the assets. Plaintiffs also request the Court to compel turnover to GWB Trust all royalty interest and monies received by GBU Trust, as well as all other assets which GBU Trust has received as a result of the transfers of assets.

67.     Plaintiffs pray to this Court to compel Albert Barcroft, individually and as Legal Representative; Pentex Foundation; and Pentex Royalty Trust to return to GWB Trust all assets received from GWB Trust and GBU Trust from the date of GWB Trust's inception to today, as Albert Barcroft never held interest in GWB Trust, having assigned his interest away to Renhaw, who in turn assigned interest to GWB Trust.

68.     Plaintiffs pray to this Court to compel Howard Kirk Gibbs to return to GWB Trust all assets received from GBU Trust, as GBU Trust's assets were illegally obtained.

69.     Plaintiffs pray to this Court to compel Danny Unger to return to GWB Trust all assets received from GBU Trust, as GBU Trust's assets were illegally obtained.

70.     Plaintiffs pray to this Court to terminate the GWB Trust, including supervising the equitable division of the assets to Beneficiaries, *pro rata*, such that Plaintiffs and Howard Kirk Gibbs each receive one-third (1/3) of the assets.

71.     Plaintiffs pray to this Court to enjoin Beverly Miller, individually, to be personally responsible for attorney fees resulting from these proceedings, and to return to GWB Trust all remuneration for services rendered to GWB Trust from March 8, 2011, to the present. Further, Plaintiffs request that all Defendants be strictly prohibited from employing funds from either GWB Trust or GBU Trust for related legal costs.

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                    -23-

Exhibit B, Page 23 of 33



72.     Plaintiffs pray to this Court for Plaintiffs' attorney's fees, to be obtained from Defendants personally and individually, not from assets in any way belonging to GWB Trust, including the assets transferred from GWB Trust to GBU Trust.

## VII.

## DAMAGES

73.     As a result of Beverly Miller's breach of fiduciary duty to Beneficiaries, and as a result of the fraud, conspiracy, and theft of GWB Trust assets committed by all Defendants, Plaintiffs have incurred the following element of damage, both in the past and future, and both general and special:  the loss of at least $250,000.

## VIII.

## EXEMPLARY DAMAGES

74.     Plaintiffs would show that the harm sustained by Defendants' intentional bad conduct, including criminal acts of fraud, embezzlement, theft, and breach of fiduciary duty, Defendants should be penalized with exemplary damages for which Plaintiffs seek recovery.

## IX.

## REQUESTS FOR DISCLOSURE

75.     Pursuant to Rule 194, each Defendant is requested to disclose within 50 (fifty) days of service of this Request the information or material described in Rule 194.2 (a) - (l).


WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear herein and that upon final hearing hereof, they have and recover the full extent of Plaintiffs' damages as pled and prays for reasonable and necessary attorney fees, and such other

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST                                                                -24-



and further relief, both at law and in equity, to which they may be justly entitled and will ever pray.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR PLAINTIFF

PLAINTIFFS' ORIGINAL PETITION TO REMOVE TRUSTEE,
APPOINT SUCCESSOR TRUSTEE, COMPEL TRUST ACCOUNTING,
PRESERVE ASSETS, COMPEL CONVERSION OF ASSETS,
AND TERMINATE TRUST

-25-

Exhibit B, Page 25 of 33

# GWB Family and Friends Trust



THE STATE OF TEXAS        §

                          §        **GWB Family and Friends Trust**

COUNTY OF TARRANT         §


## TRUST DECLARATION

This declaration of trust is made this 7th day of November, 2008, between **Kenneth Vern Gibbs**, a resident of Tarrant County, Texas; **Candace Gibbs Walton**, a resident of Parker County, Texas; and **Howard Kirk Gibbs**, a resident of Denton County, Texas, collectively the "Settlor" of this trust agreement, regarding, and intended to distribute, the division of the gross net proceeds due these parties from the **Estate of Bert Hughes Gibbs**.


## ARTICLE I - THE TRUST PURPOSE

1.1  Property in Trust:  The beneficiaries of this trust are beneficial owners of real property, including, but not limited to, land, oil and gas royalties, and working interest in oil and gas wells that was passed to them from the Estate of Bert Hughes Gibbs, who is now deceased, under the terms and conditions of his Last Will and Testament.

1.2  Purpose of Trust:  The overriding purpose of this trust is to collect and hold all property left to, or accumulated by, the beneficiaries, or any individual beneficiary, hereto, to account for and pay all liabilities pertaining to such property, including, but not limited to income taxes, property taxes, and any other governmental taxes or fees; and then distribute the remaining proceeds to the beneficiaries hereto in a manner commensurate with their beneficial interests, as shown herein.

1.3  Under the Laws of the State of Texas:  It is the Settlor's intention that this trust be in full compliance, and organized under, the Texas Trust Code. Any provision found by a court of competent jurisdiction to be in violation of any section of the Texas Property Code, or any law of the State of Texas, shall either be automatically amended to comply with such code or law in such a manner as to keep its original meaning or purpose as closely as possible; or, if no such amendment is possible, that particular provision shall be stricken from the trust agreement. In either case, it shall be deemed to have no effect on the trust agreement in general, or upon any particular provision within the trust agreement.

## ARTICLE II – NAME OF TRUST

The trust shall be know as the GWB Family and Friends Trust.

GWB Family and Friends Trust

Page 1 of 6

## ARTICLE III – BENEFICIARIES

3.1   Beneficiaries: The beneficiaries, and percentage of beneficial interests, are as follows:

| | |
|---|---|
| Kenneth Vern Gibbs: | 25.011614 % of the trust; |
| Candace Gibbs Walton: | 25.011613 % of the trust; |
| Howard Kirk Gibbs: | 25.011613 % of the trust; |
| Pentex Foundation: | 24.96516 % of the trust. |

3.2   Voting Shares: Actions and decisions concerning the trust shall be governed by vote of the beneficiaries hereto. Sixteen (16) votes will represent a majority of the votes on any issue unless specifically set herein at a different vote requirement. Each beneficiary shall have following votes in any matter of the trust for which a vote is called:

| | |
|---|---|
| Kenneth Vern Gibbs: | 5 votes; |
| Candace Gibbs Walton: | 5 votes; |
| Howard Kirk Gibbs: | 5 votes; |
| Pentex Foundation: | 15 votes. |

3.3   Voting Procedures: Votes may be cast at any time and any place agreed upon by at least two (2) of the beneficiaries, and 16 votes will carry any issue. Any beneficiary hereto shall be allowed to call for a vote on any issue. Percentages of beneficial interest, or the method in which distribution are made, in the trust or its proceeds shall require a unanimous vote with all parties voting (30 votes).

## ARTICLE IV – REVOCABLE

This trust shall be revocable.

## ARTICLE V – APPOINTMENT OF TRUSTEE

Settlor hereby appoints Waymond James Walton as the Independent Trustee of this trust. Trustee shall serve without bond or supervision of any court while in conformity with the terms laid out in this trust and its minutes.

## ARTICLE VI – TRUST ESTATE

The Trust Estate shall be comprised of property transferred to the trust in the form of Deeds of Trust assigned to this trust, and filed in the county records of Denton and Wise Counties, the State of Texas; and, royalties due Settlor from the Estate of Bert Hughes Gibbs as per Bert Hughes Gibbs Last Will and Testament. Other property may be brought into the trust, and become Trust Property, through agreement in the manner prescribed herein of 16 votes of the voting shares of this trust. Property may be bought, sold, exchanged, or transferred upon the approval of the beneficiaries by at least 16 votes cast in the manner prescribed herein.

## ARTICLE VII – DISPOSITION OF INCOME AND PRINCIPAL

7.1 <u>Duties of Trustee</u>: The Trustee is hereby commanded to do the following:
1. Pay all bills and liabilities of the trust unless specifically ordered by a 16 vote majority to do otherwise in a specific case;
2. Figure, or have professionally figured if approved by a 16 vote majority, income taxes due on the income of the trust;
3. Pay all income taxes due on any income of the trust;
4. Pay all property tax due (and not paid by other entities) on any property in the trust estate;
5. Pay any other debts of the trust which are brought to his attention (the foregoing is conditioned on sufficient funds being available in the trust account);
6. Keep a sufficient amount of cash (to be decided by a 16 vote majority) in the main trust account for operating expenses and any known liabilities upcoming in the immediate future; and,
7. Divide any overages into proportions equaling the beneficial interests of each party, and deposit the appropriate amount for each specific beneficiary into a an account designated by that beneficiary for private use of that party.

7.2 <u>Disposition of Principal During Life of Trust</u>: No part of the principal may be disposed of during the life of the trust unless first commanded by a written order in which beneficiaries with 30 votes (unanimous) concur and sign ordering such sale or disposal.

## ARTICLE VIII – TERMINATION

8.1 <u>Termination of Trust</u>: The trust will terminate twenty (20) years after the first death of any of the beneficiaries hereto.

8.2 <u>Distribution upon termination</u>: Distribution upon termination shall be made in accordance and in direct proportion with the beneficial ownership interest show herein. In the case of those beneficial owners who are already deceased, distribution of their portion shall be made to their estate, or according to the terms of their will.

## ARTICLE IX – TRUST ADMINISTRATIVE AND PROTECTIVE PROVISIONS

The trust shall be administered expeditiously and consistently with its terms, free of any judicial intervention and without order, approval, or other action by a court, subject only to the jurisdiction of a court which is invoked by the trustee or beneficiary, or as otherwise provided by law.

## ARTICLE X – MODIFICATION OF TRUST

10.1 <u>Modification by Texas court</u>: This trust shall be subject to modification or termination by a Texas court only if such modification or termination would serve to enforce the original intentions of the Settlor, if the intentions of the Settlor are no longer

GWB Family and Friends Trust
Page 3 of 6

obtainable, or if the trust is used for illegal purposes; then, and only then, the trustee or any beneficiary hereto may seek modification or termination of the trust through the Texas courts.

10.2  Modification by interested parties:  This trust may be modified by a vote of the beneficiaries in which 30 votes (unanimous) are cast for such modification.  The trustee is not authorized to modify the trust in any way without a vote among the beneficiaries in which 30 votes are cast in favor of such modification.

10.3  Trust Property not subject to Probate:  Any property payable to, or owned by, this trust shall not be subject to the claims against the estate of any beneficiary or interested person hereto following death, nor shall such benefits be subject to the control of the personal representative of the interested party, nor be included in the property administered as part of the probate estate of the interested party.  Upon the death of any interested party hereto, the property contained in the trust shall pass as set forth herein, and under no circumstances shall the property in this trust be considered to be part of the probate estate of any beneficiary or other interested party hereto.

10.4  Inalienability:  No beneficiary or interested party shall have any right to anticipate, sell, assign, mortgage, pledge, or otherwise dispose of or encumber all or any part of the trust estate, nor shall any part of the trust estate including, but not limited to, income, be liable for the debts or obligations, including, but not limited to, alimony, child support, tax liens, tax assessment or seizure, of any beneficiary or interested party, or be subject to attachment, garnishment, execution, creditor's bill or any other legal or equitable process unless such is first approved by a vote of the beneficiaries in which 30 votes are cast in favor of such action.

## ARTICLE XI – POWERS OF THE TRUSTEE

The trustee shall have such powers as are prescribed to him in the minutes of this trust, and none other.  The trustee shall administer this trust to the best of his ability within the powers prescribed to him.

## ARTICLE XII – TRUSTEE SUCCESSION

12.1  Resignation or death of trustee:  The trustee may resign by giving 30 days written notice of his intention to do so.  In the event of resignation or death of the trustee, a new trustee may be appointed by a vote of the beneficiaries in which 16 votes are cast in favor of the new trustee.

12.2  Right of Beneficiaries to change trustee:  The beneficiaries may, at any time, elect to change trustees by a vote in which at least 16 of the beneficiary votes are cast for such change.  The vote must include the person who shall be named as the new trustee.  A 30 day notice, or payment of 30 days salary or fee, to the trustee being removed must be given.

GWB Family and Friends Trust<br>Page 4 of 6



12.3 No bond: No trustee, or any successor, shall be required to give any bond in any jurisdiction; and if, notwithstanding this direction, any bond is required by any law, statute or rule of court, no sureties shall be required.

## ARTICLE XIII – TAX NUMBER

The "tax identification number" assigned by the Internal Revenue Service to this trust is **26-6630588.**

## ARTICLE XIV – DEFINITIONS

**"Beneficiary"** means a person for whose benefit property is held in trust, regardless of the nature of the interest.

**"Court"** means a court of appropriate jurisdiction.

**"Income"** shall be as defined in Section 116.002 of the Texas Trust Code.

**"Interested Party(ies)"** means a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust.

**"Principal"** shall be as defined in Section 116.002 of the Texas Trust Code.

**"Property"** means any type of property, whether real, tangible or intangible, legal, or equitable.

**"Settlor"** means a person [or persons] who creates a trust or contributes property to a trustee of a trust. If more than one person contributes property to a trustee of a trust, each person is a settlor of the portion of the property in the trust attributable to that person's contribution to the trust.

**"Trust property"** means property placed in trust by one of the methods specified in Section 112.001 of the Texas Trust Code or property otherwise transferred to or acquired or retained by the trustee for the trust.

**"Trustee"** means the person holding the property in trust.

Except as otherwise provided herein, definitions of words and terms in this trust shall be in accordance with the Texas Trust Code, as amended.

## ARTICLE XV – CONSTRUCTION

13.1 Conformity with Statutes: In case of ambiguity or conflict, this trust should be construed in such a manner and shall be deemed to comply with the provisions of the Texas Property Code, Title 9, Trusts, as amended.

GWB Family and Friends Trust
Page 5 of 6



13.2 <u>Applicable Law</u>:  The validity of this trust shall be determined by reference to the laws of Texas.  Questions of construction and administration of this trust shall be determined by reference to the laws of Texas.

13.3 <u>Headings of Articles and Sections</u>:  The headings of articles and sections are included solely for convenience of reference, and shall have no significance in the interpretation of this instrument.

Signed by Kenneth Vern Gibbs (Settlor), Candace Gibbs Walton (Settlor), and Howard Kirk Gibbs (Settlor) who, by their signatures, below indicate their agreement and intent form the above referenced trust and abide by its terms; and Waymond James Walton (Trustee), who, by his signature below accepts the office of Trustee on the date indicated on page 1 of this Trust Agreement.

## AFFIDAVIT

THE STATE OF TEXAS          §
                            §
COUNTY OF TARRANT           §

BEFORE ME, the undersigned authority on this day personally appeared Kenneth Vern Gibbs, Candace Gibbs Walton, Howard Kirk Gibbs, Waymond James Walton, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the foregoing instrument for the purposes and consideration therein expressed.

_____
Kenneth Vern Gibbs

_____
Candace Gibbs Walton

_____
Howard Kirk Gibbs

_____
Waymond James Walton

SUBSCRIBED AND SWORN TO BEFORE ME on this the 7th day of November, 2008, to certify which witness my hand and seal of office.

_____
Notary Public in and for the
State of Texas



CHRISTEL E. WILSON
Notary Public, State of Texas
My Commission Expires
May 05, 2010



Case No. CV-14-41665

| | | |
|---|---|---|
| **PENTEX FOUNDATION** | § | **IN THE DISTRICT COURT OF** |
| Plaintiff | § | |
| | § | |
| **Vs.** | § | |
| | § | **FANNIN COUNTY, TEXAS** |
| **KENNETH VERN GIBBS** | § | |
| **CANDACE GIBBS WALTON** | § | |
| **HOWARD KIRK GIBBS** | § | **336th JUDICIAL DISTRICT** |
| Defendants | § | |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

**COMES NOW,** Howard Kirk Gibbs, Defendant, to file his answer in response to the above Numbered and Captioned case, and would show the honorable court as follows.

### General Denial

Defendant generally denies each and every allegation, and requires strict proof of each and all allegations contained therein.

### Relief

Defendant requests that the court dismiss this defendant from liability in the case.

Respectfully Submitted



Howard Kirk Gibbs
4360 Western Center Blvd. #205
Fort Worth, Texas 76137



# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 23rd day of April, 2014:

Pentex Foundation                    Via Email
c/o John Skotnik
Attorney of Record
P.O. Box 727
Bonham, Texas 75418


Nancy Young, District Clerk          Via Certified Mail # 7011 1570 0002 4440 6657
Fannin County, Texas
336th District Court
101 E. Sam Rayburn Drive, Suite 201
Bonham, Texas 75418


_____
Howard Kirk Gibbs

81

NO. 14-41665

| PENTEX FOUNDATION | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | 336TH JUDICIAL DISTRICT |
| | § | |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON AND HOWARD | § | |
| KIRK GIBBS | § | |
| Defendants. | § | OF FANNIN COUNTY, TEXAS |

## MOTION FOR WITHDRAWAL OF COUNSEL

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Movant, John Skotnik, Attorney for Plaintiff, Pentex Foundation, (hereinafter Plaintiff), and brings this Motion for Withdrawal of Counsel, and in support thereof, shows the Court the following:

I.

Good cause exists for withdrawal of Movant as counsel because Plaintiff consents to this withdrawal. Said consent is evidenced by Plaintiff's signature affixed hereto.

II.

Good cause exists for withdrawal of Movant as counsel because a potential conflict of interests.

III.

The settings and deadlines in this case are as follows: NONE.

IV.

This Motion is not sought for the purposes of delay.

V.

A copy of this motion bearing the enclosed notice has been delivered to the current

82



address of Plaintiff.

> Pentex Foundation
> Panama Gardens – Unit 2
> Hacie Lidice, Capira,
> Republic of Panama

## VI.

Plaintiff was hereby notified in writing of the right to object to this motion.

## NOTICE

**You are hereby notified that this Motion for Withdrawal of Counsel is set for hearing at the time and place set out below. You do not have to agree to this motion. If you wish to contest the withdrawal of John Skotnik as your attorney, you should appear at the hearing. If you do not oppose John Skotnik's withdrawal as your attorney, you may notify John Skotnik in writing of your consent to this motion.**

## VII. Motion is consented to by Plaintiff

Pentex Foundation as Plaintiff, has indicated its consent to the Movant's withdrawal, as shown on the letter from Pentex Foundation dated 30 April 2014 and attached as **Exhibit "A"** and incorporated by reference.

## VIII. Motion is not opposed by Defendant Howard Kirk Gibbs

Movant also advises the Court that the Defendant Howard Kirk Gibbs is not opposed to this withdrawal as indicated by his letter which is attached as **Exhibit "B"** and incorporated by reference.

## IX. Motion is not opposed by Defense Counsel

Movant further advises and certifies to this Court that he has conferred with Christina Lynn Lee, the counsel for the Defendants Candace Walton and Kenneth Gibbs, and she has communicated that she is not opposed to this withdrawal.

83

**WHEREFORE, PREMISES CONSIDERED**, Movant prays that the Court enters an order discharging Movant as attorney of record for Plaintiff, Pentex Foundation, and for such other and further relief that may be awarded at law or in equity.

Respectfully submitted,

John Skotnik, sbn 18475150
P.O. Box 727
Bonham, Texas 75418
Tel. (903) 640-4300
Fax. (903) 640-4344
Email: jhskotnik@gmail.com
Attorney for Plaintiff
Pentex Foundation

=========================================

## CERTIFICATE OF SERVICE

I certify that on May 2, 2014 a true and correct copy of John Skotnik's Motion for Withdrawal of Counsel was served to each person listed below in accordance with in accordance with the applicable rules of procedure.

John Skotnik

Christy Lee
Attorney for Kenneth Vern Gibbs and Candace Gibbs Walton, Defendants
777 Main Street #600
Ft. Worth, Texas 76102
TEL: 817-504-6075



FAX:  800-437-7901
E-mail: clee@christyleelaw.com

Howard Kirk Gibbs, Defendants
4630 Western Center Blvd #205
Ft. Worth, Texas 76137
Email: hkgibbs@gmail.com

85



## PENTEX FOUNDATION
*A Private Foundation of the Republic of Panama*
Panama Gardens - Unit 2
Hacie Lidice, Capira,
Republic of Panama

30 April 2014

To: John Skotnik, Attorney at Law
Bonham, Texas USA

Dear Sir:

Pentex Foundation is agreeable to your withdrawal as attorney of record from our case number CV -14- 41665, in Fannin County, Texas USA, if we are allowed a reasonable time to acquire new counsel in the case. Pentex Foundation does not want the case dropped.

With this communication, your authority to accept any service or communication of any kind on behalf of Pentex Foundation is terminated. All service and communication from this date forward should go to:

PENTEX FOUNDATION
Panama Gardens - Unit 2
Hacie Lidice, Capira,
Republic of Panama

Your withdrawal from this case concludes our business relationship in its entirety.

Mario Guilermo-Hurtarte Arrivillaga
Managing Director, Legal Affairs
PENTEX FOUNDATION

Exhibit "A"



Howard Gibbs
4360 Western Center Blvd. #205
Fort Worth, Texas 76137
817-233-4423
Email: hkgibbs@gmail.com

May 1, 2014

Dear Mr. Skotnik:

As per our earlier communication, I have no objection to your withdrawal from the case to which I am a party in Fannin County, Texas, case number CV-14-41665.

Sincerely,

Howard Kirk Gibbs



Exhibit "B"



# SCOTT SMITH
### ATTORNEY AND COUNSELOR AT LAW

E-MAIL: smithlaw@airmail.net
FACSIMILE: (903) 870-1446
TELEPHONE: (903) 868-8686

120 SOUTH CROCKETT STREET
P.O. BOX 354
SHERMAN, TEXAS 75091-0354

May 7, 2014

Nancy Young, District Clerk
Fannin County Courthouse
101 East Sam Rayburn Dr., Ste. 201
Bonham, Texas 75418

> RE: *Pentex Foundation v. Kenneth Vern Gibbs, et al.*; Cause Number
> CV-14-41665 in the 336th Judicial District Court of Fannin County,
> Texas.

Dear Ms. Young:

Enclosed please find an original and one copy of the following: Notice of Appearance of Counsel. This will also confirm that a request for disclosure was served upon counsel for Kenneth Gibbs and Candace Walton on this date.

Please be advised, pursuant to the State Bar Rules, the Texas Lawyer's Creed, and respective local rules, that I will be out of the office on the following dates for vacation and continuing education requirements:

May 22-31, 2014
July 24-25, 2014
September 3-12, 2014

Please do not set any matter for hearing or trial during this time, or within three days after the date of such period. I would request that no discovery be served during this period or served as to require a response during this period. I thank you for your attention to this matter.

Yours very truly,

T. Scott Smith

TSS/bhs

cc: Christy L. Lee, Esq.; Howard Kirk Gibbs, Pro Se.

88

## NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | FANNIN COUNTY, TEXAS |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS, *Defendants* | § | 336th JUDICIAL DISTRICT |

## NOTICE OF APPEARANCE OF COUNSEL

TO THE HONORABLE JUDGE AND CLERK OF SAID COURT:

COMES NOW, Scott Smith, and enters his appearance as counsel for Pentex Foundation, Plaintiff in this matter.

Respectfully submitted,

By: _____
Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

ATTORNEY FOR PENTEX FOUNDATION

NOTICE OF APPEARANCE OF COUNSEL ... PAGE 1

89

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served upon Christy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, by certified mail, return receipt requested number 7009 2250 0000 2311 3876, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, by certified mail, return receipt requested number 7009 2250 0000 2311 4064, by on this May 7, 2014.

Scott Smith



NO. 14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | 336TH JUDICIAL DISTRICT |
| | § | |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON AND HOWARD | § | |
| KIRK GIBBS | § | |
| Defendants. | § | OF FANNIN COUNTY, TEXAS |

## ORDER GRANTING MOTION FOR WITHDRAWAL OF COUNSEL

On _____5-2-14_____ 2014, the Court considered the Motion for Withdrawal of Counsel by Movant John Skotnik.

The Court finds that:

1.    Good cause exists for withdrawal of Movant as counsel and withdrawal of Movant is not sought for delay only.

2.    Plaintiff consents to the withdrawal of John Skotnik and the court finds that no party incurs a detriment by allowance of this motion.

3.    The Defendants are not opposed to the withdrawal.

4.    There is a potential conflict of interest.

5.    The current settings and deadlines are:

<u>NONE.</u>

**IT IS THEREFORE ORDERED** that Movant is permitted to withdraw as counsel of record for Plaintiff and **ORDERED** that all notices in this cause shall hereafter be served on Plaintiff either delivered in person or sent by certified and first class mail to the address in the motion.

**IT IS FURTHER ORDERED** that John Skotnik, Movant, immediately notify Plaintiff



Pentex Foundation in writing of any additional settings or deadlines of which John Skotnik now has knowledge and has not already notified Plaintiff.

IT IS ORDERED that the Plaintiff ~~has~~ and Defendants shall attend ~~days from the date of this Order~~ a status conference to discuss and schedule final ~~to secure other counsel to represent it in this cause.~~ hearing date and appear in person or telephonically 6-17-14, 1:00pm

SIGNED on _____ May 2 _____, 2014. _____

_____
JUDGE LAURINE BLAKE, PRESIDING



| | | |
|---|---|---|
| **PENTEX FOUNDATION** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff** | § | |
| | § | |
| **Vs.** | § | |
| | § | **FANNIN COUNTY, TEXAS** |
| **KENNETH VERN GIBBS** | § | |
| **CANDACE GIBBS WALTON** | § | |
| **HOWARD KIRK GIBBS** | § | **336th JUDICIAL DISTRICT** |
| **Defendants** | § | |

## DEFENDANT HOWARD GIBBS' RESPONSE TO DEFENDANTS CANDACE WALTON AND KENNETH GIBBS REQUEST FOR DISCLOSURE

In response to a request for Rule 194 disclosure made by Defendants Candace Walton and Kenneth Gibbs.

**COMES NOW,** Howard Kirk Gibbs, Defendant, and submits his response to Defendant's Candace Walton and Kenneth Gibbs Request for Disclosure.

a. **The correct names of the parties to the lawsuit.**

RESPONSE:
1. Plaintiff, Pentex Foundation;
2. Defendant, Kenneth Gibbs;
3. Defendant, Candace Walton; and
4. Defendant, Howard Kirk Gibbs

b. **The name, address, and telephone number of any potential parties.**

RESPONSE:        None.

c. **The legal theories and, in general, the factual bases of your claims or defenses of the responding party.**

RESPONSE:  Defendant, Howard Gibbs, has not committed any wrongful acts as alleged in Plaintiffs' Original Petition.

**d. The amount and any method of calculating economic damages.**

RESPONSE: No calculations made at this time. Defendant, Howard Gibbs, will amend this response when the same becomes available.

**e. The name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case.**

RESPONSE:

1. Plaintiff, Pentex Foundation, whose address is Panama Gardens – Unit 2, Hacie Lidice, Capira, Republic of Panama, Central America;
   Phone number unknown;
2. Defendant, Candace Walton, by and through her attorney of record, Christy Lee;
3. Defendant, Kenneth Gibbs, by and through his attorney of record, Christy Lee;
4. Defendant, Howard Kirk Gibbs, whose mailing address is:
   4360 Western Center Blvd. #205, Fort Worth, Texas 76137;
   Phone number is 817-233-4423; and
5. Albert Barcroft, the legal representative of Pentex Foundation, P.O. Box 03, Morales, Izabal, 18004, Izabal, Guatemala, Central America;
   Phone number is 011-502-4888 0964
6. Danny Unger, address unknown to Defendant;
   Phone number is 903-948-9708

**f. For any testifying expert:**

(1) the expert's name, address, and telephone number;
(2) the subject matter on which the expert will testify;
(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by or otherwise subject to the control of the responding party, documents reflecting such information;
(4) if the expert is retained by, employed by, or otherwise subject to your control:
   a. all documents, tangible things, reports, models or data compilations that have been provided to, reviewed by or prepared by or for the expert in anticipation of the expert's testimony; and
   b. the expert's current resume and bibliography;

RESPONSE: None.

**g. Any indemnity and insuring agreements described in Rule 192.3(f) of the Texas Rules of Civil Procedure.**

RESPONSE: None

**h.     Any settlement agreements described in Rule 192.3(g) of the Texas Rules of Civil Procedure.**

RESPONSE:   None

**i.     Any witness statements described in Rule 192.3(h) of the Texas Rules of Civil Procedure.**

RESPONSE:   None

Respectfully Submitted

Howard Kirk Gibbs
4360 Western Center Blvd. #205
Fort Worth, Texas  76137

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Response to Request for Disclosure was delivered to the following parties on this 29th day of May, 2014:

Pentex Foundation                                        Via Email to SmithLaw@Airmail.net
c/o Scott Smith
Attorney of Record

Ken Gibbs & Candy Walton                         Via Email to CLee@ChristyLeeLaw.com
c/o Christy Lee
Attorney of Record

Dated and signed this 29th day of May, 2014.

Howard Kirk Gibbs, Defendant

| | | |
|---|---|---|
| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | FANNIN COUNTY, TEXAS |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS, *Defendants* | § | 336th JUDICIAL DISTRICT |

## ORIGINAL PETITION IN INTERVENTION

COMES NOW, Joshua Unger, Trustee of the GBU Friends and Associates Trust, Intervenor, pursuant to TEX. R. CIV. P 40, and intervenes as the real party in interest in this suit against Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs,; and, would show the honorable court as follows:[1]

1.    Intervenor is the trustee of the GBU Friends and Associates Trust, and is the recipient of the rights initially assigned to Albert Lynn Barcroft by virtue of the Contract.[2]  All defendants have appeared and answered herein, and may be served pursuant to TEX. R. CIV. P. 21a.

2.    The subject matter in controversy is within the jurisdictional limits of this Court.  Additionally, venue is proper in Fannin County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.035(a), as the Defendants herein agreed in writing that

---

[1]    As used herein the abbreviations used by Plaintiff in the Original Petition shall be used herein. Additionally, pursuant to TEX. R. CIV. P. 58,  Intervenor adopts by reference the exhibits attached to the Original Petition.

[2]    When the term "Intervenor" is used herein, it is meant to refer to Intervenor and his predecessors in interest.



the Contract was performable only in Fannin County, Texas and that any dispute would be resolved in the courts of Fannin County, Texas.

3.      On or about the 10th day of May, 2005, the Contract was entered into between Mr. Barcroft and all three Defendants, whereby the Defendants each sold to Mr. Barcroft a thirty percent interest in specified estates and related interests. A true and correct copy of the Contract is attached to the Plaintiff's Original Petition as Exhibit "A". Intervenor is the present holder of the interest conveyed to Mr. Barcroft by the Defendants pursuant to the terms of the Contract.

4.      Pursuant to the terms of the Contract, a business organization was to be created to facilitate the terms of the Contract. The Contract additionally provided, on page 4, that any party could demand a split of the assets out of the business organization at any time.

5.      In the Fall of 2008, the Defendants purportedly created a business organization known as GWB Family and Friends Trust ("GWB"), a purported trust, supposedly in compliance with the terms of the Contract to "help facilitate the terms of the contract". It is questionable whether the GWB was validly created, but regardless if GWB is, in fact, a trust, it is a revocable trust pursuant to the terms of the Contract and/or is not binding on Intervenor.

6.      On or about September 5, 2008, a Family Settlement Agreement



("FSA") agreement was reached by Intervenor's predecessor in interest and the Defendants with respect to the estates of Bert Hughes Gibbs and Kathryn Houseworth Gibbs (Defendants' parents) would be divided. The Contract the subject of this suit was recognized and confirmed in the FSA, at page 33, section 3.25 (c). The FSA, page 22, section 3.15A, also restated and reconfirmed that Defendants were solely responsible for any attorney fees; thereby confirming that provision in the Contract.

7. Pursuant to the terms of the FSA, Defendants were each awarded 25% of both their father's and mother's estates, totaling 75% of the total of the combined estates. Each Defendant had previously sold 30% of their share to Barcroft under the Contract; meaning that Barcroft, or his assigns, had an unmitigated interest in the combined estates of 22.50% (or 30% of 75%).[3] Through agreement and instruction from Plaintiff, the estate attorneys assigned 2.46% of Plaintiff's 30%; leaving 20.04% belonging to Barcroft or his assigns (22.50% less 2.46%). In sum, the Intervenor's interest in said estates is 20.04%.

8. In August, 2013, Intervenor learned that attorney fees that were agreed would be paid by Defendants had actually been coming out of Intervenor's share. Unbeknownst to Intervenor, until October of 2013, the contingency fee attorneys were deducting their fees from the total due Pentex Foundation, Ken,

<hr>

[3]

98

Candy and Howard, then issuing one check to GWB. The result is that Intervenor has involuntarily incurred in excess of a million dollars in attorney fees that were due to be paid solely by Defendants. When Intervenor learned of this error, his predecessor in interest immediately moved under the terms of the Contract to demand a split of the assets of the business organization. Beverly Miller, the putative trustee of GWB, determined that the demand was valid, whereupon she transferred enough property to equal 20.04% of the total estate, previously distributed to GWB [mineral interests], to the GBU Friends and Associates Trust.

9. In response, Kenneth Gibbs and Candace Walton engaged counsel who contacted the gas companies, with whom Intervenor does business, by letter, tortiously interfering with the contracts between Intervenor and the various oil companies.

10. Intervenor has a right to performance under the Contract. Intervenor seeks judgment that the provisions of the Contract be fully enforced without delay; and, that the proper gas companies be notified of the action. Intervenor additionally requests that the Court enter an order requiring Defendants to pay restitution to Intervenor.

11. In addition, under the terms of the Contract, Intervenor was to receive 30% of all proceeds from any lawsuit involving Defendants. At the time the



Contract was agreed to and executed, there was an Abstract of Judgment filed in Denton County against Defendants in the amount of $1,234,205.64, in favor of Kip H. Gibbs as NEXT FRIEND FOR Kathryn Houseworth Gibbs. As a result of the efforts of Intervenor's predecessors in interest, that judgment was retired. It is therefore proceeds from a lawsuit, and Intervenor is entitled to 30%, equaling $370,262.70.

12.     Intervenor additionally requests that declaratory judgment be entered under Chapter 37 of the Texas Civil Practice and Remedies Code, declaring the Contract valid and enforceable under the laws of the State of Texas.

13.     As a direct and proximate result, and as intended, the frivolous contacts compelled the gas companies to discontinue payments of royalties rightfully due Intervenor, in a sum in excess of the minimum jurisdictional limits of this Court. Intervenor is being unjustly denied its money and assets all because of groundless, unproven, and false accusations made on behalf of Kenneth Gibbs and Candace Walton, both in conversation and in writing.

14.     Intervenor would further show that the acts and omissions of Defendants, Kenneth Gibbs and Candace Walton, complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of

Intervenor. In order to punish said Defendants, Kenneth Gibbs and Candace Walton, for such unconscionable overreaching and to deter such actions and omissions in the future, Intervenor also seeks recovery from Defendants, Kenneth Gibbs and Candace Walton, for exemplary damages as provided by Section 41.003(1) of the Texas Civil Practice and Remedies Code.

15.    Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Intervenor herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

16.    Pursuant to Rules 47 and 48, Texas Rules of Civil Procedure and the rules of pleadings, allegations in this petition are made in the alternative.

17.    Plaintiff avers that all conditions precedent have occurred prior to filing of this suit.

18.    Pursuant to Tex. R. Civ. P. 193.7, Intervenor gives notice that he will use any and all of the documents produced by Defendants in this litigation, and in response to written discovery at the trial to be held in this case.

19.    Intervenor makes demand for trial by jury pursuant to Tex. R. Civ. P. 216.

20.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, each Defendant is requested to disclose within the later of fifty days of service of this request, the material described in Rule 194 of the Texas Rules of Civil Procedure.

WHEREFORE, PREMISES CONSIDERED, Intervenor prays that upon a final hearing of the cause, judgment be entered by this Court for Intervenor and against the Defendants, jointly and severally, for the following:

A.    All actual damages; but, in any case, no less than one million dollars $1,000,000.00;

B.    Restitution in the exact amount that has been unjustly taken from Intervenor by Defendants and used to pay Defendant's legal fees;

C.    Declaratory judgment at the earliest possible time to determine the proper ownership of the mineral interest put in dispute at the oil and gas company level by baseless letters from the Defendants;

D.    Specific Performance;

E.    Judgment against Defendant's for $370,262.70, together with interest as Intervenor's share of the proceeds from the Abstract of Judgment referenced herein; and

F.    Grant any other relief to which Intervenor has shown himself entitled both at law and in equity, whether pled or unpled.



Respectfully submitted,

By: _____

Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served upon Christy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, by certified mail, return receipt requested number 7009 2250 0000 2311 3937, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, email, by on this June 17, 2014.

Scott Smith

CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT, |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## MOTION TO STRIKE INTERVENTION, MOTION TO DISMISS WITH PREJUDICE, AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND CANDACE GIBBS WALTON

TO THE HONORABLE JUDGE OF THE COURT:

COME NOW, KENNETH "Ken" GIBBS and CANDACE "Candy" WALTON, Defendants, by and through their Counsel of Record, Law Offices of Christy Lee, P.C., and file this Motion to Strike Intervention, Motion to Dismiss, and Rule 13 Motion for Sanctions, and would respectfully show the Court the following:

### I. MOTION TO STRIKE INTERVENTION

1. Pursuant to Rule 60 of Texas Rules of Civil Procedure, an applicant's right to intervene in litigation is "subject to being stricken out by the court for sufficient cause on the motion of any party." An intervenor bears the burden to show a justiciable interest, legal or equitable in the lawsuit, while the trial court has broad and sound discretion concerning the intervention. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex. 1982). A party may intervene if the party could have brought the same action, or any part of the action, under the party's own

MOTION TO STRIKE INTERVENTION, MOTION TO DISMISS WITH PREJUDICE,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
*Pentex Foundation vs. Kenneth Gibbs, et al.*
104

CAUSE NO. CV-14-41665    -1-



name. *Guaranty Federal Savings Bank. v. Horseshoe Operating Company*, 793 S.W.2d 652, 657 (Tex. 1990). It is not an abuse of discretion to strike invention when (1) the intervenor fails to meet the burden of justiciable interest; (2) the intervention complicates the case by an excessive multiplication of the issues; and (3) the intervention is not essential to protect the intervenor's interest. *Id.*

2. Ken and Candy contend that sufficient cause exists in this Matter such that the Original Petition in Intervention should be stricken.

3. On June 17, 2014, Joshua Unger ("Unger"), Trustee of the GBU Friends and Associates Trust ("GBU Trust"), filed the Original Petition in Intervention as "the real party in interest in this suit." Unger's Petition continues the pattern of frivolous pleadings before the Court as established by Plaintiff Pentex Foundation ("Pentex").

4. Ken and Candy maintain that Unger's intervention in this Matter germinated initially in reaction to Ken and Candy's challenge concerning the authority of Attorney John Skotnik and Pentex to initiate proceedings against Defendants concerning long-contested assets original to the Estate of Bert Hughes Gibbs ("the Estate").[1] The intervention sprouted to fruition at the moment Ken and Candy followed Pentex's lead in requesting discovery.

5. Prior to the proceedings in this Matter, Ken and Candy repeatedly requested that Albert Barcroft, of Pentex, provide evidence of its existence as a legal entity and that it possessed the right to engage in legal transactions within the United States. Albert Barcroft refused to turn over proof. Albert Barcroft is not only the self-proclaimed "Legal

---

[1] *See* Motion to Show Authority, Motion for Change of Venue, Original Answer, Affirmative Defenses, Original Counterclaim, and Rule 13 Motion for Sanctions of Kenneth Vern Gibbs and Candace Gibbs Walton, filed with this Court on April 24, 2014.

MOTION TO STRIKE INTERVENTION, MOTION TO DISMISS WITH PREJUDICE,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
*Pentex Foundation vs. Kenneth Gibbs, et al.*

CAUSE NO. CV-14-41665

-2-

Representative" of Pentex; Albert Barcroft is also the alleged Beneficiary of Pentex Royalty Trust, affiliate of Pentex Foundation.

6.     Once Pentex launched this suit against Defendants, Ken and Candy again repeatedly requested evidence that Pentex enjoyed the right to proceedings in a court of law in the United States. On June 13, 2014, Scott Smith ("Smith"), succeeding Counsel for Pentex, produced a lone document, drafted in Spanish. No English translation – certified or otherwise – was made available to Ken and Candy.

7.     Meanwhile, Pentex demanded discovery from Ken and Candy. When Ken and Candy asked to delay discovery until the Motion to Show Authority could be ruled upon, as would be protocol, Pentex insisted that discovery be produced on schedule and in full. Therefore, Ken and Candy began the arduous – and expensive – process of drafting and compiling discovery documents.

8.     Since Pentex was adamant that the discovery process could not be temporarily suspended, Ken and Candy asked to schedule depositions for Albert Barcroft and the remainder of the representatives of Pentex, residents of Guatemala and Panama, respectively. Not surprisingly, Pentex did not respond.

9.     However, on June 17, 2014, almost immediately following the request for depositions, Smith, this time acting as Counsel for GBU Trust, filed the Original Petition in Intervention, arguing that GBU Trust is in fact the "real party in interest in this suit." Just as he is with Pentex, Albert Barcroft is a Beneficiary of GBU Trust.

10.     The substance of GBU Trust's Petition was that it was GBU Trust, not Pentex, entitled to substantial proceeds arising from various documents supposedly assigning Albert

Barcroft's interest in the Estate's to other parties. A similar claim formed the crux of Pentex's original complaint, which argued that Pentex should receive Albert Barcroft's portion of the Estate.

11.     The common denominator in both arguments? Albert Barcroft, the Creator and Beneficiary of both Pentex **and** GBU Trust, and the assigner of interest of the assets in dispute. In other words, Albert Barcroft *is* both Pentex and GBU Trust. Should he not know the identity of the true party to the litigation?

12.     GBU Trust's Petition was filed as a diversionary tactic. It contained no supporting evidence of the legitimacy of GBU Trust, or of its claim that Albert Barcroft assigned to GBU Trust, rather than to Pentex, his interest in the Estate.

13.     GBU Trust's Petition failed to prove GBU Trust's interest in the suit, nor did it show evidence of how both Pentex and GBU Trust could concurrently demand and reasonably be entitled to the exact same proceeds. However, the fact that Smith knowingly and deliberately executed GBU Trust's filing while continuing to represent Pentex points to collusion between the parties, suggesting that if one party succeeds in procuring the contested assets, the other will enjoy the reward as well. In other words, as Beneficiary to both Pentex and GBU Trust, Albert Barcroft could potentially enjoy double wins.

14.     Alternatively, as both Plaintiff and Intervenor, if Albert Barcroft did not succeed as Pentex against Ken and Candy, Albert Barcroft might have another shot at success as GBU Trust.

15.     Smith's simultaneous representation of two parties making the same claim to the same assets gratuitously and overly complicates the proceedings through a multiplication of

issues which would otherwise not be necessary to address. Not only must Pentex establish its authority regarding proceedings in the Matter, but GBU Trust must also clarify its position relative to its claims. Since, as Beneficiary of both Pentex and GBU Trust, Albert Barcroft is the common denominator, and since the claims are the same, the intervention is unwarranted, cumbersome, and unreasonable.

16. Additionally, GBU Trust's Petition focuses almost solely on assets at the control of the Estate. As GBU Trust is fully aware, the disputed assets are currently being addressed in Tarrant County Probate Court No. 2. Cause No. 2005-0000126-2-D. Intervention in the suit before this Court is a frivolous attempt to avoid transfer of the Cause, as Ken and Candy requested of the Court.

17. GBU Trust's Petition fails the three-prong test for justifiable intervention in this Matter. GBU Trust's intervention would do nothing more than afford Albert Barcroft the opportunity to effectively pursue Ken and Candy twice for the same assets, once through Pentex and once through GBU Trust. Since Pentex's suit already offers protection of Albert Barcroft's interest in the suit, GBU Trust's entry into the Matter is superfluous and is not necessary to protect Albert Barcroft's interest.

18. Subject to the Motion to Strike, and without waiving any other defenses Ken and Candy might later present, Ken and Candy assert a general denial to GBU Trust's allegations, as authorized by Rule 92 of the Texas Rules of Civil Procedure. GBU Trust's Petition in Intervention should be stricken.

## II. DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

19. Ken and Candy move this Court to dismiss this Matter with prejudice. As Ken

MOTION TO STRIKE INTERVENTION, MOTION TO DISMISS WITH PREJUDICE,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON                                          CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Gibbs, et al.*                          -5-

108



and Candy argued in their Answer to the suit, Pentex filed the case frivolously, solely for the purposes of harassment.

20. Pentex's suit was filed without authority; Pentex acknowledged that it has no standing regarding the Matter. The same Counsel representing Pentex filed GBU Trust's Petition with this Court, and therefore, Pentex was fully cognizant of GBU Trust's Petition. In the Petition, GBU Trust stated that it is the "real party in interest in this suit." As was established in the Motion to Strike Invention, Albert Barcroft *is* both Pentex and GBU Trust.

21. Despite its certain awareness of GBU Trust status as "the real party in interest" in the Matter, even upon request, Pentex declined to ask the Court to remove Pentex from this lawsuit, to dismiss the case against Ken and Candy, or to agree to streamline the case by transferring it to another court. Pentex's failure to withdraw its complaint, coupled with Pentex's refusal to request the Court to dismiss or to address the action in a more economic manner, substantiates Ken and Candy's interpretation of the motive for the suit.

22. In light of its knowledge of the "real party in interest" in this case, Pentex's adverse actions continue to constitute a serious disregard for the Court's time and have resulted in growing legal costs for Ken and Candy unnecessarily and exponentially. The case against Ken and Candy should be dismissed with prejudice, as it is likely to achieve little more than increasing Ken and Candy's legal fees while heavily absorbing the Court's resources. If GBU Trust wishes to pursue the matter, it should file its own case through the appropriate court, as it is the "real party" in the lawsuit.

### III. RULE 13 MOTION FOR SANCTIONS

23. Pursuant to Rule 13 of the Texas Rules of Civil Procedure, Ken and Candy move

MOTION TO STRIKE INTERVENTION, MOTION TO DISMISS WITH PREJUDICE,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
*Pentex Foundation vs. Kenneth Gibbs, et al.*

CAUSE NO. CV-14-41665

-6-



this Court for Sanctions against Attorney John Skotnik, Attorney Scott Smith, Plaintiff Pentex Foundation, and Intervenor GBU Friends and Associates Trust, for filing and perpetuating a frivolous suit designed solely to badger Ken and Candy.

24.     The Original Petition seeking relief was signed in violation of Rule 13, as a reasonable inquiry by John Skotnik and his client would have shown that the allegations are false, trivial, and meant solely for the purpose of harassment. Even a cursory review of the facts, including the ill-gotten transfers of assets from GWB Family and Friends Trust, would have revealed that Pentex has no standing to sue Ken and Candy, as Pentex had no ownership of the alleged assets.

25.     Following Skotnik's withdrawal as Counsel to Pentex due to a conflict of interest, Scott Smith assumed the role. Even had Smith initially suffered no qualms about representing a client whose standing was in doubt, Smith should have experienced at least a few pangs of conscience connected to his signing on as Counsel for GBU Trust. Conflict of interest aside, the moment he conjured up the title of the "real party of interest" for GBU Trust, Smith should reasonably have moved to extricate Pentex from the convoluted matter.

26.     As of June 18, 2014, Smith was still resolute that both Pentex and GBU Trust will remain in the suit.

27.     Despite its certain awareness that GBU Trust has unilaterally declared itself the "party of interest," Pentex has made no effort to request the Court dismiss the suit. Currently, neither Pentex nor GBU Trust has proven its ground for attempting redress for any bad acts supposedly committed by either Ken or Candy.

28. Therefore, pursuant to Rule 215-2(b) of the Texas Rules of Civil Procedure, Ken and Candy request that all Sanctions available, including attorney fees, should be imposed on John Skotnik, Scott Smith, Pentex, and GBU Trust.

## VII. PRAYER FOR RELIEF

Based on the foregoing, Ken and Candy pray that this Court:

(1) Dismiss this suit in its entirety with prejudice;

(2) Award Ken and Candy costs and attorney fees;

(3) Enter all other Orders and further relief, legal and equitable, that the Court deems appropriate in this matter, including appropriate sanctions for the violation of Rule 13; and

(4) For such further and additional relief as justice may require.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND
CANDACE WALTON

MOTION TO STRIKE INTERVENTION, MOTION TO DISMISS WITH PREJUDICE,
AND RULE 13 MOTION FOR SANCTIONS OF KENNETH VERN GIBBS AND
CANDACE GIBBS WALTON
*Pentex Foundation vs. Kenneth Gibbs, et al.*

CAUSE NO. CV-14-41665

-8-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 18th day of June, 2014:

Pentex Foundation **and**                                  Via mail and email
GBU Family and Friends Trust
c/o Scott Smith
P.O. Box 354
Sherman, TX  75091-0354

Howard Kirk Gibbs                                          Via mail and email
9929 Crawford Farm Drive
Fort Worth, TX  76244


_____
Christy L. Lee

CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## NOTICE OF HEARING

COME NOW, Candace Walton and Kenneth Gibbs, Defendants, by and through their counsel of record, Law Offices of Christy Lee, P.C., and notice you of a hearing scheduled concerning Motion to Show Authority, Motion for Change of Venue, Motion to Strike Intervention, Motion to Dismiss with Prejudice, and Rule 13 Motion for Sanctions of Kenneth Vern Gibbs and Candace Gibbs Walton. The hearing has been set for **September 30, 2014**, from **8:30 AM to 12 PM**, in 336th Judicial District Court of Fannin County, Texas.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Notice of Hearing was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 19th date of June, 2014:

Party:                                    Via:

Howard Kirk Gibbs                         Mail
4360 Western Center Blvd., No. 205        Email: hkgibbs@gmail.com
Fort Worth, TX 76157

Pentex Foundation **and**                 Mail
GBU Family and Friends Trust              Email: smithlaw@airmail.net
c/o Scott Smith, Attorney
120 South Crockett Street
Sherman, TX 75091-0354



_____
Christy L. Lee

NOTICE OF HEARING
114





LAW OFFICES OF

*Christy Lee* P.C.

CHRISTY L. LEE
*Attorney*



225 E. FIREWEED LANE, STE. 200
ANCHORAGE, ALASKA 99503
MAIN: 907.339.9931
FAX: 800.437.7901

777 MAIN ST., STE. 600
FORT WORTH, TEXAS 76102
PHONE: 817.504.6075
FAX: 800.437.7901

clee@christyleelaw.com
www.christyleelaw.com

June 19, 2014

Clerk of the Court
101 E Sam Rayburn Drive, Suite 200
Bonham, TX 75418

    Re:    Cause No. CV-14-41665
           Pentex Foundation vs. Kenneth Vern Gibbs, et al.

To Whom It May Concern:

Enclosed is a Notice of Hearing, concerning Cause No. CV-14-41665.

Please file the original document with the Court, and return the file-marked copy to the firm in the enclosed self-addressed, stamped mailer.

If you have any questions, please contact our office. Thank you for your assistance with this matter.

                    Very truly yours,

                    LAW OFFICES OF CHRISTY LEE, P.C.

                    Laura Hogins, Paralegal

Enclosures



CAUSE No. CV-14-41665

PENTEX FOUNDATION, )
 PLAINTIFF, )
   )
   )
VS. )
   )
KENNETH VERN GIBBS; AND )
CANDACE GIBBS WALTON; AND )
HOWARD KIRK GIBBS, )
 DEFENDANTS. )

IN THE DISTRICT COURT

336TH JUDICIAL DISTRICT

FANNIN COUNTY, TEXAS

## RULE 11 AGREEMENT FOR METHOD OF SERVICE

TO THE HONORABLE JUDGE OF COURT:

On June 20, 2014, this Agreement was entered into by Kenneth Vern Gibbs and Candace Walton, Defendants; Howard Kirk Gibbs, Defendant, pro se; and Pentex Foundation, Plaintiff; and GBU Friends and Associates Trust, Intervenor; by and through their respective attorneys and Howard Kirk Gibbs; and the Parties together hereby submit the following Rule 11 Agreement to the Court regarding the referenced case.

In the effort to conserve resources, the Parties agree to emailed service of all documents pertaining to the Matter and to acknowledge receipt of the service within one (1) business day by email or facsimile. If no acknowledgement of the service is forthcoming from the receiving Party within one (1) business day, service shall be effected in an alternative manner, pursuant to Rule 21of the Texas Rules of Civil Procedure. However, service shall be deemed completed at the time the email is sent, except on holidays or weekends, at which time service shall be deemed completed on the next business day.

RULE 11 AGREEMENT FOR METHOD OF SERVICE
*Pentex Foundation vs. Gibbs et al.*

CAUSE NO. CV-14-41665
 -1-

116



Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, PC.

By: _____

Date: 6/23/14

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075 Office
(800) 437-7901 Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND
CANDACE WALTON

SCOTT SMITH

By: _____

Date: 6/23/14

Scott Smith
Texas State Bar No. 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75418
(903) 868-8686 Office
(903) 870-1446 Fax
smithlaw@airmail.net

ATTORNEY FOR PLAINTIFF AND
INTERVENOR

_____

Date: 6/23/14

Howard Kirk Gibbs, Pro Se
4360 Western Center Boulevard, Suite 205
Fort Worth, Texas 76137
(817) 233-4423
hkgibbs@gmail.com

RULE 11 AGREEMENT FOR METHOD OF SERVICE
*Pentex Foundation vs. Gibbs et al.*

CAUSE NO. CV-14-41665
-2-



CAUSE NO. CV-14-41665

PENTEX FOUNDATION, )
PLAINTIFF, )
)
VS. )
)
KENNETH VERN GIBBS; AND )
CANDACE GIBBS WALTON; AND )
HOWARD KIRK GIBBS, )
DEFENDANTS. )

IN THE DISTRICT COURT

336TH JUDICIAL DISTRICT

FANNIN COUNTY, TEXAS

## RULE 11 AGREEMENT FOR DUE DATE FOR ADMISSIONS

TO THE HONORABLE JUDGE OF COURT:

On June 20, 2014, this Agreement was entered into by Kenneth Vern Gibbs and Candace Walton, Defendants; Pentex Foundation, Plaintiff; and GBU Friends and Associates Trust, Intervenor; by and through their respective attorneys. The Parties together submit to the Court the following Rule 11 Agreement regarding the referenced case.

The Parties agree that Defendants shall respond to the Request for Admissions no later than Friday, June 27, 2014.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P. C.

_6/20/14_
Date

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075 Office
(800) 437-7901 Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND
CANDACE WALTON

RULE 11 AGREEMENT FOR DUE DATE FOR ADMISSIONS
*Pentex Foundation vs. Gibbs et al.*

CAUSE NO. CV-14-41665
-1-



SCOTT SMITH

_____6|23|14_____
Date

By:_____

Scott Smith
Texas State Bar No. 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75418
(903) 868-8686 Office
(903) 870-1446 Fax
smithlaw@airmail.net

ATTORNEY FOR PLAINTIFF



CV-14-41665

## CONSTRUCTIVE NOTICE BY AFFIDAVIT

### (Private Identification for Use in the Public Forum)



I, Daniel Ray Unger (a.k.a. "Danny"), being a Free White Christian Man, and the posterity by birthright/inheritance of the Sovereign People who Created the original Constitution for the Commonwealth of Pennsylvania and the Articles of Confederation (Agreed to by Congress November 15, 1777 and ratified and in force, March 1, 1781), creates this Constructive Notice by Affidavit for private Identification use in the public forum and as Evidence of my Sovereign Authority Status in order to claim and to declare and give as evidence my status and properly identify myself when law requires; and, in order to prevent any ignorant or unintentional transgressions of my rights to life, liberty, property, and pursuit of happiness.

The purpose of this affidavit is give public notice of positive identification to all who inquire as to who I am. It is entered into the public record as a means of establishing my lawful identification to all who may inquire. I stipulate that it may be used as positive identification of me for all matters. I was born as one of the sovereign American people by Birthright in the month currently known as October, 1952.

Attached in the upper left hand corner of this instrument is an exact likeness of me. I stipulate that it can be used to clarify that I am the man I represent myself to be for all purposes.

**FURTHER, I SAYETH NOT:**

**WITNESS MY HAND:** _____ Right Thumb Print:

Daniel Ray Unger, sui juris

    BEFORE ME, on this day did appear Daniel Ray Unger in his proper person, known to me to be the man who's name is subscribed to the foregoing instrument and whose likeness is affixed in the upper left hand corner above; and he did declare under penalty of perjury that the foregoing is true and correct.

    And after examining the above likeness, I affirm that it is an accurate likeness of him.

**GIVEN UNDER MY HAND AND SEAL** on this _14_ day of July, 2014.

_____
Notary public, Fannin County, Texas

Beverly Miller
My Commission Expires
01/23/2017

## NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | FANNIN COUNTY, TEXAS |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS, *Defendants* | § | 336th JUDICIAL DISTRICT |

### PLAINTIFF'S MOTION TO COMPEL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Pentex Foundation, Plaintiff, files this his Motion to Compel Kenneth Gibbs and Candace Gibbs Walton, Defendants[1], to answer discovery, and would show the Court as follows:

1.      Plaintiff served and Defendants timely responded to Requests for Admissions.[2] The Defendants did, however, levy substantial and unwarranted objections to almost every request.  For convenience, the objections can be grouped:

**A.      Objections Relating to "Legal Interpretation."**

In response to requests number 6, 7, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 27, 31, 32, 33, 34, 52, 53, 54, 55, 56, 57, 58, 65, 66, 83 and 84, Defendants have variously objected that these requests call for a legal interpretation.  The request for admissions rule

---

[1]      These are two of the three defendants in this case.  For convenience they shall be referred to as "Defendants."

[2]      A true and correct copy of the Defendants' Response is attached hereto as Plaintiff's Exhibit "A".

PLAINTIFF'S MOTION TO COMPEL ... PAGE 1



expressly allows requests for a party to admit the truth of "statements of opinion or of fact or of the application of law to fact". Tex. R. Civ. P. 198.1. That is what these requests do. Parenthetically, some of these are taken almost verbatim from the documents that Defendants have signed. The objections should be overruled.

## B.    Objections Relating to the Scope of Discovery.

In response to requests number 60, 60 (2d one), 62, 63, 66, 67, 70, 71, 72, 73, 73 (2d one), 76, 77, 78, 79, 80, 81, and 82, Defendants have repeatedly objected as "not relevant or likely to lead to the discovery of admissible evidence." Obviously, "relevance" is not the standard for discovery, but in candor, these admissions do seek relevant evidence, the narrower standard than is required to obtain discovery. Nevertheless, this portion of the objection should be overruled. With respect to the second part of these objections, discovery may be aimed at information not admissible at trial, as long as the information appears reasonably calculated to lead to the discovery of admissible evidence. Tex. R. Civ. P. 192.3(a). Clearly, these requests relate to the parties' relationships and the handling of the proceeds from the various entities, which are at issue in this suit. The second part of the objections should be overruled.

## C.    Objections Claiming Harrassment.

In response to requests 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 79, 80, and 81, Defendants claim the requests are submitted for harassment. We roundly disagree. For example, requests 68 and 69 are the core issue in this case – why were attorney's fees

incurred by Defendants deducted from the interests of Plaintiff and its assigns? Further, if Defendant Kenneth Gibbs is self dealing with respect to the home place, in violation of his written representations, Plaintiff is entitled to discover it. These objections should be overruled.

2. As a result of the failure of Defendants to withdraw their objections, it was necessary for Plaintiff to engage and pay for counsel to prepare and submit this motion. Defendants should be assessed the reasonable and necessary costs and attorneys' fees for so doing.

<u>CERTIFICATE OF CONFERENCE</u>

On the undersigned conferred with the attorney of record for Defendants on . No resolution of this matter seems apparent, and it is presented the Court for ruling.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be ordered to answer the discovery, and for such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

By: _____
Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686



## FIAT

The above and foregoing Motion shall be heard by the Court at __8:30__ o'clock

_A_.m. on the __30__ day of __Sept__, 2014.

_____ 7-21-14
JUDGE PRESIDING

### CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by email pursuant to agreement compliant with TEX. R.CIV. P. 11, upon Christy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this July 17, 2014.

_____
Scott Smith

PLAINTIFF'S MOTION TO COMPEL ... PAGE 4



## Scott Smith

**From:** "Scott Smith" <smithlaw@airmail.net>
**To:** "Christy Lee" <clee@christyleelaw.com>; "Howard Gibbs" <hkgibbs@gmail.com>
**Sent:** Thursday, July 17, 2014 11:55 AM
**Attach:** 14-7-17 Motion to Compel.pdf
**Subject:** Pentex v. Gibbs -- CV-14-41665

Attached is Plaintiff's Motion to Compel.

Regards,
Scott

Scott Smith
Attorney and Counselor At Law
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
Facsimile 903.870.1446
Telephone 903.868.8686

125



7/17/2014

PLAINTIFF'S
EXHIBIT
A

CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
## AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS

TO:  PENTEX FOUNDATION, Plaintiff, by and through its attorney of record, Scott Smith, 120 South Crockett Road, Sherman, Texas 75091-0354; email: smithlaw@airmail.net:

COME NOW, KENNETH GIBBS and CANDACE WALTON, Defendants, and serve their Objections and Responses to Plaintiff Pentex Foundation's First Set of Admissions, pursuant to Rule 198 of the Texas Rules of Civil Procedure, as follows:

### PRELIMINARY STATEMENTS

1.     These responses and objections reflect the current state of Defendants' investigation concerning the discovery request that Plaintiff has propounded. Defendants are still in the process of investigating the facts and attempting to conduct depositions relating to this action. To date, Plaintiff and Intervenor have refused to set any deposition dates. Accordingly, Defendants reserve the right to supplement these responses and objections with subsequently discovered information. Furthermore, these responses and objections are given without prejudice to the right of Defendants to use or to rely upon at any time subsequent to discovered information or documents.

2.      Defendants produce the Admissions subject to their objection that no discovery is due until Plaintiff's authority regarding this matter is determined.  Defendants object to the use of these Admissions pending settlement of the issue of Plaintiff's authority.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075 - Office
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND
CANDACE WALTON



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure, to the following party on this 27th day of June, 2014:

Pentex Foundation **and**                    Via email
GBU Family and Friends Trust
c/o Scott Smith
P.O. Box 354
Sherman, TX  75091-0354

Howard Kirk Gibbs                    Via email
4360 Western Center Boulevard
No. 205
Fort Worth, TX  76137

_____
Christy L. Lee

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS     CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*     -3-

128

## EXHIBIT "A"–Facts to be Admitted

1.  The Contract was signed by Candace, Ken, Howard and Barcroft on May 10, 2005.

    Admit.

2.  Candace received and accepted consideration either directly from, or as a result of, the Contract.

    Object, as this Request is vague and ambiguous as to consideration in question and calls for legal interpretation of the validity of the Contract. Cannot admit or deny.

3.  Ken received and accepted consideration either directly from, or as a result of, the Contract.

    Object, as this Request is vague and ambiguous as to consideration in question and calls for legal interpretation of the validity of the Contract. Cannot admit or deny.

4.  Prior to filing the Answer, Candace had never challenged the validity of the Contract.

    Deny.

5.  Prior to filing the Answer, Ken had never challenged the validity of the Contract.

    Deny.

6.  Pursuant to the Contract, Candace sold 30% of all land and other property that came to her through her inheritance from the Estates to Barcroft for the consideration provided therein.

    Object, as Request calls for legal interpretation. Subject to that objection, admit.

7.  Pursuant to the Contract, Ken sold 30% of all land and other property that came to his through her inheritance from the Estates to Barcroft for the consideration provided therein.

    Object, as Request calls for legal interpretation. Subject to that objection, admit, under the presumption that the stated "her" in fact refers to "Ken's inheritance."

8.  Barcroft has rendered, and Candace received or benefitted from, the consideration due Candace from Barcroft under the terms of the Contract.

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS          CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*          -4-

129

Deny.

9. Barcroft has rendered, and Ken received or benefitted from, the consideration due Ken from Barcroft under the terms of the Contract.

Deny.

10. Pursuant to the terms of the Contract, Barcroft was required to furnish a licensed attorney to pursue the collection of the Estates.

Admit.

11. Barcroft did furnish a licensed attorney to pursue the collection of the Estates.

Admit in part; deny in part. Barcroft stated that he drafted all related legal documents and provided that he had a law degree and could legally draft such documents. It is unknown which, if any, attorney pursued collections from the Estates.

12. Barcroft himself or someone on his behalf paid the entire fee of the licensed attorney engaged to pursue the collection of the Estates.

Object, as Request calls for information beyond the scope of our knowledge. Cannot admit or deny.

13. Barcroft has not breached the Contract.

Deny. If the Contract is legal, Barcroft most certainly breached it.

14. Pentex Foundation has not breached the Contract.

Deny. If the Contract is legal, and if Pentex Foundation was legally assigned the interest as Pentex alleges, Pentex most certainly breached the Contract.

15. Candace signed the Contract under oath.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

16. Ken signed the Contract under oath.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

17. Candace signed the Contract before a notary public.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to this objection, admit.

18. Ken signed the Contract before a notary public.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to this objection, admit.

19. Pursuant to the Contract, any additional attorneys hired by Candace, Howard or Ken would be paid for solely by Candace, Ken and/or Howard.

Object, as Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit in part; deny in part. If Candace, Ken, or Howard wanted to pursue collection actions, then fees would be paid by each individual personally.

20. The Contract is valid and enforceable.

Deny.

21. Pursuant to the Contract, Candace agreed that should she break the terms of the Contract in any fashion, or attempt to render the Contract invalid in any way, which would require legal action to correct or enforce, that should Candace not prevail, she would pay all legal expenses of any type for herself, and for the prevailing party.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

22. Pursuant to the Contract, Ken agreed that should he break the terms of the Contract in any fashion, or attempt to render the Contract invalid in any way, which would require legal action to correct or enforce, that should Ken not prevail, he would pay all legal expenses of any type for himself, and for the prevailing party.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subjection to that objection, admit.

23. Pursuant to the Contract, Candace agreed that any dispute(s) concerning the Contract would be resolved in the courts of Fannin County, Texas.

Object, as this Request calls for legal interpretation of the validity of the Contract.

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS      CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*      -6-

Subject to that objection, admit in part; deny in part, as the Contract is vague and ambiguous as to disputes in question; also, disputes about Estate assets must be addressed in Tarrant County.

24. Pursuant to the Contract, Ken agreed that any dispute(s) concerning the Contract would be resolved in the courts of Fannin County, Texas.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit in part, deny in part, as the Contract is vague and ambiguous as to disputes in question; also, disputes about Estate assets must be addressed in Tarrant County.

25. Pursuant to the Contract, Candace agreed that the Contract was written with the intent to comply with the laws of the State of Texas; and, any provision found by a court of competent jurisdiction to be in non-compliance would be automatically amended to comply with said laws in such a manner as to keep the original intent of the provision as closely in place as possible.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

26. Pursuant to the Contract, Ken agreed that the Contract was written with the intent to comply with the laws of the State of Texas; and, any provision found by a court of competent jurisdiction to be in non-compfiance would be automatically amended to comply with said laws in such a manner as to keep the original intent of the provision as closely in place as possible.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

27. The Contract provides that its terms will be binding on heirs and assigns of the parties to the Contract.

Object, as this Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

28. Pursuant to the terms of the Contract, all parties agreed that all agreements between the parties were contained in writing in the Contract, and that no verbal agreements would be deemed valid unless contained in writing in the Contract.

Object, as this Request calls for legal interpretation of the validity of the Contract.



Subject to that objection, admit.

29. Pursuant to the terms of the Contract, all parties that all amendments to the Contract must be in writing, and signed by all parties to the Contract before a notary public.

Object, as Request is rendered incomplete. Cannot admit or deny.

30. The only document subsequent to the Contract that was signed by all four parties to the Contract before a notary public is the Family Settlement Agreement.

Admit.

31. Pursuant to the terms of the Contract, a business organization was to be formed and the only function of said business organization was to facilitate the agreement in the Contract.

Object, as Request calls for legal interpretation. Subject to that objection, admit.

32. Pursuant to the terms of the Contract, it was agreed that Barcroft would have a 50% vote in all decisions made with regards to the administration and management of the business organization formed pursuant to the terms of the Contract.

Object, as Request calls for legal interpretation. Subject to that objection, deny. Barcroft had a 50% vote, but not regarding the management of GWB Trust.

33. Pursuant to the terms of the Contract, it was agreed that any party could demand a split of the assets of the business organization at any time.

Object, as Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

34. The business organization created pursuant to the terms of the Contract is the GWB Trust.

Object, as Request calls for legal interpretation of the validity of the Contract. Subject to that objection, admit.

35. Pentex is the assignee of the rights of Barcroft under the Contract.

Object, as Request calls for information beyond the scope of our knowledge.

36. Pentex has exercised a 50% vote on decisions requiring a vote in the GWB Trust.

Deny. Barcroft has always exercised a 50% vote.

37. The GWB Trust was formed in November of 2008.

Admit.

38. Candace was aware, at the point in time when GWB Trust was formed, that Barcroft had sold his interest under the Contract.

Deny.

39. Candace was aware, at the point in time when GWB Trust was formed, that Barcroft had assigned his interest under the Contract.

Deny.

40. Ken was aware, at the point in time when GWB Trust was formed, that Barcroft had sold his interest under the Contract.

Deny.

41. Ken was aware, at the point in time when GWB Trust was formed, that Barcroft had assigned his interest under the Contract.

Deny.

42. Candace was aware, at the point in time when GWB Trust was formed, that the interest of Barcroft under the Contract was owned by Pentex.

Deny.

43. Ken was aware, at the point in time when GWB Trust was formed, that the interest of Barcroft under the Contract was owned by Pentex.

Deny.

44. Prior to filing the Answer, Candace had never objected to the assertion that Pentex was the owner of Barcroft's interest in the Contract.

Deny.

45. Prior to filing the Answer, Ken had never objected to the assertion that Pentex was the owner of Barcroft's interest in the Contract.

Deny.

46. Pentex was a voting member and beneficiary of the GWB Trust.

Admit in part; deny in part. Barcroft himself cast votes as Legal Representative for Pentex. Pentex Royalty Trust was Beneficiary.

47. Waymond James Walton was the first trustee of the GWB Trust.

Admit.

48. Waymond James Walton is the husband of Candace.

Admit.

49. Every distribution ever made by Waymond James Walton as trustee from the GWB Trust with respect to the Pentex beneficial share was made to Pentex Royalty Trust.

Object, as Request calls for information beyond the scope of our knowledge and no longer available. Subject to that objection, deny.

50. There is no document to create the GWB Trust signed by all four parties to the Contact.

Admit.

51. The trustee of the GWB Trust has accepted the money and assets due Pentex starting with the first distribution from the Estates, and including every distribution from the Estates.

Object. Cannot admit or deny, as Request calls for information beyond the scope of our knowledge.

52. Candace entered into the Family Settlement Agreement.

Object, as Request calls for legal interpretation. Subject to that objection, admit.



53. Ken entered into the Family Settlement Agreement.

Object, as Request calls for legal interpretation. Subject to that objection, admit.

54. In the Family Settlement Agreement, Candace represented that she had assigned a share of her inheritance to Barcroft.

Object, as Request calls for legal interpretation. Cannot admit or deny.

55. In the Family Settlement Agreement, Ken represented that he had assigned a share of his inheritance to Barcroft.

Object, as Request calls for legal interpretation. Cannot admit or deny.

56. The Family Settlement Agreement governs and controls assets and funds only until distribution to the heirs and beneficiaries, and after distribution, the Family Settlement Agreement does not control what a beneficiary does with his or her proceeds.

Object, as Request calls for legal interpretation. Subject to that objection, deny.

57. The terms of the Family Settlement Agreement are in relation to, and dictate only, those things that are in the Estates before distribution.

Object, as Request calls for legal interpretation. Subject to this objection, deny.

58 The terms of the Family Settlement Agreement have an effect on property of the Estates only until distribution.

Object, as Request calls for legal interpretation. Subject to this objection, deny.

59. John Skotnik is a licensed attorney by the State of Texas.

Admit.

60. A portion of the Pentex share in the Estate of Bert Gibbs, Deceased, was assigned by Ken, as Executor, directly from the Estate of Bert Gibbs, Deceased, to John Skotnik.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Subject to this objection, deny, as Pentex owns no share in the Estate of Burt Gibbs.

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS        CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*                  -11-

136

60. Barcroft's original share from the Estate of Bert Gibbs, Deceased, was decreased from the Estate of Bert Gibbs, Deceased, by the amount assigned to John Skotnik.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Subject to this objection, deny, as Barcroft does not own a share of the Estate of Bert Gibbs.

61. There was no written document provided to the Estate of Bert Gibbs, Deceased, from Barcroft or Pentex assigning a portion of the Pentex share from the Estate of Bert Gibbs, Deceased, to John Skotnik.

Deny.

62. Ken, as Executor, relied solely on the Contract to make the assignment to John Skotnik from the Estate of Bert Gibbs, Deceased.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Subject to this objection, deny.

63. Ken, as Executor, made the transfer to John Skotnik from the Estate of Bert Gibbs, Deceased, because he knew that Pentex owned Barcroft's share of the Estate of Bert Gibbs, Deceased, and because Barcroft agreed in the Contract to pay Skotnik's fees out of Barcroft's share from the Contract.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Subject to this objection, deny.

64. Pentex did not instruct Ken, as Executor, in writing, to pay its share from the Estate of Bert Gibbs, Deceased, to the GWB Trust.

Admit in part; deny in part. Barcroft instructed the Estate in writing to decrease his portion of GWB Trust in relation to John Skotnik.

65. Ken, as Executor, and signer of the Family Settlement Agreement as executor, has a fiduciary duty and responsibility to carry out the terms and conditions set forth in the Family Settlement Agreement.

Object, as Request is made for purposes of harassment and calls for legal interpretation. Cannot admit or deny.

66. Ken, as Executor, has a fiduciary duty distribute funds from the Estate of Bert Gibbs,



66. Ken, as Executor, has a fiduciary duty distribute funds from the Estate of Bert Gibbs, Deceased, in the proper amount to the proper beneficiaries.

   Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. The Request is made for purposes of harassment; also, it calls for legal interpretation. Cannot admit or deny.

67. Ken, as Executor, has a fiduciary duty to maintain an accounting of expenses and distributions of funds from the Estate of Bert Gibbs, Deceased.

   Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Request is made for purposes of harassment; also, it calls for legal interpretation. Cannot admit or deny.

68. Subsequent to the execution of the Family Settlement Agreement, Ken, as Executor, has used funds from the Estate of Bert Gibbs, Deceased to pay attorneys' fees that were owed by Candace.

   Object, as Request is made for purposes of harassment. Subject to this objection, deny.

69. Subsequent to the execution of the Family Settlement Agreement, Ken, as Executor, has used funds from the Estate of Bert Gibbs, Deceased to pay attorneys' fees that were owed by Ken.

   Object, as Request is made for purposes of harassment. Subject to this objection, deny.

70. Subsequent to the execution of the Family Settlement Agreement, Ken, as Executor, has used funds from the Estate of Bert Gibbs, Deceased to pay attorneys' fees that were owed by Howard Gibbs.

   Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subject to this objection, deny.

71. Ken, as Executor, has charged fees for hunting and shooting on real property owned by the Estate of Bert Gibbs, Deceased to his acquaintances and friends, and that he has kept that money for himself.

   Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subject to this objection, deny.

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS          CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*                                    -13-

138

72. Candace is aware that Ken, as Executor, has charged fees for hunting and shooting on real property owned by the Estate of Bert Gibbs, Deceased, to his acquaintances and friends, and that he has kept that money for himself.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subject to this objection, deny.

73. Ken, as Executor, has benefitted financially from real property owned by the Estate of Bert Gibbs, Deceased being used to raise cattle; and, that he kept all those gains for himself.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subject to this objection, deny.

73. Candace is aware that Ken, as Executor, has benefitted financially from real property owned by the Estate of Bert Gibbs, Deceased being used to raise cattle; and, that he kept all those gains for himself.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subject to this objection, deny.

74. The Family Settlement Agreement was signed by Ken on September 5, 2008.

Admit.

75. The Family Settlement Agreement was signed by Candace on September 5, 2008.

Admit.

76. The Family Settlement Agreement described that the "Gibb's Homeplace" consisted of 532 acres of land.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Subject to this objection, deny.

77. The Family Settlement Agreement required that the "Gibbs Homeplace" would be immediately placed on the market for sale at a current market price.

Object, as Request calls for information that is not relevant or likely to lead to the

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS          CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*                                            -14-

139

discovery of admissible evidence. Cannot admit or deny, as the Family Settlement Agreement is not clear.

78. Ken, as Executor, did not list the "Gibbs Homeplace" for sale for more than three years after he signed the Family Settlement Agreement.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Cannot admit or deny at this time, as it is unknown as to when the Gibbs' Homeplae was placed for sale.

79. Ken does not want to sell the land known as the "Gibbs Homeplace."

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subjection to this object, deny.

80. Candace is aware that Ken does not want to sell the land known as the "Gibbs Homeplace."

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subject to this objection, deny.

81. Candace has expressed in emails that she is aware that Ken does not want to sell the land known as the "Gibbs Homeplace."

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Also, Request is made for purposes of harassment. Subject to this objection, deny. Ken does not want to "fire sale" the property, but obtain fair market value.

82. Candace has stated in email that she has supported Ken's decision not to seek a sale of the home place at current market value.

Object, as Request calls for information that is not relevant or likely to lead to the discovery of admissible evidence. Subject to this objection, deny, as Candace has stated that the "Homeplace" should be sold at least at fair market value.

83. Candace has breached the Contract.

Object, as Request calls for legal interpretation as to the validity of the Contract. Subject to this objection, deny.

Subject to this objection, deny.

84. Ken has breached the Contract.

Object, as Request calls for legal interpretation as to the validity of the Contract. Subject to this objection, deny.

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*

CAUSE NO. CV-14-41665
-16-

CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## FIRST SUPPLEMENT TO ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS KENNETH VERN GIBBS AND CANDACE GIBBS WALTON

TO THE HONORABLE JUDGE OF THE COURT:

COME NOW, KENNETH "Ken" VERN GIBBS and CANDACE "Candy" GIBBS WALTON, Defendants, by and through their Counsel of Record, Law Offices of Christy Lee, P.C., and file this First Supplement to their Original Answer and No. 20 of their Affirmative Defenses, and would show the Court, as follows:

### I. DEFECTS IN LEGAL CAPACITY.

1. Pursuant to Rule 93.2 of the Texas Rules of Civil Procedure, Ken denies that Pentex Foundation or GBU Friends and Associates Trust (collectively, Pentex") has the legal capacity to sue him, and alternatively, Ken denies that Pentex sued him in the appropriate legal capacity. *See* Exhibit A, Affidavit of Kenneth Vern Gibbs.

2. By naming Defendants in their individual capacity, Pentex's Original Petition suggested that Defendants somehow controlled the amounts of distributions to them from the Estate of Burt Gibbs ("the Estate").

3. Ken is Independent Administrator of the Estate, which is currently in proceedings

in Statutory Probate Court No. 2, Tarrant County, Texas. Cause No. 2205-000126-2.

4. The Heirs litigated several years concerning the Estate, and the Family Settlement Agreement ("FSA") contained the terms to which the parties consented. The FSA was signed by all the Heirs to the Estate, including all three (3) defendants. Albert Barcroft ("Albert") also signed the FSA.

5. Albert allegedly transferred all of his interest in the FSA, Contract for Sale of Land ("the CSL"), and the Estate to Pentex. *See* Exhibit B.

6. The FSA contained provisions which concerned the Estate's distributions of the Defendants percentages of interest and the payment of attorneys' fees from the Estate. According to Pentex's Original Petition, from September or October 2008 until April 2014, the Estate reduced funds due Pentex by the cost of attorney fees that were the obligations of Defendants.

7. In September of 2008, when the FSA was executed, the matter of attorney fees was accounted for in the calculations, and all attorney fees distributions were made by the Estate.

8. At the time the distributions began from the Estate, neither Candy, nor Ken in his individual capacity held the power or authority to assign interest in the Estate to themselves, to calculate the percentages of distributions to themselves, to distribute the assets, or pay attorney fees. Neither Candy, nor Ken in his individual capacity now holds the power or authority to assign interest in the Estate to themselves or to others, including Pentex, to calculate the percentages of distributions to themselves, or to distribute Estate assets. Only the Independent Administrator had and has this authority.

## II. INVALID CONTRACT.

9. Pentex Original Petition argued that Defendants breached the CSL. The CSL addressed the sale to Albert of a percentage of the Defendants' interest in the Estate.



10.     Albert is the alter ego and Legal Representative of Pentex.  At the time the CSL was executed, Albert did not, and does not now, hold a license to practice law.  Albert represented himself to Defendants as possessing a law degree and being fully qualified to provide legal counsel and to draft legal documents.

11.     Albert fraudulently convinced Defendants of his ability to provide legal advice regarding the settlement of the Estate.  In this capacity as lawyer, Albert presented settlement terms to Defendants and persuaded Defendants to agree to the terms in the CSL, in which Albert was a party.

12.     On several occasion, Albert stated to Defendants that he himself drafted the CSL.

13.     Albert persuaded Defendants that signing the CSL was in their best interest.

14.     As a recipient of a portion of Defendants' proceeds from the Estate, Albert stood to profit greatly from the CSL.  In addition to his lack of authority to act as legal advisor to Defendants, Albert engaged in a serious conflict of interest with regard to the CSL.  Albert breached his fiduciary duty to Defendants through his simultaneous involvement with the CSL and the benefits he derived from it.

15.     The validity and legality of the CSL have not been determined and remain highly dubious.

### III. STATUTE OF LIMITATIONS.

16.     Pentex's Original Petition acknowledged that the FSA, executed in September 2008, "set the terms and conditions, as well as the respective shares due each heir, for the probate and disbursal" of the Estate.  Para. 19.  Pentex further maintained that Defendants unlawfully enriched themselves by violating the terms under which the distributions of the Estate were to be made. The specific terms in question addressed the way in which Defendants' payment of

attorney fees would be accomplished.

17. Pursuant to Section 16.004 of the Texas Civil Practice and Remedies Code, from the date of execution of a contract, a party has four (4) years to sue for breach of contract or debt.

18. The statute of limitations for Pentex expired roughly five (5) years ago in relationship to the CSL, and approximately two (2) years ago in relationship to the FSA.

19. There is no applicable extension to the statute of limitations, as many years ago Albert, acting in his self-claimed capacity of Legal Representative of Pentex, was cognizant of the fact that the Estate determined the amounts of disbursements based on Albert's own calculations.

20. As the author of the CSL, Albert was fully knowledgeable of the terms of the CSL at the time of its execution.

21. Per Provision 3.25(c) of the FSA, Albert also approved and ratified all the terms of the FSA, which detailed the methods and manner in which Estate distributions, including attorney fees, were to be issued to Defendants. Albert's notarized signature signaled his knowledge and acceptance of the calculations for the percentages of the distributions, including attorney fees.

## IV. THIRD PARTY DEFENDANT

22. Albert is "responsible third party," within the meaning of Texas Civil Practice and Remedies Sec. 33.011(6). Albert has always been the Legal Representative of Pentex. Albert "represented" Ken and Candy in their disputes with the Estate. Albert directed the Estate in its distribution of attorney fees and has accepted the allotted attorney fees, on behalf of Pentex, since 2008. If there is any wrongdoing to Pentex, it was caused by Albert, due to his negligent actions or omissions and his conduct.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND
CANDACE WALTON

First Supplement to Original Answer and Affirmative Defenses
of Defendants Kenneth Vern Gibbs and Candace Gibbs Walton
Walton and Gibbs vs. Miller, et al.

Cause No. CV-14-41665
-5-

166

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 23rd day of July, 2014:

Pentex Foundation and
GBU Family and Friends Trust
c/o Scott Smith, Attorney of Record
P.O. Box 354
Sherman, TX 75418

Via email per Rule 11 Agreement

Howard Kirk Gibbs
9929 Crawford Farm Drive
Fort Worth, TX 76244

Via email per Rule 11 Agreement

_____
Christy L. Lee

FIRST SUPPLEMENT TO ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES
OF DEFENDANTS KENNETH VERN GIBBS AND CANDACE GIBBS WALTON
WALTON AND GIBBS VS. MILLER, ET AL.

CAUSE NO. CV-14-41665

-6-

| | | |
|---|---|---|
| PENTEX FOUNDATION, | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## AFFIDAVIT OF KENNETH VERN GIBBS

I, Kenneth Vern Gibbs, having been first duly sworn, state the following:

1.    I am over the age of eighteen (18) years. I am Defendant in this Matter before the Court. I confirm that all of the following facts are true and correct.

2.    I am Independent Administrator of the Estate of my father, Bert Hughes Gibbs. The Estate probate is being heard before Probate Court No. 2, of Tarrant County, Texas. Cause No. 2005-0000126.

3.    On April 1, 2014, Pentex Foundation ("Pentex"), a.k.a. Albert Barcroft, a.k.a. GBU Friends and Associates Trust, filed the current case against Defendants, including myself, in their individual capacities. Pentex is suing me and my sister, Candace Gibbs Walton, for attorney fees that were paid by the Estate.

4.    I deny that Pentex has the legal capacity to sue me, and alternatively, I deny that Pentex sued me in the appropriate legal capacity

5.    The Family Settlement Agreement ("FSA") was signed by all the heirs to the Estate. Albert Barcroft also signed the FSA. The heirs litigated several years concerning the Estate, and the FSA was the settlement between the parties.

6.    FSA contained provisions which concerned the Estate's distributions of the heirs' percentages of interest and the payment of attorneys' fees. According to Pentex's Original Petition, from September or October 2008 until April 2014, the Estate reduced funds due Pentex by the cost of attorney fees that were the obligations of Defendants.

7.    In August and September of 2008, when the FSA was executed, the matter of attorney fees was accounted for in the calculations, and all attorney fee distributions were made by the Estate.

AFFIDAVIT OF KENNETH VERN GIBBS
*Pentex Foundation vs. Gibbs et al.*

CAUSE NO. CV-14-41665
-1-



148

8. At the time distributions from the Estate began, neither my sister, Candace, nor myself in my individual capacity had the power or authority to assign interest in the Estate to Defendants, to calculate the percentages of distributions to Defendants, or to distribute the assets.

9. Neither my sister, Candy, nor I myself in my individual capacity now have the power to alter the manner in which the Estate continues to distribute assets, including payment of attorney fees.

10. Therefore, I refute all accusations against me as advanced by Pentex in its Original Petition.

Further the Affiant saith not.

_____
Kenneth Vern Gibbs

SUBSCRIBED AND SWORN TO before me by Kenneth Vern Gibbs on this 2 3 day of July, 2014, to attest witness my hand and seal of office.

ANNA GREEN
Notary Public, State of Texas
My Commission Expires
September 06, 2017

_____
Notary Public in and for the State of Texas
My Commission expires: 9-5-17

AFFIDAVIT OF KENNETH VERN GIBBS          CAUSE NO. CV-14-41665
*Pentex Foundation vs. Gibbs et al.*                                      -2-

149                                                               Exhibit A

                                                               Page 2 of 2

# PENTEX FOUNDATION
## A Private Foundation of Panama, C.A.

December 18, 2013

To: Kenneth Vern Gibbs, Executor for the Estate of Bert Hughes Gibbs
4212 Wheeler, Ft. Worth, TX 76117

To: Rickey Brantley, Attorney for the Estate of Bert Hughes Gibbs
855 Texas St, Fort Worth, TX 76102

To: Scott Pelley, Attorney for the Estate of Bert Hughes Gibbs
707 West Washington, Sherman, TX 75092-5639

To: Jimmy Walker, Attorney, Permanent Guardian of Kathryn Gibbs
815 Walker, Suite 240, Houston, TX 77002-5762

Dear Mr. Gibbs, Mr. Brantley, Mr. Pelley and Mr. Walker:

This notice is to inform the Estates of Bert and Kathryn Gibbs ["Estates"] that the original 30% assignment titled **"Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or 'The Kathryn Houseworth Gibbs Irrevocable Trust'"** ["CSL"] to Al Barcroft has been transferred to GBU Friends and Associates Trust ["GBU"] from GWB Family and Friends Trust ["GWB"] effective November 26, 2013; and, that all future distributions relating to this 30% assignment by Kenneth Vern Gibbs, Candace Walton Gibbs and Howard Kirk Gibbs ["Gibbs Children"] to Al Barcroft should be remitted directly to GBU, 410 Anderson County Rd 154, Palestine, Texas 75801.

Item number 6 of the CSL provided for the creation of a business organization that would receive and distribute the 70% portion of the Estates' distributions owned by Kenneth Vern Gibbs, Candace Gibbs Walton and Howard Kirk Gibbs [collectively "Gibbs Children"] along with the 30% assignment to Al Barcroft; and GWB, a revocable trust, was created on or about November 7, 2008, in accordance with that requirement. The CSL

Notice of Transfer to GBU
Page 1 of 3

Exhibit ℬ

Page ___1___ of ___3___

further provided in the same paragraph *that any party may demand a split of the assets of said business organization at any time.* PENTEX FOUNDATION, a settlor of GWB and current assignee of the 30% assignment from Al Barcroft, has revoked its contribution to GWB and assigned its share of the assets residing in GWB to GBU. PENTEX FOUNDATIION hereby affirms that its share due from the Estates relating to the 30% assignment are now transferred to the GBU, and all future distributions relating to said 30% assignment by either Estate should be made payable to GBU.

In accordance with the Gibbs Family Settlement Agreement ["FSA"], Kip Gibbs was to receive 25% of the Estates of Bert and Kathryn Gibbs with the remaining 75% going to the Gibbs Children. In accordance with the FSA and the CSL, 22.5% of the distributions by the Estates is owned by and related to this original 30% assignment. However, 2.46% of the original 22.5% of the gross Estates is being paid directly to John Skotnik, leaving the assignee with 20.04% of the gross distributions of the Estates.

**THEREFORE, FROM THIS DATE FORWARD,** Notice and Demand is hereby made upon the Estates of Bert and Kathryn Gibbs, that from the date of this notice forward, that portion of all distributions made by the Estates of Bert and/or Kathryn Gibbs related to the original 30% assignment made by the Gibbs Children to Al Barcroft, and currently being paid to GWB Family and Friends Trust, be distributed and made payable to; and, be sent directly to:
**GBU Friends and Associates Trust**
**410 Anderson County Road 154**
**Palestine, Texas 75801**
The tax number for GBU Friends and Associates Trust is **38-7103561**.

If either Estate disagrees with the calculation referred to herein, or needs any further verification of any documents related to this transfer, please notify me immediately by e-mail to albertbarcroft@gmail.com, specifically identifying any mistake in the calculation and/or required verification; or, as to any reason why future distributions will not be made directly go GBU Friends and Associates Trust as requested.

On behalf of Al Barcroft, Pentex Royal Trust, PENTEX FOUNDATION, and/or RENHAW, INC., conjunctively and/or individually, I hereby stipulate that a photocopy of a scanned e-mail or fax of this document, and any attachments, may be used as originals for all legal purposes.

I hereby certify and affirm with my signature below under penalty of perjury under the laws of the United States of America that I am the legal representative for Pentex Royalty Trust, PENTEX FOUNDATION, and RENHAW, INC.; and, as such, I have the authority to make all legal decisions on their behalf. [28 USC § 1746(1)]

Further, Beverly Miller, Trustee of the GWB Family and Friends Trust, is in the possession of the original authorization for me to represent those entities; and, she will provide copies of same if necessary.

Dated and Signed this 18th day of December, 2013.

Albert Lynn Barcroft
In my personal capacity, and as legal representative for
PENTEX FOUNDATION, Pentex Royalty Trust, and
RENHAW, INC.

cc: Kenneth Vern Gibbs, Rickey J. Brantley, and Scott Pelley by United States Postal Service, Certified Mail, Return Receipt Requested to the addresses shown in the heading hereto.

cc: By e-mail to:
   Rickey Brantley at rickey@rickeybrantley.com
   Scott Pelley at spelley@npwlawfirm.com

152

Exhibit B
Page 3 of 3

 LAW OFFICES OF

CHRISTY L. LEE
Attorney



 225 E. FIREWEED LANE, STE. 200
ANCHORAGE, ALASKA 99503
MAIN: 907.339.9931
FAX: 800.437.7901

777 MAIN ST., STE. 600
FORT WORTH, TEXAS 76102
PHONE: 817.504.6075
FAX: 800.437.7901

clee@christyleelaw.com
www.christyleelaw.com

July 23, 2014

Clerk of the Court
101 E Sam Rayburn Drive, Suite 200
Bonham, TX 75418

    Re:    Cause No. CV-14-41665
           Pentex Foundation vs. Kenneth Vern Gibbs, et al.

To Whom It May Concern:

Enclosed is one (1) original document to file with the Court in the above-noted cause: First Supplement to Original Answer and Affirmative Defenses of Defendants Kenneth Vern Gibbs and Candace Gibbs Walton. Also enclosed is a copy of the document.

Please file the original document with the Court, and return the file-marked copy to the firm in the enclosed self-addressed, stamped mailer.

If you have any questions, please contact our office. Thank you for your assistance with this matter.

                            Very truly yours,

                            LAW OFFICES OF CHRISTY LEE, P.C.

                            Laura Hogins, Paralegal

Enclosures

## NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | |
| | § | FANNIN COUNTY, TEXAS |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS, *Defendants* | § | 336th JUDICIAL DISTRICT |

## PLAINTIFF'S AND INTERVENOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW, Pentex Foundation, Plaintiff, and Joshua Unger, Trustee of the GBU Friends and Associates Trust, Intervenor, pursuant to TEX. R. CIV. P. 166a, move the Court for Partial Summary Judgment in this suit against Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs, Defendants, and, would show the honorable court as follows:

## SUMMARY OF MOTION

1.     Movants and Defendants have a long history, going back to 2005, when they entered into a Contract whereby Movant's predecessors in interest were granted thirty percent of certain Estates.[1] The parties have performed under the contract for years, have made distributions, have recognized certain assignments, and have re-affirmed their respective positions in subsequent documents. However, two of the parties – Candace Walton and Kenneth Gibbs – have recently

---

[1]     Certain terms in this motion such as "Contract" and "Estates" are defined in this motion and capitalized for convenience.



MOTION FOR PARTIAL SUMMARY JUDGMENT .... PAGE 1



decided to change course and take actions that are inconsistent with their almost decade-old Contract. Movants seek a declaration that the terms of the original contract remain in effect, and confirming the parties' respective interests.

## UNDISPUTED FACTS

2.     On or about the 10th day of May, 2005, a Contract was entered into between Mr. Albert Barcroft and all three Defendants, whereby the Defendants each sold to Mr. Barcroft a thirty percent interest (the "Barcroft Interest") in specified estates and related interests.[2] Each Defendant remained an owner of a lesser portion of the Estates.[3] Intervenor is the present holder of the Barcroft

---

[2]     A true and correct copy of the Contract is submitted in the Binder of Exhibits in Support of Motion for Partial Summary Judgment as Plaintiff's Exhibit "1". The various estates are described in the Contract. For convenience they shall be referred to herein as "Estates." The existence of the Contract is not in dispute, as Defendants specifically refer to it in paragraph 9 of their Motion to Show Authority, etc., on file herein. Movants request that the Court take judicial notice of the contents of its own file. TEX. R. EVID. 201.

Also, it is an admitted fact. See, Kenneth Gibbs and Candace Walton's Objections and Responses to Pentex Foundation's First Set of Admissions (referred to as "Kenneth and Candace's Admissions"), at number 1, 6 and 7. A true and correct copy of Kenneth and Candace's Admissions are submitted in the Binder of Exhibits in Support of Motion for Partial Summary Judgment as Plaintiff's Exhibit "3" See also, the Admissions in Response to Intervenor's Request for Admissions by Howard Gibbs (referred to as "Howard's Admissions"), at number 1-6, 14. A true and correct copy of the Admissions of Howard Gibbs are submitted in the Binder of Exhibits in Support of Motion for Partial Summary Judgment as Plaintiff's Exhibit "4"

[3]     The Contract provides Ken shall receive 23.34%, Candy shall receive 23.33%, and Howard shall receive 23.33% each in any distribution from the created business organization . Howard's Admissions 43.

MOTION FOR PARTIAL SUMMARY JUDGMENT .... PAGE 2

155



Interest.[4]

3.     For the purposes of this motion, a critical term of the Contract was the provision by which attorneys' fees would be incurred and paid. The Contract, on page 3, subsection c, provided:

> Barcroft, at his expense, will provide legal counsel by acquiring a licensed attorney for any reasonable and prudent actions necessary to the collecting of the funds from the sources stated herein; however **should Gibbs, or any of the individual Gibbs, feel that their/his/her interests are not properly served by the attorney Barcroft provides, that party will be responsible for the legal fees** of any other attorney(s) hired by Gibbs, or any individual Gibbs, to protect their/his/her interests.

(Emphasis added).

4.     The Contract, in paragraph 6, additionally envisioned the creation of "business organization" to facilitate the terms of the Contract.[5] In the Fall of 2008, the Defendants purportedly created a business organization known as GWB Family and Friends Trust ("GWB"), a purported trust, supposedly in compliance with the terms of the Contract to "help facilitate the terms of the contract".[6] Importantly,

---

[4]     The Barcroft Interest was conveyed by Albert Barcroft to Renhaw, Inc. Renhaw, Inc. in turn subsequently assigned the Barcroft Interest to Pentex Foundation. Pentex Foundation in turn subsequently assigned the Barcroft Interest to the GWB Trust, but later revoked that assignment and assigned the interest to the GBU Friends and Associates Trust. Howard Admissions at number 21.

[5]     Kenneth and Candace's Admissions, at number 31; Howard's Admissions at number 17.

[6]     There is no document signed by all four parties to the Contract to set up the GWB Trust. Kenneth and Candace's Admissions at number 50; Howard's Admissions at number 16, 20, 30.

the Contract also provided, on page 4, that any party could demand a split of the assets out of the business organization at any time.[7]

4.    On or about September 5, 2008, a Family Settlement Agreement ("FSA") agreement was reached by the Defendants with respect to the Estates and how the Estates would be divided.[8] The Contract was specifically recognized and confirmed in the FSA, at page 33, in section 3.25 (c):

> Ken, Candy, and Howard Kirk represent that they have assigned an interest to Al Barcroft, who approves and ratifies all of the terms and provisions of this Agreement as represented by his execution of this Agreement.

The FSA, page 22, section 3.15A, also restated and reconfirmed that Defendants were solely responsible for any attorney fees; thereby confirming that provision in the Contract. Naturally, the Family Settlement Agreement governs and controls the Estate assets only until distribution to the heirs and beneficiaries.[9] Obviously, after distribution the Family Settlement agreement does not control what a beneficiary does with his or her proceeds. *Id.*

---

[7]    Kenneth and Candace's Admissions at number 33; Howard's Admissions at number 15, 19, 44.

[8]    A true and correct copy of the FSA is submitted in the Binder of Exhibits in Support of Motion for Partial Summary Judgment as Plaintiff's Exhibit "2". Kenneth and Candace's Admissions at number 52, 53, 74, 75; Howard's Admissions at number 32-37.

[9]    Howard's Admissions at number 38.

MOTION FOR PARTIAL SUMMARY JUDGMENT .... PAGE 4

5.      Pursuant to the terms of the FSA, Defendants were each awarded 25% of the Estates, totaling 75% of the total of the combined Estates.  Each Defendant had previously sold 30% of their share to Barcroft under the Contract, meaning that the Barcroft Interest was 22.50% of the Estates (or 30% of 75%).[10]  The Plaintiff assigned 2.46% of Plaintiff's 30% to attorney John Skotnik; then leaving the Barcroft Interest at 20.04% of the Estates (being 22.50% less 2.46%).[11]  In sum, the Barcroft Interest in the Estates is presently at 20.04%.

6.      The parties performed under the terms of the Contact for years.[12]  All parties received distributions under the terms of the Contact since November of 2008.  Prior to initiating litigation in 2014, no party had ever challenged the Contract.[13]

## WHY PARTIAL SUMMARY JUDGMENT IS IMPORTANT

7.      The following is not submitted as part of the motion for partial summary judgment, but rather to demonstrate why entry of a partial summary judgment is time sensitive and will assist in resolution of the parties' disputes.

---

[10]     Kenneth and Candace's Admissions at number 34; Howard's Admissions at number 54..

[11]     Howard's Admissions at number 39-42, 52.

[12]     Howard Admissions at number 31.

[13]     Howard's Admissions at number 10.



8. Performance was not without issues though. In 2013, Candace Walton demanded an accounting from the trustee of the GWB trust.[14] As a result of that accounting Plaintiff discovered what it believed to be improprieties in distributions.[15] Specifically, Plaintiff believed that contingent attorneys' fees incurred solely by the Defendants were being deducted before distributions were being made to GWB. In Plaintiff's opinion, this was a wrongful dilution of the Barcroft Interest as distributed into GWB, because by virtue of the Contract the Barcroft Interest was not to be diminished by attorneys' fees incurred by the Defendants.

9. As a result, on November 26, 2013, Plaintiff invoked its right to demand a split of the assets of the "business organization" known as GWB. The trustee of GWB complied. However, Kenneth Gibbs and Candace Walton took issue, hired counsel, and counsel notified gas companies from which royalties are paid to Plaintiff to suspend payments. The end result is that royalties due to Plaintiff are being held hostage as a result of communications from counsel for Kenneth Gibbs and Candace Walton.

---

[14] See, the unsworn declaration of Danny Unger pursuant to TEX. CIV. PRAC. & REM. CODE § 132.001, submitted herewith as Plaintiff's Exhibit "5".

[15] Movants characterize this as Plaintiff's contentions. While Plaintiff believes them to be true and an issue for a different hearing, the validity of these contentions are irrelevant to the issues the subject of this motion. The only material fact is that Plaintiff made the demand.



## RELIEF SOUGHT

10.     Intervenor has a right to specific performance under the Contract. Intervenor seeks judgment confirming the percentage of ownership of the Intervenor's interest and that of Defendants, and a declaratory judgment that the Contract is valid and enforceable under the laws of the State of Texas.

11.     Considering all of the summary judgment proof presently before the Court, including this Motion and the exhibits attached hereto, Plaintiff and Intervenor claim that they have established each and every element of its cause of action against Defendants with respect to the issues raised, that Defendants have failed to raise a genuine issue as to any material fact herein, and that Plaintiff and Intervenor are entitled to partial summary judgment against Defendants on the issues raised in this Motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiff and Intervenor pray that the Court set this matter for hearing, and upon such hearing enter a partial summary judgment confirming the percentage of ownership of the Intervenor's interest and that of Defendants, and a declaratory judgment that the Contract is valid and enforceable under the laws of the State of Texas.

MOTION FOR PARTIAL SUMMARY JUDGMENT .... PAGE 7



Respectfully submitted,

By: _____
Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

## F I A T

The above and foregoing Motion shall be heard by the Court at _8:30_ o'clock

A .m. on the _30_ day of _Sept_ ,2014.

_____
JUDGE PRESIDING

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by email pursuant to agreement compliant with TEX. R.CIV. P. 11, upon Christy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this August 11, 2014.

_____
Scott Smith

MOTION FOR PARTIAL SUMMARY JUDGMENT .... PAGE 8



| | | |
|---|---|---|
| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | FANNIN COUNTY, TEXAS |
| | § | |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS, *Defendants* | § | 336ᵗʰ JUDICIAL DISTRICT |

## BINDER OF EXHIBITS IN SUPPORT OF
## PLAINTIFF'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT

COME NOW, Pentex Foundation, Plaintiff, and Joshua Unger, Trustee of

the GBU Friends and Associates Trust, Intervenor, submit this Binder of Exhibits

in Support of their Motion for Partial Summary Judgment, and submit the

following exhibits:

1.      Contract.

2.      Family Settlement Agreement.

3.      Kenneth and Candace's Admissions.

4.      Howard Gibbs Admissions

5.      Unsworn Declaration of Danny Unger



Respectfully submitted,

By: _____
Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by email pursuant to agreement compliant with TEX. R.CIV. P. 11, upon Christy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this August 11, 2014.

_____
Scott Smith



# Patty Kreider

**From:** Scott Smith <smithlaw@airmail.net>
**Sent:** Wednesday, September 03, 2014 2:27 PM
**To:** Patty Kreider
**Subject:** Re: Request for hearing on CV-14-41665 Pentex vs. Gibbs

*After* I filed the motion she voluntarily moved the date. It is moot now but another one is on its way to you. When you get it, I am fine with it being put on the September 30th setting.

Regards,
Scott

----- Original Message -----
**From:** Patty Kreider
**To:** 'Scott Smith'
**Sent:** Wednesday, September 03, 2014 2:22 PM
**Subject:** Request for hearing on CV-14-41665 Pentex vs. Gibbs

Scott,

Your request for a hearing on the defendant's disposition date has made its way to my desk. I'm assuming you want it long before the existing hearing date on September 30th since the disposition is set for the 25th. The following are possibilities for a 30 minute hearing:

- September 12th, 8:30 a.m.
- September 15th, 8:30 a.m.
- September 16th, 8:30 a.m. or 1:00 p.m.
- September 19th, 8:30 a.m.

If one of these dates will work for you and Ms. Lee (in light of her medical leave), let me know. If not we can go into the week of the 22nd, although that is pushing it and we have a criminal jury trial set to start that morning.

*Patty Kreider*
*Court Coordinator*
*336th Judicial District Court*
*101 E. Sam Rayburn Dr., Ste. 200*
*Bonham, Texas 75418*
*(903) 583-2863*

*Wisdom is the quality that keeps you from getting into situations where you need it.*

**From:** Scott Smith [mailto:smithlaw@airmail.net]
**Sent:** Tuesday, September 02, 2014 3:00 PM
**To:** Patty Kreider
**Subject:** Re: Atty Lee's medical Leave

Patty,

164                                     1



# Patty Kreider

**From:** Patty Kreider <pdkreider@fanninco.net>
**Sent:** Wednesday, September 03, 2014 2:23 PM
**To:** 'Scott Smith'
**Subject:** Request for hearing on CV-14-41665 Pentex vs. Gibbs

Scott,

Your request for a hearing on the defendant's disposition date has made its way to my desk. I'm assuming you want it long before the existing hearing date on September 30th since the disposition is set for the 25th. The following are possibilities for a 30 minute hearing:

- **September 12th, 8:30 a.m.**
- **September 15th, 8:30 a.m.**
- **September 16th, 8:30 a.m. or 1:00 p.m.**
- **September 19th, 8:30 a.m.**

If one of these dates will work for you and Ms. Lee (in light of her medical leave), let me know. If not we can go into the week of the 22nd, although that is pushing it and we have a criminal jury trial set to start that morning.

*Patty Kreider*
*Court Coordinator*
*336th Judicial District Court*
*101 E. Sam Rayburn Dr., Ste. 200*
*Bonham, Texas 75418*
*(903) 583-2863*

*Wisdom is the quality that keeps you from getting into situations where you need it.*

**From:** Scott Smith [mailto:smithlaw@airmail.net]
**Sent:** Tuesday, September 02, 2014 3:00 PM
**To:** Patty Kreider
**Subject:** Re: Atty Lee's medical Leave

Patty,

Her father is terminally ill. As I recall, her letter advising of her leave did indicate that she would still attend to this hearing.

Regards,
Scott

Sent from my iPad

165                                          1

On Sep 2, 2014, at 2:52 PM, "Patty Kreider" <pdkreider@fanninco.net> wrote:

You're welcome. I've still had no response from Ms. Lee's office. I'll copy you on any correspondence I have from her. Perhaps this was a family emergency. It doesn't make sense that they didn't file appropriate motions for continuance and work with your office to get these matters rescheduled.

*Patty Kreider*
*Court Coordinator*
*336th Judicial District Court*
*101 E. Sam Rayburn Dr., Ste. 200*
*Bonham, Texas 75418*
*(903) 583-2863*

*Wisdom is the quality that keeps you from getting into situations where you need it.*

**From:** Scott Smith [mailto:smithlaw@airmail.net]
**Sent:** Tuesday, September 02, 2014 1:41 PM
**To:** Patty Kreider
**Subject:** Re: Atty Lee's medical Leave

Thank you very much.

Scott

Sent from my iPad

On Sep 2, 2014, at 1:09 PM, "Patty Kreider" <pdkreider@fanninco.net> wrote:

> <image001.jpg>
> Yes, Scott. I still have the hearing set with yours and their matters. I was really trying to bring the defendant's notice of medical leave to your attention by copying you. There has been no request on their part for a continuance of their motions. I was trying to get a response as to their intentions, while keeping you in the loop.
>
> *Patty Kreider*
> *Court Coordinator*
> *336th Judicial District Court*
> *101 E. Sam Rayburn Dr., Ste. 200*
> *Bonham, Texas 75418*
> *(903) 583-2863*
>
> *Wisdom is the quality that keeps you from getting into situations where you need it.*

166                                                    2



**From:** Scott Smith [mailto:smithlaw@airmail.net]
**Sent:** Tuesday, September 02, 2014 1:02 PM
**To:** Patty Kreider
**Subject:** Re: Atty Lee's medical Leave

Patty,

Please remember that the Plaintiff and Intervenor also have matters set at that time.

Regards,
Scott

----- Original Message -----
**From:** Patty Kreider
**To:** clee@christyleelaw.com
**Cc:** smithlaw@airmail.net
**Sent:** Tuesday, September 02, 2014 10:38 AM
**Subject:** Atty Lee's medical Leave

**Re: Attorney for the Defendant Christ Lee's notice of medical leave of absence**

Good morning, Ms. Lee.

I am in receipt of your Notice of Leave indicating a 3 month Family Medical leave from August 25, 2014 through November 25, 2014.

A ½ day hearing was set (on June 19, 2014) for September 30, 2014, 8:30 a.m., on Defendant's motions to show authority, to change venue, rule 13, for sanctions, to strike intervention and to dismiss.

Is it now to be understood defendant no longer desires a hearing on these motions?

*Patty Kreider*
*Court Coordinator*
*336th Judicial District Court*
*101 E. Sam Rayburn Dr., Ste. 200*
*Bonham, Texas 75418*
*(903) 583-2863*

*Wisdom is the quality that keeps you from getting into situations where you need it.*

167



NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | FANNIN COUNTY, TEXAS |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS, *Defendants* | § | 336th JUDICIAL DISTRICT |

## MOTION TO QUASH OR FOR PROTECTIVE ORDER
## RELATING TO SUBPOENAS AND DEPOSITION NOTICES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Pentex Foundation, Plaintiff, and Joshua Unger, Trustee of

the GBU Friends and Associates Trust, Intervenor, in the above entitled and

numbered cause, file this Motion to Quash or for a Protective Order Relating to

Subpoenas sent by counsel for Defendants to the undersigned on August 28, 2014,

and in support of the order shows:

## SUBPOENAS THE SUBJECT OF THIS MOTION

1. On August 28, 2014, Defendants sent by facsimile four putative

subpoenas. A copy of the subpoenas is attached hereto as Plaintiff's Exhibit "A".

Each document purports to have witnesses appear and testify concerning the

Defendant's Motion to Show Authority on September 30, 2014.[1]

---

[1] Filed around April 24, 2014, as part of the Defendant's Original Appearances.

MOTION TO QUASH OR FOR PROTECTIVE ORDER RELATING TO SUBPOENAS AND DEPOSITION NOTICES ... PAGE 1



2.     Thereafter on September 2, 2014, Defendants issued four separate Subpoena Duces Tecum for Oral Depositions. A copy of the deposition subpoenas is attached hereto as Plaintiff's Exhibit "E".

## THE UNDERLYING MOTION TO SHOW AUTHORITY IS SPECIOUS

3.     The motion to show authority is specious and another in a long line of actions on the part of Defendants to cause their adversaries to spend money on attorney's fees. A similar motion was brought and considered in a Tarrant County Probate Court on July 31, 2014. At that hearing, Defendants called the undersigned to testify, and therein the undersigned produced a copy of his fee agreement with the Plaintiff. A copy of that fee agreement is attached hereto as Plaintiff's Exhibit "B". The undersigned testified as well that the designated representative for Plaintiff for purposes of litigation was Mr. Danny Unger. Finally, after the hearing the undersigned submitted a resolution from Plaintiff wherein his engagement was authorized. A copy of the letter to the Tarrant County Probate Court, with the resolution attached is attached hereto as Plaintiff's Exhibit "C".

4.     Most importantly, in the Tarrant County hearing, counsel for the



Defendants acknowledged that Pentex Foundation was valid.[2] Therefore, the only question has been whether counsel has been validly retained – not whether Pentex Foundation is a valid entity.

5.      As the Court might imagine, there are not many cases with respect to motions to show authority. This is because it is a procedure rarely used. One such case describes the appropriate response to such a motion:

> Typically, in response to a Rule 12 motion, an attorney satisfies his or her burden to establish their authority to prosecute or defend a suit through an affidavit from the client indicating the attorney was retained to provide representation in the case, and/or through testimony of the attorney.

*Patton Children's Trust v. Elmer*, 2008 Tex. App. LEXIS 6396 (Tex. App. – El Paso 2008). Here, by virtue of the Tarrant County proceedings, and in particular the resolution from Plaintiff specifically authorizing the engagement of the undersigned, counsel for Defendants has been aware that the undersigned has met his burden. Why then the subpoenas? It is simple harassment.

## THE SUBPOENAS FOR INDIVIDUALS IN GUATAMALA AND PANAMA ARE INVALID

6.      The subpoenas have each been sent to the undersigned, presumably as service upon the witnesses. One such witness is Albert Barcroft, who resides in

---

[2]      Rather than rely upon the vagaries of memory, a transcript of the testimony of the undersigned has been requested and will be made available at the hearing on this motion.



Guatamala and who is medically unable to travel.[3] Another is for Angelli Carrasco, a resident of Panama, who does not have a passport for international travel. The undersigned has repeatedly advised counsel for Defendants that he does not represent either of these individuals.

7.     As shown by Plaintiff's Exhibit "E", Pentex Foundation does not control either Mr. Barcroft. Pentex Foundation does not control Ms. Carrasco.[4] They are not employees of Pentex Foundation, and Pentex Foundation does not, and cannot control their activities, time or movement. Pentex Foundation cannot compel either to attend to legal matters in the United States.

8.     TEX. R. CIV. P. 176.5(a) permits service of a subpoena to an attorney for on "a party [who] is represented by an attorney." However, neither Mr. Barcroft, nor Ms. Carrasco are parties. Likewise, as Defendants have been repeatedly advised, they are not represented by the undersigned in this action. As such, sending subpoenas through the undersigned is not permitted under Texas law, and not effective service. *Wal-Mart Stores v. Rand*, 754 S.W.2d 153 (Tex.

---

[3]     See, the unsworn declaration by Albert Lynn Barcroft submitted herewith as Plaintiff's Exhibit "F", which is submitted pursuant to TEX. CIV. PRAC. & REM. CODE § 132.001, and correspondence from the physician for Mr. Barcroft attached hereto as Plaintiff's Exhibit "D".

[4]     An unsworn declaration from Ms. Carrasco was not available at the time of filing this motion because of the logistics in obtaining it from Panama. It is anticipated that it will be submitted prior to hearing on this motion.



1988); *In Re Reaud*, 286 S.W.3d 574 (Tex. App. – Beaumont 2009); *In Re: Grass*, 153 S.W.3d 659 (Tex. App. – Tyler 2004).

9.     With respect to the deposition notices, a notice for an oral deposition must state a reasonable time and place for the deposition. Tex. App. Civ. P. 199.2(b)(2). The place may be in (1) the county of the witness's residence; (2) the county where the witness is employed or regularly transacts business in person; (3) the county of suit if the witness is a party or designated as a party representative under Rule 199.2(b)(1); (4) the county where the witness was served with the subpoena, or within 150 miles of the place of service, if the witness is not a Texas resident or is a transient person; or (5) subject to the foregoing, at any other convenient place directed by the court in which the cause is pending. *Id.* "Convenience" is determined from the perspective of the witness. *In re Western Star Trucks US, Inc.*, 112 S.W.3d 756, 765 (Tex. App. – Eastland 2003). Here it is patently obvious that none of the categories apply to Mr. Barcroft or Ms. Carrasco, and equally obvious that international travel is not convenient to either Mr. Barcroft or Ms. Carrasco. The court may make any order in the interest of justice, including an order that the discovery not be undertaken at the time or place specified. TEX. R. CIV. P. 192.6(b)(3). However, the court's order may not contravene Rule 192.2. *Street*, 754 S.W.2d at 155.



10.    Further with respect to the deposition subpoenas, even if Defendant could depose Mr. Barcroft or Ms. Carrasco, the place of the depositions is neither reasonable, nor agreeable.  The undersigned has advised counsel for Defendants, repeatedly, that he does not represent Mr. Barcroft or Ms. Carrasco.[5]  The undersigned did not agree to produce  Mr. Barcroft or Ms. Carrasco.  Rule 199.4 of the Texas Rules of Civil Procedure states that a party may object to the time and place designated for a deposition by motion for protective order or by motion to quash the notice of deposition if filed by the third business day after service of the notice.  This motion is timely made, and Rule 199.4 stays the oral deposition until this motion can be heard.

### THE *DUCES TECUM* ARE OBJECTIONABLE

11.    Although service upon Joshau Unger as trustee, and Danny Unger as the designated representative of Plaintiff is valid, the *duces tecum* attached contains many objectionable requests.

### A.    Subpoena for Appearance in Court on September 30, 2014 for Danny Unger on behalf of Pentex Foundation and Joshua Unger, Trustee.

With respect to requests 1B and 1C, they are overly broad, essentially

---

[5]    The undersigned did confirm that he was available on October 13-15th, as were Mr. Joshua Unger, Trustee and Danny Unger, the designated representative for Plaintiff.



asking him to bring all documents associated with the Plaintiff and Intervenor.

This fails to direct him to any particular class or type of documents. With respect to Requests D and E, they relate to privileged communications.

### B. Subpoena for Appearance at Deposition for Danny Unger on behalf of Pentex.

Categories 2 and 3 are overly broad. This fails to direct him to any particular class or type of documents. With respect to Requests D and E, they are privileged communications. Categories 4 and 5 relate to privileged communications. Categories 6, 7, 8 are invasive of privacy, and tax returns are generally not discoverable, see *Hall v. Lawlis*, 907 S.W.2d 493 (Tex. 1995); *Chamberlain v. Cherry*, 818 S.W.2d 201 (Tex. App. – Amarillo 1991). Categories 12, 13, 14 and 15 are protected to the extend that they post-date anticipation of litigation and/or are protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Category 14 is further protected by the attoney/client privilege and work product exemption from discovery. Category 17 is outside the scope of discovery. Category 20 is vague.

### C. Subpoena for Appearance at Deposition for Joshua Unger, Trustee.

Category 4, 5, 6, 7, 8, 9, 10 and 11 are outside the scope of discovery.



Categories 6 and 18 is relates to privileged communications, including attorney client communications and matters which are exempt from discovery under the work product doctrine. Categories 11 and 12 are invasive of privacy, and tax returns are generally not discoverable, see *Hall v. Lawlis*, 907 S.W.2d 493 (Tex. 1995); *Chamberlain v. Cherry*, 818 S.W.2d 201 (Tex. App. – Amarillo 1991). Categories 16, 17, 18 and 19 are protected to the extend that they post-date anticipation of litigation and/or are protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding).

**D.    Subpoena for Appearance at Deposition for Albert Barcroft.**

Assuming that this subpoena is not quashed in its entirety, the following requests are objectionable. Categories 5, 6 and 19 invade the Plaintiff's attorney/client communication privilege. Categories 9 are overly broad, invasive of privacy, and tax returns are generally not discoverable, see *Hall v. Lawlis*, 907 S.W.2d 493 (Tex. 1995); *Chamberlain v. Cherry*, 818 S.W.2d 201 (Tex. App. – Amarillo 1991). Categories 16, 17, 18, 19, 20, 21 are protected to the extend that they post-date anticipation of litigation and/or are protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding).



Category 24 is outside the scope of discovery. Category 26 is ambiguous and vague.

## REQUEST FOR SANCTIONS

12. As a result of the filing of the subpoenas in support of Defendants' specious and frivolous motion to show authority and for witnesses that cannot be produced, the movants have been required to engage counsel to prepare and present this motion. Movants request that the Court grant they a recovery of their reasonable and necessary attorneys' fees as a sanction.

WHEREFORE, movants request that the Court quash the subpoeans for Mr. Barcroft and Mr. Carrasco in their entirety, and grant protection against the objectionable duces tecum with respect to Joshua Unger, Trustee and Danny Unger, and issue sanctions as may be appropriate, and other and further relief to which movants may be entitled.

Respectfully submitted,

By:_____
Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686



## CERTIFICATE OF CONFERENCE

Prior to issuance of the subpoenas the undersigned communicated with counsel for Plaintiff regarding this matter, advising that he did not represent Mr. Barcroft or Ms. Carrasco, and would not be able to produce them. The subpoenas followed anyway. Because of the three day rule proscribed by Rule 199.4, this matter is filed and presented to the Court for resolution.



_____
Scott Smith

## FIAT

The above and foregoing motion shall be heard by the Court on the _____ day of _____, 2014, at _____ o'clock, ___.m.

_____
JUDGE OR CLERK OF THE COURT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by email pursuant to agreement compliant with TEX. R.CIV. P. 11, upon Christy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this September 3, 2014.

_____
Scott Smith



PLAINTIFF'S
EXHIBIT
__A__

CAUSE No. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA

TO:  Danny Unger, Legal Representative of Pentex Foundation, c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear before the 336th Judicial District Court, Fannin County, at 101 E. Sam Rayburn Drive, Suite 200, Bonham Texas 75418, on the 30th day of September, 2014, at 8:30 o'clock a.m., to attend and give testimony on Defendant's Motion to Show Authority.

### ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

### INSTRUCTIONS

A.     If you object or otherwise decline to respond to any portion of a request, provide all documents for that portion of the request to which you do not object or decline to respond.

B.     If you object to a request on the grounds that it is too broad (i.e., that it

THE STATE OF TEXAS SUBPOENA                                                    CAUSE No. CV-14-41665
*PENTEX FOUNDATION VS. GIBBS, ET AL.*                                                            -1-

178



calls for both relevant and irrelevant information), provide such documents which are concededly relevant.

  C.  If you object to a request on the grounds that it would constitute an undue burden, provide such requested documents as can be supplied without undertaking an undue burden.

  D.  If you object to any portion of a request because of a claim of privilege, identify all persons to whom such documents were disclosed, the general nature of such documents, the nature of the privilege asserted, and the dates of any communications or documents from which such privilege is asserted. You are further directed to redact and disclose any portion of such document that is concededly not privileged.

## DUCES TECUM

1.  You are hereby requested to make available the documents listed below at the above-mentioned time and place.

  A. A true and correct copy of all documents showing that you are the legal representative of Pentex Foundation.

  B. A true and correct copy of all documents that you have which are associated with GBU Friends and Associates Trust.

  C. A true and correct copy of all documents associated with your tenure as Trustee of GBU Friends and Associates Trust.

  D. A true and correct copy of cancelled checks you or Pentex Foundation paid to Scott Smith.

  E. A true and correct copy of cancelled checks you or Pentex Foundation paid to John Skotnik.

THE STATE OF TEXAS SUBPOENA        CAUSE NO. CV-14-41665
*PENTEX FOUNDATION VS. GIBBS, ET AL.*        -2-

179

2.     The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.

Issued on August 28, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR DEFENDANTS

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-3-



## CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

### THE STATE OF TEXAS SUBPOENA

TO:    Angelli Martha Polanco Carrasco, President, Chairman, and Director of Pentex

Foundation, c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear before the 336th Judicial

District Court, Fannin County, at 101 E. Sam Rayburn Drive, Suite 200, Bonham Texas 75418,

on the 30th day of September, 2014, at 8:30 o'clock a.m., to attend and give testimony on

Defendant's Motion to Show Authority.

### ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without

adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court

from which the subpoena is issued or a district court in the county in which the subpoena is

served, and may be punished by fine or confinement, or both.

### INSTRUCTIONS

A.    If you object or otherwise decline to respond to any portion of a request,

provide all documents for that portion of the request to which you do not object or decline to

respond.



B.     If you object to a request on the grounds that it is too broad (i.e., that it calls for both relevant and irrelevant information), provide such documents which are concededly relevant.

C.     If you object to a request on the grounds that it would constitute an undue burden, provide such requested documents as can be supplied without undertaking an undue burden.

D.     If you object to any portion of a request because of a claim of privilege, identify all persons to whom such documents were disclosed, the general nature of such documents, the nature of the privilege asserted, and the dates of any communications or documents from which such privilege is asserted. You are further directed to redact and disclose any portion of such document that is concededly not privileged.

## DUCES TECUM

1.     You are hereby requested to make available the documents listed below at the above-mentioned time and place.

A. A true and correct copy of all Pentex Foundation incorporation documents.

B. All board meeting minutes associated with hiring John Skotnik.

C. All board meeting minutes associated with hiring Scott Smith.

2.     The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-2-



Issued on August 28, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR DEFENDANTS

CAUSE No. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA

TO:    Joshua Unger, Trustee of GBU Friends and Associates Trust, c/o Scott Smith, 120 South

Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear before the 336th Judicial

District Court, Fannin County, at 101 E. Sam Rayburn Drive, Suite 200, Bonham, Texas 75418,

on the 30th day of September, 2014, at 8:30 o'clock a.m., to attend and give testimony on

Defendant's Motion to Show Authority.

### ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without

adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court

from which the subpoena is issued or a district court in the county in which the subpoena is

served, and may be punished by fine or confinement, or both.

### INSTRUCTIONS

A.     If you object or otherwise decline to respond to any portion of a request,

provide all documents for that portion of the request to which you do not object or decline to

respond.

B.     If you object to a request on the grounds that it is too broad (i.e., that it

THE STATE OF TEXAS SUBPOENA                CAUSE No. CV-14-41665
*PENTEX FOUNDATION VS. GIBBS, ET AL.*                              -1-

184



calls for both relevant and irrelevant information), provide such documents which are concededly relevant.

C.     If you object to a request on the grounds that it would constitute an undue burden, provide such requested documents as can be supplied without undertaking an undue burden.

D.     If you object to any portion of a request because of a claim of privilege, identify all persons to whom such documents were disclosed, the general nature of such documents, the nature of the privilege asserted, and the dates of any communications or documents from which such privilege is asserted. You are further directed to redact and disclose any portion of such document that is concededly not privileged.

### DUCES TECUM

1.     You are hereby requested to make available the documents listed below at the above-mentioned time and place.

A. A true and correct copy of all documents showing that you are the Trustee of GBU Friends and Associates Trust.

B. A true and correct copy of all documents associated with your tenure as Trustee of GBU Friends and Associates Trust.

C. A true and correct copy of cancelled checks you or GBU Friends and Associates Trust paid to Scott Smith.

D. A true and correct copy of the engagement letter GBU Friends and Associates Trust signed with Scott Smith.

2.     The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.

Issued on August 28, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleclaw.com

ATTORNEY FOR DEFENDANTS

CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA

TO:   Albert Barcroft, c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear before the 336th Judicial District Court, Fannin County, at 101 E. Sam Rayburn Drive, Suite 200, Bonham Texas75418, on the 30th day of September, 2014, at 8:30 o'clock a.m., to attend and give testimony on Defendant's Motion to Show Authority.

## ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed in contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

## INSTRUCTIONS

A.   If you object or otherwise decline to respond to any portion of a request, provide all documents for that portion of the request to which you do not object or decline to respond.

B.   If you object to a request on the grounds that it is too broad (i.e., that it calls for both relevant and irrelevant information), provide such documents which are

THE STATE OF TEXAS SUBPOENA          CAUSE NO. CV-14-41665
*PENTEX FOUNDATION VS. GIBBS, ET AL.*          -1-

187



concededly relevant.

      C.      If you object to a request on the grounds that it would constitute an undue burden, provide such requested documents as can be supplied without undertaking an undue burden.

      D.      If you object to any portion of a request because of a claim of privilege, identify all persons to whom such documents were disclosed, the general nature of such documents, the nature of the privilege asserted, and the dates of any communications or documents from which such privilege is asserted. You are further directed to redact and disclose any portion of such document that is concededly not privileged.

## DUCES TECUM

1.      You are hereby requested to make available the documents listed below at the above-mentioned time and place.

    A. A true and correct copy of all Pentex Foundation documents showing your authority to act as its legal representative.

    B. A true and correct copy of all Pentex Royalty Trust documents showing your authority to act as its legal representative.

    C. A true and correct copy of all Renshaw, Inc., documents showing your authority to act as its legal representative.

    D. A true and correct copy of cancelled checks you, Pentex Foundation, Pentex Royalty Trust, and Renshaw, Inc., paid to John Skotnik.

    E. A true and correct copy of cancelled checks you, Pentex Foundation, Pentex Royalty Trust, and Renshaw, Inc., paid to Scott Smith.

2.      The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace

Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.

Issued on August 28, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleclaw.com

ATTORNEY FOR DEFENDANTS

189

PLAINTIFF'S
EXHIBIT
B

## AGREEMENT FOR LEGAL SERVICES

Scott Smith, Attorney At Law, agree to provide legal services to Pentex Foundation c/o Mario Guilermo Hurtarte Arrivillaga, Managing Director, Legal Affairs in connection with a lawsuit under cause number CV-14-41665 in the 336th Judicial District Court of Fannin County, Texas.

Scott Smith has the right to cease legal work and keep all funds received for legal services and expenses if Client does not make payments as requested by Scott Smith, attorney. This agreement does not necessarily include legal services on appeal. In the event of an appeal is determined to be necessary after trial, a new agreement will be negotiated. Any sums collected from client's opposing party will be credited against Client's obligation, but only when actually received by Scott Smith, attorney.

Client further agrees to pay all sums when invoiced, and that all sums are due and payable within ten days of invoice; and Client to pay interest on all past due sums at the rate of 1.5% per month; but in no event to exceed the maximum allowable interest allowed by law.

Client agrees to pay Attorney the usual hourly rate then in effect, which at the present time is $250 per hour and $45.00 per hour for support staff, plus payment of all expenses, as follows: Client agrees to pay all of the out-of-pocket expenses incurred in the representation, which expenses include any filing or service fees, court costs, subpoena costs, costs of photos, costs of court reporters, costs of reports, costs of witnesses, long distance phone charges, travel at the rate of 58.5 cents per mile, deposition transcription charges, postage and photocopy fees, and all other out-of-pocket expenses directly incurred in investigating or litigating this claim. The Client shall keep the Attorney advised of the Client's whereabouts at all times, shall appear on reasonable notice at any and all depositions and court appearances, and shall comply with all reasonable requests of the Attorneys in connection with the preparation of presentations of the claim.

In case any one or more of the provisions contained in this agreement shall be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforcibility shall not affect any other provision, and this agreement shall be construed as if such invalid, illegal, or unenforceable provision did not exist. This agreement constitutes the only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties respecting the subject matter.

As a client, you are entitled to make reasonable requests for information from the attorney's office concerning the status of your case. The attorney will make every effort to make sure these reasonable requests are responded to. The client must also realize, however, that time spent on the telephone with clients takes away from the time the lawyer and staff have available to perform legal services for all their clients. In order to balance your need for information with our need for time to work on your case, we have instituted the following phone call policy.

Phone calls will be taken during normal business hours of 8:30 a.m. to 5:00 p.m. with a one hour break for lunch. If the client leaves a message on a weekend or holiday, be aware that the call may not be returned until the next business day. Furthermore, in order to protect the personal time of the attorneys and their families as well as ensure their privacy, this office will not give out the unlisted home telephone numbers of the attorney's nor will they received any calls at home.

If the client needs to speak with an attorney directly, he will take the call if he is in the office and not with a client or preparing for court. If the attorney is not available, it is important for the client to leave a phone number where he or she can be reached as well as a time the client will be available -- and an alternate time if the attorney cannot reach the client at that time. If the attorney is out of the office for extended periods, he will call in periodically to check for messages and either call the client back directly or relay a message through the office staff. If the client consults with the attorney on the telephone, the client will be billed for the time spent discussing the case in the same way that a client would be billed if present in the office. Client further understands and agrees not to ask the office staff for legal advise, as they are not attorneys licensed to practice law in Texas and cannot give legal advice.

Attached hereto is a copy of the Texas Lawyer's Creed. It is understood by the Client and by T. Scott Smith, P.C., that the Texas Lawyer's Creed will be followed during all representation under this contract.

NO WARRANTIES OR REPRESENTATIONS AS TO THE OUTCOME OF ANY LITIGATION OR AS TO THE PERFORMANCE OF LEGAL SERVICES BY ATTORNEY HAVE BEEN MADE TO CLIENT, AND CLIENT AGREES AND UNDERSTANDS THAT NO PROMISES OR GUARANTEES CAN BE MADE AS TO THE OUTCOME OF THE REPRESENTATION OF CLIENT BY ATTORNEY.

At the conclusion of Client's litigation or representation, Client is entitled to the contents of Client's file except for Attorney's personal notes. If Client chooses to leave all or part of the file in Attorney's possession, Attorney has the

AGREEMENT FOR LEGAL SERVICES ... PAGE 1

190



authority to destroy Client's file after two years after the Judgment is signed or representation is concluded. By signing this agreement, Client agrees with this file retention policy.

If for any reason client deposits money in the Attorney's trust account, it is agreed by Client that the interest earned in the lawyer's trust account may be tendered to the Texas Equal Access to Justice Foundation, pursuant to the Interest on Lawyer's Trust Account (IOLTA) Program created by the Supreme Court of Texas.

Representation shall not commence until such time as a retainer of $10,000.00 is deposited with the Attorney.

**Client acknowledges that failure to pay shall constitute cause for withdrawal of attorney from client's case.**

## NOTICE TO CLIENTS

*The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.*

*Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.*

*For more information, please call 1-800-932-1900. This is a toll-free call.*

SIGNED AND AGREED on May 5, 2014.

PENTX FOUNDATION

By: Mario Guillermo Hurtarte Arrivillaga,
Managing Director, Legal Affairs

Scott Smith

AGREEMENT FOR LEGAL SERVICES ... PAGE 2

# THE TEXAS LAWYER'S CREED
## A MANDATE FOR PROFESSIONALISM

I am a lawyer. I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that Professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this Creed for no other reason than it is right.

## I. OUR LEGAL SYSTEM.

A lawyer owes to the administration of justice personal dignity, integrity and independence. A lawyer should always adhere to the highest principles of professionalism • I am passionately proud of my profession. Therefore, "My word is my bond." • I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life. • I commit myself to an adequate and effective pro bono program • I am obligated to educate my clients, the public and other lawyers regarding the spirit and letter of this Creed. • I will always be conscious of my duty to the judicial system.

## II. LAWYER TO CLIENT.

A lawyer owes to a client allegiance, learning, skill and industry. A lawyer shall employ all appropriate means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest. • I will advise my client of the contents of this Creed when undertaking representation. • I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible. • I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice. • I will advise my client that civility and courtesy are expected and are not a sign of weakness. • I will advise my client of proper and expected behavior. • I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct. • I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party. • I will advise my client that we will not pursue tactics which are intended primarily for delay. • I will advise my client that we will not pursue any course of action which is without merit. • I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel. • I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

## III. LAWYER TO LAWYER.

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct. • I will be courteous, civil, and prompt in oral and written communications. • I will not quarrel over matters of form or style, but I will concentrate on matters of substance. • I will identify for other counsel or parties all changes I have made in documents submitted for review. • I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties. • I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are cancelled. • I will agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client will not be adversely affected. • I will not serve motions or pleadings in any manner that unfairly limit another party's opportunity to respond. • I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses. • I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me. • I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel. • I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed. • I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court. • I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence. • I will not arbitrarily schedule a deposition, Court appearance, or hearing until a good faith effort has been made to schedule it by agreement. • I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party. • I will refrain from excessive and abusive discovery. • I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear. • I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable. • I will not seek sanction or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

## IV. LAWYER AND JUDGE.

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession. • I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol. • I will conduct myself in court in a professional manner and demonstrate my respect for the Court and the law. • I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility. • I will be punctual. • I will not engage in any conduct which offends the dignity and decorum of proceedings. • I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.• I will respect the rulings of the Court. • I will give the issues in controversy deliberate, impartial and studied analysis and consideration.• I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

*The Supreme Court of Texas and the Court of Criminal Appeals hereby promulgate and adopt "The Texas Lawyer's Creed - A Mandate for Professionalism" as attached hereto and made a part hereof. In Chambers, this 7th day of November, 1989. The Supreme Court of Texas.*

192



E-FILED
TARRANT COUNTY, TEXAS
8/11/2014 1:19:55 PM
MARY LOUISE GARCIA
COUNTY CLERK
BY: Sarah Vantassel

# SCOTT SMITH
## ATTORNEY AND COUNSELOR AT LAW

E-MAIL: smithlaw@airmail.net
FACSIMILE: (903) 870-1446
TELEPHONE: (903) 868-8686

120 SOUTH CROCKETT STREET
P.O. BOX 354
SHERMAN, TEXAS 75091-0354

August 5, 2014

Honorable Pat Ferchill
Judge, Tarrant County Probate
        Court Number Two
The Old Courthouse
100 W. Weatherford, Room 220A
Fort Worth, Texas 76196

RE:   *Candace Walton, et al. v. Beverly Miller, Trustee, et al.*; Cause
      Number 2005-0000126-2-D in the Probate Court Number Two of
      Tarrant County, Texas.

Dear Judge Ferchill:

As you may recall, I appeared for a special appearance on behalf of Pentex
Foundation on July 31, 2014. In connection therewith, I testified regarding a
motion to show my authority to represent Pentex Foundation. At that time, I
was unsure of the source of payment of my initial retainer. I have reviewed my
records and the payments were each in the sum of $5,000 from Pentex Royalty
Trust and Mr. Albert Barcroft. I am also attaching a copy of a resolution from
Pentex Foundation regarding my engagement as their counsel. I thank you for
your attention to this matter.

Yours very truly,

T. Scott Smith

TSS/bhs

cc:   Christy L. Lee, Esq.; Howard Kirk Gibbs, Pro Se.

PLAINTIFF'S
EXHIBIT
C
PENGAD 800-631-6989

193



## MINUTES OF THE BOARD OF DIRECTORS' MEETING OF PENTEX FOUNDATION

A meeting of the Foundation Council of PENTEX FOUNDATION, organized according to the laws of the Republic of Panama and registered to microjacket twenty nine thousand five hundred and thirty six (29536), document one million three hundred fifty four thousand eight hundred ninety three (1354893) of the Mercantile Section of the Public Registry, it was celebrated in the city of Panama, Republic of Panama on the fourth day (4th) of August of the year two thousand and fourteen (2014) at 10 o'clock in the morning (10 a.m.).

It was a meeting of all the known Directors:
Mrs. ANGELLI MARTHA POLANCO CARRASCO,
Mr. CARLOS ALBERTO RIVADENEIRA ESCUDERO and
FERNANDO ELIAS BARAHONA PEREZ who had prior waived the call.

The Chairman was Mrs. ANGELLI MARTHA POLANCO CARRASCO, and the Secretary Mr. CARLOS ALBERTO RIVADENEIRA ESCUDERO, both as holders of said positions.

The quorum having been confirmed, the Chairman opened the meeting stating that a question has emerged as to the authority of Mario Guilermo Hurtarte Arrivillaga, the Managing Director, Legal Affairs of PENTEX FOUNDATION, to hire legal counsel in the United States for affairs requiring litigation. Specifically, the hiring of one Scott Smith, Attorney at Law, to represent PENTEX FOUNDATION in ongoing litigation involving PENTEX FOUNDATION in Fannin County, Texas, U.S.A.

Upon motion presented, duly seconded, the following resolution was unanimously approved:

### IT IS HEREBY RESOLVED:

That the Board of PENTEX FOUNDATION verifies that Mario Guilermo Hurtarte Arrivillaga is authorized to hire legal counsel on behalf of PENTEX FOUNDATION to litigate any necessary legal matters that might arise in the United States. Further, it is resolved that Mario Guilermo Hurtarte Arrivillaga, as Managing Director, Legal Affairs of PENTEX FOUNDATION, was authorized to sign the "AGREEMENT FOR LEGAL SERVICES" hiring Scott Smith, Attorney At Law, to represent and provide legal services to PENTEX FOUNDATION on May 5, 2014, in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A. Further, by this resolution, PENTEX FOUNDATION confirms Scott Smith, Texas State Bar Number 18688900, as its attorney in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A.; and, that Scott Smith has represented PENTEX FOUNDATION in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A., since May 5, 2014.

By this resolution, it is further resolved that Mario Guilermo Hurtarte Arrivillaga, the Managing Director, Legal Affairs of PENTEX FOUNDATION, is authorized until further notice to make any further necessary changes in legal representation for PENTEX FOUNDATION in any legal proceedings in the United States, and to make any decisions affecting PENTEX FOUNDATION in any of those legal matters. The authority granted Mario Guilermo Hurtarte Arrivillaga is concurrent with, and does not limit or change, the authority granted Danny R. Unger through a Limited Power of Attorney from PENTEX FOUNDATION in a preceding resolution.

There not being any other matter to attend the meeting was adjourned at eleven (11:00) a.m. on the above mentioned date.

_Angelli Martha Polanco Carrasco_

The President, ANGELLI MARTHA POLANCO CARRASCO,



_(signature)_

---

The Secretary, CARLOS ALBERTO RIVADENEIRA ESCUDERO.

The undersigned, Secretary of the foundation named **PENTEX FOUNDATION** by this means certifies that the above minutes is a true copy of its original. It agrees with each and every one of its parts as the one that remains in the Book of Minutes of the foundation.

_(signature)_

---

The Secretary, CARLOS ALBERTO RIVADENEIRA ESCUDERO.





# Dr. Leonel Antonio Ramírez Montenegro

**MEDICINA INTERNA Y ELECTROCARDIOGRAFIA**

**CONSULTORIO**
Clínica Casa de Los Almendros
Calle de Atrás 9-68 Morales Izabal
Tel.: 7823-2060
**EMERGENCIAS:** 5412-0504 • E-mail:leoram_chey@yahoo.com

**Clínica Médica**
## Los Almendros
*Salud y más ..*

El infrascrito Dr. LEONEL ANTONIO RAMIREZ MONTENEGRO, médico y cirujano colegiado activo número ocho mil ciento treinta y cuatro, egresado de la Universdiad de San Carlos de Guatemala CERTIFICA: Que dentro de los archivos de este consultorio aparece registro del señor ALBERT LYNN BARCROFT. Quien padece HIPERTENSION ARTERIAL, FIBRILACION AURICULAR CRONICA Y OSTEOARTROSIS DEGENERATIVA DE RODILLAS, por lo que no puede viajar debido su codicíon de salud, la cual le impide movilizarse por si mismo, así como tambien representa riesgo para su vida dado que problema cardiovascualar he emperado en los últimos meses. A solicitud de la parte interesada se extiende la presente al veintiocho de Agosto del dos mil catorce.

Dr Leonel Ramirez
MEDICO INTERNISTA
Col 8 134

Dr. Leonel Ramirez Montenegro
Medicina Interna
Col. 8,134



**PLAINTIFF'S EXHIBIT**

**D**

PENGAD 800-631-6989



**Although an exact interpretation from Spanish to English of a document of this sort is virtually impossible, below is a general interpretation into English of the foregoing medical report and evaluation for your convenience:**

The undersigned Dr. LEONELANTONIO MONTENEGR RAMIREZ, physician and surgeon gives active number eight thousand one hundred thirty-four, graduated in the University of San Carlos De Guatemala CERTIFY that within the files of this office record appears Mr. Albert Lynn Barcroft who suffers HYPERTENSION, CHRONIC ATRIAL FIBRILLATION AND KNEE OSTEOARTHRITIS DEGENERATIVE therefore he is not able travel due to his health condition, this condition makes it difficult for him to move himself, and also this represents a life risk because the cardiovascular problem has worsened in recent months. At the request of the interested party present at the August 28 of two thousand fourteen runs.

Exhibit "C"



PLAINTIFF'S EXHIBIT E

CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA DUCES TECUM FOR ORAL DEPOSITION

TO:   Danny Unger, Legal Representative for Pentex Foundation, c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear at 120 South Crockett Street, Sherman, Texas 75091-0354, on the 13th day of October, 2014, at 10 o'clock a.m., to attend and give testimony at a deposition.

The deposition will be stenographically recorded by Merit Court Reporters, 307 West 7th Street, Ste. 1350, Fort Worth, Texas 76102, ( 817) 336-3042, or such other qualified court reporter as may be designated. Such deposition when taken will be used in evidence upon the trial of this cause. The deposition will continue from day to day until completed. All counsel and parties are invited to attend and cross-examine as they may deem proper.

### ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

## DUCES TECUM

YOU ARE FURTHER COMMANDED to produce and permit inspection and copying of documents or tangible things in your custody or control as follows (if not otherwise noted, the date is since the inception of Pentex Foundation or November 1, 2008, whichever is earlier):

1. A true and correct copy of all documents showing that you are the legal representative of Pentex Foundation.

2. A true and correct copy of all documents and emails that you have which are associated with GBU Friends and Associates Trust in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the Contract for Sale of Contract for Sale of Land, Mineral Rights and Royalties and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust," (the "CSL"), and Family Settlement Agreement.

3. A true and correct copy of all documents associated with your tenure as Trustee of GBU Friends and Associates Trust in regards to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, and Family Settlement Agreement.

4. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or Pentex Foundation paid to Scott Smith.

5. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or Pentex Foundation paid to John Skotnik.

6. A true and correct copy of all bank account information and bank statements in which Pentex Foundation holds any interest, showing all funds Pentex Foundation received from the Estate of Bert Gibbs, GWB Family and Friends Trust, Albert Barcroft, GBU Friends and Associates Trust, and Pentex Royalty Trust.

7. A true and correct copy of all United States federal income tax returns from 2008 to present filed by Pentex Foundation.

8. A true and correct copy of all foreign tax returns from 2008 to the present filed by Pentex Foundation.

9. A true and correct copy of your personal phone records from January 1, 2014, to the present.

10. A true and correct copy of your resume.

11. A true and correct copy of your professional certificates and qualifications to be a legal representative of an international company.

12. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Albert Barcroft in association with GWB Family and Friends Trust, Pentex Foundation, Pentex Royalty Trust, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1, 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

13. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Beverly Miller, and her attorneys

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-3-

Sharron Cox and Earl Hargrave, concerning GWB Family and Friends Trust, Pentex Foundation, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

14. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with John Skotnik concerning GWB Family and Friends Trust, Pentex Foundation, GBU Friends and Associates Trust, and the Estate of Bert Gibbs since January, 1 2008, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

15. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Howard Kirk Gibbs concerning GWB Family and Friends Trust, Pentex Foundation, and GBU Friends and Associates Trust since January, 1 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-4-

16. A true and correct copy of all payments you received (includes checks, cash, gold, silver, any other currency, or payment of any other kind) from GWB Family and Friends Trust, GBU Friends and Associates Trust, and Pentex Foundation.

17. A true and correct copy of your medical records associated with the accident in which you suffered an injury caused by a tree falling on your head.

18. True and correct copies of all drafts of the CSL since January 1, 2005.

19. True and correct copies of any and all assignments of the CSL to or from Pentex Foundation.

20. A true and correct copy of proof of all legal documents which attest to anyone's legal representation of Pentex Foundation.

21. A true and correct copy of any documents or emails associated with the transfer of 57.19% of GWB Family and Friends Trust interest in certain oil and gas mineral interests (held with Trio Consulting and Management, LLC; JW Operating Company; Devon Energy; and ConcoPhillips) to GBU Friends and Associates Trust.

22. A true and correct copy of all bank account information and bank statements in which GBU Friends and Associates Trust holds any interest, showing all funds GBU Friends and Associates Trust received from the Estate of Bert Gibbs; GWB Family and Friends Trust; Albert Barcroft; Trio Consulting and Management, LLC; JW Operating Company; Devon Energy; and ConcoPhillips.

The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.



Issued on September, 2, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS
AND CANDACE WALTON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure and Rule 11 Agreement, to the following parties on this 2nd day of September, 2014:

Pentex Foundation *and*
GBU Friends and Associates Trust
c/o Scott Smith, Attorney of Record
120 South Crockett Street
Sherman, TX 75091-0354

Via fax and email

Howard Kirk Gibbs
9929 Crawford Farm Drive
Fort Worth, TX 76244

Via mail and email

Christy L. Lee

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

CAUSE NO. CV-14-41665
-6-

203



| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA DUCES TECUM FOR ORAL DEPOSITION

TO:   Joshua Unger, Trustee for GBU Friends and Associates Trust, c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear at 120 South Crockett Street, Sherman, Texas 75091-0354, on the 13th day of October, 2014, at 10 o'clock a.m., to attend and give testimony at a deposition.

The deposition will be stenographically recorded by Merit Court Reporters, 307 West 7th Street, Ste. 1350, Fort Worth, Texas 76102, (817) 336-3042, or such other qualified court reporter as may be designated. Such deposition when taken will be used in evidence upon the trial of this cause. The deposition will continue from day to day until completed. All counsel and parties are invited to attend and cross-examine as they may deem proper.

### ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.



## DUCES TECUM

YOU ARE FURTHER COMMANDED to produce and permit inspection and copying of documents or tangible things in your custody or control as follows (if not otherwise noted, the date is since the inception of GBU Friends and Associates Trust or January 1, 2013, whichever is earlier):

1. A true and correct copy of all documents showing that you are the Trustee for the GBU Friends and Associates Trust.

2. A true and correct copy of all versions of the GBU Friends and Associates Trust document.

3. A true and correct copy of all documents and emails associated with your tenure as Trustee of GBU Friends and Associates Trust in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the Contract for Sale of Contract for Sale of Land, Mineral Rights and Royalties and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust," (the "CSL"), Family Settlement Agreement, and oil and gas mineral rights (including direct communication with Trio Consulting and Management, LLC, JW Operating Company; Devon Energy, and ConcoPhillips).

4. A true and correct copy of all documents showing the members of GBU Friends and Associates Trust, each member's interest, and the total amount each member has received in distributions since GBU Friends and Associates Trust inception.

5. A true and correct copy of any payment (including cancelled checks, money orders,

205

money transfers, etc.) you or GBU Friends and Associates Trust paid to Scott Smith.

6. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or GBU Friends and Associates Trust paid to John Skotnik.

7. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or GBU Friends and Associates Trust paid to Beverly Miller.

8. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or GBU Friends and Associates Trust paid to Albert or Pamela Barcroft, or anyone else in their immediate family.

9. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or GBU Friends and Associates Trust paid to Howard Kirk Gibbs or to anyone else in his immediate family.

10. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or GBU Friends and Associates Trust paid to any member of GBU Friends and Associates Trust.

11. A true and correct copy of all bank account information and bank statements in which GBU Friends and Associates Trust holds any interest, showing all funds GBU Friends and Associates Trust received from the Estate of Bert Gibbs; GWB Family and Friends Trust; Albert Barcroft; Trio Consulting and Management, LLC; JW Operating Company; Devon Energy; and ConcoPhillips.

12. A true and correct copy of all United States federal income tax returns from 2012 to the present filed by GBU Friends and Associates Trust.

13. A true and correct copy of your personal phone records from January 1, 2013, to the present.

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-3-

206



14. A true and correct copy of your resume.

15. A true and correct copy of your professional certificates and qualifications.

16. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Albert Barcroft in association with GWB Family and Friends Trust, Pentex Foundation, Pentex Royalty Trust, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1, 2013 in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

17. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Beverly Miller, and her attorneys Sharron Cox and Earl Hargrave, concerning GWB Family and Friends Trust, Pentex Foundation, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

18. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with John Skotnik concerning GWB Family and Friends Trust, Pentex Foundation, GBU Friends and Associates Trust, and the Estate of Bert Gibbs since January, 1 2008, in regard to monies received or

distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

19. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Howard Kirk Gibbs concerning GWB Family and Friends Trust, Pentex Foundation, and GBU Friends and Associates Trust since January, 1 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

20. A true and correct copy of all payments you received (includes checks, cash, gold, silver, any other currency, or payment of any other kind) from GWB Family and Friends Trust, GBU Friends and Associates Trust, and Pentex Foundation.

21. A true and correct copy of proof of all legal documents which attest to anyone's legal representation of Pentex Foundation.

22. True and correct copies of all drafts of the CSL since January 1, 2005.

23. A true and copy of any assignment of any interest in the CSL from or to GBU Friends and Associates Trust.

24. A true and correct copy of any documents or emails associated with the transfer of 57.19% of GWB Family and Friends Trust interest in certain oil and gas mineral interests (held with Trio Consulting and Management, LLC; JW Operating Company; Devon



Energy; and ConcoPhillips) to GBU Friends and Associates Trust.

The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.

Issued on September, 2, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS
AND CANDACE WALTON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure and Rule 11 Agreement, to the following parties on this 2nd day of September, 2014:

Pentex Foundation *and*                              Via fax and email
GBU Friends and Associates Trust
c/o Scott Smith, Attorney of Record
120 South Crockett Street
Sherman, TX 75091-0354

Howard Kirk Gibbs                                    Via mail and email
9929 Crawford Farm Drive
Fort Worth, TX 76244

Christy L. Lee



| | | |
|---|---|---|
| PENTEX FOUNDATION<br>PLAINTIFF, | )<br>)<br>) | IN THE DISTRICT COURT |
| VS. | )<br>)<br>) | 336TH JUDICIAL DISTRICT |
| KENNETH VERN GIBBS; AND<br>CANDACE GIBBS WALTON; AND<br>HOWARD KIRK GIBBS,<br>DEFENDANTS. | )<br>)<br>)<br>)<br>) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA DUCES TECUM FOR ORAL DEPOSITION

TO:   Albert Barcroft, legal representative and alter ego of Pentex Foundation c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear at 120 South Crockett Street, Sherman, Texas 75091-0354, on the 13th day of October, 2014, at 10 o'clock a.m., to attend and give testimony at a deposition. Albert Barcroft is be deposed to his personal knowledge of the following: (1) division and distribution of attorney fees from the Estate of Bert Gibbs in 2008, (2) drafting of the GWB Family and Friends Trust, (3) the Contract for Sale of Contract for Sale of Land, Mineral Rights and Royalties and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust," (the "CSL") (4) signing of the Family Settlement Agreement, and (5) Pentex Royalty Trust federal tax liens.

The deposition will be stenographically recorded by Merit Court Reporters, 307 West 7th Street, Ste. 1350, Fort Worth, Texas 76102, (817) 336-3042, or such other qualified court reporter as may be designated. Such deposition when taken will be used in evidence upon the trial of this cause. The deposition will continue from day to day until completed. All counsel and parties are invited to attend and cross-examine as they may deem proper.

210



## ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

## DUCES TECUM

YOU ARE FURTHER COMMANDED to produce and permit inspection and copying of documents or tangible things in your custody or control as follows (if not otherwise noted, the date is since the inception of Pentex Foundation, or November 1, 2008, whichever is earlier):

1. A true and correct copy of all documents showing that you had legal authority to act as legal representative of Pentex Foundation.

2. A true and correct copy of all documents showing that you had legal authority to act as legal representative of Pentex Royalty Trust.

3. A true and correct copy of all documents showing that you had legal authority to act as legal representative of Renshaw, Inc.

4. A true and correct copy of all emails and documents in which you corresponded with the Estate of Bert Gibbs concerning the distribution of attorney fees associated with Kenneth Gibbs, Candace Walton, and Howard Kirk Gibbs.

5. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) from you, Pentex Royalty Trust, Pentex Foundation, Renshaw, Inc., GBU Friends and Associates Trust, or any other entity in which you have an interest, paid to Scott Smith.

6. A true and correct copy of any payment (including cancelled checks, money orders,

money transfers, etc.) from you, Pentex Royalty Trust, Pentex Foundation, Renshaw, Inc., GBU Friends and Associates Trust, or any other entity in which you have an interest, paid to John Skotnik.

7. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you, Pentex Royalty Trust, Pentex Foundation, Renshaw, Inc., GBU Friends and Associates Trust, or any other entity in which you have an interest, paid to Beverly Miller.

8. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or Pentex Foundation received from GWB Family and Friends Trust.

9. A true and correct copy of all your United States federal income tax returns from 2008 to present filed by you.

10. A true and correct copy of all legal rulings in any lawsuit in which you have been a party since January 1, 2005.

11. A true and correct copies of Pentex Royalty Trust document.

12. A true and correct copies of United States federal income tax returns from 2008 to present filed by Pentex Royalty Trust.

13. A true and correct copy of your personal phone records from January 1, 2013, to the present.

14. A true and correct copy of your resume.

15. A true and correct copy of your professional certificates and qualifications to be a legal representative of an international company.

16. A true and correct copy of all communications (including such things as emails,

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-3-

212

documents, tape recordings, memorandums, etc.) with Scott Smith in association with GWB Family and Friends Trust, Pentex Foundation, Pentex Royalty Trust, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1. 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence. employer identification number. communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

17. A true and correct copy of all communication (including such things as emails, documents. tape recordings, memorandums, etc.) with Beverly Miller. and her attorneys Sharron Cox and Earl Hargrave, concerning GWB Family and Friends Trust, Pentex Foundation, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust existence. employer identification number, communications with the Internal Revenue Service. the CSL, Family Settlement Agreement. any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

18. A true and correct copy of all communications (including such things as emails. documents, tape recordings, memorandums, etc.) with John Skotnik concerning GWB Family and Friends Trust. Pentex Foundation. GBU Friends and Associates Trust. and the Estate of Bert Gibbs since January, 1 2008. in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence. employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement. any distributions of attorney fees from the Estate of

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-4-



Bert Gibbs, and the administration of the Estate of Bert Gibbs.

19. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Howard Kirk Gibbs concerning GWB Family and Friends Trust, Pentex Foundation, and GBU Friends and Associates Trust since January, 1 2008, in regards to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

20. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Earl Hargrave concerning the Estate of Bert Gibbs, including the administration of the estate and distribution of attorney fees since June 1, 2014, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust existence, employer identification number, communication with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

21. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Rickey Brantley or his office concerning the Estate of Bert Gibbs, including the administration of the estate and distribution of attorney fees since January, 1 2008.

22. True and correct copies of all drafts of the GWB Family and Friends Trust.

23. True and correct copies of all drafts of GBU Friends and Associates Trust.

214

24. A true and correct copy of any articles, books, blogs, or any communications in which you advised any person on how to avoid paying United States federal income taxes or avoiding participation in lawsuits.

25. True and correct copies of all drafts of the CSL since January 1, 2005.

26. A true and correct copy of proof of all legal documents in your possession which attest to your legal representative of any entity that have been provided to GWB Family and Friends Trust and to the Estate of Bert Hughes Gibbs.

The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure

Issued on September, 2, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.



Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS
AND CANDACE WALTON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure and Rule 11 Agreement, to the following parties on this 2nd day of September, 2014:

Pentex Foundation *and*                                   Via fax and email
GBU Friends and Associates Trust
c/o Scott Smith, Attorney of Record

THE STATE OF TEXAS SUBPOENA                               CAUSE NO. CV-14-41665
*PENTEX FOUNDATION VS. GIBBS, ET AL.*                     -6-



120 South Crockett Street
Sherman, TX 75091-0354

Howard Kirk Gibbs
9929 Crawford Farm Drive
Fort Worth, TX 76244

Via mail and email

Christy L. Lee

216



CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA DUCES TECUM FOR ORAL DEPOSITION

TO: Angelli Martha Polanco Carrasco, President, Chairman, and Director of Pentex Foundation c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear at 120 South Crockett Street, Sherman, Texas 75091-0354, on the 13th day of October, 2014, at 10 o'clock a.m., to attend and give testimony at a deposition. Angelli Martha Polanco Carrasco is be deposed to her personal knowledge of the following: (1) the incorporation of Pentex Foundation, (2) daily activities of Pentex Foundation, (3) all monies received from the Estate of Bert Gibbs, and GWB Family and Friends Trust, (4) the board minutes on or about August 4, 2014, in which you agreed to file suit against Kenneth Gibbs and Candace Gibbs in Fannin County, and (5) Albert Barcroft's and Danny Unger's legal authority to act on Pentex Foundation's behalf.

The deposition will be stenographically recorded by Merit Court Reporters, 307 West 7th Street, Ste. 1350, Fort Worth, Texas 76102, (817) 336-3042, or such other qualified court reporter as may be designated. Such deposition when taken will be used in evidence upon the trial of this cause. The deposition will continue from day to day until completed. All counsel and parties are invited to attend and cross-examine as they may deem proper.

217

## ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

## DUCES TECUM

YOU ARE FURTHER COMMANDED to produce and permit inspection and copying of documents or tangible things in your custody or control as follows (if not otherwise noted, the date is since the inception of Pentex Foundation, November 1, 2008):

1. A true and correct copy of all incorporation paperwork and annual board meeting minutes for Pentex Foundation.

2. A true and correct copy of your resume.

3. A true and correct copy of your professional certificates and qualifications to be a president, chairman, and board member of an international entity.

4. A true and correct copy of all documents showing Albert Barcroft's and Danny Unger's legal authority to act on Pentex Foundation's behalf.

5. True and correct copies of all drafts of the Contract for Sale of Land, Mineral Rights and Royalties and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust" (the "CSL") since January 1, 2005.

6. True and correct copies of the assignments of the CSL to and from Pentex Foundation.



The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.

Issued on September, 2, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS
AND CANDACE WALTON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure and Rule 11 Agreement, to the following parties on this 2nd day of September, 2014:

Pentex Foundation *and*                                    Via fax and email
GBU Friends and Associates Trust
c/o Scott Smith, Attorney of Record
120 South Crockett Street
Sherman, TX 75091-0354

Howard Kirk Gibbs                                          Via mail and email
9929 Crawford Farm Drive
Fort Worth, TX 76244

Christy L. Lee

**PLAINTIFF'S
EXHIBIT**
**F**

## Statement Given Under Penalty of Perjury

I, Albert Lynn Barcroft, being born on August 20, 1946 in Rotan, Texas, give the following statement under penalty of perjury under the laws of the United States of America.

I am a resident of Guatemala, Central America, and have resided here for more than five (5) years without interruption. I am aware that I have been asked to attend a hearing and other legal proceedings in the United States. I hereby certify and affirm the following for the record:

1.      I am not an employee of PENTEX FOUNDATION;

2.      I do not receive a salary or other compensation for the services I provide for PENTEX FOUNDATION;

3.      PENTEX FOUNDATION does not, and cannot, control my activities, time or movement, nor can it compel me to attend legal matters in the United States;

4.      I am currently under doctor's care for heart and arthritic conditions that have recently gotten worse;

5.      My doctors has informed me that any extended travel would be life threatening for me; and,

6.      While I am still technically an agent for PENTEX FOUNDATION, my duties have been greatly reduced in recent months due to my health, and I am not authorized to give testimony on behalf of PENTEX FOUNDATION at this point in time.

I hereby certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Further, I certify under penalty of perjury under the prevailing laws of the State of Texas that the statements in this document are true and correct, and not intended to mislead.

**Executed** this 3rd day of September, 2014, in San Marcos, Izabal, Guatemala, Central America.


Albert Lynn Barcroft
Agent/Legal Representative
PENTEX FOUNDATION



## NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
|        *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | |
| | § | FANNIN COUNTY, TEXAS |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS,     *Defendants* | § | 336th JUDICIAL DISTRICT |

### RESPONSE TO MOTION TO TRANSFER VENUE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Pentex Foundation, Plaintiff, and Joshua Unger, Trustee of the GBU Friends and Associates Trust, Intervenor, in the above entitled and numbered cause, file this Response to the Motion to Transfer Venue, and in support of the order shows:

1.     Venue is proper in Fannin County, Texas. This case concerns a contract entered into between the defendants and the predecessor in interest to Plaintiff and Intervenor. A true and correct copy of that contract is attached hereto as Plaintiff's Exhibit "A". It's authenticity is not in dispute.[1] This is a major transaction as defined by law. Paragraph 4 of the contract references a buyout provision of $5,000,000.

---

[1]     Attached hereto as Plaintiff's Exhibit "B" is a copy of a portion of the Response to a Request for Admissions, by which the Contract is acknowledged in Response to Request for Admission number 1.

RESPONSE TO MOTION TO TRANSFER VENUE ... PAGE 1



2.     Importantly the Contract addressed venue in a very direct and forceful manner in paragraph 9:

> Notwithstanding any other provisions of the law, it is expressly agreed that this contract shall be performable <u>only</u> in Fannin County, Texas; and, any dispute(s) will be resolved in the Courts of Fannin County, Texas.

(Emphasis original).

3.     Contractual venue provisions are mandatory and enforceable. TEX. CIV. PRAC. & REM. CODE § 15.020 states that contractual venue selection clauses may be enforceable in cases involving "major transactions" *Shamoun & Norman, LLP v. Yarto Intern.*, 398 S.W.3d 272, 293 (Tex. App. – Corpus Christi 2012) For purposes of this provision, a "major transaction" is a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than one million.

4.     Generally, an action arising from a major transaction must be brought in a particular county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county. TEX. CIV. PRAC. & REM. CODE § 15.020(b). Notwithstanding any other venue provision, an action arising from a major transaction may not be brought in a county if (1) the party bringing the action has agreed in writing that an action

222

arising from the transaction may not be brought in that county, and the action may be brought in another Texas county or in another jurisdiction; or (2) the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another Texas county or in another jurisdiction, and the action may be brought in that other county, under this "major transaction" provision or otherwise, or in the other jurisdiction. TEX. CIV. PRAC. & REM. CODE § 15.020. Section 15.020 is one of the mandatory venue provisions contained in chapter 15 of the Civil Practice and Remedies Code and is therefore enforceable by mandamus. Tex. Civ. Prac. & Rem. Code § 15.0642; *Shamoun*, 398 S.W.3d 293–294.

WHEREFORE, Pentex Foundation, Plaintiff, and Joshua Unger, Trustee of the GBU Friends and Associates Trust, Intervenor request that the Court deny the motion to transfer venue, and other and further relief to which movants may be entitled.

Respectfully submitted,

By: _____

Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by certified mail, return receipt requested number 7009 2250 0000 2311 4187 toChristy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this the 3rd day of September, 2014.

_____
Scott Smith

224





Denton County
Cynthia Mitchell
County Clerk
Denton, TX 76202

Instrument Number: 2005-61443

As

**Recorded On:** May 24, 2005          Misc General Fee Doc

**Parties:** GIBBS KENNETH VERN                    Billable Pages: 9

To                                                          Number of Pages: 9

**Comment:**

---

** Examined and Charged as Follows: **

| | |
|---|---|
| Misc General Fee Doc | 30.00 |
| Total Recording | 30.00 |

---

************ THIS PAGE IS PART OF THE INSTRUMENT ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law

**File Information:**                              **Record and Return To:**
Document Number  2005-61443
Receipt Number   196064                           AL BARCROFT
Recorded Date/Time  May 24, 2005 11:44A           P O BOX 188
                                                  TRENTON TX 75490

User / Station   J Morris - Cash Station 1

---



THE STATE OF TEXAS }
COUNTY OF DENTON }

I hereby certify that this instrument was FILED in the File Number sequence on the date/time printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas

County Clerk
Denton County, Texas

## Contract for Sale of Land, Mineral Rights and Royalties,
## and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs,
## Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn
## Houseworth Gibbs Irrevocable Trust"

This agreement between Albert Lynn Barcroft, hereinafter **"Barcroft"**, and Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs, hereinafter collectively also "Gibbs", is a contract for sale of thirty percent 30% of all land, mineral rights, royalties, and any other monies or assets which Gibbs, or any of the three individuals referred to collectively as "Gibbs" in this agreement, receives, or is due, from this date forward, either collectively or individually, as a result of any inheritance or estate proceeds, or any other property assets received from any trust(s) or transfers from Bert Hughes Gibbs, Mary L. Houseworth, and/or Kathryn G. Gibbs at any time, past, present, or future; including, but not limited to, the following:

a) All proceeds from the Estate of Bert Hughes Gibbs, and/or,

b) All property and/or assets of any kind which are received as a result of any past or future transference from Bert Hughes Gibbs, Kathryn G. Gibbs, or any trust to which Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, are beneficiary; and/or,

c) All inheritance of any kind and in any form by Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement; and/or;

d) All proceeds from any lawsuit which currently exists, or may arise, because of, or in connection with, the relationship(s) with Bert Hughes Gibbs, Kathryn G. Gibbs, Kip Hughes Gibbs, Sandra Faye Gibbs, "The Mary L. Houseworth Irrevocable Trust", "The Kathryn Houseworth Gibbs Irrevocable Trust", and any other trust(s) to which Gibbs are beneficiary(ies) or trustee(s) in any form; and/or,

e) All property and/or assets which may have been previously passed to them by Bert Hughes Gibbs, Kathryn G. Gibbs, "The Mary L. Houseworth Irrevocable Trust", and/or "The Kathryn Houseworth Gibbs Irrevocable Trust"; and/or,

f) All other property and/or assets passed to Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, from any source involving Bert Hughes Gibbs, Kathryn G. Gibbs, "The Kathryn Houseworth Gibbs Irrevocable

Contract for Sale of Land, Mineral Rights,            1            Initials of
Royalties and Other Assets and/or Monies                              all parties



Trust", and/or "The Kathryn Houseworth Gibbs Irrevocable Trust"; or, any other trust(s) or business organization(s) of any kind, which might be uncovered or discovered in the future; and/or,

g) All property and/or other assets in any trust or former trust; and, any property or other assets in any corporation, limited liability company, partnership(s), sole proprietorship(s), or any other business organization of any kind in which one or more of the Gibbs are owners, trustee(s) or beneficiary(ies).

h.) Specifically exempted from this agreement are any properties and/or other assets which are currently under the full control of Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement; provided, however, that if any legal work is required to aid in the collection of said assets, or the sale or control of said property, then said property or other assets shall be subject to the terms, conditions, and considerations set forth within this agreement as part of the property and/or assets listed above, and shall have no exemption to the terms and considerations of this agreement. Also exempted from this agreement are any personal items that were passed to Gibbs from their father, which were not included in the divorce distribution between their mother and father.

**This sale of 30% of all land, property and other assets described herein above shall be governed by the following terms, conditions, and considerations:**

1 Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, shall give their/his/her full cooperation to all efforts by Barcroft to collect any of the funds referred to in this agreement. Said cooperation shall include, but not be limited to, providing necessary information and documentation, being available to give testimony, and giving full support to the overall effort of collecting funds and assets from the sources stated herein.

2. Any party hereto shall have the right to order a complete inventory of all property and other assets described herein at any time, and all parties agree to provide full cooperation to such an effort. Any costs shall be born by the party requesting the inventory.



3. As full consideration, Barcroft agrees to provide, or has provided, the following:

a) Barcroft has paid to Gibbs a total of twenty-one (21) silver dollars minted by the United States Mint, photocopy of said coins attached hereto as **Exhibit "A"**, and incorporated herein for all purposes as real consideration under this agreement, and Gibbs hereby acknowledges receipt of same with this signing; and,

b) Barcroft will provide his services, knowledge and best efforts in the pursuit of all available funds, property, and/or other assets from the sources stated herein; and,

c) Barcroft, at his expense, will provide legal counsel by acquiring a licensed attorney for any reasonable and prudent actions necessary to the collecting of the funds from the sources stated herein; however, should Gibbs, or any of the individual Gibbs, feel that their/his/her interests are not properly served by the attorney Barcroft provides, that party will be responsible for the legal fees of any other attorney(s) hired by Gibbs, or any individual Gibbs, to protect their/his/her individual interests. In that event, it is agreed by all parties hereto that the attorney hired by Barcroft will represent only Barcroft in all future action(s). Furthermore, it is specifically agreed that said attorney hired by Barcroft will represent only Barcroft should a dispute arise between the parties hereto; and, Gibbs, individually and collectively, agree not to claim conflict of interest should said attorney represent Barcroft in a conflict between the parties hereto; and, Gibbs, collectively and individually, hereby waive their/his/her right to claim conflict of interest with regards to said attorney in such instance.

4. It is understood and agreed that Gibbs may cancel or nullify this contract only under the following conditions:

a) If Gibbs pays over to Barcroft the sum of five million dollars ($5,000,000.00 US) in full, in addition to any money received prior to said one time payment, as liquidated damages and full settlement of all consideration on Gibbs part.

b.) If Barcroft voluntarily abandons the effort to collect the funds from the sources stated herein; however, in this event, Barcroft shall retain all amounts already received, and will continue to receive any future proceeds from any of the property or other assets, and will retain his ownership interest in any property

Contract for Sale of Land, Mineral Rights
Royalties and Other Assets and/or Monies
   3

 



which is covered by this agreement and has been brought into the control of Gibbs, or is paying benefits of any kind at the time of Barcroft's abandonment; or, which is brought into the control of Gibbs, or start paying benefits at a later date, provided that said control or payments is a result of actions prior to Barcroft's abandonment.

5. If Barcroft dies or becomes incapacitated, the contract will remain in force, and the assets which have been accessed and are paying at the time of Barcroft's death, or which are later accessed as a result of Barcroft's efforts, will go to his heirs and assigns.

6. It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or assets covered herein shall be deposited into a bank account in that entity's name, and that all expenses necessary to the continuation of revenue being paid to the parties hereto (*i.e.* property taxes on the royalties or property covered herein, and any necessary expenses such as well upkeep, etc.) shall be deducted and paid as required before the 70/30 division agreed to in this contract. Barcroft shall have a 50% vote in the operation of said business organization; and, the only function of said business organization shall be to facilitate the agreement in this contract. Any monies paid out of said business organization, other than the agreed upon split between the parties, shall be agreed upon by all parties hereto. The division shall be divided on a basis of 30% to Barcroft, 23.34% to Kenneth Vern Gibbs, 23.33% to Candace Walton Gibbs, and 23.33% to Howard Kirk Gibbs, at each instance of dispersal to the parties. Any party may demand a split of the assets of said business organization at any time.

7. If either party should break the terms of this agreement in any fashion, or attempt to render the contract invalid, in any way which would require legal action to correct or enforce, the party found at fault, or the party failing to prevail, shall pay all legal expenses of any type for himself/herself, and for the prevailing party.

8 This contract is written to comply with the laws of the State of Texas; and, any provision found by a court of competent jurisdiction to be in non-compliance shall be



automatically amended to comply with said laws in such a manner as to keep the original intent of the provision as closely in place as possible. In no event shall any such findings on one provision affect any other provision within the contract.

9. Notwithstanding any other provision under the law, it is expressly agreed that this contract shall be performable only in Fannin County, Texas; and, any dispute(s) will be resolved in the courts of Fannin County, Texas. The signing hereto of this contract by all parties completes the sale of 30% of all property and assets of Gibbs to Barcroft.

10. This agreement shall be binding on all heirs and assigns of the parties hereto.

11. No lien(s) may be placed upon any of the property covered herein unless such lien(s) is/are agreed to by all parties hereto, reduced to writing, and signed by all parties hereto before a notary public.

12. All agreements between the parties hereto are contained in writing in this contract, and no verbal agreements shall be deemed valid unless contained in writing herein. All amendments hereto must be in writing, and signed by all parties before a notary public.

13. Albert Lynn Barcroft, Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs, the principal parties hereto, hereby agree to this contract in its entirety without reservation; and, each pledge never to challenge the terms, conditions, intentions, and/or considerations under this contract with their respective signing hereunder.

WITNESS OUR HANDS this 10th day of May, 2005.

_____
Albert Lynn Barcroft

_____
Kenneth Vern Gibbs

_____
Candace Gibbs Walton

_____
Howard Kirk Gibbs

 

## ACKNOWLEDGEMENT

**STATE OF TEXAS**

**Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Albert Lynn Barcroft**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.

Albert Lynn Barcroft

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

**STATE OF TEXAS**

**Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Kenneth Vern Gibbs**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.

Kenneth Vern Gibbs

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies

6

Initials of
all parties



**STATE OF TEXAS**

              **Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Candace Gibbs Walton**, known to me, did personally appear before me; and, after taking the oath, deposes and says that she is the woman who executed the foregoing instrument; and, further stated that she executed the same as her free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that she agrees to abide by all said provisions.

*Candace Gibbs Walton*

Candace Gibbs Walton

Subscribed and sworn to before me this 10th day of May in the year 2005.



RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

**STATE OF TEXAS**

              **Subscribed, Sworn, and Sealed**

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Howard Kirk Gibbs**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.

Howard Kirk Gibbs

Subscribed and sworn to before me this 10th day of May in the year 2005



RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies

       7

Initials of
all parties  KUb CBW N



Al Barcroft
c/o P.U. Box 188
Trenton, Texas
75490 (u.o)

Exhibit "A"    KUG CAW W



PLAINTIFF'S
EXHIBIT

B

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
## AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS

TO:    PENTEX FOUNDATION, Plaintiff, by and through its attorney of record, Scott Smith, 120 South Crockett Road, Sherman, Texas 75091-0354; email: smithlaw@airmail.net:

COME NOW, KENNETH GIBBS and CANDACE WALTON, Defendants, and serve their Objections and Responses to Plaintiff Pentex Foundation's First Set of Admissions, pursuant to Rule 198 of the Texas Rules of Civil Procedure, as follows:

### PRELIMINARY STATEMENTS

1.    These responses and objections reflect the current state of Defendants' investigation concerning the discovery request that Plaintiff has propounded. Defendants are still in the process of investigating the facts and attempting to conduct depositions relating to this action. To date, Plaintiff and Intervenor have refused to set any deposition dates. Accordingly, Defendants reserve the right to supplement these responses and objections with subsequently discovered information. Furthermore, these responses and objections are given without prejudice to the right of Defendants to use or to rely upon at any time subsequent to discovered information or documents.

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*

CAUSE NO. CV-14-41665
-1-



2.    Defendants produce the Admissions subject to their objection that no discovery is due until Plaintiff's authority regarding this matter is determined.  Defendants object to the use of these Admissions pending settlement of the issue of Plaintiff's authority.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075 - Office
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND
CANDACE WALTON

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS          CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*                                    -2-

235

## EXHIBIT "A"-Facts to be Admitted

1.  The Contract was signed by Candace, Ken, Howard and Barcroft on May 10, 2005.

    Admit.

2.  Candace received and accepted consideration either directly from, or as a result of, the Contract.

    Object, as this Request is vague and ambiguous as to consideration in question and calls for legal interpretation of the validity of the Contract. Cannot admit or deny.

3.  Ken received and accepted consideration either directly from, or as a result of, the Contract.

    Object, as this Request is vague and ambiguous as to consideration in question and calls for legal interpretation of the validity of the Contract. Cannot admit or deny.

4.  Prior to filing the Answer, Candace had never challenged the validity of the Contract.

    Deny.

5.  Prior to filing the Answer, Ken had never challenged the validity of the Contract.

    Deny.

6.  Pursuant to the Contract, Candace sold 30% of all land and other property that came to her through her inheritance from the Estates to Barcroft for the consideration provided therein.

    Object, as Request calls for legal interpretation. Subject to that objection, admit.

7.  Pursuant to the Contract, Ken sold 30% of all land and other property that came to his through her inheritance from the Estates to Barcroft for the consideration provided therein.

    Object, as Request calls for legal interpretation. Subject to that objection, admit, under the presumption that the stated "her" in fact refers to "Ken's inheritance."

8.  Barcroft has rendered, and Candace received or benefitted from, the consideration due Candace from Barcroft under the terms of the Contract.

KENNETH GIBBS AND CANDACE WALTON'S OBJECTIONS
AND RESPONSES TO PENTEX FOUNDATION'S FIRST SET OF ADMISSIONS  CAUSE NO. CV-14-41665
*Pentex Foundation vs. Kenneth Vern Gibbs, et al.*  -4-

236



| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## NOTICE OF LEAVE

COMES NOW, Christy L. Lee, of Law Offices of Christy Lee, P.C., counsel of record for Defendants Kenneth Vern Gibbs and Candace Gibbs Walton, and notice you that Defendants' Counsel will be on Family Medical Leave Act ("FMLA") for three (3) months, beginning Monday, August 25, 2014, and continuing through Tuesday, November 25, 2014, unless otherwise agreed to in writing. *See* attachment.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR DEFENDANTS

Notice of Leave
*Pentex Foundation vs. Gibbs, et al.*

237

Cause No. cv-14-41665
-1-



## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Notice of Leave was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 22nd day of August, 2014:

<u>Party:</u>                                    <u>Via:</u>

Pentex Foundation **and**                    Facsimile: 903-870-1446
GBU Friends and Associates Trust             Email: smithlaw@airmail.net
c/o Scott Smith
120 South Crockett Street
Sherman, TX 75091

Howard Kirk Gibbs                            Email: hkgibbs@gmail.com
4360 Western Center Blvd., No. 205
Fort Worth, TX 76157

_____
Christy L. Lee

Notice of Leave                                                          Cause No. cv-14-41665
*Pentex Foundation vs. Gibbs, et al.*                                              -2-

238



LAW OFFICES OF

CHRISTY L. LEE
Attorney



225 E. Fireweed Lane, Ste. 200
Anchorage, Alaska 99503
Phone: 907.339.9931
Fax: 800.437.7901

777 Main Street, Ste. 600
Fort Worth, Texas 76102
Phone: 817.504.6075
Fax: 800.437.7901

clee@christyleelaw.com
www.christyleelaw.com

August 21, 2014

Clerk of the court
101 E Sam Rayburn Drive, Suite 200
Bonham, TX 75418

Re:     Cause No. CV-14-41665
        *Pentex Foundation vs. Kenneth Vern Gibbs, et al.*
        Notification of Leave August 25, 2014 to November 25, 2014

Dear Clerk:

Regarding Cause No. CV-14-41665, *Pentex Foundation v. Kenneth Vern Gibbs, et al.*: Due to a serious illness in my immediate family, I will be taking Family Medical Leave Act ("FMLA") for three (3) months, beginning Monday, August 25, 2014, and continuing through Tuesday, November 25, 2014.

During this time, I will be attending hearings and trials currently docketed. I will make every effort to be available for other relevant hearings. However, while I am on leave, I request that the Court contact me for my schedule prior to setting any additional hearings in the matter.

Please let me know if you have any questions. Thank you for your assistance with this matter.

Very truly yours,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee

Enclosure

cc:     Howard Kirk Gibbs
       Scott Smith

239



LAW OFFICES OF

*Christy Lee*
P.C.

CHRISTY L. LEE
Attorney



225 E. Fireweed Lane, Ste. 200
Anchorage, Alaska 99503
Main: 907.339.9931
Fax: 800.437.7901

777 Main St., Ste. 600
Fort Worth, Texas 76102
Phone: 817.504.6075
Fax: 800.437.7901

clee@christyleelaw.com
www.christyleelaw.com

August 22, 2014

Clerk of the Court
101 E Sam Rayburn Drive, Suite 200
Bonham, TX 75418

      Re:    Cause No. CV-14-41665
             *Pentex Foundation vs. Kenneth Vern Gibbs, et al.*

Dear Clerk:

Enclosed is the original as well as a copy of the Notice of Leave, to be filed with the Court in the above-noted cause.

Please file the original document with the Court, and return the file-marked copy to the firm in the enclosed self-addressed, stamped mailer.

If you have any questions, please contact our office. Thank you for your assistance with this matter.

Very truly yours,

LAW OFFICES OF CHRISTY LEE, P.C.

Laura Hogins, Paralegal

Enclosures

240



CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## DEFENDANTS' MOTION TO COMPEL APPEARANCE AND TESTIMONY OF ANGELLI CARRASCO AT HEARING ON SEPTEMBER 30, 2014

Come now, Defendants Kenneth "Ken" Vern Gibbs and Candace "Candy" Walton, through their Counsel of Record, Law Offices of Christy Lee, P.C., and respectfully move the Court to compel the appearance and testimony of Angelli Martha Polanco Carrasco, Pentex Foundation's ("Pentex") President, Director, and Chairman, at the hearing for the Motion to Show Authority, which is scheduled in this matter for September 30, 2014. Ms. Carrasco's appearance and testimony are required to authenticate documents provided by Pentex's alleged Counsel, Scott Smith, as evidence of the authority to litigate this Cause, and to answer to the Court as to the legitimacy of this lawsuit.

### I. FACTS.

1.      On August 28, 2014, Ken and Candy served Ms. Carrasco with a State of Texas Subpoena, requiring her appearance at the hearing for the Motion to Show Authority scheduled in this matter for September 30, 2014. *See* Exhibit A. The Subpoena was issued as a result of Ken and Candy's repeated unsuccessful inquiries to Pentex as to its designated Representative for the lawsuit.



DEFENDANTS' MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ANGELLI CARRASCO AT HEARING ON SEPTEMBER 30, 2014
*PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-1-



2.     John Skotnik, original Counsel for Pentex, did not divulge the name of the representative of Pentex authorizing him to file the lawsuit on behalf of Pentex. As Successor Counsel to Pentex beginning in May 2014, Scott Smith also denied knowing the identity of the representative of Pentex authorizing the lawsuit. When pressed on the point, Scott stated that who would be representing Pentex had not yet been determined.

3.     On June 20, 2014, more than two and a half (2 ½) months following the filing of the suit on April 1, 2014, Scott refused to permit deposition of Pentex's Board of Directors, and refused to bend on the claim that Pentex still had not determined who would act as Pentex's representative regarding the suit. *See* Exhibit B.

4.     Also on June 20, 2014, disclosure produced by Pentex failed to provide a single name of any party from Pentex having knowledge of the relevant facts. The Plaintiff was listed simply "Pentex Foundation."

5.     On July 31, 2014, Scott testified under oath that he could not recall the name of the parties retaining him.[1] Scott was unrelenting on the point that Pentex's Board of Directors would not appear to testify. He also categorically stated that he did not represent Ms. Carrasco, had never met her, and indeed, that he had never even spoken or communicated with her in any way.

6.     On August 5, Scott sent the Honorable Pat Ferchill of Tarrant County Probate Court No. 2 a letter which contained purported Minutes of the Board of Directors' Meeting of Pentex Foundation, dated August 4, 2014, at 10 a.m. *See* Exhibit C. In his letter to Judge Ferchill, Scott provided that he had received his retainer from Albert Barcroft and Pentex

---

[1] Tarrant County Probate Court No. 2, Cause No. 2005-0000126-2-D, *Walton and Gibbs vs. Miller, et al.*

DEFENDANTS' MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ANGELLI CARRASCO AT HEARING ON SEPTEMBER 30, 2014                    CAUSE NO. CV-14-41665
*PENTEX FOUNDATION V. GIBBS, ET AL.*                                                                                   -2-

242

Royalty Trust, *not* from Pentex. The Minutes addressed the approval of Pentex's retention of Scott as Counsel in the current Cause. Signatures of both Ms. Carrasco and Secretary Carlos Alberto Rivadeneira Escurdero appeared far above the three (3) signature lines. Carlos Escudero signed the document in two (2) spaces. The signatures appeared identical, as if computer-generated, and the document did not appear legitimate.

7.      Based on the date of the Minutes, which was retroactive to Scott's entry into the matter, and upon the seeming lack of authenticity of the document, Ken and Candy subpoenaed Ms. Carrasco, as President, Director, and Chairman of Pentex. The Subpoena was appropriately served to Scott, as Pentex's Attorney of Record, due to Ms. Carrasco's tri-fold apex-level services to Pentex.

8.      On September 3, 2014, Pentex filed a Motion to Quash or for Protective Order Relating to Subpoenas and Deposition Notices. The Motion to Quash argued that Ms. Carrasco, a resident of Panama, does not have a passport for international travel, that travel from Panama, where she resides, to the Texas courts would be inconvenient, and that Counsel for Pentex had "repeatedly advised Counsel for Defendants that he does not represent" Ms. Carrasco. Scott also maintained that Ms. Carrasco is not an employee of Pentex and that Pentex has no control over Ms. Carrasco. *See* Para. 6 – 9. According to Scott, no affidavit from Ms. Carrasco accompanied the Motion to Quash because of the logistics in obtaining the document from Panama.[2] Scott contended that the sole reason for Ken and Candy's Subpoena to Ms. Carrasco was to harass Pentex for filing the suit.

---

[2] Scott did manage, however, to produce an unsworn Affidavit from Albert Barcroft, self-proclaimed Legal Representative of Pentex, who allegedly resides in Guatemala. Scott failed to explain how he could produce the Minutes supposedly signed by Ms. Carrasco, but not produce at least a faxed copy of a signed Affidavit from Ms.

Defendants' Motion to Compel Appearance and Testimony
of Angelli Carrasco at Hearing on September 30, 2014                    Cause No. CV-14-41665
*Pentex Foundation v. Gibbs, et al.*                                                                    -3-

243

## II. LAW.

9.      "A party is entitled to discovery that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence." *Monsanto Co. v. May*, 889. S.W.2d 274, 276 (Tex. 1994).

10.     Rule 200 of the Texas Rules of Civil Procedure permits a party to take the deposition or testimony of "any person," provided that the person has the right to protection "from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." Tex.R.Civ.P. 166b(5); *Monsanto Co. v. May*, 889 S.W.2d at 276.

11.     When a movant seeks to take testimony of a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit this, the trial court should first determine whether the movant has shown good cause that the official has unique or superior personal knowledge of discoverable information. *In re Burlington Northern and Santa Fe Railway Company*, 99 S.W.3d 323 (Tex.App.-Fort Worth 2003).

12.     A party seeking to prevent the testimony of an apex-level witness must move for protection and ***must file the corporate official's affidavit*** denying any knowledge of relevant facts. *Crown Central Petroleum Corporation and Crown Central Pipe Line Company v. The Honorable Carolyn Garcia, Judge, Respondent*, 904 S.W.2d at 128; *In re Alcatel USA, Inc.*, 11 S.W.3d 173 (Tex. 2000).

---

Carrasco.

13. Federal Rule 30 addresses apex-level testimony. Courts follow a three- (3-) to five- (5-) prong test as to whether a designated witness qualifies as a managing agent, including whether the individual (1) possesses general powers to exercise judgment and discretion in corporate matters; (2) can be reasonably relied on to give testimony; (3) can be expected to identify with the interests of the corporation; (4) is the highest authority in the organization; and (5) is empowered to provide services and decisions concerning matters involved in the litigation.

### III. ARGUMENTS.

14. Ken and Candy have the right to face Pentex's established presence in this case. This is a basic tenant in judicial proceedings. However, Pentex refused for months to name its representatives regarding the lawsuit. Two and a half (2 ½) months following Pentex's Original Pentex, Scott still denied being able to recall who provided a substantial retainer fee to his firm.

15. Pentex's consistent delays in naming its representative regarding the lawsuit points to a systematic attempt to stall proceedings until such time that the true responsible parties could be protected and safeguarded from the production of discovery and the necessity to answer to the Court for pursuing frivolous litigation. Thus far, Pentex has consistently maintained that this assumption is incorrect. Pentex must therefore clarify the situation by allowing Ms. Carrasco to testify to the facts, or the lawsuit should be dismissed.

16. The law permits Ken and Candy to question Ms. Carrasco, who holds not one (1), not two (2), but three – 3 – influential and decisive positions within Pentex. It is reasonable to believe that at least one of these three (3) high-ranking officials of an organization would notice a lawsuit alleging in excess of $1 million in damages to the organization. And it is also

equally reasonable to expect that a lawsuit alleging damages in excess of $1 million would definitely draw the attention of a single individual who serves in all three (3) capacities within an organization. In other words, if Ms. Carrasco is really President, Director, and Chair of Pentex, logically she should know of Pentex's suit against Ken and Candy.

17. According to Scott's Motion to Quash, Pentex has no control over Ms. Carrasco's actions. Ken and Candy enjoyed a chuckle or two over the idea that a president/director/chairman is not answerable to the very organization which the president/director/chair serves. As Scott is well aware, Pentex can remove its President/ Director/Chairman on its own accord. Pentex can also require its President/Director/Chairman to appear in lawsuits instigated by Pentex itself.

18. Under the standards of apex depositions and testimony, Ms. Carrasco meets all five (5) criteria. Ms. Carrasco possesses general powers to exercise judgment and discretion in the corporate matter; as President, Director, and Chairman, Ms. Carrasco can be called on to testify concerning facts related to administrative decisions concerning Pentex; Ms. Carrasco can be relied on to identify with the interest of Pentex; Ms. Carrasco is allegedly the highest authority in Pentex; and, if Ms. Carrasco is truly President, Director, and Chairman of Pentex, her general responsibilities to Pentex would presumably involve decisions concerning areas of administration such as litigation.

19. Pentex's contention that service through him to Ms. Carrasco was conducted incorrectly. This is a ridiculous assertion. Pursuant to Texas Rules of Civil Procedure, service to a party of an organization is appropriately effected through service to the organization's counsel. Scott is allegedly the attorney for the entity – Pentex – and therefore providing him

with service of Ms. Carrasco's Subpoena was not only appropriate, but required by the Texas Rules of Civil Procedure. Ms. Carrasco is President, Director, and Chairman of Pentex. Top of the Board, in fact. The figurehead of Pentex. If Ms. Carrasco should not be served through Scott, then through whom? Because Ms. Carrasco holds the tri-fold apex-level positions in Pentex, Scott in effect represents her, just as she represents Pentex.

20. Scott also aggressively objected to Ms. Carrasco's Subpoena on the basis that Ms. Carrasco lives in Guatemala. This is a ridiculous argument. Scott is fighting aggressively because he had no authority to file this lawsuit, and by his own admissions has never spoken to anyone at Pentex besides Albert Barcroft. In fact, it was Albert Barcroft who provided him the retainer to this lawsuit, not Pentex.

21. Pentex also objected to Ms. Carrasco's appearance at the September 30, 2014, because she does not have a passport. This excuse strains credulity. Ms. Carrasco is the President/Director/Chairman of a multi-national organization engaged in litigation over assets supposedly worth millions of dollars. It is reasonable to presume that Ms. Carrasco holds a passport allowing her to travel to the countries where Pentex conducts its business, especially to countries as close to Panama as is the United States.

22. For the same reason, Pentex's objection that travel from Panama would inconvenience Ms. Carrasco is ludicrous. Ken and Candy would like to remind Ms. Carrasco that, in the matter of convenience, judicial economy dictates that every party involved must cooperate to achieve resolution. Pentex sued Ken and Candy; Ken and Candy did not sue Pentex.

23. Ms. Carrasco's presence at proceedings is understandably expected, given her tri-fold positions in Pentex, the value of the assets at stake, and the indecisiveness about the responsible parties thus far displayed by Pentex.

24. Most importantly, Ms. Carrasco's appearance and testimony are also necessary to authenticate the signatures on the Minutes of the Board of Directors' Meeting of Pentex Foundation, dated August 4, 2014, at 10 a.m. In the copy of the Minutes produced to Ken and Candy, the document looks falsified, with signatures floating almost one-half (1/2") above the lines. The Minutes are dated August 4, 2014, four (4) months and three (3) days after Pentex filed its lawsuit. If such a meeting actually occurred, it would have necessarily occurred post-filing, and the curious timetable understandably raises concerns about the legitimacy of the filed suit.

25. Pentex claimed that the Subpoena of Ms. Carrasco was intended only for harassment purposes and to increase Pentex's attorney's fees. Pentex avoided defining harassment legally, or even generically. Pentex leveled the charge against Ken and Candy with no evidence, not even any supporting theories. How, one wonders, can it be harassment for defendants to seek the testimony of the individual who holds three (3) apex-level positions of the organization which filed suit against them? How is it harassment to interview the person with authority to pursue a lawsuit? Courts determined that it is not harassment to seek the testimony of a person who has personal knowledge of events relevant to a lawsuit. In this case, Pentex sued Ken and Candy, not the other way around. Pentex is the Plaintiff in this matter, and as such, the burden of proof falls on Pentex, including the burden of proving that the lawsuit is justifiable. Ken and Candy have the right to question their accuser about the purported Minutes,

and other issues related to this suit. And Ms. Carrasco must appear to substantiate the Minutes, as she is the only party who can attest that her signature on the document is genuine.

26. Pentex's claim that Ken and Candy subpoenaed Ms. Carrasco to increase Pentex's attorney's fees is similarly outlandish. As Defendants in this matter, Ken and Candy are simply enforcing their rights. If Pentex wishes to cut its attorney's fees, Pentex might consider the uncontested production of evidence and testimony to which Ken and Candy are rightfully entitled.

27. According to Scott, no affidavit from Ms. Carrasco accompanied the Motion to Quash because of the logistics in obtaining the document from Panama. What? Panama has a United States Embassy in which Ms. Carrasco could obtain a notarized statement. The law is very clear: a party seeking to prevent the deposition or testimony of an apex-level witness must move for protection and ***must file the corporate official's affidavit*** denying any knowledge of relevant facts. *Crown Central Petroleum Corporation and Crown Central Pipe Line Company v. The Honorable Carolyn Garcia, Judge, Respondent*, 904 S.W.2d at 128; *In re Alcatel USA, Inc.*, 11 S.W.3d 173 (Tex. 2000). Scott did not provide an affidavit because Scott has never spoken to Ms. Carrasco. Ms. Carrasco did not sign the Board Minutes, and she has no knowledge of this lawsuit. Scott continues to perpetrate a fraud on this Court, because, as he stated during the July 31, 2014, hearing in Tarrant County, he takes any client who can pay him a retainer. The fact remains that he must have authority from the entity to file a lawsuit. He did not obtain this, as no authority exists. Ms. Carrasco, the President, Director, and Chairman, is the only person who can verify if this is a lawsuit which Pentex provided authority to pursue.

28. Scott did not receive any funds from Pentex to pursue this lawsuit. He has received money only from Albert Barcroft, Pentex Royalty Trust, and GBU Friends and Associates Trust. Pentex has not paid Scott one dime for pursuing this lawsuit.

29. Ken and Candy are entitled to face their accuser, in this case, Pentex, and to question those with the authority to represent Pentex. The law is clear in that Ken and Candy are allowed to ask for Ms. Carrasco's testimony, as she meets the five- (5-) pronged test of managing agent of Pentex. As President/Director/Chairman of Pentex, Ms. Carrasco has the unique opportunity to provide highly relevant information concerning this matter and therefore must show herself to the Court and respond to examination concerning the legitimacy of the suit.

## IV. PRAYER FOR RELIEF.

Candy and Ken therefore respectfully pray that this Court:

30. Compel the appearance and testimony of Angelli Carrasco, and her production of relevant corporate documents attesting to Pentex's authority to file this lawsuit, at the hearing for the Motion to Show Authority, to be held on September 30, 2014; or,

31. In the alternative, stay the proceedings until such time that Angelli Carrasco can attend a hearing on the matter; and

32. Enter all other Orders and further relief, legal and equitable, that the Court deems appropriate in this matter.

DEFENDANTS' MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ANGELLI CARRASCO AT HEARING ON SEPTEMBER 30, 2014
PENTEX FOUNDATION V. GIBBS, ET AL.
250

CAUSE NO. CV-14-41665
-10-

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR PLAINTIFFS

## FIAT

The above and foregoing Defendants' Motion to Compel Appearance and Testimony of Angelli Carrasco at Hearing on September 30, 2014, is approved. The Motion shall be heard by the Court on the _____ day of _____, 2014, at _____ o'clock, _____.m.

_____
Presiding Judge or Clerk of the Court

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Defendants' Motion to Compel Appearance and Testimony of Angelli Carrasco at the Hearing on September 30, 2014, was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 15th date of September, 2014:

Party:

Via:

Howard Kirk Gibbs
4360 Western Center Blvd., No. 205
Fort Worth, TX 76157

Mail
Email: hkgibbs@gmail.com

Pentex Foundation, **and**
GBU Friends and Associates Trust
c/o Scott Smith, Attorney of Record
120 South Crockett Street
Sherman, TX 75091-0354

Email: smithlaw@airmail.net
Fax:

Christy L. Lee

DEFENDANTS' MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ANGELLI CARRASCO AT HEARING ON SEPTEMBER 30, 2014
PENTEX FOUNDATION V. GIBBS, ET AL.

CAUSE NO. CV-14-41665

-12-

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA

TO:   Angelli Martha Polanco Carrasco, President, Chairman, and Director of Pentex Foundation, c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear before the 336th Judicial District Court, Fannin County, at 101 E. Sam Rayburn Drive, Suite 200, Bonham Texas 75418, on the 30th day of September, 2014, at 8:30 o'clock a.m., to attend and give testimony.

### ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

### INSTRUCTIONS

A.    If you object or otherwise decline to respond to any portion of a request, provide all documents for that portion of the request to which you do not object or decline to respond.

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

CAUSE NO. CV-14-41665
-1-

253

Exhibit

Page___1___ of___3___

B. If you object to a request on the grounds that it is too broad (i.e., that it calls for both relevant and irrelevant information), provide such documents which are concededly relevant.

C. If you object to a request on the grounds that it would constitute an undue burden, provide such requested documents as can be supplied without undertaking an undue burden.

D. If you object to any portion of a request because of a claim of privilege, identify all persons to whom such documents were disclosed, the general nature of such documents, the nature of the privilege asserted, and the dates of any communications or documents from which such privilege is asserted. You are further directed to redact and disclose any portion of such document that is concededly not privileged.

## DUCES TECUM

1. You are hereby requested to make available the documents listed below at the above-mentioned time and place.

A. A true and correct copy of all Pentex Foundation incorporation documents.

B. All board meeting minutes associated with hiring John Skotnik.

C. All board meeting minutes associated with hiring Scott Smith.

2. The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure.

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

CAUSE NO. CV-14-41665
-2-

254

Exhibit 4

Page 2 of 3

Issued on August 28, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR DEFENDANTS

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

CAUSE NO. CV-14-41665
-3-

255

Exhibit $A$

Page___3___ of___3

Filters Used:

1 Tagged Record

# Email Report

Form Format

Date Printed: **9/12/2014**
Time Printed: **5:38PM**
Printed By: **LAURA**

| Date | 6/20/2014 | Time | 8:24AM | 8:24AM | Duration | 0.00 (hours) | Code | |
|---|---|---|---|---|---|---|---|---|

Subject    **Re: Pentex Admissions**                 Staff    **Christy L Lee**

Client       **Smith, Scott**            MatterRef **Litigation - Pentex Foundation vs. G** MatterNo

From       **smithlaw@airmail.net**

To          **Christy Lee; Howard Gibbs**

CC To

BCC To

Reminders            (days before) Follow   **N**   Done   **N**   Notify   **Y**   Hide   **N**   Trigger **N** Private **N** Status

Custom1                                       Custom3

Custom2                                       Custom4

Christy,

I am fine with accepting email as a form of service, provided we also agree to acknowledge receipt by email. Also, if you want discovery to end on December 3rd, that is fine with me. I am not sure the Judge actually was addressing discovery, but was just expressing her view that the case be ready to go by that date. I have modified the proposed scheduling order, and have attached it.

Enclosed please find the Response to the Request for Disclosure by Pentex Foundation.

With respect to depositions, I will not be able to agree to have the entire board of Pentex deposed. That is harassing and outside the scope of permissible discovery. Moreover, unless and until Mr. Barcroft is the designated corporate representative of Pentex, I cannot produce him. He may be a fact witness, but he is not my client. We have not yet determined who will be the corporate representative for Pentex in this litigation, but will do so in the near future.

Regards,

Scott

----- Original Message -----

From: Christy Lee

To: Scott Smith ; Howard Gibbs

Sent: Thursday, June 19, 2014 4:04 PM

Subject: RE: Pentex Admissions

256                                              1

**Exhibit** *B*

# SCOTT SMITH
### ATTORNEY AND COUNSELOR AT LAW

E-MAIL: smithlaw@airmail.net
FACSIMILE: (903) 870-1446
TELEPHONE: (903) 868-8686

120 SOUTH CROCKETT STREET
P.O. BOX 354
SHERMAN, TEXAS 75091-0354

August 5, 2014

Honorable Pat Ferchill
Judge, Tarrant County Probate
    Court Number Two
The Old Courthouse
100 W. Weatherford, Room 220A
Fort Worth, Texas 76196

       RE: *Candace Walton, et al. v. Beverly Miller, Trustee, et al.*; Cause Number 2005-0000126-2-D in the Probate Court Number Two of Tarrant County, Texas.

Dear Judge Ferchill:

As you may recall, I appeared for a special appearance on behalf of Pentex Foundation on July 31, 2014. In connection therewith, I testified regarding a motion to show my authority to represent Pentex Foundation. At that time, I was unsure of the source of payment of my initial retainer. I have reviewed my records and the payments were each in the sum of $5,000 from Pentex Royalty Trust and Mr. Albert Barcroft. I am also attaching a copy of a resolution from Pentex Foundation regarding my engagement as their counsel. I thank you for your attention to this matter.

               Yours very truly,

               T. Scott Smith

TSS/bhs

cc:    Christy L. Lee, Esq.; Howard Kirk Gibbs, Pro Se.

257

**Exhibit**

**Page** ___1___ **of** __3__

## MINUTES OF THE BOARD OF DIRECTORS'
## MEETING OF PENTEX FOUNDATION

A meeting of the Foundation Council of PENTEX FOUNDATION, organized according to the laws of the Republic of Panama and registered to microjacket twenty nine thousand five hundred and thirty six (29536), document one million three hundred fifty four thousand eight hundred ninety three (1354893) of the Mercantile Section of the Public Registry, it was celebrated in the city of Panama, Republic of Panama on the fourth day (4ᵗʰ) of August of the year two thousand and fourteen (2014) at 10 o'clock in the morning (10 a.m.).

It was a meeting of all the known Directors:
Mrs. ANGELLI MARTHA POLANCO CARRASCO,
Mr. CARLOS ALBERTO RIVADENEIRA ESCUDERO and
FERNANDO ELIAS BARAHONA PEREZ who had prior waived the call.

The Chairman was Mrs. ANGELLI MARTHA POLANCO CARRASCO, and the Secretary Mr. CARLOS ALBERTO RIVADENEIRA ESCUDERO, both as holders of said positions.

The quorum having been confirmed, the Chairman opened the meeting stating that a question has emerged as to the authority of Mario Guilermo Hurtarte Arrivillaga, the Managing Director, Legal Affairs of PENTEX FOUNDATION, to hire legal counsel in the United States for affairs requiring litigation. Specifically, the hiring of one Scott Smith, Attorney at Law, to represent PENTEX FOUNDATION in ongoing litigation involving PENTEX FOUNDATION in Fannin County, Texas, U.S.A.

Upon motion presented, duly seconded, the following resolution was unanimously approved:

### IT IS HEREBY RESOLVED:

That the Board of PENTEX FOUNDATION verifies that Mario Guilermo Hurtarte Arrivillaga is authorized to hire legal counsel on behalf of PENTEX FOUNDATION to litigate any necessary legal matters that might arise in the United States. Further, it is resolved that Mario Guilermo Hurtarte Arrivillaga, as Managing Director, Legal Affairs of PENTEX FOUNDATION, was authorized to sign the "AGREEMENT FOR LEGAL SERVICES" hiring Scott Smith, Attorney At Law, to represent and provide legal services to PENTEX FOUNDATION on May 5, 2014, in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A. Further, by this resolution, PENTEX FOUNDATION confirms Scott Smith, Texas State Bar Number 18688900, as its attorney in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A.; and, that Scott Smith has represented PENTEX FOUNDATION in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A., since May 5, 2014.

By this resolution, it is further resolved that Mario Guilermo Hurtarte Arrivillaga, the Managing Director, Legal Affairs of PENTEX FOUNDATION, is authorized until further notice to make any further necessary changes in legal representation for PENTEX FOUNDATION in any legal proceedings in the United States, and to make any decisions affecting PENTEX FOUNDATION in any of those legal matters. The authority granted Mario Guilermo Hurtarte Arrivillaga is concurrent with, and does not limit or change, the authority granted Danny R. Unger through a Limited Power of Attorney from PENTEX FOUNDATION in a preceding resolution.

There not being any other matter to attend the meeting was adjourned at eleven (11:00) a.m. on the above mentioned date.

_signature_

The President, ANGELLI MARTHA POLANCO CARRASCO,

258

Exhibit C

Page 2 of 3

_[signature]_

The Secretary, CARLOS ALBERTO RIVADENEIRA ESCUDERO.

The undersigned, Secretary of the foundation named **PENTEX FOUNDATION** by this means certifies that the above minutes is a true copy of its original. It agrees with each and every one of its parts as the one that remains in the Book of Minutes of the foundation.

_[signature]_

The Secretary, CARLOS ALBERTO RIVADENEIRA ESCUDERO.

Exhibit C

Page 3 of 3

CAUSE NO. CV-14-41665

| | | |
|---|---|---|
| PENTEX FOUNDATION | ) | |
| PLAINTIFF. | ) | IN THE DISTRICT COURT |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## DEFENDANTS' MOTION TO COMPEL APPEARANCE AND TESTIMONY OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014

Come now, Defendants Kenneth "Ken" Vern Gibbs and Candace "Candy" Walton, through their Counsel of Record. Law Offices of Christy Lee, P.C., and respectfully move the Court to compel the appearance and testimony of Albert Barcroft, Pentex Foundation's ("Pentex") Legal Representative, at the hearing for the Motion to Show Authority, which is scheduled in this matter for September 30, 2014. For approximately two and a half (2 ½) months after the initiation of the lawsuit, Pentex claimed that no representative for this lawsuit had been decided. This was – and continues to be – a shocking claim, especially since, dating back to the creation of Pentex in 2008, Albert has proclaimed himself the Legal Representative of Pentex. As recently as September 3, 2014, Albert was still professing to be an agent for Pentex. Evidence proves, and Ken and Candy know, that Albert is the alter ego of Pentex; Pentex Royalty Trust; Renhaw, Inc.; and GBU Friends and Associates Trust ("GBU Trust"); all of which are major players in this Cause. The evidence obtained thus far during this lawsuit shows that Albert possesses exclusive information pertinent to this suit. Albert's testimony,

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
*PENTEX FOUNDATION V. GIBBS, ET AL.*

260

CAUSE NO. CV-14-41665

-1-

including the declaration of the authorized Pentex representative, is paramount to achieving justice in this matter. Albert is the touchstone for this matter.

## I. FACTS.

1. On August 28, 2014, Ken and Candy served Albert with a State of Texas Subpoena, requiring his appearance at the hearing for the Motion to Show Authority scheduled in this matter for September 30, 2014. *See* Exhibit A. The Subpoena was issued as a result of Ken and Candy's communications with Albert dating back to 2005 and their repeated unsuccessful inquiries to Pentex as to its designated Representative for this lawsuit.

2. Ken and Candy perceive the Subpoena as critical to their defense, because Albert possesses specific knowledge as to the allegations in Pentex's Original Petition. Since Pentex's establishment in 2008, Albert has consistently represented himself both in private communications and publicly as Pentex's Legal Representative. The Subpoena was served to Scott Smith, who, since the beginning of his legal services to Pentex, consistently denied that Albert is his client, but also consistently admitted that he and Albert spoke numerous times about the facts related to this case.

3. It is Ken and Candy's conviction, and there is a great deal of evidence to suggest, that Albert is the party responsible for this lawsuit. Currently pending in this matter is Ken and Candy's Motion for Leave of Court to File Third-Party Petition and Alter Ego concerning Albert's involvement with Pentex.

4. Albert's connection to Pentex is well-documented. According to formation records, Pentex was established on May 21, 2008[1] - about three (3) years following the

---

[1] Pentex was not registered in Panama until June 26, 2014.

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
*PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-2-

execution of the Contract for Sale of Land ("the CSL"), which Albert illegally drafted,[2] and which concerned assets of the Estate of Bert Hughes Gibbs ("the Estate"); and about four (4) months prior to the execution of the Family Settlement Agreement ("FSA"), which specified the terms under which certain parties would receive their distributions from the Estate, including the creation of an entity to receive the distributions. Pentex alluded to the CSL numerous times in its Original Petition, while Albert was a party to the FSA, along with Defendants Howard Kirk Gibbs, Ken, and Candy. At the time of Pentex's creation, Albert confided to Ken and Candy that he created Pentex to avoid seizure of his assets by the I.R.S., and he assigned Pentex his interest in GWB Family and Friends Trust ("GWB Trust"), the entity established to receive distributions from the Estate.

5.      Through discovery, it has been determined that, in late 2008, Albert provided all communications with the Estate concerning any and all attorney fee distributions for Ken and Candy. Albert signed all the documents associated with these distributions and distributions to GWB Trust. Albert signed all these documents as the Legal Representative for Pentex. From the moment Pentex was established, Albert portrayed to everyone, including Ken and Candy, that he was the Legal Representative for the entity.

6.      By 2013, as a result of Ken and Candy's inquiries concerning its administration, communications among GWB Trust members had irrevocably broken down. On November 25, 2013, acting as Legal Representative of both Pentex and Renhaw, Inc., which he described as a Panamanian, wholly-owned subsidiary of Pentex, Albert issued to the Beneficiaries a letter entitled "Formal Notice of Revocation of GWB Family and Friends Trust and split of assets

---

[2] It is an undisputed fact that Albert drafted the CSL. Albert is not a lawyer and was practicing law without a license. Albert threatened Ken and Candy not to obtain legal counsel to review the CSL prior to signing it.

pursuant to original contract between the parties." In the letter, Albert identified himself as "Agent" for Pentex, and its affiliates, Pentex Royalty Trust and Renhaw, Inc. *See* Exhibit B.

7. On November 28, 2013, upon receiving instructions from Albert as Legal Representative of Pentex, GWB Trust Trustee Beverly Miller transferred 57.19% interest in GWB Trust to GBU Trust.

8. On December 18, 2013, Albert sent a letter to Counsel for the Estate, which was the originating entity of the assets distributed to GWB Trust. Albert signed the letter in his "personal capacity, and as legal representative for PENTEX FOUNDATION, Pentex Royalty Trust, and Renhaw, Inc." The letter contained Albert's certification and affirmation under penalty of perjury that he was "the legal representative for Pentex Royalty Trust, PENTEX FOUNDATION, and Renhaw, Inc.; and as such, [he had] the authority to make all legal decisions on their behalf. [28 USC § 1746(1)]." *See* Exhibit C.

9. Approximately five (5) months ago, Albert consulted RayAnswers, Attorney, an on-line "Estate Law Specialist." The consultation consisted of Albert's disclosure of confidential information, including the names of Ken, Candy, and Pentex.[3] He provided details concerning the CSL and the FSA, and asked for an assessment of the situation as he promoted it. *See* Exhibit D.

10. Pentex filed the current suit on April 1, 2014. Despite Ken and Candy's repeated requests for full disclosure as to the identity of the Pentex representative who authorized filing the suit, no such information was forthcoming from Pentex, immediately or otherwise. John

---

[3] While no doubt the consultation should have remained confidential, in fact, the posting is available to the public and was found on various dates, including September 11, 2014, at the following web address: http://www.justanswer.com/estate-law/8d4kl-answered-texas-trust-attorney-three-individuals.html. In the web exchange, Albert confessed to not liking the advice he received, but admitted to "needing to hear it."

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014        CAUSE NO. CV-14-41665
*PENTEX FOUNDATION V. GIBBS, ET AL.*        -4-

263

Skotnik, original Counsel for Pentex, did not divulge the name of the representative of Pentex authorizing him to file the lawsuit on behalf of Pentex. When Ken and Candy inquired as to John's previous related services to the various parties involved, including Albert, Ken, and Candy, John withdrew from representation of Pentex, still without revealing the identity of the party contracting with him. However, John denied that he represented Albert in this particular matter.

11.     On April 28, 2014, in response to Pentex's Original Petition, Ken and Candy filed their Motion to Show Authority, Motion for Change of Venue, Original Answer, Affirmative Defenses, Original Counterclaim, and Rule 13 Motion for Sanctions. Section V, Defendants' Counterclaim, noted that Albert was also known as Pentex. *See* Para. 22.

12.     As Successor Counsel to Pentex beginning in May 2014, Scott Smith also denied knowing the identity of the representative of Pentex authorizing the lawsuit. Scott categorically denied that he represented Albert. However, Scott admitted to Ken and Candy's Counsel that Albert conferred with him on several occasions concerning this lawsuit and Pentex's administration. But as late as June 20, 2014, some two and a half (2 ½) months following Pentex's Original Petition, Scott was still maintaining that the party who would be representing Pentex in the matter had not yet been determined. *See* Exhibit E.

13.     Also on June 20, 2014, disclosure produced by Pentex failed to provide a single name of any party from Pentex having knowledge of the relevant facts. The Plaintiff was listed simply "Pentex Foundation." However, Pentex listed Albert as the "original party to the CSL," which Pentex's Original Petition claimed to be at the core of the lawsuit.

14. On July 28, 2014, Ken and Candy filed their First Supplement to Original Answer and Affirmative Defenses ("the First Supplement"). Part IV, the First Supplement, contended that Albert is the "responsible third party," within the meaning of Texas Civil Practice and Remedies Sec. 33.011(6).

15. During the July 31, 2014, hearing in Tarrant County (Tarrant County Probate Court No. 2, Cause No. 2005-0000126-2-D), Scott Smith, Successor Counsel for Pentex in this Cause, testified under oath that he could not recall the designated representative for Pentex, or even who paid him, although he was adamant that Angelli Carassco, Pentex's alleged President, Director, and Chairman, was not his client, that he had never met her, that, indeed, he had never even spoken with her. In fact, added Scott, he could not even remember who hired his firm for the matter. But Scott confessed that he had discussed the case with Albert on several occasions.

16. On August 5, 2014, Scott forwarded Judge Pat Ferchill a letter in which he acknowledged that Albert provided a retainer of $5,000 for this current Cause.[4] *See* Exhibit F.

17. During the discovery process, on September 3, 2014, Pentex admitted to Ken and Candy that, at the time of the alleged damage done to Pentex, Albert "had the authority to carry on all business in the United States for Pentex Foundation." *See* Exhibit G, Admission No. 25. Pentex also stated that Pentex worked with Albert concerning what would evolve into some of the major points of contention in this lawsuit because doing so was "mutually advantageous." And, affirmed Pentex, "Mr. Barcroft definitely made Pentex Foundation aware that he thought there was a problem in the way proceeds were being paid by GWB Trust . . . **In brief, Barcroft**

---

[4] Pentex Royalty Trust also provided $5,000 toward the retainer. Another of Albert's established organizations, Pentex Royalty Trust is the United States receiver of GWB Trust assets, which in turn were funneled to Pentex.

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
*PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-6-

**was our express liaison with GWB Trust**" (emphasis added). *See* Exhibit G, Interrogatory No. 2.

18. On September 3, 2014, Albert signed a statement under penalty of perjury (which, of course, was not notarized), in which he admitted that he is "an agent for Pentex." However, asserted the unsworn Affidavit, Albert was "not authorized to give testimony on behalf of PENTEX FOUNDATION at this point in time." *See* Exhibit H. The document did not indicate which point in time Albert would be authorized to give testimony – presumably sometime post-litigation. The document was attached to the Motion to Quash or for Protective Order Relating to Subpoenas and Deposition Notices, which Scott filed with this Court on September 3, 2014.

19. Also attached to the Motion to Quash was a statement in Spanish from Albert's alleged physician, Leonel Antonio Ramirez Montenegro, along with a poor English translation of the statement. According to the English version, there is a file on record in the medical office stating that Albert suffers hypertension, chronic atrial fibrillation, and degenerative knee osteoarthritis, and thus is unable to travel. The statement did not affirm that Dr. Montenegro actually consulted with Albert as a client, just that such files appeared on record. Dr. Montenegro attested that the statement was provided at the request of the interested party. *See* Exhibit I.

20. This physician's statement came as no surprise to Ken and Candy. In or around November 30, 2009, Albert was said to have faked a heart attack in order to avoid prosecution for not cleaning the wreckage of his $500,000 yacht, The Great Escape, which ran aground off the Coast of Belize and fouled its pristine barrier reef. News reports from Channel 5 of Belize

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
*PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665
-7-
266

quoted Newspaper Editor Roy McNett, who stated that he spoke with Albert following the accident. According to Roy, Albert "did not have a heart attack," and was in Rio Dulce buying land. *See* Exhibit J. Some reports claimed that Albert used the insurance coverage from the wreckage to purchase the $500,000 ranch where he currently is said to reside.

## II. LAW.

21. "A party is entitled to discovery that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence." *Monsanto Co. v. May*, 889. S.W.2d 274, 276 (Tex. 1994).

22. Rule 200 of the Texas Rules of Civil Procedure permits a party to take the testimony of "any person," provided that the person has the right to protection "from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." Tex.R.Civ.P. 166b(5); *Monsanto Co. v. May*, 889 S.W.2d at 276.

## III. ARGUMENTS.

23. Ken and Candy have the right to face Pentex's established presence in this case. This is a basic tenant in judicial proceedings. However, Pentex refused for months to name its representatives regarding the lawsuit. Two and a half (2 ½) months following Pentex's Original Pentex, Scott still denied being able to recall who provided a substantial retainer fee to his firm.

24. Ken and Candy believe that Pentex's consistent delays in naming its representative regarding the lawsuit points to a systematic attempt to stall proceedings until such time that the true responsible parties could be protected and safeguarded from the production of discovery and the necessity to answer to the Court for pursuing frivolous litigation. Thus far, Pentex has consistently maintained that this assumption is incorrect, while

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
*PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-8-



also maintaining that Albert is the sole point of contact for Pentex regarding this lawsuit. Pentex must therefore clarify the situation by allowing Albert Barcroft to testify to the facts, or the lawsuit should be dismissed.

25. The law permits Ken and Candy to question Albert, who, since 2008, has consistently characterized himself as Legal Representative for Pentex. Scott admitted that he has spoken with Albert multiple times concerning this lawsuit, while Scott has provided no other names of parties with whom he has engaged in discussions concerning Pentex. Scott admitted that he accepted a $5,000 retainer fee from Albert. Although in August 2014, Danny Unger was named to be Pentex's representative concerning this suit, Danny's specific interest in the matter has never been clarified. Danny Unger's name cropped up briefly in Pentex's disclosure as party who is generally familiar with "all of the transactions involving the Barcroft interest and its succession." Scott also denied that Angelli Carrasco, Pentex's President/Director/Chairman, is responsible for this suit. In other words, Albert is apparently the only individual from Pentex who is actively pursuing this suit.

26. The argument that Albert is too ill to travel is highly suspect. In the past, Albert allegedly confessed that he faked a heart attack to avoid legal proceedings when his yacht sank off the coast of Belize. Albert's September 3, 2014, physician's statement did not state that Albert was under the physician's immediate care – only that there was a file in the medical office. At this time, Albert is believed to be traveling in Texas.[5] How else can Pentex explain

---

[5] Ken and Candy have cause to believe that Albert is currently traveling in the United States, although his residence is in Guatemala, where he fled in 2008 to escape collection efforts by the Internal Revenue Service ("the I.R.S."). In 2013, Albert provided written instructions to relevant parties that he could not be served official documents in Guatemala, since mail service is notoriously poor. His written communications to Ken and Candy failed to contain return addresses. Because of the difficulty of communicating with Albert, on August 20, 2014, Tarrant County Probate Court No. 2 ordered Substitute Service of Citation to him. Cause No. 2005-0000126-2-D, *Walton and*

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
*PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-9-

how Scott easily produced an unsworn Affidavit from Albert, while Scott claimed that an Affidavit from Pentex's President in Panama, Angelli Carrasco, was not obtainable due to logistical difficulties?

27.    Scott's protestations to the contrary aside, the reason for Scott's ability to produce an Affidavit from Albert is that Albert was the Pentex representative who retained Scott.  Although Scott claimed not to be able to recall who retained him, he eventually forwarded a letter to Judge Ferchill affirming that Albert provided him a retainer of $5,000 for this matter.  Pentex Royalty Trust provided another $5,000.  What is Pentex Royalty Trust? Albert designed this entity specifically designed to receive GWB Trust funds, then funnel them on to Pentex.  As the name indicates, Pentex Royalty Trust is virtually the same entity as Pentex.  And both are alter egos for Albert.

28.    Scott's lack of recall before the Tarrant County Probate Court indicates a distinct effort to protect Albert from having to testify.  The August 5, 2014, disclosure that Albert and Pentex Royalty Trust paid Pentex's retainer confirmed Ken and Candy's conviction that it has been Albert who has pursued the suit all along. Albert clearly felt that by hiding Pentex's representative's identity from Ken and Candy, that representative would be sheltered from the suit individually.  This should not be the case.

29.    The argument that Pentex does not control Albert is ludicrous – and may paradoxically be somewhat a skewed truth.  In all likelihood, in as far as one alter ego does not control the other, Pentex does not control Albert, and Albert does not control Pentex.  They are one and the same.

---

*Gibbs vs. Miller, et al.* ("the Tarrant County Cause").

30.     Albert's appearance at the Motion to Show Authority is necessary to provide testimony as to his role regarding the lawsuit. From the beginning of the lawsuit, Counsel for Pentex has lagged in producing the individual responsible for the suit. And from the beginning of the lawsuit, Albert's name has repeatedly emerged as the crux around which this lawsuit revolves. If Albert does not present testimony, Ken and Candy will be irrevocably harmed, as they will be unable to cross-examine the party whose manipulations of alter egos has resulted in this suit. Currently Pentex, a.k.a. Albert, is attempting to block Albert's testimony, so that the true party in this case is sheltered and protected. Albert's past acts show him to be an individual openly contemptuous of governmental authority. Albert should not be allowed, then, to use that governmental authority vicariously, through Pentex, to harass Ken and Candy by the pursuit of frivolous, meaningless legal action.

## IV. PRAYER FOR RELIEF.

Candy and Ken therefore respectfully pray that this Court:

31.     Compel the appearance and testimony of Albert Barcroft, and his production of relevant corporate documents attesting to Pentex's authority to file this lawsuit, at the hearing for the Motion to Show Authority, to be held on September 30, 2014; or,

32.     In the alternative, stay the proceedings until such time that Albert Barcroft can attend a hearing on the matter; and

33.     Enter all other Orders and further relief, legal and equitable, that the Court deems appropriate in this matter.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR PLAINTIFFS

## FIAT

The above and foregoing Motion to Compel Appearance and Testimony of Albert Barcroft at Hearing on September 30, 2014, is approved. The Motion shall be heard by the Court on the _____ day of _____, 2014, at _____ o'clock, _____.m.

_____
Presiding Judge or Clerk of the Court

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
PENTEX FOUNDATION V. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-12-

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR PLAINTIFFS

## FIAT

The above and foregoing Motion to Compel Appearance and Testimony of Albert Barcroft at Hearing on September 30, 2014, is approved. The Motion shall be heard by the Court on the _____ day of _____, 2014, at _____ o'clock, _____.m.

_____
Presiding Judge

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Defendants' Motion to Compel Appearance and Testimony of Albert Barcroft at the Hearing on September 30, 2014, was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 15th date of September, 2014:

| Party: | Via: |
|---|---|
| Howard Kirk Gibbs<br>4360 Western Center Blvd., No. 205<br>Fort Worth, TX 76157 | Mail<br>Email:· hkgibbs@gmail.com |
| Pentex Foundation, **and**<br>GBU Friends and Associates Trust<br>c/o Scott Smith, Attorney of Record<br>120 South Crockett Street<br>Sherman, TX 75091-0354 | Email: smithlaw@airmail.net<br>Fax: |

Christy L. Lee

DEFENDANT'S MOTION TO COMPEL APPEARANCE AND TESTIMONY
OF ALBERT BARCROFT AT HEARING ON SEPTEMBER 30, 2014
273 *PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665
-13-

| PENTEX FOUNDATION | ) | IN THE DISTRICT COURT |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 336TH JUDICIAL DISTRICT |
| | ) | |
| KENNETH VERN GIBBS; AND | ) | |
| CANDACE GIBBS WALTON; AND | ) | |
| HOWARD KIRK GIBBS, | ) | |
| DEFENDANTS. | ) | FANNIN COUNTY, TEXAS |

## THE STATE OF TEXAS SUBPOENA DUCES TECUM FOR ORAL DEPOSITION

TO:    Albert Barcroft, legal representative and alter ego of Pentex Foundation c/o Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354.

YOU ARE COMMANDED by the State of Texas to appear at 120 South Crockett Street, Sherman, Texas 75091-0354, on the 13th day of October, 2014, at 10 o'clock a.m., to attend and give testimony at a deposition. Albert Barcroft is be deposed to his personal knowledge of the following: (1) division and distribution of attorney fees from the Estate of Bert Gibbs in 2008, (2) drafting of the GWB Family and Friends Trust, (3) the Contract for Sale of Contract for Sale of Land, Mineral Rights and Royalties and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust." (the "CSL") (4) signing of the Family Settlement Agreement, and (5) Pentex Royalty Trust federal tax liens.

The deposition will be stenographically recorded by Merit Court Reporters, 307 West 7th Street, Ste. 1350, Fort Worth, Texas 76102, (817) 336-3042, or such other qualified court reporter as may be designated. Such deposition when taken will be used in evidence upon the trial of this cause. The deposition will continue from day to day until completed. All counsel and parties are invited to attend and cross-examine as they may deem proper.

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

274

CAUSE NO. CV-14-41665
-1-

Exhibit A
Page 1 of 7

## ENFORCEMENT OF SUBPOENA

Pursuant to Texas Rules of Civil Procedure No. 176.8, failure by any person without adequate excuse to obey a subpoena upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

## DUCES TECUM

YOU ARE FURTHER COMMANDED to produce and permit inspection and copying of documents or tangible things in your custody or control as follows (if not otherwise noted, the date is since the inception of Pentex Foundation, or November 1, 2008, whichever is earlier):

1. A true and correct copy of all documents showing that you had legal authority to act as legal representative of Pentex Foundation.

2. A true and correct copy of all documents showing that you had legal authority to act as legal representative of Pentex Royalty Trust.

3. A true and correct copy of all documents showing that you had legal authority to act as legal representative of Renshaw, Inc.

4. A true and correct copy of all emails and documents in which you corresponded with the Estate of Bert Gibbs concerning the distribution of attorney fees associated with Kenneth Gibbs, Candace Walton, and Howard Kirk Gibbs.

5. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) from you, Pentex Royalty Trust, Pentex Foundation, Renshaw, Inc., GBU Friends and Associates Trust, or any other entity in which you have an interest, paid to Scott Smith.

6. A true and correct copy of any payment (including cancelled checks, money orders,

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-2-

275

Exhibit A

Page 2 of 7

money transfers, etc.) from you, Pentex Royalty Trust, Pentex Foundation, Renshaw, Inc., GBU Friends and Associates Trust, or any other entity in which you have an interest, paid to John Skotnik.

7. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you, Pentex Royalty Trust, Pentex Foundation, Renshaw, Inc., GBU Friends and Associates Trust, or any other entity in which you have an interest, paid to Beverly Miller.

8. A true and correct copy of any payment (including cancelled checks, money orders, money transfers, etc.) you or Pentex Foundation received from GWB Family and Friends Trust.

9. A true and correct copy of all your United States federal income tax returns from 2008 to present filed by you.

10. A true and correct copy of all legal rulings in any lawsuit in which you have been a party since January 1, 2005.

11. A true and correct copies of Pentex Royalty Trust document.

12. A true and correct copies of United States federal income tax returns from 2008 to present filed by Pentex Royalty Trust.

13. A true and correct copy of your personal phone records from January 1, 2013, to the present.

14. A true and correct copy of your resume.

15. A true and correct copy of your professional certificates and qualifications to be a legal representative of an international company.

16. A true and correct copy of all communications (including such things as emails,

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

CAUSE NO. CV-14-41665
-3-

276

Exhibit A

Page 3 of 7

documents, tape recordings, memorandums, etc.) with Scott Smith in association with GWB Family and Friends Trust, Pentex Foundation, Pentex Royalty Trust, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1, 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

17. A true and correct copy of all communication (including such things as emails, documents, tape recordings, memorandums, etc.) with Beverly Miller, and her attorneys Sharron Cox and Earl Hargrave, concerning GWB Family and Friends Trust, Pentex Foundation, GBU Friends and Associates Trust, and the Estate of Bert Gibbs, since January, 1 2013, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

18. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with John Skotnik concerning GWB Family and Friends Trust, Pentex Foundation, GBU Friends and Associates Trust, and the Estate of Bert Gibbs since January, 1 2008, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-4-

277

Exhibit

Page ___4___ of ___7___

Bert Gibbs, and the administration of the Estate of Bert Gibbs.

19. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Howard Kirk Gibbs concerning GWB Family and Friends Trust, Pentex Foundation, and GBU Friends and Associates Trust since January, 1 2008, in regards to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust's existence, employer identification number, communications with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

20. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Earl Hargrave concerning the Estate of Bert Gibbs, including the administration of the estate and distribution of attorney fees since June 1, 2014, in regard to monies received or distributed to anyone or any entity, GBU Friends and Associates Trust existence, employer identification number, communication with the Internal Revenue Service, the CSL, Family Settlement Agreement, any distributions of attorney fees from the Estate of Bert Gibbs, and the administration of the Estate of Bert Gibbs.

21. A true and correct copy of all communications (including such things as emails, documents, tape recordings, memorandums, etc.) with Rickey Brantley or his office concerning the Estate of Bert Gibbs, including the administration of the estate and distribution of attorney fees since January, 1 2008.

22. True and correct copies of all drafts of the GWB Family and Friends Trust.

23. True and correct copies of all drafts of GBU Friends and Associates Trust.

THE STATE OF TEXAS SUBPOENA
PENTEX FOUNDATION VS. GIBBS, ET AL.

CAUSE NO. CV-14-41665
-5-

278

Exhibit A

Page 5 of 7

24. A true and correct copy of any articles, books, blogs, or any communications in which you advised any person on how to avoid paying United States federal income taxes or avoiding participation in lawsuits.

25. True and correct copies of all drafts of the CSL since January 1, 2005.

26. A true and correct copy of proof of all legal documents in your possession which attest to your legal representative of any entity that have been provided to GWB Family and Friends Trust and to the Estate of Bert Hughes Gibbs.

The subpoena is prepared and issued for Defendants Kenneth Gibbs and Candace Walton, by Counsel, in accordance with Rule 176 of the Texas Rules of Civil Procedure

Issued on September, 2, 2014.

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Suite 600
Fort Worth, TX 76102
Office: (817) 504-6075
Fax: (800) 437-7901
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS
AND CANDACE WALTON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was delivered, pursuant to Texas Rules of Civil Procedure and Rule 11 Agreement, to the following parties on this 2nd day of September, 2014:

Pentex Foundation *and*                                      Via fax and email
GBU Friends and Associates Trust
c/o Scott Smith, Attorney of Record

THE STATE OF TEXAS SUBPOENA                         CAUSE NO. CV-14-41665
*PENTEX FOUNDATION VS. GIBBS, ET AL.*                                        -6-

279

Exhibit A
Page 6 of 7

120 South Crockett Street
Sherman, TX 75091-0354

Howard Kirk Gibbs
9929 Crawford Farm Drive
Fort Worth, TX 76244

Via mail and email

_(signature)_

Christy L. Lee

THE STATE OF TEXAS SUBPOENA
*PENTEX FOUNDATION VS. GIBBS, ET AL.*

280

CAUSE NO. CV-14-41665
-7-
**Exhibit** A
**Page** 7 of 7

# PENTEX FOUNDATION
## *A Private Foundation of Panama, C.A.*

November 25, 2013

Kenneth Vern Gibbs [Ken]
Candace Gibbs Walton [Candy]
Howard Kirk Gibbs [Howard]

RE:  Formal Notice of Revocation of GWB Family and Friends Trust and split of assets pursuant to original contract between the parties

Ken, Candy and Howard:

This is my formal notice on behalf of myself, and as Agent for Pentex Royalty Trust and its sole beneficiary PENTEX FOUNDATION, and RENHAW, INC., a Panama corporation and wholly owned subsidiary of PENTEX FOUNDATION, that I/we are utilizing Item #6 on page 4 of the **"Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or 'The Kathryn Houseworth Gibbs Irrevocable Trust'"**, herein also referred to as "Contract for Sale of Land", to split the assets of the GWB Family and Friends Trust, herein also "GWB", under the terms provided in said Contract for Sale of Land.

The relationship between us has deteriorated to the point that I no longer wish to be associated with you.  I have accused you of not honoring the agreement between us; and you, or at least some of you, have accused me of plotting to steal your portion of the **"Estate of Bert Hughes Gibbs"**, herein also "Estate", at the point of any of your deaths. I was even told by Candy that I was not the honorable man I once was.

281

Exhibit *B*

Page __1__ of __5__

You have not confined those remarks to conversations between us, because Jay Henderson asked me if I intended to steal your shares.

You hired an attorney who made ridiculous demands of me, told me how stupid I was, tried to [and succeeded in your mind] create a problem where none existed, explained to me that no one but a BAR attorney could read or understand the law/code, and called me a liar and thief. Where was she when all you had were judgments against you? She even admitted to me that she would never have taken your case back then.

In addition, I do believe that at least two of you have broken our deal and your word to me. When I asked that GWB move to enforce the provision in the Gibbs Family Settlement Agreement, herein also "FSA", to sell the land, Candy had the nerve to tell me that I had been paid very well for what I did, and that she wanted to keep the land for her daughter. Ken continues to use the "home place" as his own personal property, and refuses to pursue selling it in a viable manner.

The fact is that neither I nor my assigns have been paid what was agreed to and promised. Bert died 9 years ago, the FSA is now 5 years old, and we're no closer to closing the Estate than we were 5 years ago. Ken has given an exclusive listing on well over 200 pieces of property to a car salesman, and that "agent" has not produced a new contract for sale of any land in over a year with some 230 pieces of property in what everybody calls a "hot" area at his, and only his, disposal. Further, it is my belief that virtually all the sales this "agent" has ever "made" have been handed to him by the Estate when someone called the Estate requesting to buy certain property. Essentially, he is a high-priced order taker. These situations are not acceptable.

I intend to move forward aggressively on behalf of PENTEX FOUNDATION to force compliance with the FSA. As a member of GWB,

282

PENTEX FOUNDATION has restraints on what it can do; and, every time there is a vote in GWB that doesn't go your way, you yell foul. Further, there is a conflict of interest because an action must be brought against Ken to force compliance with the FSA or to remove Ken as Executor, and Ken is a voting member and beneficiary of GWB. Therefore, any action by GWB would involve using Ken's money to sue him. I cannot imagine how that would play out, or how the court would handle that scenario; therefore, we never moved forward. That is the main reason why PENTEX FOUNDATION has not been able to proceed with enforcement actions earlier.

All this adds up to the fact that PENTEX FOUNDATION simply does not wish to remain a party in GWB. Under the terms of the Contract for Sale of Land and the laws of the State of Texas, it does not have to.

**Therefore, this is my formal notice to each of you** that, as agent for PENTEX FOUNDATION, I am revoking PENTEX FOUNDATION's entire contribution to GWB, and demanding a split of its assets pursuant to the Contract for Sale of Land at page 4, Item #6, to wit:

> **"It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or assets covered herein shall be deposited into a bank account in that entity's name, and that all expenses necessary to the continuation of revenue being paid to the parties hereto (i.e. property taxes on the royalties or property covered herein, and any necessary expenses such as well upkeep, etc.) shall be deducted and paid as required before the 70/30 division agreed to in this contract. Barcroft shall have a 50% vote in the operation of said business organization; and, the only function of said business organization shall be to facilitate the agreement in this contract. Any monies paid out of said business organization, other than the agreed upon split**

283

Exhibit _B_

Page __3__ of __5__

**between the parties, shall be agreed upon by all parties hereto. The division shall be divided on a basis of 30% to Barcroft, 23.34% to Kenneth Vern Gibbs, 23.33% to Candace Walton Gibbs, and 23.33% to Howard Kirk Gibbs, at each instance of dispersal to the parties. Any party may demand a split of the assets of said business organization at any time."**

The business organization described at page 4, item #6, and shown in its entirety directly herein above, is GWB, which was created to fulfill this provision of the Contract for Sale of Land; therefore, the option to demand a split of the assets applies to GWB and is enforceable.

I regret that your actions have necessitated this action. I had hoped always to remain friends. It doesn't appear that was in the cards. After this, I will have no way to "steal" anything that belongs to you, or visit any other false threat your attorney has created in your mind on you; but, I intend to fully collect what belongs to PENTEX FOUNDATION.

PENTEX FOUNDATION is assigning its share of the Estate proceeds from the Contract for Sale of Land to the GBU Friends and Associates Trust, 410 Anderson County Road 154, Palestine, Texas 75801. PENTEX FOUNDATION will receive regular mail, but not certified or registered mail or service, at 210 West Oak Street #151, Palestine, Texas 75801. Service and mail that must be signed for must be made through its home office: PENTEX FOUNDATION, Panama Gardens - Unit 2, Hacie Lidice, Capira, Republic of Panama; or, through me at Rancho Las Brisas, San Marcos, Livingston, Izabal, Guatemala, Central America.

Sincerely,

Albert Lynn Barcroft
Agent for PENTEX FOUNDATION

284

Exhibit B

Page 4 of 5



Exhibit *B*

Page ___5___ of ___

Copies of this notice have been sent by Certified Mail, Return Receipt Requested, to:

**Kenneth Vern Gibbs**
4212 Wheeler Street
Ft. Worth, TX 76117

**Candace Gibbs Walton**
500 Logan Dr.
Azle, TX 76020

**Howard Kirk Gibbs**
4005 Vernon Way
Keller, TX 76248

# PENTEX FOUNDATION
## A Private Foundation of Panama, C.A.

December 18, 2013

To: Kenneth Vern Gibbs, Executor for the Estate of Bert Hughes Gibbs
 4212 Wheeler, Ft. Worth, TX 76117

To: Rickey Brantley, Attorney for the Estate of Bert Hughes Gibbs
 855 Texas St, Fort Worth, TX 76102

To: Scott Pelley, Attorney for the Estate of Bert Hughes Gibbs
 707 West Washington, Sherman, TX 75092-5639

To: Jimmy Walker, Attorney, Permanent Guardian of Kathryn Gibbs
 815 Walker, Suite 240, Houston, TX 77002-5762

Dear Mr. Gibbs, Mr. Brantley, Mr. Pelley and Mr. Walker:

This notice is to inform the Estates of Bert and Kathryn Gibbs ["Estates"] that the original 30% assignment titled **"Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or 'The Kathryn Houseworth Gibbs Irrevocable Trust'"** ["CSL"] to Al Barcroft has been transferred to GBU Friends and Associates Trust ["GBU"] from GWB Family and Friends Trust ["GWB"] effective November 26, 2013; and, that all future distributions relating to this 30% assignment by Kenneth Vern Gibbs, Candace Walton Gibbs and Howard Kirk Gibbs ["Gibbs Children"] to Al Barcroft should be remitted directly to GBU, 410 Anderson County Rd 154, Palestine, Texas 75801.

Item number 6 of the CSL provided for the creation of a business organization that would receive and distribute the 70% portion of the Estates' distributions owned by Kenneth Vern Gibbs, Candace Gibbs Walton and Howard Kirk Gibbs [collectively "Gibbs Children"] along with the 30% assignment to Al Barcroft; and GWB, a revocable trust, was created on or about November 7, 2008, in accordance with that requirement. The CSL

further provided in the same paragraph *that any party may demand a split of the assets of said business organization at any time.* PENTEX FOUNDATION, a settlor of GWB and current assignee of the 30% assignment from Al Barcroft, has revoked its contribution to GWB and assigned its share of the assets residing in GWB to GBU. PENTEX FOUNDATIION hereby affirms that its share due from the Estates relating to the 30% assignment are now transferred to the GBU, and all future distributions relating to said 30% assignment by either Estate should be made payable to GBU.

In accordance with the Gibbs Family Settlement Agreement ["FSA"], Kip Gibbs was to receive 25% of the Estates of Bert and Kathryn Gibbs with the remaining 75% going to the Gibbs Children. In accordance with the FSA and the CSL, 22.5% of the distributions by the Estates is owned by and related to this original 30% assignment. However, 2.46% of the original 22.5% of the gross Estates is being paid directly to John Skotnik, leaving the assignee with 20.04% of the gross distributions of the Estates.

**THEREFORE, FROM THIS DATE FORWARD,** Notice and Demand is hereby made upon the Estates of Bert and Kathryn Gibbs, that from the date of this notice forward, that portion of all distributions made by the Estates of Bert and/or Kathryn Gibbs related to the original 30% assignment made by the Gibbs Children to Al Barcroft, and currently being paid to GWB Family and Friends Trust, be distributed and made payable to; and, be sent directly to:
 **GBU Friends and Associates Trust**
**410 Anderson County Road 154**
**Palestine, Texas 75801**
The tax number for GBU Friends and Associates Trust is **38-7103561.**

If either Estate disagrees with the calculation referred to herein, or needs any further verification of any documents related to this transfer, please notify me immediately by e-mail to albertbarcroft@gmail.com, specifically identifying any mistake in the calculation and/or required verification; or, as to any reason why future distributions will not be made directly go GBU Friends and Associates Trust as requested.

Notice of Transfer to GBU
Page 2 of 3

287

Exhibit C

Page 2 of

On behalf of Al Barcroft, Pentex Royal Trust, PENTEX FOUNDATION, and/or RENHAW, INC., conjunctively and/or individually, I hereby stipulate that a photocopy of a scanned e-mail or fax of this document, and any attachments, may be used as originals for all legal purposes.

**I hereby certify and affirm with my signature below under penalty of perjury under the laws of the United States of America that I am the legal representative for Pentex Royalty Trust, PENTEX FOUNDATION, and RENHAW, INC.; and, as such, I have the authority to make all legal decisions on their behalf. [28 USC § 1746(1)]**

Further, Beverly Miller, Trustee of the GWB Family and Friends Trust, is in the possession of the original authorization for me to represent those entities; and, she will provide copies of same if necessary.

Dated and Signed this 18th day of December, 2013.

Albert Lynn Barcroft
In my personal capacity, and as legal representative for
PENTEX FOUNDATION, Pentex Royalty Trust, and
RENHAW, INC.

cc: Kenneth Vern Gibbs, Rickey J. Brantley, and Scott Pelley by United States Postal Service, Certified Mail, Return Receipt Requested to the addresses shown in the heading hereto.

cc: By e-mail to:
Rickey Brantley at rickey@rickeybrantley.com
Scott Pelley at spelley@npwlawfirm.com

288

 

# To be answered by a Texas Trust attorney: Three individuals

### Resolved Question:

To be answered by a Texas Trust attorney:

Three individuals (A, B, & C) sold to one other person (D) exactly 30% of their inheritance before the fact of the inheritance (for D's assistance in dealing with all problems and concerns of securing the inheritance).

B. The people did this by a contract for sale ["Contract"] executed and filed in the public record.

C. Under the terms of the contract, a business organization would be established so that all money to be paid from the inheritance <u>pursuant</u> to the contract would be deposited into the business organization.

D. The percentages due to each would be as follows: D= 30%, A=23.34%, B=23.33% and C=23.33%.

E. The language of the contract was as follows:

1. "It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or <u>assets</u> covered herein shall be deposited into a bank <u>account</u> in that entity's name, and that all expenses necessary to the continuation of revenue being paid to the parties hereto (i.e. property <u>taxes</u> on the royalties or property covered herein, and any necessary expenses such as well upkeep, etc.) shall be deducted and paid as required before the 70/30 division agreed to in this contract... ; and, the only function of said business organization shall be to facilitate the agreement in this contract. Any monies paid out of said business organization shall be agreed upon by all parties hereto, and shall be divided on a 70/30 basis at each instance of dispersal to the parties. Any party may demand a split of the assets of said business organization at any time."

F. The business organization that was created in compliance with the Contract was specifically a revocable trust. [The trust document specifically states: "This trust shall be revocable."]

G. Three of the parties (A, B, & C) to the contract became named settlors in the trust and contributed their entire share; and, the fourth party (D) to the Contract contributed his entire share as well, but was not a named settlor in the trust.

H. Under the definitions in the trust document, "settlor" is defined as:

1. "Settlor" means a person [or persons] who creates a trust or contributes property

289

 

2. If more than one person contributes property to a trustee of a trust, each person is a settlor of the portion of the property in the trust attributable to that person's contribution to the trust."

I. The proceeds from the contract were the only contributions to the trust.

J. The beneficial distribution within the trust was different than the settlor's contributions for several reasons; but the settlors or their interests never changed.

K. The person D decided to revoke his contribution to the trust.

Questions based on these facts

1. If a person (D) who was not specifically named as a settlor in the original trust document contributes property to the trust, in accordance with the above trust definition, does that person's contribution cause him to become a settlor of the trust with a revocable interest for his entire share of the contribution?

2. Can any settlor revoke all of his contribution, even if his defined beneficiary interest percentage in the trust was less than the percentage contribution he made?

a. For example, a settlor contributes 30% of the total assets to a trust, but he receives only 25% of the beneficial distributions from the trust.

b. If he revokes his contribution, can he revoke the full 30% he contributed?

3. Can the underlying contract that caused the creation of the trust be enforced after the trust is created and in force and action?


**Expert: RayAnswers**

Hi and welcome to JA. I am Ray and will be the expert helping you today.

Let's go through your questions here.

1. If a person (D) who was not specifically named as a settlor in the original trust document contributes property to the trust, in accordance with the above trust definition, does that person's contribution cause him to become a settlor of the trust with a revocable interest for his entire share of the contribution?

**Answer: He would not be a settlor unless he either set up the trust or their was an amendment done adding him as a settlor. If the other parties agree you can amend the revocable trust here and make him a settlor to the trust.**

2. Can any settlor revoke all of his contribution, even if his defined beneficiary interest percentage in the trust was less than the percentage contribution he made?

a. For example, a settlor contributes 30% of the total assets to a trust, t
beneficial distributions from the trust.



Here the terms of the trust control as far as the trust and again a trsut amendment could be done to allow for this.

**Sample trust amendment.**

http://www.lgggroup.com/html/plan-and-prosper-pdf/REVOCABLE%20LIVING%20TRUST%20Amendment_Form.pdf

b. If he revokes his contribution, can he revoke the full 30% he contributed?

**If the trust does not allow for this then no under the trust.He could sue under breach of contract here for the amount of contribution if the contract allows for that.**
**You would have four years from the date of breach to bring suit.**

http://codes.lp.findlaw.com/txstatutes/BC/1/2/G/2.725

3. Can the underlying contract that caused the creation of the trust be enforced after the trust is created and in force and action?

**Yes the contract can be enforced as breach of contract suit.**

**I appreciate the chance to help you today.Please let me know if you have more follow up.Thanks again.**



**RayAnswers, Attorney**
**Category:** Estate Law
**Satisfied Customers:** 29595
**Experience:** Texas lawyer for 29 years in Estate law

# RayAnswers and 7 other Estate Law Specialists are ready to help you

291

**Expert:** RayAnswers

Al, here is the law that allows you to amend the trust.

## SUBCHAPTER C. REVOCATION, MODIFICATION, AND TERMINATION OF TRUSTS

**Sec. 112.051. REVOCATION, MODIFICATION, OR AMENDMENT BY SETTLOR. (a) A settlor may revoke the trust unless it is irrevocable by the express terms of the instrument creating it or of an instrument modifying it.**

**(b) The settlor may modify or amend a trust that is revocable, but the settlor may not enlarge the duties of the trustee without the trustee's express consent.**

**(c) If the trust was created by a written instrument, a revocation, modification, or amendment of the trust must be in writing.**

Ask Your Own Estate Law Question

**Expert:  RayAnswers**

Al here is a very detailed article about amending trusts in Texas under the law.

http://www.galliganmanning.com/documents/Modification-and-Termination-of-Trusts-and-Trustee-Resignations.pdf

An amendment would allow the settlors to add a third one and to incorporate the contract details into the trust where needed.

Thanks again.

Ask Your Own Estate Law Question

**Customer:**

(D) is a foundation. It was added to the trust as follows:

3.1 Beneficiaries: The beneficiaries. and percentage of beneficial interests. are as follows:

Kenneth Vern Gibbs: 25.011614 % of the trust:
292



Candace Gibbs Walton: 25.011613 % of the trust:

Howard Kirk Gibbs: 25.011613 % of the trust:

Pentex Royalty Trust: 24.96516 % of the trust.

3.2 Voting Shares: Actions and decisions concerning the trust shall be governed by vote of the beneficiaries hereto. Sixteen (16) votes will represent a majority of the votes on any issue unless specifically set herein at a different vote requirement. Each beneficiary shall have following votes in any matter of the trust for which a vote is called:

Kenneth Vern Gibbs: 5 votes:

Candace Gibbs Walton: 5 votes;

Howard Kirk Gibbs. 5 votes:

Pentex Foundation: 15 votes.

Pentex Foundation actually has 50% vote in matters concerning the trust. Does that make a difference.

293

**Expert: RayAnswers**

Unless the trust allows for the person D to retrieve his contribution or the beneficiaries all agree he woudl have to <u>file suit</u> against the trust to seek his contribution and add a breach of contract claim as well.He might be able to prevail on either one and the court might revoke the trust divide out the assets here and any otehr orders they feel neecssary to resolve the exiting trust.

Unless ther is voluntary agreement here of all the beneficiaries such a suit would be necessary and the court here would decide whether he gets the full contribution back.Ther eis some uniqueness or case by case.

For example if there was real estae contributed to the trust and it went down and had less value the court would have to use its equitable powers for a fiar resolution.Base on what you present there is no language that allows a party to get out here short of a suit and the court revoking the trust or awarding him his contribution here.

This section really doesn't address any refund of contribution.Unless the trsut does the options are amend the trust again, resolve it with the beneficiaeies, or a civil suit to seek to have the court revoke it or resolve it.

Thanks for the follow up.

> ~ew~ ~our~ ~~~~ Estate L~~ ~~~~

**Customer:**

One last follow up in this case.

There is a dispute in this case as to the trust document. The document filed in the court case is a copy that has many flaws, including no date and some of the pages not being number in sequence. To perform on the trust if there is a dispute, would it be necessary for the moving party to actually present the original trust document?

**Expert: RayAnswers**

Yes either the original here or convince the copy is a trust correct and completed one.From what you present that might be hard to do here.

294

The following are the legal requirements for a valid trust in Texas:

The Settlor must have a present intent to create a trust. According to the Texas statutes, a trust is created if the Settlor manifests an intention to create a trust. No specific words are required."

The Settlor must have capacity to convey assets to the trust. The Settlor has capacity if:
he or she is over the age of 18 or has been lawfully married or a member of the armed forces, and

is of sound mind, which means he knows the nature and extent of his property, the persons who are the natural objects of his bounty, the disposition that he is making, and how these elements relate to form an orderly plan for the disposition of his property.

**The trust must comply with the Statute of Frauds. A trust may be created orally through a declaration of trust; however, if it involves the transfer of real property, it must be in writing.**

The trust must have a legal purpose. The terms of a trust may not require the trustee to commit a criminal or tortious act or an act that is contrary to public policy.

The Settlor must identify the property covered by the trust and place it in the trust for the benefit of the beneficiary. The Texas statutes specify that a trust cannot be created unless there is trust property.

The trust must have a Trustee who holds legal title of property for the benefit of the trust's Beneficiaries. If there is no Trustee named, or if the Trustee that is named does not want to serve or cannot serve for any reason, the court can appoint a Trustee for the trust.

The trust must have ascertainable Beneficiaries. If the Settlor does not name the Beneficiaries with sufficient certainty, the trust will fail.

The trust my not violate the Rule Against Perpetuities, which says that an interest is not good unless it must vest, if at all, not later than 21 years after some life in being at the time of the creation of the interest, plus a period of gestation.

AI thanks for letting me be of service.I wish you the best with all of this.

| Ask Your Own Estate Law Question |

**Customer:**
Thank you for good answers. Most not what I wanted to hear, but what I needed.

Exhibit D

Page 1 of 9

You have answered my questions in the past, and you give much more complete answers than the others I have had. Is there any way to request you? I have more question about the Contract in which the 30% was sold to me, but those questions are unrelated to the trust questions and would require me to pay again.

Tweet    8+1    Share

## Ask RayAnswers Your Own Question

RayAnswers, Attorney
Category: Estate Law
Satisfied Customers:
Experience: Texas lawyer for 25 years in estate law

Type Your Estate Law Question Here...

RayAnswers is online now

**Get an Answer**

DISCLAIMER: Answers from Experts on JustAnswer are not substitutes for the advice of an attorney. JustAnswer is a public forum and questions and responses are not private or confidential or protected by the attorney-client privilege. The Expert above is not your attorney, and the response above is not legal advice. You should not read this response to propose specific action or address specific circumstances, but only to give you a sense of general principles of law that might affect the situation you describe. Application of these general principles to particular circumstances must be done by a lawyer who has spoken with you in confidence, learned all relevant information, and explored various options. Before acting on these general principles, you should hire a lawyer licensed to practice law in the jurisdiction to which your question pertains.

The responses above are from individual Experts, not JustAnswer. The site and services are provided "as is". To view the verified credential of an Expert, click on the "Verified" symbol in the Expert's profile. This site is not for emergency questions which should be directed immediately by telephone or in-person to qualified professionals. Please carefully read the Terms of Service (last updated February 8, 2012).

296



## A+ rating with BBB



297

**Exhibit** D

**Page** 9 **of** 9

# Email Report

## Form Format

| | | | | | | |
|---|---|---|---|---|---|---|
| Date | 6/20/2014 | Time | 8:24AM | 8:24AM | Duration | 0.00 (hours)   Code |

Subject   **Re: Pentex Admissions**                                                                    Staff    **Christy L Lee**

Client    **Smith, Scott**                    MatterRef **Litigation - Pentex Foundation vs. G MatterNo**

From     smithlaw@airmail.net

To        **Christy Lee; Howard Gibbs**

CC To

BCC To

Reminders                    (days before) Follow  **N**  Done  **N**  Notify  **Y**  Hide  **N**  Trigger  **N**  Private  **N**  Status

Custom1                                                   Custom3
Custom2                                                   Custom4

Christy,

I am fine with accepting email as a form of service, provided we also agree to acknowledge receipt by email. Also, if you want discovery to end on December 3rd, that is fine with me. I am not sure the Judge actually was addressing discovery, but was just expressing her view that the case be ready to go by that date. I have modified the proposed scheduling order, and have attached it.

Enclosed please find the Response to the Request for Disclosure by Pentex Foundation.

With respect to depositions, I will not be able to agree to have the entire board of Pentex deposed. That is harassing and outside the scope of permissible discovery. Moreover, unless and until Mr. Barcroft is the designated corporate representative of Pentex, I cannot produce him. He may be a fact witness, but he is not my client. We have not yet determined who will be the corporate representative for Pentex in this litigation, but will do so in the near future.

Regards,

Sco**

298

# SCOTT SMITH
## ATTORNEY AND COUNSELOR AT LAW

E-MAIL: smithlaw@airmail.net
FACSIMILE: (903) 870-1446
TELEPHONE: (903) 868-8686

120 SOUTH CROCKETT STREET
P.O. BOX 354
SHERMAN, TEXAS 75091-0354

August 5, 2014

Honorable Pat Ferchill
Judge, Tarrant County Probate
    Court Number Two
The Old Courthouse
100 W. Weatherford, Room 220A
Fort Worth, Texas 76196

> RE: *Candace Walton, et al. v. Beverly Miller, Trustee, et al.*; Cause Number 2005-0000126-2-D in the Probate Court Number Two of Tarrant County, Texas.

Dear Judge Ferchill:

As you may recall, I appeared for a special appearance on behalf of Pentex Foundation on July 31, 2014. In connection therewith, I testified regarding a motion to show my authority to represent Pentex Foundation. At that time, I was unsure of the source of payment of my initial retainer. I have reviewed my records and the payments were each in the sum of $5,000 from Pentex Royalty Trust and Mr. Albert Barcroft. I am also attaching a copy of a resolution from Pentex Foundation regarding my engagement as their counsel. I thank you for your attention to this matter.

Yours very truly,

T. Scott Smith

TSS/bhs

cc: Christy L. Lee, Esq.; Howard Kirk Gibbs, Pro Se.

299

**Exhibit**
**Page** ___ **of** ___

# MINUTES OF THE BOARD OF DIRECTORS'
# MEETING OF PENTEX FOUNDATION

A meeting of the Foundation Council of PENTEX FOUNDATION, organized according to the laws of the Republic of Panama and registered to microjacket twenty nine thousand five hundred and thirty six (29536), document one million three hundred fifty four thousand eight hundred ninety three (1354893) of the Mercantile Section of the Public Registry, it was celebrated in the city of Panama, Republic of Panama on the fourth day (4th) of August of the year two thousand and fourteen (2014) at 10 o'clock in the morning (10 a.m.).

It was a meeting of all the known Directors:
Mrs. ANGELLI MARTHA POLANCO CARRASCO,
Mr. CARLOS ALBERTO RIVADENEIRA ESCUDERO and
FERNANDO ELIAS BARAHONA PEREZ who had prior waived the call.

The Chairman was Mrs. ANGELLI MARTHA POLANCO CARRASCO, and the Secretary Mr. CARLOS ALBERTO RIVADENEIRA ESCUDERO, both as holders of said positions.

The quorum having been confirmed, the Chairman opened the meeting stating that a question has emerged as to the authority of Mario Guillermo Hurtarte Arrivillaga, the Managing Director, Legal Affairs of PENTEX FOUNDATION, to hire legal counsel in the United States for affairs requiring litigation. Specifically, the hiring of one Scott Smith, Attorney at Law, to represent PENTEX FOUNDATION in ongoing litigation involving PENTEX FOUNDATION in Fannin County, Texas, U.S.A.

Upon motion presented, duly seconded, the following resolution was unanimously approved:

## IT IS HEREBY RESOLVED:

That the Board of PENTEX FOUNDATION verifies that Mario Guilermo Hurtarte Arrivillaga is authorized to hire legal counsel on behalf of PENTEX FOUNDATION to litigate any necessary legal matters that might arise in the United States. Further, it is resolved that Mario Guilermo Hurtarte Arrivillaga, as Managing Director, Legal Affairs of PENTEX FOUNDATION, was authorized to sign the "AGREEMENT FOR LEGAL SERVICES" hiring Scott Smith, Attorney At Law, to represent and provide legal services to PENTEX FOUNDATION on May 5, 2014, in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A. Further, by this resolution, PENTEX FOUNDATION confirms Scott Smith, Texas State Bar Number 18688900, as its attorney in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A.; and, that Scott Smith has represented PENTEX FOUNDATION in Cause Number CV-14-41665 in Fannin County, Texas, U.S.A., since May 5, 2014.

By this resolution, it is further resolved that Mario Guilermo Hurtarte Arrivillaga, the Managing Director, Legal Affairs of PENTEX FOUNDATION, is authorized until further notice to make any further necessary changes in legal representation for PENTEX FOUNDATION in any legal proceedings in the United States, and to make any decisions affecting PENTEX FOUNDATION in any of those legal matters. The authority granted Mario Guilermo Hurtarte Arrivillaga is concurrent with, and does not limit or change, the authority granted Danny R. Unger through a Limited Power of Attorney from PENTEX FOUNDATION in a preceding resolution.

There not being any other matter to attend the meeting was adjourned at eleven (11:00) a.m. on the above mentioned date.

The President, ANGELLI MARTHA POLANCO CARRASCO,

_Copia Textualmente_

The Secretary, CARLOS ALBERTO RIVADENEIRA ESCUDERO.

The undersigned, Secretary of the foundation named **PENTEX FOUNDATION** by this means certifies that the above minutes is a true copy of its original. It agrees with each and every one of its parts as the one that remains in the Book of Minutes of the foundation.

_Copia Textualmente_

The Secretary, CARLOS ALBERTO RIVADENEIRA ESCUDERO.

| PENTEX FOUNDATION, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | FANNIN COUNTY, TEXAS |
| KENNETH VERN GIBBS, CANDACE | § | |
| GIBBS WALTON and HOWARD | § | |
| KIRK GIBBS, *Defendants* | § | 336th JUDICIAL DISTRICT |

## PENTEX FOUNDATION'S RESPONSE
## TO DISCOVERY FROM KENNETH GIBBS

TO:   Kenneth Vern Gibbs, by and through his attorney of record.

COMES NOW, Pentex Foundation, files this its response to the First Request for Discovery received on August 11, 2014, and would show as follows:

## GENERAL OBJECTION

Pentex Foundation objects to the Instructions and Definitions to the extent they enlarge the responsibilities of a litigant under the Texas Rules of Civil Procedure. Pentex Foundation specifically objects to the definition of "You" and "Your" to the extent it combines the existence of Pentex Foundation with "Albert Barcroft, as Legal Representative." They are not one in the same. Pentex Foundation answers and responds only in its own right. Pentex Foundation will respond subject to the Rules.

Pentex Foundation objects to producing any documents in the offices of counsel. To the extent there are documents to be produced, they will be produced at the offices of counsel for the responding party.

## RESPONSE TO DISCOVERY REQUESTS

As a predicate to responding, pursuant to the laws of Panama, a foundation is required to keep records only for the current year. Submitted herewith are documents marked as Plaintiff/Intervenor 00001-000257.

DISCOVERY REQUESTS REQUEST FOR PRODUCTION NO. 1: Produce all documents dating back to September 1, 2008, that you have concerning distribution of attorney fees from the Estate.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request, except those marked Plaintiff/Intervenor 000135-

302

175.

REQUEST FOR PRODUCTION NO. 2: Produce all documents dating back to January 1, 2013, that you have concerning the GBU Trust.

    RESPONSE: Objection. This request is overly broad and fails to direct Plaintiff to any class or type of documents. *See, Loftin v. Martin,* 766 S.W.2d 145 (1989).

REQUEST FOR PRODUCTION NO. 3: Produce all documents proving your existence and validity, including names of the Board of Directors and Legal Representatives who have served since the inception of the entity; and letters, emails, bank records, correspondence, and accountings related to Albert's involvement in your formation.

    RESPONSE: Objection. This request is overly broad and outside the scope of discovery to the extent it requests "letters, emails, bank records, correspondence, and accountings related to Albert's involvement in your formation." Subject to this objection, please see the documents attached hereto as Plaintiff/Interpleader 00001-00033.

REQUEST FOR PRODUCTION NO. 4: Produce a copy of every federal tax return that you and Pentex Trust has filed with the Internal Revenue Service since 2008.

    RESPONSE: Objection, the request is made merely to harass and no other purpose, as tax returns are generally not discoverable, see *Hall v. Lawlis,* 907 SW2d 493 (Tex. 1995); *Chamberlain v. Cherry,* 818 SW2d 201 (Amarillo 1991).

REQUEST FOR PRODUCTION NO. 5: Produce a copy of the Pentex Trust.

    RESPONSE: Objection. This request seeks information which is outside the scope of discovery.

REQUEST FOR PRODUCTION NO. 6: Produce all communication dating back to September 1, 2008. including letters, tape recordings, or emails, that you have had with any representative of ConocoPhillips concerning you yourself, Albert, GWB Trust, Pentex Trust, or GBU Trust.

    RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 7: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had

303

Exhibit *6*

Page 2 of 29

with Danny Unger concerning GBU Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 8: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Howard Kirk concerning the Estate's attorney fees.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 9: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Howard Kirk concerning GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request. None

REQUEST FOR PRODUCTION NO. 10: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Rickey Brantley or Scott Pelley concerning the Estate's attorney fees.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 11: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Danny Unger concerning GBU Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 12: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Ken concerning the Estate's attorney fees.

RESPONSE: Pentex Foundation has no documentation in its possession

304

Exhibit _G_
Page __3__ of __29__


responsive to this request.

REQUEST FOR PRODUCTION NO. 13: Produce all documentation dating back to September 1, 2008, which you have concerning Renhaw, Inc., including the transfer of rights of the CSL to you, letters, emails, tape recordings, and any other records involving Renhaw, Inc..

RESPONSE: Please see Plaintiff/Intervenor 000123, 000034.

REQUEST FOR PRODUCTION NO. 14: Produce any communication dating back to May 1, 2008, including letters, tape recordings, or emails, that you have had with Albert concerning GWB Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 15: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Albert concerning GBU Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 16: Produce any communication dating back to May 1, 2008, including letters, tape recordings, or emails, that you have had from Albert concerning distributions from the Estate.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 17: Produce any communication dating back to May 1, 2008, including letters, tape recordings, or emails, that you have had

305

Exhibit 6

Page 4 of 29

with Albert concerning Pentex Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Additionally, this request is outside the scope of discovery. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 18: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Candy concerning GWB Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 19: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Candy concerning GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 20: Produce all documents related to Pentex Trust's interest in the Estate and GWB Trust, and dating back to September 1, 2008, including, but not limited to, documents verifying its existence, letters, emails, bank records, correspondence, and accountings.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 21: Produce any communication dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller involving Albert.

RESPONSE: Pentex Foundation objects to any such communications protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to this objection, Pentex Foundation has no documentation in its possession responsive to this request other than as may be produced herewith.

REQUEST FOR PRODUCTION NO. 22: Produce all documents upon which you

306

Exhibit G

Page 5 of 29

base the claims against Candy and Ken in your Original Petition.

RESPONSE: Pentex Foundation objects to this request as overly broad and fails to direct Plaintiff to any class or type of documents. *See, Loftin v. Martin*, 766 S.W.2d 145 (1989). Subject to this objection, please see the documents attached to the Motion for Partial Summary Judgment submitted in this case.

REQUEST FOR PRODUCTION NO. 23: Produce any communication dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller concerning Pentex Trust.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery, and additionally as to any such communications protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to this objection, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 24: Produce any communications dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller concerning GBU Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Additionally, this request is outside the scope of discovery. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request other than as may be produced herewith.

REQUEST FOR PRODUCTION NO. 25: Produce any communications dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller concerning GWB Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Additionally, this request is outside the scope of discovery. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request other than as may

307



be produced herewith.

REQUEST FOR PRODUCTION NO. 26: Produce all documents and communications dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Rickey Brantley concerning the Estate's distributions to Heirs and the calculations of the Heirs' attorneys' fees.
RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 27: Produce all documents and communications dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Scott Pelley concerning the Estate's distributions to Heirs and the calculations of the Heirs' attorneys' fees.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 28: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with any representative of JW Operating Company concerning you yourself, Albert, GWB Trust, Pentex Trust, and GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 29: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with any representative of Trio Consulting and Management, LLC, concerning you yourself, Albert, GWB Trust, Pentex Trust, and GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 30: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with any representative of Devon Energy concerning you yourself, Albert, GWB Trust, Pentex Trust, and GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

INTERROGATORY NO. 1: Explain your relationship with Pentex Trust, including details concerning your agreement with Pentex Trust to receive distributions from GWB Trust; your arrangement with Albert to act as Legal

308

Exhibit G

Page 7 of 29

Representative for both entities; whether you or Pentex Trust was formed first; the management associated with Pentex Trust in Texas, as effected from a Panamanian locale; the manner in which you determine tax obligations; and arrangement with Pentex Trust concerning voting rights in GWB Trust

ANSWER: Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Interrogatories may be used to ascertain basic legal and factual claims and defenses, but may not be used to force a party to marshal evidence." *See*, Rule 197 of the Texas Rules of Civil Procedure, at comment 1. Subject to this objection, Pentex Foundation answers as follows:

Pentex Royalty Trust is a trust domestic to the United States that was created as a trust to take in all revenue due from taxable sources within the United States, pay any U.S. taxes or other obligations due, and then distribute its remaining beneficial interests. Pentex Foundation is the sole beneficiary of Pentex Royalty Trust. Pentex Royalty Trust has a paid trustee who is not associated, or familiar with, any other phase of Pentex Foundation. The tax obligations are figured by computing and filing a Return 1042 with the Internal Revenue Service meeting the requirements of the Internal Revenue Code. The voting rights issue was always a problem because the purported trustees of GWB trust never had a clear and defined way of doing anything. For that reason, Pentex Foundation assigned it voting shares by proxy to Jim Walton as long as he was the purported trustee. We have no record of any official votes after Beverly Miller became the purported trustee.

INTERROGATORY NO. 2: Detail your relationship with Albert, including specifics concerning his activities within your entity; on whose authority Albert serves as your Legal Representative; amounts of payment for Albert's services to you; percentages of distributions to you from GWB Trust which Albert ultimately receives; Albert's arrangements to pay Estate attorneys in order to uphold his responsibilities to the CSL and the FSA; Albert's payments of legal fees with regard to this lawsuit; Albert's involvement in this lawsuit (i.e., whether Albert was responsible for instigating the lawsuit); and all other involvement of Albert concerning your involvement with GWB Trust.

ANSWER: Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Interrogatories may be used to ascertain basic legal and factual claims and defenses, but may not be used to force a party to marshal evidence." *See*, Rule 197 of the Texas Rules of Civil Procedure, at comment 1. Pentex Foundation objects to the terms of payments as confidential under the laws of Panama, and outside the scope of discovery in any event. Subject to these objection, Pentex Foundation answers as follows, and under a defintion of "you" and "your" to refer to

 

Pentex Foundation only as specified in the general objections:

Pentex Foundation purchased an interest in the Contract for Sale that Albert Barcroft originally owned. It was mutually advantageous to continue to work with Albert to bring the terms of the contract to conclusion, and he served and serves on our behalf in the matter. To the knowledge of Pentex Foundation, Albert had no responsibilities to pay any attorneys other than John Skotnik in the matter, and such was not shown in any documentation presented to Pentex Foundation. When Pentex was forced to hire new counsel in the case, it did not have sufficient funds in the United States to pay the full retainer. Mr. Barcroft did. Pentex Foundation gave Mr. Barcroft money here, and he sent that money to Scott Smith in the United States. Mr. Barcroft definitely made Pentex Foundation aware that he thought there was a problem in the way proceeds were being paid by GWB Trust, if that qualifies as instigation. In brief, Barcroft was our express liaison with GWB trust, whatever it is.

INTERROGATORY NO. 3: Explain the reasons you came to believe that contingency fee attorneys were deducting their fees from the total due you, Ken, Candy, and Howard Kirk, then issuing one check to GWB Trust, including the rationale for believing that in excess of $ 1 million in attorney fees were due from Ken, Candy, and Howard Kirk; when and how you arrived at these alleged facts; and the reason that Beverly Miller was instructed to assign 57.19% interest in GWB Trust to GBU Trust, when you were entitled to a far smaller percentage.

ANSWER: Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Interrogatories may be used to ascertain basic legal and factual claims and defenses, but may not be used to force a party to marshal evidence." *See*, Rule 197 of the Texas Rules of Civil Procedure, at comment 1. Subject to these objection, Pentex Foundation answers as follows, and under a defintion of "you" and "your" to refer to Pentex Foundation only as specified in the general objections:

The percentage due Pentex Foundation under the Contract for Sale. Barcroft's share was 30% of everything Ken, Candy and Howard received. Ken, Candy and Howard each received 25%, for a total of 75%, of the estates. Of the 75%, Pentex Foundation owned 30%, equaling 22.5% of everything distributed by the estate (75% X 30%=22.5%). The estate distributed mineral interests to GWB Trust equaling 35.04% of the total minerals owned by the estate. It also distributed 2.46% directly to John Skotnik in payment for his services as attorney (an amount due solely by Barcroft). Of the 35.04% distributed to GWB Trust, Pentex Foundation owned 20.04% (22.5% minus the 2.46% already distributed to Skotnik). 20.04% is 57.19% of 35.04%; thus, Pentex Foundation owned 57.19% of the

minerals transferred to GWB Trust by the estate.

INTERROGATORY NO. 4: Detail and explain the contents of all oral communications dating back to September 1, 2008, which you have had with Howard Kirk, including all agreements to cooperate with you, Albert or Danny Unger in this lawsuit; including your communications with Howard Kirk at the Tarrant case hearing on July 31, 2014, including the reason for conferring with him, when he is a Defendant in this case; and disclose whether you consulted Howard Kirk in drafting your requests for Admissions and whether you assisted Howard Kirk in producing his responses to your demands for discovery, since he was capable of response to you within fewer than five (5) hours of receiving your Requests; and disclose whether John Skotnik, when acting as your Counsel, cooperated with Howard Kirk in motioning the Court to remove Ken as Independent Administrator of the Estate.

> ANSWER: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Subject to these objection, Pentex Foundation answers as follows, and under a defintion of "you" and "your" to refer to Pentex Foundation only as specified in the general objections:
>
> Pentex Foundation has had no such communications with Howard Kirk.

REQUEST FOR ADMISSION NO. 1: Admit or deny that Scott Smith and Howard Kirk consulted with each other at the July 31, 2014, hearing in the Tarrant County case.

> RESPONSE: Pentex Foundation objects to this request as (1) well outside the scope of legitimate discovery; (2) a communication initiated after the anticipation of litigation; (3) protected pursuant to the work product exemption from discovery; and/or (4) protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding).

REQUEST FOR ADMISSION NO. 2: Admit or Deny that you, Ken, Candy, and Howard Kirk are members of the GWB Family and Friends Trust.

> RESPONSE: Admit that Pentex Foundation is an an assignee of the business organization created pursuant to the CSL, if "you" refers to Pentex

311

Exhibit G

Page 10 of 23

Foundation as discussed in the general objections; otherwise, deny.

REQUEST FOR ADMISSION NO. 3: Admit or Deny that you were formed specifically because Albert stood to receive proceeds from the Estate as a result of the CSL and FSA, and Albert wanted the funds to flow through a third party in order to avoid federal tax and similar obligations.

> RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 4: Admit or Deny that you have received no money from GWB Trust.

> RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections: admit, as all money was received by Pentex Trust).

REQUEST FOR ADMISSION NO. 5: Admit or Deny that Albert is your Primary Beneficiary.

> RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 6: Admit or Deny that Pentex Trust is your Primary Beneficiary.

> RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 7: Admit or Deny that the GWB Trust document established the process and percentages by which Howard Kirk, Candy, Ken, and you received interest from the Estate.

> RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 8: Admit or Deny that the GWB Trust Trustee is responsible for distributing assets to the Beneficiaries according to the

312

Exhibit _G_

Page _11_ of _29_



percentages specified in the GWB Trust document.

RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 9: Admit or Deny that if the percentages of interest specified in the GWB Trust document are incorrect, then you are fully responsible for the inaccuracy because Albert, as your Legal Representative, entered into negotiations with the Estate's attorneys concerning the appropriate distributions.

RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 10: Admit or Deny that you authorized Albert to serve as your Legal Representative with regard to GWB Trust, GBU Trust, Pentex Trust, and the Estate.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 11: Admit or Deny that Pentex Trust is a Trust which Albert, acting on your behalf, established in the United States in order to receive funds because you are a foreign entity, and as such, it is difficult to receive distributions from the Estate.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 12: Admit or Deny that Albert, acting on your behalf, resisted Candy and Ken's inquiries into the legitimacy of your existence.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 13: Admit or Deny that there are active United States Federal Tax Liens filed against you in Texas.

313

Exhibit G

Page 12 of 29

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 14: Admit or Deny that Albert approached you previous to 2008 to invest in the settlement of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 15: Admit or Deny that you invested $250,000 for expenses related to the settlement of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 16: Admit or Deny that you were established after Albert entered into discussions with Candy, Howard Kirk, and concerning the settlement of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery, unclear and ambiguous, and unspecified as to time.

REQUEST FOR ADMISSION NO. 17: Admit or Deny that, Pentex Trust was a Beneficiary of GWB Trust with 24.965 16% interest.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied. Pentex Foundation held the Barcroft interests in the original Contract for Sale, but it is unclear as to how that was interpreted by the original purported trustee.

REQUEST FOR ADMISSION NO. 18: Admit or Deny that you compensated Albert, John Skotnik, and Danny Unger for their services regarding the Estate and GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

314



REQUEST FOR ADMISSION NO. 19: Admit or Deny that the GWB Trust owns 35.04% of the assets that are still left in the estate, including real estate.

> **RESPONSE:** Pentex Foundation objects to this request as calling for pure legal question. Plaintiff has made reasonable inquiry and the information known to it or easily obtainable to it is insufficient with which to either admit or deny this request.

REQUEST FOR ADMISSION NO. 20: Admit or Deny that GWB Trust receives oil and gas royalties from the Estate, from which administrative costs are deducted before the Trustee distributes the assets to the Beneficiaries, yourself including, according to the percentages as stated in the GWB Trust document.

> RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 21: Admit or Deny that you have not received any funds from GWB Trust or the Estate.

> RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, it is admitted that all funds to Pentex Foundation have come through Pentex Royalty Trust.

REQUEST FOR ADMISSION NO. 22: Admit or Deny that Albert drafted the Pentex Trust document.

> RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 23: Admit or Deny that your Board of Directors profit, or have profited, from GWB Trust.

> RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 24: Admit or Deny that you have distributed, or will distribute, to Albert any proceeds from GWB Trust in excess of the $250,000 which Albert claimed you originally invested in settlement of the Estate.

> RESPONSE: Pentex Foundation objects to this request as multifarious and

315

Exhibit G
Page 14 of 29

speculative (when speaking about future events which may or may not occur). Pentex Foundation objects to this request as outside the scope of legitimate discovery.

REQUEST FOR ADMISSION NO. 25: Admit or Deny that you authorized Albert to vote on your behalf in decisions concerning GWB Trust, from its' inception to around February 2014.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit that Albert had the authority to carry on all business in the United States for Pentex Foundation.

REQUEST FOR ADMISSION NO. 26: Admit or Deny that Beverly Miller acts according to your instructions in performing her duties as Trustee of GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 27: Admit or Deny that on September 11, 2013, Albert, acting on your behalf, stated in an email that he refused to allow for Candy and Ken to remove their interest from GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 28: Admit or Deny that, in or around November 2013, you, or Albert acting on your behalf, instructed the GWB Trust Trustee, Beverly Miller, to transfer 57.19% of the existing GWB Trust assets into a newly created trust, the GBU Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit.

REQUEST FOR ADMISSION NO. 29: Admit or Deny that you, or Albert acting on your behalf, informed Beverly Miller that, if she did not transfer 57.19% of GWB Trust assets into the GBU Trust, she would be held personally liable for any losses.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit that she was told she "could" be held responsible for not doing her duties.

REQUEST FOR ADMISSION NO. 30: Admit or Deny that upon your instructions, or upon instructions from Albert acting on your behalf, Beverly Miller

316

Exhibit G
Page 15 of 29

transferred 57.19% interest from GWB Trust to GBU Trust.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, admit that Pentex Foundation demand to split the assets according to the Contract for Sale was honored by the Trustee, Beverly Miller.

REQUEST FOR ADMISSION NO. 31: Admit or Deny that GWB Trust was formed to receive the Heirs' distributions from the Estate.

RESPONSE: Admit that GWB trust was created by the expression of the Contract for Sale to help facilitate the terms of that Contract for Sale.

REQUEST FOR ADMISSION NO. 32: Admit or Deny that your Original Petition admits that the FSA, as an extension of the CSL, is the subject of this suit.

RESPONSE: Objection. The pleadings speak for themselves. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 33: Admit or Deny that you protested moving this case to Tarrant County Probate Court No. 2 because the Estate was responsible for establishing the amounts of the distributions to the heirs, but you could not challenge the Estate because you would be disqualified as recipient of Estate assets due to the tenns of the FSA.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 34: Admit or Deny that you instigated the Fannin County lawsuit.

RESPONSE: Pentex Foundation objects to this request as argumentative. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit that it is the Plaintiff and filed this suit.

REQUEST FOR ADMISSION NO.35: Admit or Deny that your lawsuit against Candy and Ken was filed as revenge because of their inquiries into the administration of GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

317

REQUEST FOR ADMISSION NO. 36: Admit or Deny that you have ordered and received assets from GWB Trust in addition to the 24.96515% you were originally assigned.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 37: Admit or Deny that you willingly engaged in discussions of the creation of Pentex Trust in order to avoid having to observed United States and Texas State law.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 38: Admit or Deny that you existed prior to 2008 and that you provide multiple benefits to Beneficiaries other than Albert.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied as to the date, and admit the balance of this request.

REQUEST FOR ADMISSION NO. 39: Admit or Deny that the Estate is responsible for the flow of cash to GWB Trust, which in turn flows to the Beneficiaries.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 40: Admit or Deny that Candy does not have the authority to control the Estate's distributions to the Heirs.

RESPONSE: Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 41: Admit or Deny that Ken does not have the authority to control the Estate's distributions to the Heirs.

RESPONSE: Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 42: Admit or Deny that suing Ken individually

318

Exhibit
Page 17 of 29

was inappropriate, as Ken individually does not have the authority to control the Estate's distributions to the Heirs.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO.43: Admit or Deny that Renhaw, Inc., received your interest in GWB Trust, then transferred it back to you.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUESTFORADMISSIONNO.44: Admit or Deny that you were effectively rendered a "nonentity" with regard to GWB Trust, because of the transfers as follows: Albert Barcroft> Renhaw > GWB Trust.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 45. Admit or Deny that Howard Kirk and you worked together to remove assets from GWB Trust which did not belong to you in order to benefit unjustly from those assets.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 46: Admit or Deny that prior to around November 2013, you did not question the distributions from GWB Trust.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, admit.

REQUEST FOR ADMISSION NO. 47: Admit or Deny that you issued instructions via Albert to Beverly Miller concerning the administration of GWB Trust.

RESPONSE: Ojbection. This request is ambiguous. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 48: Admit or Deny that you occasionally hired and paid Danny Unger to perform minor accounting work, as well as research.

RESPONSE: Admit that he did some accounting for Pentex Foundation.

REQUEST FOR ADMISSION NO.49: Admit or Deny that you were aware that you were entitled to less than a quarter of the proceeds in GWB Trust, after

319

Exhibit G
Page 18 of 27

expenses, when you, or Albert acting on your behalf, instructed Beverly Miller to transfer 57.19% interest in GWB Trust to GBU Trust.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 50: Admit or Deny that you were aware that you were entitled to only 24.96516% interest of GWB Trust at the time you instructed Beverly Miller to transfer 57.19% to GBU Trust.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 51: Admit or Deny that you benefitted substantially from GWB Trust since the time it was established in September 2008.

RESPONSE: Pentex Foundation objects to this request as vague and ambiguous.

REQUEST FOR ADMISSION NO. 52: Admit or Deny that Albert drafted the Original Petition in this lawsuit.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 53: Admit or Deny that no changes could be made to GWB Trust distributions unless approved by unanimous vote.

RESPONSE: Pentex Foundation objects to this request as assuming facts that have not been established, namely the terms of the GWB Trust. Admit that the CSL which established GBW Trust required that all 4 parties to the CSL sign any amendments before a notary.

REQUEST FOR ADMISSION NO. 54: Admit or Deny that, once Renhaw transferred its share of assets to the GWB Trust, Ken, Candy, and Howard Kirk are the only three (3) remaining members, as well as Beneficiaries, of the GWB Trust, and that therefore you are no longer a Beneficiary of GWB Trust.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 55: Admit that Albert authorized the percentages of interest which the Estate assigned to the Heirs.

RESPONSE: Objection. This request is ambiguous and vague. It is also outside the scope of legitimate discovery. Pentex Foundation has made

320

reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 56: Admit or Deny that, under the terms of the FSA, an Heir who disputes the terms can lose his or her interest in the Estate.

RESPONSE: Denied.

REQUEST TO ADMISSION NO. 57: Admit or Deny that Admit your inclusion of Howard Kirk as a Defendant in this Cause is a smoke screen designed to deflect from the fact that Howard Kirk is cooperating with you in this lawsuit and in the lawsuit filed in Tarrant County, which involves Albert, Howard Kirk, Candy, and Ken.

RESPONSE: The Intervenor objects to this request as argumentative, multifarious, and outside the scope of legitimate discovery. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 58: Admit or Deny that John Skotnik was forced to withdraw from representing you in this case, as he originally assisted in the Estate settlement involving the Heirs.

RESPONSE: Pentex Foundation objects to this request as calling for a legal conclusion as to why Mr. Skotnik withdrew, and as being outside the scope of any legitimate discovery. Subject to these objections, Pentex Foundation admits that it was agreed in the CSL that John Skotnik could represent Barcroft's interests if a dispute ever arose, admit that Defendants reneged on that provision of the CSL, thereby breaching the contract.

REQUEST FOR ADMISSION NO. 59: Admit or Deny that you, or your representative, assisted Howard Kirk in his Answer and his Admission responses in this case.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections: Denied.

REQUEST FOR ADMISSION NO. 60: Admit or Deny that you, or your representative, assisted Howard Kirk in his Answer in the Tarrant County case.

321

RESPONSE: Objection. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections: Denied.

REQUEST FOR ADMISSION NO. 61: Admit or Deny that you function as a shell entity for Albert.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 62: Admit or Deny that, on or about December 2, 2013, Albert sent Candy Walton and Ken letters stating that Albert, as agent for Pentex and Renhaw, were invoking the right to demand a split of the GWB Trust assets, as you wished to withdraw from GWB Trust.

RESPONSE: Admit that Pentex demanded a split of assets under the CSL.

REQUEST FOR ADMISSION NO. 63: Admit or Deny that Albert has been your Legal Representative up until there was a demand to have Albert deposed.

RESPONSE: Objection. This request is ambiguous with respect to the term "Legal Representative." Subject to this objection, Mr. Danny Unger is the designated representative for Pentex Foundation in this litigation.

REQUEST FOR ADMISSION NO. 64: Admit or Deny that you informed GWB Trust Beneficiaries of all transfers of your interest in GWB Trust each time a transfer was effected.

RESPONSE: Admit that the beneficiaries were informed.

REQUEST FOR ADMISSION NO. 65: Admit or Deny that on December 18, 2013, signing in the capacity of "Legal Representative" of Pentex, you noticed the Estate, including Executor Kenneth Gibbs, and the Estate's (3) three attorneys that a substantial part of GWB's Trust assets must be distributed and made payable to the GBU Trust.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, it is admitted that the document numbered Plaintiff/Intervenor 00035 is authentic and speaks for itself.

REQUEST FOR ADMISSION NO. 66: Admit or Deny that, you are a not-for-profit private foundation established and operated in Panama.

RESPONSE: Admit

REQUEST FOR ADMISSION NO. 67: Admit or Deny that in a very small sentence, at the end of a long tirade of explanations, GWB Trust accounting reflected that 20.04% of the 35.04% of GWB Trust's assets had been transferred to GBU.

RESPONSE: Pentex Foundation objects to this request as argumentative and vague. Subject to this objection, admitted that the document numbered Plaintiff/Intervenor 00035 is authentic and speaks for itself.

REQUEST FOR ADMISSION NO. 68: Admit or Deny that GWB Trust is responsible for paying administrative costs, such as property taxes, for assets assigned to GWB Trust by the Estate and which benefit you.

RESPONSE: Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 69: Admit or Deny that Albert, as your Legal Representative, exerted undue influence over Beverly Miller.

RESPONSE: Objection vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 70: Admit or Deny that, although you are based in Panama, the majority of your affairs originate in Texas.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 71: Admit or Deny that Albert, not you, is the one ultimately receiving income out of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 72: Admit or Deny that you donate funds to a medical facility that is located outside of the United States, claiming the act to be the primary reason for your existence.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied, other than to admit that Pentex Foundation donates to numerous causes.

323



REQUEST FOR ADMISSION NO. 73: Admit or Deny that Albert assisted in calculating the percentages due Heirs from the Estate and that Albert provided the calculations to the attorneys of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 74: Admit or Deny that neither Ken individually nor Candy individually had or now have the authority or the ability to control the distributions from the Estate to the Heirs.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 75: Admit or Deny that Albert assigned John Skotnik a percentage of his interest as detailed in the FSA.

RESPONSE: Objection. The terms of the FSA speak for themselves. Subject to this objection, Pentex Foundation admits that the FSA, as submitted as Plaintiff/Intervenor 00059-122 is authentic and that John Skotnik was assigned a share.

REQUEST FOR ADMISSION NO. 76: Admit or Deny that the subject matter in this case is not in the Fannin County Court's jurisdiction, since land in which GWB Trust holds interest remains in and under the control of the Estate.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 77: Admit or Deny that you drafted and persuaded Howard Kirk Gibbs to file documents in this Cause and in the Fannin County District Court Cause on your behalf.

RESPONSE: Objection *again*. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections: Denied.

324

Exhibit _____
Page __2 3__ of __2 9__



REQUEST FOR ADMISSION NO. 78:  Admit or Deny that GWB Trust document, not the CSL or the FSA, establishes the exact percentage of interest which Pentex held.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 79:  Admit or Deny that Candace Walton and Kenneth Gibbs do not want to sell the Homeplace.

RESPONSE:  Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 80: Admit or Deny that the land in which GWB Trust holds interest belongs to the Estate, and therefore GWB Trust issues must be handled as Estate matters.

RESPONSE: Objection.  This calls for a pure legal question.  Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 81: Admit or Deny that you transferred interest in GWB Trust to Renhaw, Inc., because doing so aided Albert in eluding the Internal Revenue Service's collection activities against him.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague.  Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 82:  Admit or Deny that GWB Trust is a legitimate Trust, which was designed to receive interest from the Estate and which has distributed you substantial assets in the past.

RESPONSE: Objection.  This calls for a pure legal question.  Subject to this objection, Admit that it is a business organization created under the terms of the CSL.

REQUEST FOR ADMISSION NO. 83:  Admit or Deny that the FSA is a legitimate and binding contract.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 84:  Admit or Deny that Albert drafted the CSL.

325

Exhibit 6
Page 24 of 29

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 85: Admit or Deny that Albert drafted the GWB Trust agreement.

RESPONSE: Objection. This request assumes facts in dispute, to wit: whether there even is a GWB Trust agreement. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 86: Admit or Deny that the Estate is being mismanaged.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 87: Admit or Deny that the Estate's calculations concerning the percentages of the Heirs' interest in the Estate impact GWB Trust.

RESPONSE: Objection. This request is confusing and vague, and seems to suggest a pure question of law. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 88: Admit or Deny that you have a true and correct copy of the CSL.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 89: Admit or Deny that you have a true and correct copy of the FSA.

RESPONSE: Admit we believe we do.

REQUEST FOR ADMISSION NO. 90: Admit or Deny that, according to the FSA, Albert is responsible for paying his own attorneys' fees.

Exhibit G
Page 25 of 27

RESPONSE: Objection this calls for a pure legal conclusion. Subject to this objection, admit as to our understanding of that to be the case.

REQUEST FOR ADMISSION NO. 91: Admit or Deny that Candy and Ken are not responsible for any tortious interference between GWB Trust and yourself, as neither Candy nor Ken ever interfered with the appropriate distributions to you of approximately one-quarter (1/4) interest in GWB Trust.

RESPONSE: Object to this request as multifarious and vague. Subject to these objections: Denied.

REQUEST FOR ADMISSION NO. 92: Admit or Deny that Albert breached the FSA.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 93: Admit or Deny that Albert breached the CSL.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 94: Admit or Deny that you are bound by the conditions of the FSA.

RESPONSE: Admit that some of the provisions of the FSA apply to Pentex Foundation and any other successor to the interest originally conveyed to Mr. Barcroft.

REQUEST FOR ADMISSION NO. 95: Admit or Deny that Danny Unger has been your Legal Representative since the inception of this lawsuit.

RESPONSE: Objection. This request is ambiguous with respect to the term "Legal Representative." Subject to this objection, it is admitted that Mr. Danny Unger is the designated representative for Pentex Foundation in this litigation.

REQUEST FOR ADMISSION NO. 96: Admit or Deny that Albert, not Danny Unger, initiated this lawsuit on your behalf.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation, the attorney/client privilege and work product communication.

327

Exhibit 6

Page 26 of 29

REQUEST FOR ADMISSION NO. 97: Admit or Deny that on a yearly basis, GWB Trust provided you accountings concerning income and distributions to Beneficiaries.

RESPONSE: Objection. This request is vague. Subject to that objection, it is admitted that only tax returns were submitted.

REQUEST FOR ADMISSION NO. 98: Admit or Deny that you breached the FSL.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 99: Admit or Deny that Scott Smith stated during the July 31, 2014, hearing in Tarrant County, that he received his retainer from beneficiaries of GBU Trust, including Danny Unger.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. Additionally, the transcript of that proceeding would be the best evidence of what was said.

REQUEST FOR ADMISSION NO. 100: Admit or Deny that Scott Smith stated during the July 31, 2014, hearing in Tarrant County, that he took this case because, he like most attorneys, will take any case that can pay him a retainer.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. Additionally, the transcript of that proceeding would be the best evidence of what was said.

Respectfully submitted,

By: _____

Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

328

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by certified mail, return receipt requested number 7009 2250 0000 2311 4187 toChristy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this the 3rd day of September, 2014.

Scott Smith

329

## Unsworn Delcaration Pursuant to
## TEX. CIV. PRAC. & REM. CODE § 132.001

My name is Danny Unger. My date of birth is ___1952___. I reside at _General Delivery or Apeland, TK 75747_. I am the designated representative of Pentex Foundation, that I have read the above and foregoing Answers to Interrogatories and subscribes to the same on behalf of Pentex Foundation; that said responses, subject to inadvertent or undiscovered errors, are based on and therefore limited by the records and information still in existence, presently recollected and this far discovered in the course of the preparation of these responses; that, consequently, I reserve the right to make changes in responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein, the said responses are true and correct and within my personal knowledge. I have been advised that Rule 197.2(d)(2) does not require that I swear to interrogatory answers about persons with knowledge of relevant facts, trial witnesses or legal contentions. Since I am not an attorney, I therefore do not swear to the truth of any interrogatory answers containing information about persons with knowledge of relevant facts, trial witnesses or legal contentions. I declare under penalty of perjury that the foregoing instrument is true and correct.

Dated: __09/02/____, 2014

_Danny Unger, Representative_
Danny Unger, Declarant

330



PLAINTIFF'S
EXHIBIT

F

### Statement Given Under Penalty of Perjury

I, Albert Lynn Barcroft, being born on August 20, 1946 in Rotan, Texas, give the following statement under penalty of perjury under the laws of the United States of America.

I am a resident of Guatemala, Central America, and have resided here for more than five (5) years without interruption. I am aware that I have been asked to attend a hearing and other legal proceedings in the United States. I hereby certify and affirm the following for the record:

1. I am not an employee of PENTEX FOUNDATION;

2. I do not receive a salary or other compensation for the services I provide for PENTEX FOUNDATION;

3. PENTEX FOUNDATION does not, and cannot, control my activities, time or movement, nor can it compel me to attend legal matters in the United States;

4. I am currently under doctor's care for heart and arthritic conditions that have recently gotten worse;

5. My doctors has informed me that any extended travel would be life threatening for me; and,

6. While I am still technically an agent for PENTEX FOUNDATION, my duties have been greatly reduced in recent months due to my health, and I am not authorized to give testimony on behalf of PENTEX FOUNDATION at this point in time.

I hereby certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Further, I certify under penalty of perjury under the prevailing laws of the State of Texas that the statements in this document are true and correct, and not intended to mislead.

**Executed** this 3rd day of September, 2014, in San Marcos, Izabal, Guatemala, Central America.

Albert Lynn Barcroft
Agent/Legal Representative
PENTEX FOUNDATION

331



# Dr. Leonel Antonio Ramírez Montenegro

### MEDICINA INTERNA Y ELECTROCARDIOGRAFIA

**CONSULTORIO**
Clínica Casa de Los Almendros
Calle de Atrás 9-68 Morales Izabal
Tel.: 7823-2060
EMERGENCIAS: 5412-0504 • E-mail:leoram_chey@yahoo.com

Clínica Médica
**Los Almendros**
Salud y más...

El infrascrito Dr. LEONEL ANTONIO RAMIREZ MONTENEGRO, médico y cirujano colegiado activo número ocho mil ciento treinta y cuatro, egresado de la Universdiad de San Carlos de Guatemala CERTIFICA: Que dentro de los archivos de este consultorio aparece registro del señor ALBERT LYNN BARCROFT. Quien padece HIPERTENSION ARTERIAL, FIBRILACION AURICULAR CRONICA Y OSTEOARTROSIS DEGENERATIVA DE RODILLAS, por lo que no puede viajar debido su codicion de salud, la cual le impide movilizarse por si mismo, así como tamblen representa riesgo para su vida dado que problema cardiovascualar he emperado en los últimos meses. A solicitud de la parte interesada se extiende la presente al veintiocho de Agosto del dos mil catorce.

Dr Leonel Ramirez
MEDICO INTERNISTA
Col 8 134

Dr. Leonel Ramirez Montenegro
Medicina Interna
Col. 8,134



PLAINTIFF'S
EXHIBIT
D

Exhibit I

Page 1 of 2

Although an exact interpretation from Spanish to English of a document of this sort is virtually impossible, below is a general interpretation into English of the foregoing medical report and evaluation for your convenience:

The undersigned Dr. LEONELANTONIO MONTENEGR RAMIREZ, physician and surgeon gives active number eight thousand one hundred thirty-four, graduated in the University of San Carlos De Guatemala CERTIFY that within the files of this office record appears Mr. Albert Lynn Barcroft who suffers HYPERTENSION, CHRONIC ATRIAL FIBRILLATION AND KNEE OSTEOARTHRITIS DEGENERATIVE therefore he is not able travel due to his health condition, this condition makes it difficult for him to move himself, and also this represents a life risk because the cardiovascular problem has worsened in recent months. At the request of the interested party present at the August 28 of two thousand fourteen runs.

Exhibit "C"

Exhibit 1
Page 2 of 2

Mar 23, 2010

## Great escape owner faked heart attack and wreckage wreaking havoc



The Great Escape, the luxury yacht, that damaged Belize's pristine barrier reef on November thirtieth, 2009 is gone but not forgotten. There were reports that it was leaking fuel into the sea and that it would have been moved. Well, the yacht is no longer at the site where it grounded. It wasn't a salvage company, but Mother Nature herself and currents have drifted the wreckage towards Punta Manabique. Boaters in the Bay of Honduras have been advised to be on the lookout because it could cause an accident. When we last reported on the incident, the Department of Environment indicated the owner of the vessel, Albert Barcroft, had suffered heart failure and had to be rushed to Guatemala to seek treatment. However, according to Roy McNett, the editor of an online newspaper in Rio Dulce, Guatemala, Al Barcroft has taken up residence in Rio Dulce and has admitted that he faked his heart attack so he wouldn't be taken to Belize City. McNett said that at the website's blog, www.riogulsechisme.com, Barcroft has indicated that the authorities in Belize have not held him responsible for the grounding.

Via Phone: Roy McNett, Editor, Rio Dulce Chisme Vindicator

334





"We are located in Rio Dulce and there is quite a large boating community out here, probably close to four hundred boats that are here. And many of the boaters here are upset about what happened. Of course there's always rumors that perhaps he did it intentionally to collect the insurance. That has not been verified at all."

**Jose Sanchez**

"The last we heard of Albert Barcroft, he had a heart attack and he went to Guatemala and left there. What do you actually know?"

**Via Phone: Roy McNett**

"He told me he faked the heart attack so he wouldn't have to go onto Belize City."

**Jose Sanchez**

"So he didn't have a heart attack?"

**Via Phone: Roy McNett**

"He did not have a heart attack."



Jose Sanchez

335

Exhibit J

Page 2 of 4



"And what has become of the boat. It's no longer where it was near the Sapodilla Cayes where it landed on the reef?"

**Via Phone: Roy McNett**

*"That's the sad thing about it. The boat is now floating with the tide between Belize and Guatemala. There's a photo on our website that shows the boat out there. It's a navigation hazard, it's very dangerous to be left there."*

**Jose Sanchez**

"Since you spoke to Mister Barcroft, has he accepted responsibility for landing his boat on the reef?"

**Via Phone: Roy McNett**

*"He's written in the blog that he has no fines at all, during the inquiries, he was not held responsible or negligent."*

**Jose Sanchez**

"So would you be surprised then to find out the investigation is not complete and it is a legal matter? So nothing has been resolved as yet."

**Via Phone: Roy McNett**

*"We are surprised that Belize has not as yet fined him for the damage to the reef. He is here in Rio Dulce and he's buying some land here now."*

**We have been unable to reach Martin Alegria, Chief Environmental Officer, for comment. However, the editor of Rio Dulce Chisme Vindicator happily provided us with Albert Barcroft's email address. So if the authorities or anyone would like to express their feelings about the incident, the Great Escape's owner can be reached at AlBarcroft@leonardonline.net**

Be Sociable, Share!

- ▪
- ▪
- ▪
- ▪
- ▪
- ▪
- ▪
- ▪
- ▪
- ▪

- ▪
- ▪
- ▪
- ▪
- ▪
- ▪

**Viewers please note: This Internet newscast is a verbatim transcript of our evening television newscast. Where speakers use Kriol, we attempt to faithfully reproduce the quotes using a standard spelling system.**

Advertise Here

5 Responses for "Great escape owner faked heart attack and wreckage wreaking havoc"

**1.** maddyvandijk **says:**

The boat was a problem in Belize so why the Belizean authorities didn't immediately charged the man before letting him go?
And why didn't the authorities removed the boat from the waters? This case should have been dealt with quick response instead of them running around in circles.
If the man was out for money from his insurance company, why would he care about your reef? The man saved millions by avoiding going to Belize, kind of the point he was trying to make, really. So I doubt if this matter will ever be resolved to anyone's satisfaction.

**2.** Criss **says:**

It is ridiculous that the Belizean Authorities have not completed a report on this incident which is now almost 4 months old. What is more horrifying is that Belize does not have a plan in place of removing shipping vessels when they run aground on the reef. You would think that because the reef is one of our most prized possessions on this side of the world, we would do everything to try and safeguard and protect it. I would think that having a plan to remove vessels would be the first prioirty especially since we formed a Coast Guard crew. Sad that our politicians don't think of our jewel as others do.

**3.** Rufus Cayetano **says:**

Only in Belize.

**4.** read the Great Escape Owner's lies **says:**

This rio dulce website has Al Barcroft's lies in it. HE makes his posts as "The Great Escape Freshman River Rat". its funny his lies. check it out here....

**5.** avidreader **says:**

i'm gonna write Al Barcroft on the behalf of Belizeans since the dept. of environment is moving slow.

**Exhibit** J

**Page** 4 **of** 4

CAUSE NO. CV-14-41665

PENTEX FOUNDATION                )          IN THE DISTRICT COURT
        PLAINTIFF,               )
                                 )
VS.                              )          336ᵀᴴ JUDICIAL DISTRICT
                                 )
KENNETH VERN GIBBS; AND          )
CANDACE GIBBS WALTON; AND        )
HOWARD KIRK GIBBS,               )
        DEFENDANTS.              )          FANNIN COUNTY, TEXAS

## DEFENDANTS' MOTION FOR LEAVE OF COURT
## TO FILE THIRD-PARTY PETITION

Come now, Defendants Kenneth "Ken" Vern Gibbs and Candace "Candy" Walton, through their Counsel of Record, Law Offices of Christy Lee, P.C., and, pursuant to Rule 38 of the Texas Rules of Civil Procedure, respectfully move the Court for leave to file a third-party petition naming Albert Barcroft as a Third-Party Defendant in this Cause. Evidence proves, and Ken and Candy know, that Albert is the alter ego of Pentex Foundation ("Pentex"), the original Plaintiff in this Cause. Evidence proves, and Ken and Candy also know, that Albert is the alter ego of GBU Friends and Associates Trust ("GBU Trust"), the Intervener who insists that it is the true party of interest in this Cause. Until March 2014, Albert signed his formal communications (and most of his informal communications) to Ken and Candy as "Legal Representative" of either Pentex or Pentex Royalty Trust or GWB Trust or GBU Trust or Renhaw, Inc. At times Albert proclaimed himself Legal Representatives for some or all the entities. Justice cannot be served unless Albert is named to answer for the events he engineered which led Pentex to file this suit, and GBU Trust to intervene in this suit.

## I. FACTS

1.      On April 28, 2014, in response to Pentex's Original Petition, Ken and Candy filed their Motion to Show Authority, Motion for Change of Venue, Original Answer, Affirmative Defenses, Original Counterclaim, and Rule 13 Motion for Sanctions. Section V, Defendants' Counterclaim, noted that Albert was also known as Pentex. *See* Para. 22.

2.      On July 28, 2014, Ken and Candy filed their First Supplement to Original Answer and Affirmative Defenses ("the First Supplement"). Part IV, the First Supplement, contended that Albert is the "responsible third party," within the meaning of Texas Civil Practice and Remedies Sec. 33.011(6).

3.      According to formation documents, Pentex was established on May 21, 2008[1] - about three (3) years following the execution of the Contract for Sale of Land ("the CSL"), which Albert illegally drafted,[2] and which concerned assets of the Estate of Bert Hughes Gibbs ("the Estate"); and about four (4) months prior to the execution of the Family Settlement Agreement ("FSA"), which specified the terms under which certain parties would receive their distributions from the Estate, including the creation of an entity to receive the distributions.

4.      Albert's status as regards Pentex is well-documented. At the time of Pentex's creation, the Internal Revenue Service ("the I.R.S.") was actively pursuing Albert for delinquent taxes. Albert confided to Ken and Candy that he created Pentex to avoid seizure of his assets by the I.R.S., and he assigned Pentex his GWB Trust interest.

---

[1] Pentex was not registered in Panama until June 26, 2014.
[2] It is an undisputed fact that Albert drafted the CSL. Albert is not a lawyer and was practicing law without a license. Albert threatened Ken and Candy not to obtain legal counsel to review the CSL prior to signing it.

5. Through discovery, it has been determined that, in late 2008, Albert provided all communications with the Estate concerning any and all attorney fee distributions for Ken and Candy. Albert signed all the documents associated with these distributions and distributions to GWB Trust. Albert signed all these documents as the Legal Representative for Pentex.

6. From the moment Pentex was established, Albert portrayed to everyone, including Ken and Candy, that he was the Legal Representative for the entity.

7. By 2013, as a result of Ken and Candy's inquiries concerning its administration, communications among GWB Trust members had irrevocably broken down. On November 25, 2013, acting as Legal Representative of both Pentex and Renhaw, Inc., which he described as a Panamanian, wholly-owned subsidiary of Pentex, Albert issued to the Beneficiaries a formal revocation of GWB Trust. *See* Exhibit A.

8. On November 28, 2013, upon receiving instructions from Albert as Legal Representative of Pentex, Trustee Beverly Miller transferred 57.19% interest in GWB Trust to GBU Trust.

9. On December 18, 2013, Albert sent to the Estate Counsel a letter on behalf of himself, Pentex Royalty Trust, Pentex, and Renhaw, Inc, "conjunctively and/or individually," stating that he was the Legal Representative of the various parties, and as such he had "the authority to make all legal decisions on their behalf." *See* Exhibit B.

10. Approximately five (5) months ago, Albert consulted RayAnswers, Attorney, an on-line "Estate Law Specialist." The consultation consisted of Albert's disclosure of confidential information, including the names of Ken, Candy, and Pentex.[3] He provided details concerning

---

[3] While no doubt the consultation should have remained confidential, in fact, the posting is available to the public

the CSL and the FSA, and asked for an assessment of the situation as he promoted it. *See* Exhibit C.

11. As the alleged legal representative for Pentex, Albert filed the current suit on April 1, 2014. Despite Ken and Candy's repeated requests for full disclosure as to the identity of the Pentex representative who authorized filing the suit, no such information was forthcoming from Pentex, immediately or otherwise. During the July 31, 2014, hearing in Tarrant County (Tarrant County Probate Court No. 2, Cause No. 2005-0000126-2-D), Scott Smith, Successor Counsel for Pentex in this Cause, testified that he could not name the designated representative for Pentex, although he was adamant that Angelli Carassco, Pentex's alleged President, Director, and Chairman, was not his client, that he had never met her, that, indeed, he had never even spoken with her. In fact, added Scott, he could not even recall who hired his firm for the matter, but confessed that he had discussed the case with Albert on several occasions.

12. On August 5, 2014, Scott forwarded Judge Pat Ferchill a letter in which he acknowledged that Albert provided a retainer of $5,000 for this current Cause.[4]

13. Throughout this entire lawsuit, Scott has adamantly denied that he represents Albert. However, during the hearing on July 31, 2014, in Tarrant County, Scott testified that he has spoken to Albert and in fact, it was Albert who called him to represent Pentex. In Scott's letter to Judge Ferchill on or about August 5, 2014, Scott provided that it was in fact Albert who paid him a $5,000 retainer. In discovery, Scott asserts attorney/client privilege when asked in

---

and was found on various dates, including September 11, 2014, at the following web address: http://www.justanswer.com/estate-law/8d4kl-answered-texas-trust-attorney-three-individuals.html. In the web exchange, Albert confessed to not liking the advice he received, but admitted to "needing to hear it."

[4] Pentex Royalty Trust also provided $5,000 toward the retainer. Another of Albert's established organizations, Pentex Royalty Trust is the United States receiver of GWB Trust assets, which in turn were funneled to Pentex. I.e., Pentex Foundation and Pentex Royalty Trust are essentially the same entity, meaning that they are both Albert's alter egos.

Request for Admissions No. 96, "admit or deny that Albert, not Danny Unger, initiated this lawsuit on [Pentex's] behalf." *See* Exhibit D page 26.

14. During the discovery process, on September 3, 2014, Pentex admitted to Ken and Candy that, at the time of the alleged damage done to Pentex, Albert "had the authority to carry on all business in the United States for Pentex Foundation." *See* Exhibit D, Admission No. 25. Pentex also stated that Pentex worked with Albert concerning what would evolve into some of the major points of contention in this lawsuit because doing so was "mutually advantageous." And, affirmed Pentex, "Mr. Barcroft definitely made Pentex Foundation aware that he thought there was a problem in the way proceeds were being paid by GWB Trust . . . **In brief, Barcroft was our express liaison with GWB Trust**" (emphasis added). *See* Exhibit D, Interrogatory No. 2.

15. On September 3, 2014, Albert signed a statement under penalty of perjury (which, of course, was not notarized), in which he admitted that he is "an agent for Pentex." *See* Exhibit E. The document was attached to the Motion to Quash or for Protective Order Relating to Subpoenas and Deposition Notices, which Scott filed with this Court on September 3, 2014.

## II. LAW

16. Rule 38 of Texas Rules of Civil Procedure provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a citation and petition to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party petition not later than thirty (30) days after he serves his original answer. Otherwise, he must obtain leave on the motion upon notice of all parties to the action.

DEFENDANTS' MOTION FOR LEAVE OF COURT
TO FILE THIRD-PARTY PETITION AND ALTER EGO
342 *PENTEX FOUNDATION V. GIBBS, ET AL.*

CAUSE NO. CV-14-41665

-5-

17.     Pursuant to Texas Civil Practice and Remedies Code Sec. 33, a court is authorized to grant such requested leave unless an objecting party successfully establishes that the "defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure."

18.     The Courts have determined that alter ego is a basis for disregarding the corporate fiction where a corporation is organized and operated as a mere tool or business conduit of another individual. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). It applies "where there is such unity between corporation and individual that the separateness of the corporation has ceased." Id., citing First National Bank, in *Ganyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939). Alter ego "is shown from the total dealings of the corporation and the individual, including the degree to which . . . corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry v. Branscum*, 721 S.W.2d at 272; *Hall v. Timmons*, 987 S.W.2d 248, 250 (Tex. Appl.-Beaumont 1999, no pet.).

19.     Granting the motion for leave to file a third-party petition is within the sound discretion of a trial court, and leave to file such a petition should be "liberally granted." *In re Arthur Andersen LLP*, 121 S.W.3d 471, 483 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

### III. ARGUMENTS

20.     Albert is undeniably the alter ego of Pentex Foundation, Pentex Royalty Trust, Renhaw, Inc., and GBU Trust. Albert's actions regarding Pentex's administrative decisions in

Defendants' Motion for Leave of Court
TO File Third-Party Petition and Alter Ego                                      Cause No. CV-14-41665
343 *Pentex Foundation v. Gibbs, et al.*                                                                        -6-

the matter at hand meet the standards established by the courts for an alter ego.[5]

21.    The Purpose of the Organization.  A review of the facts emphasizes the fact that Albert established Pentex specifically for his own advantage.  Originally Albert purported that, upon learning about Pentex's philanthropic efforts, he approached some of the Estate's Heirs with the proposal that Pentex invest in the Heirs' legal fight for Estate assets.  However, the timeline posited by Albert is not feasible.  Albert began discussions with the Heirs as far back as 2005.  These discussions were documented in the CSL which Pentex claimed formed the crux of its Original Complaint, and which, again, was illegally drafted by Albert.  However, according to its formation documents obtained in discovery, Pentex was not established until 2008.  This means that, way back in 2005, Albert must have concocted a plan in which he would create a Panamanian foundation once he and the Heirs came close to agreement concerning Estate assets.  In other words, Pentex did not exist prior to Albert's assumption that he would profit greatly from providing unauthorized legal advice to the Heirs.  Clearly Pentex was established to benefit Albert, and only Albert.

22.    Use of the Organization.  Specifically, by allowing funds to flow from the Estate through GWB Trust to Pentex, then on to him, Albert could largely escape the collecting hand of the I.R.S.  Albert's stance regarding the I.R.S. was, and is, infamous.  In 2001, he copyrighted an on-line nonfiction work, which he entitled *The Greatest Story Never Told – Until Now*, and which addressed strategies to avoid legal process and other uncomfortable governmental things,

---

[5] While the courts reference "corporations" in terms of alter egos, the function of Pentex within this Cause places it well within the definition of a business structure. On June 20, 2014, in an email from Pentex's Counsel, Pentex is referred to as a corporation.

such as federal taxes.[6] Thus, as Pentex's designer and maker, Albert could enjoy a great number of monetary rewards without the hassle of governmental oversight. Pentex was a conduit which allowed Albert to elude the I.R.S. In effect, Pentex **is** Albert. And vice versa.

23. <u>Control of the Organization.</u> Once established, Albert exercised control over Pentex. According to Albert's self-avowed position as "Legal Representative," and according to Pentex's own Admissions, during the time of the alleged damage to Pentex, Albert possessed the authority "to carry on all business in the United States for Pentex."

24. On behalf of Pentex, Albert fully demonstrated this control when assigning Pentex's interest in GWB Trust to Renhaw, Inc., and again when he reassigned Renhaw's interest back to Pentex.

25. On behalf of Pentex, Albert fully demonstrated this control when wielding the majority vote of GWB Trust.

26. On behalf of Pentex, Albert fully demonstrated this control during increasingly heated discussions with other GWB Trust members over the provisions of GWB Trust.

27. On behalf of Pentex, Albert fully demonstrated this control when he denied that accurate and complete accountings of GWB Trust were necessary.

28. On behalf of Pentex, Albert fully demonstrated this control when he demanded a split of GWB Trust assets.

29. On behalf of Pentex, Albert fully demonstrated this control when he ordered Beverly Miller to assign all of Pentex's interest (and a great deal of interest not belonging to Pentex) in GWB Trust to GBU Trust.[7]

---

[6] As recently as September 14, 2014, Albert's treatise on the evils of governmental influences could be found at: http://www.naturallyprudent.com/Greatest%20Story%20Never%20Told-UNTIL%20NOW.pdf.



30. On behalf of Pentex, Albert fully demonstrated this control when he paid Scott a retainer fee.

31. On behalf of Pentex, Albert fully demonstrated this control when he entered into discussions with Scott about this Cause, circumstances which Scott admits, but Smith continues to state that he does not represent Albert.

32. As the Court was alerted to their Original Answer's Counter-claim, and in their First Supplement to the Original Answer, Albert's presence in this Cause as a Third-Party is an urgent matter to Ken and Candy, whose interests will not be served otherwise. Albert has been the defining presence in Pentex since its inception. Albert has represented himself as the Legal Representative for Pentex since he founded it. Albert has made the decisions for Pentex regarding all its interactions with GWB Trust. Albert has assigned Pentex's interest in and out of GWB Trust. Albert has made consistently demands on behalf of Pentex to GWB Trust. Albert has voted always Pentex's majority vote in GWB Trust. Albert provided information to Pentex's Counsel concerning this Cause.

33. Albert meets the court-established standards of the alter ego for Pentex. As the alter ego for Pentex, Albert should be named as a party to this Cause. This Court is authorized to grant Ken and Candy leave to file Third-Party Action.

### IV. PRAYER FOR RELIEF.

Candy and Ken therefore respectfully pray that this Court:

---

[7] Per Albert's apparently successful habit of eluding the I.R.S. through formal business structures, in the Fall 2013, when the I.R.S. slapped a federal tax lien on Pentex Royalty Trust, Albert turned around and assigned Pentex's interest in GWB Trust to GBU Trust.

34.    Approve this Motion for Leave of Court to File Third-Party Petition and Alter Ego;

35.    Require that Scott Smith receive and accept service on Albert, as Scott, is in fact, Albert's attorney; or,

36.    In the alternative, set the Motion to be heard during the hearing for the Motion to Show Authority, scheduled in this matter for September 30, 2014; and

37.    Enter all other Orders and further relief, legal and equitable, that the Court deems appropriate in this matter.

Respectfully submitted,

LAW OFFICES OF CHRISTY LEE, P.C.

Christy L. Lee
Texas State Bar No. 24052302
777 Main Street, Ste. 600
Fort Worth, Texas 76102
(817) 504-6075
(800) 437-7901 - Fax
clee@christyleelaw.com

ATTORNEY FOR KENNETH GIBBS AND CANDACE WALTON

## FIAT

The above and foregoing Defendants' Motion for Leave of Court to File Third-Party Petition and Alter Ego is approved. The Motion shall be heard by the Court on the _____ day of _____, 2014, at _____ o'clock, _____.m.

_____
Presiding Judge or Clerk of the Court

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Defendants' Motion for Leave of Court to File Third-Party Petition and Alter Ego was delivered, pursuant to Texas Rules of Civil Procedure, to the following parties on this 15th date of September, 2014:

Party:                                      Via:

Howard Kirk Gibbs                           Mail
4360 Western Center Blvd., No. 205          Email: hkgibbs@gmail.com
Fort Worth, TX 76157

Pentex Foundation, **and**                  Email: smithlaw@airmail.net
GBU Friends and Associates Trust            Fax:
c/o Scott Smith, Attorney of Record
120 South Crockett Street
Sherman, TX 75091-0354

_Christy L. Lee_

Christy L. Lee

DEFENDANTS' MOTION FOR LEAVE OF COURT
TO FILE THIRD-PARTY PETITION AND ALTER EGO
PENTEX FOUNDATION V. GIBBS, ET AL.

CAUSE NO. CV-14-41665

-11-

348

# PENTEX FOUNDATION
## *A Private Foundation of Panama, C.A.*

November 25, 2013

Kenneth Vern Gibbs [Ken]
Candace Gibbs Walton [Candy]
Howard Kirk Gibbs [Howard]

RE: Formal Notice of Revocation of GWB Family and Friends Trust and split of assets pursuant to original contract between the parties

Ken, Candy and Howard:

This is my formal notice on behalf of myself, and as Agent for Pentex Royalty Trust and its sole beneficiary PENTEX FOUNDATION, and RENHAW, INC., a Panama corporation and wholly owned subsidiary of PENTEX FOUNDATION, that I/we are utilizing Item #6 on page 4 of the **"Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or 'The Kathryn Houseworth Gibbs Irrevocable Trust'"**, herein also referred to as "Contract for Sale of Land", to split the assets of the GWB Family and Friends Trust, herein also "GWB", under the terms provided in said Contract for Sale of Land.

The relationship between us has deteriorated to the point that I no longer wish to be associated with you. I have accused you of not honoring the agreement between us; and you, or at least some of you, have accused me of plotting to steal your portion of the **"Estate of Bert Hughes Gibbs"**, herein also **"Estate"**, at the point of any of your deaths. I was even told by Candy that I was not the honorable man I once was.

349

Exhibit

Page ___1___ of __5__

You have not confined those remarks to conversations between us, because Jay Henderson asked me if I intended to steal your shares.

You hired an attorney who made ridiculous demands of me, told me how stupid I was, tried to [and succeeded in your mind] create a problem where none existed, explained to me that no one but a BAR attorney could read or understand the law/code, and called me a liar and thief. Where was she when all you had were judgments against you? She even admitted to me that she would never have taken your case back then.

In addition, I do believe that at least two of you have broken our deal and your word to me. When I asked that GWB move to enforce the provision in the Gibbs Family Settlement Agreement, herein also "FSA", to sell the land, Candy had the nerve to tell me that I had been paid very well for what I did, and that she wanted to keep the land for her daughter. Ken continues to use the "home place" as his own personal property, and refuses to pursue selling it in a viable manner.

The fact is that neither I nor my assigns have been paid what was agreed to and promised. Bert died 9 years ago, the FSA is now 5 years old, and we're no closer to closing the Estate than we were 5 years ago. Ken has given an exclusive listing on well over 200 pieces of property to a car salesman, and that "agent" has not produced a new contract for sale of any land in over a year with some 230 pieces of property in what everybody calls a "hot" area at his, and only his, disposal. Further, it is my belief that virtually all the sales this "agent" has ever "made" have been handed to him by the Estate when someone called the Estate requesting to buy certain property. Essentially, he is a high-priced order taker. These situations are not acceptable.

I intend to move forward aggressively on behalf of PENTEX FOUNDATION to force compliance with the FSA. As a member of GWB,

350

Exhibit 1

Page 2 of 5

PENTEX FOUNDATION has restraints on what it can do; and, every time there is a vote in GWB that doesn't go your way, you yell foul.   Further, there is a conflict of interest because an action must be brought against Ken to force compliance with the FSA or to remove Ken as Executor, and Ken is a voting member and beneficiary of GWB.  Therefore, any action by GWB would involve using Ken's money to sue him.  I cannot imagine how that would play out, or how the court would handle that scenario; therefore, we never moved forward.  That is the main reason why PENTEX FOUNDATION has not been able to proceed with enforcement actions earlier.

All this adds up to the fact that PENTEX FOUNDATION simply does not wish to remain a party in GWB.   Under the terms of the Contract for Sale of Land and the laws of the State of Texas, it does not have to.

**Therefore, this is my formal notice to each of you** that, as agent for PENTEX FOUNDATION, I am revoking PENTEX FOUNDATION's entire contribution to GWB, and demanding a split of its assets pursuant to the Contract for Sale of Land at page 4, Item #6, to wit:

> **"It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or assets covered herein shall be deposited into a bank account in that entity's name, and that all expenses necessary to the continuation of revenue being paid to the parties hereto (i.e. property taxes on the royalties or property covered herein, and any necessary expenses such as well upkeep, etc.) shall be deducted and paid as required before the 70/30 division agreed to in this contract.  Barcroft shall have a 50% vote in the operation of said business organization; and, the only function of said business organization shall be to facilitate the agreement in this contract.  Any monies paid out of said business organization, other than the agreed upon split**

351

between the parties, shall be agreed upon by all parties hereto. **The division shall be divided on a basis of 30% to Barcroft, 23.34% to Kenneth Vern Gibbs, 23.33% to Candace Walton Gibbs, and 23.33% to Howard Kirk Gibbs, at each instance of dispersal to the parties. Any party may demand a split of the assets of said business organization at any time."** The business organization described at page 4, item #6, and shown in its entirety directly herein above, is GWB, which was created to fulfill this provision of the Contract for Sale of Land; therefore, the option to demand a split of the assets applies to GWB and is enforceable.

I regret that your actions have necessitated this action. I had hoped always to remain friends. It doesn't appear that was in the cards. After this, I will have no way to "steal" anything that belongs to you, or visit any other false threat your attorney has created in your mind on you; but, I intend to fully collect what belongs to PENTEX FOUNDATION.

PENTEX FOUNDATION is assigning its share of the Estate proceeds from the Contract for Sale of Land to the GBU Friends and Associates Trust, 410 Anderson County Road 154, Palestine, Texas 75801. PENTEX FOUNDATION will receive regular mail, but not certified or registered mail or service, at 210 West Oak Street #151, Palestine, Texas 75801. Service and mail that must be signed for must be made through its home office: PENTEX FOUNDATION, Panama Gardens - Unit 2, Hacie Lidice, Capira, Republic of Panama; or, through me at Rancho Las Brisas, San Marcos, Livingston, Izabal, Guatemala, Central America.

Sincerely,

Albert Lynn Barcroft
Agent for PENTEX FOUNDATION

352

Exhibit _A_

Page ___4___ of ___5___

Copies of this notice have been sent by Certified Mail, Return Receipt Requested, to:

**Kenneth Vern Gibbs**
4212 Wheeler Street
Ft. Worth, TX 76117

**Candace Gibbs Walton**
500 Logan Dr.
Azle, TX 76020

**Howard Kirk Gibbs**
4005 Vernon Way
Keller, TX 76248

353

**PENTEX FOUNDATION**
**A Private Foundation of Panama, C.A.**

December 18, 2013

To: Kenneth Vern Gibbs, Executor for the Estate of Bert Hughes Gibbs
    4212 Wheeler, Ft. Worth, TX 76117

To: Rickey Brantley, Attorney for the Estate of Bert Hughes Gibbs
    855 Texas St, Fort Worth, TX 76102

To: Scott Pelley, Attorney for the Estate of Bert Hughes Gibbs
    707 West Washington, Sherman, TX 75092-5639

To: Jimmy Walker, Attorney, Permanent Guardian of Kathryn Gibbs
    815 Walker, Suite 240, Houston, TX 77002-5762

Dear Mr. Gibbs, Mr. Brantley, Mr. Pelley and Mr. Walker:

This notice is to inform the Estates of Bert and Kathryn Gibbs ["Estates"] that the original 30% assignment titled "**Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or 'The Kathryn Houseworth Gibbs Irrevocable Trust'**" ["CSL"] to Al Barcroft has been transferred to GBU Friends and Associates Trust ["GBU"] from GWB Family and Friends Trust ["GWB"] effective November 26, 2013; and, that all future distributions relating to this 30% assignment by Kenneth Vern Gibbs, Candace Walton Gibbs and Howard Kirk Gibbs ["Gibbs Children"] to Al Barcroft should be remitted directly to GBU, 410 Anderson County Rd 154, Palestine, Texas 75801.

Item number 6 of the CSL provided for the creation of a business organization that would receive and distribute the 70% portion of the Estates' distributions owned by Kenneth Vern Gibbs, Candace Gibbs Walton and Howard Kirk Gibbs [collectively "Gibbs Children"] along with the 30% assignment to Al Barcroft; and GWB, a revocable trust, was created on or about November 7, 2008, in accordance with that requirement. The CSL

354

further provided in the same paragraph *that any party may demand a split of the assets of said business organization at any time*. PENTEX FOUNDATION, a settlor of GWB and current assignee of the 30% assignment from Al Barcroft, has revoked its contribution to GWB and assigned its share of the assets residing in GWB to GBU. PENTEX FOUNDATIION hereby affirms that its share due from the Estates relating to the 30% assignment are now transferred to the GBU, and all future distributions relating to said 30% assignment by either Estate should be made payable to GBU.

In accordance with the Gibbs Family Settlement Agreement ["FSA"], Kip Gibbs was to receive 25% of the Estates of Bert and Kathryn Gibbs with the remaining 75% going to the Gibbs Children. In accordance with the FSA and the CSL, 22.5% of the distributions by the Estates is owned by and related to this original 30% assignment. However, 2.46% of the original 22.5% of the gross Estates is being paid directly to John Skotnik, leaving the assignee with 20.04% of the gross distributions of the Estates.

**THEREFORE, FROM THIS DATE FORWARD**, Notice and Demand is hereby made upon the Estates of Bert and Kathryn Gibbs, that from the date of this notice forward, that portion of all distributions made by the Estates of Bert and/or Kathryn Gibbs related to the original 30% assignment made by the Gibbs Children to Al Barcroft, and currently being paid to GWB Family and Friends Trust, be distributed and made payable to; and, be sent directly to:
 **GBU Friends and Associates Trust**
**410 Anderson County Road 154**
**Palestine, Texas 75801**
The tax number for GBU Friends and Associates Trust is **38-7103561**.

If either Estate disagrees with the calculation referred to herein, or needs any further verification of any documents related to this transfer, please notify me immediately by e-mail to albertbarcroft@gmail.com, specifically identifying any mistake in the calculation and/or required verification; or, as to any reason why future distributions will not be made directly go GBU Friends and Associates Trust as requested.

355

Exhibit 13

Page 2 of 3

On behalf of Al Barcroft, Pentex Royal Trust, PENTEX FOUNDATION, and/or RENHAW, INC., conjunctively and/or individually, I hereby stipulate that a photocopy of a scanned e-mail or fax of this document, and any attachments, may be used as originals for all legal purposes.

I hereby certify and affirm with my signature below under penalty of perjury under the laws of the United States of America that I am the legal representative for Pentex Royalty Trust, PENTEX FOUNDATION, and RENHAW, INC.; and, as such, I have the authority to make all legal decisions on their behalf. [28 USC § 1746(1)]

Further, Beverly Miller, Trustee of the GWB Family and Friends Trust, is in the possession of the original authorization for me to represent those entities; and, she will provide copies of same if necessary.

Dated and Signed this 18th day of December, 2013.

Albert Lynn Barcroft
In my personal capacity, and as legal representative for
PENTEX FOUNDATION, Pentex Royalty Trust, and
RENHAW, INC.

cc: Kenneth Vern Gibbs, Rickey J. Brantley, and Scott Pelley by United States Postal Service, Certified Mail, Return Receipt Requested to the addresses shown in the heading hereto.

cc: By e-mail to:
Rickey Brantley at rickey@rickeybrantley.com
Scott Pelley at spelley@npwlawfirm.com

356

Exhibit B
Page 3 of 3

 **answer** Estate Law

# To be answered by a Texas Trust attorney: Three individuals

### Resolved Question:

To be answered by a Texas Trust attorney:

Three individuals (A, B, & C) sold to one other person (D) exactly 30% of their inheritance before the fact of the inheritance (for D's assistance in dealing with all problems and concerns of securing the inheritance).

B. The people did this by a contract for sale ["Contract"] executed and filed in the public record.

C. Under the terms of the contract, a business organization would be established so that all money to be paid from the inheritance _pursuant_ to the contract would be deposited into the business organization.

D. The percentages due to each would be as follows: D= 30%, A=23.34%, B=23.33% and C=23.33%.

E. The language of the contract was as follows:

1. "It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or _assets_ covered herein shall be deposited into a bank _account_ in that entity's name, and that all expenses necessary to the continuation of revenue being paid to the parties hereto (i.e. property _taxes_ on the royalties or property covered herein, and any necessary expenses such as well upkeep, etc.) shall be deducted and paid as required before the 70/30 division agreed to in this contract... ; and, the only function of said business organization shall be to facilitate the agreement in this contract. Any monies paid out of said business organization shall be agreed upon by all parties hereto, and shall be divided on a 70/30 basis at each instance of dispersal to the parties. Any party may demand a split of the assets of said business organization at any time."

F. The business organization that was created in compliance with the Contract was specifically a revocable trust. [The trust document specifically states: "This trust shall be revocable."]

G. Three of the parties (A, B, & C) to the contract became named settlors in the trust and contributed their entire share; and, the fourth party (D) to the Contract contributed his entire share as well, but was not a named settlor in the trust.

H. Under the definitions in the trust document, "settlor" is defined as:

1. "Settlor" means a person [or persons] who creates a trust or contributes property to

357

Exhibit

2. If more than one person contributes property to a trustee of a trust, each person is a settlor of the portion of the property in the trust attributable to that person's contribution to the trust."

I. The proceeds from the contract were the only contributions to the trust.

J. The beneficial distribution within the trust was different than the settlor's contributions for several reasons; but the settlors or their interests never changed.

K. The person D decided to revoke his contribution to the trust.

Questions based on these facts

1. If a person (D) who was not specifically named as a settlor in the original trust document contributes property to the trust, in accordance with the above trust definition, does that person's contribution cause him to become a settlor of the trust with a revocable interest for his entire share of the contribution?

2. Can any settlor revoke all of his contribution, even if his defined beneficiary interest percentage in the trust was less than the percentage contribution he made?

a. For example, a settlor contributes 30% of the total assets to a trust, but he receives only 25% of the beneficial distributions from the trust.

b. If he revokes his contribution, can he revoke the full 30% he contributed?

3. Can the underlying contract that caused the creation of the trust be enforced after the trust is created and in force and action?


**Expert:  RayAnswers**

Hi and welcome to JA. I am Ray and will be the expert helping you today.

Let's go through your questions here.

1. If a person (D) who was not specifically named as a settlor in the original trust document contributes property to the trust, in accordance with the above trust definition, does that person's contribution cause him to become a settlor of the trust with a revocable interest for his entire share of the contribution?

**Answer: He would not be a settlor unless he either set up the trust or their was an amendment done adding him as a settlor.If the other parties agree you can amend the revocable trust here and make him a settlor to the trust.**

2. Can any settlor revoke all of his contribution, even if his defined beneficiary interest percentage in the trust was less than the percentage contribution he made?

a. For example, a settlor contributes 30% of the total assets to a trust, but he receives only 25% of the beneficial distributions from the trust.

358

Exhibit C
Page 2 of 9

Here the terms of the trust control as far as the trust and again a trsut amendment could be done to allow for this.

**Sample trust amendment.**

http://www.lqqgroup.com/html/plan-and-prosper-pdf/REVOCABLE%20LIVING%20TRUST%20Amendment_Form.pdf

b. If he revokes his contribution, can he revoke the full 30% he contributed?

**If the trust does not allow for this then no under the trust.He could sue under breach of contract here for the amount of contribution if the contract allows for that.**
**You would have four years from the date of breach to bring suit.**

http://codes.lp.findlaw.com/txstatutes/BC/1/2/G/2.725

3. Can the underlying contract that caused the creation of the trust be enforced after the trust is created and in force and action?

**Yes the contract can be enforced as breach of contract suit.**

**I appreciate the chance to help you today.Please let me know if you have more follow up.Thanks again.**



**RayAnswers, Attorney**
**Category:** Estate Law
**Satisfied Customers:** 29595
**Experience:** Texas lawyer for 29 years in Estate law

# RayAnswers and 7 other Estate Law Specialists are ready to help you

**Expert: RayAnswers**

Al, here is the law that allows you to amend the trust.

## SUBCHAPTER C. REVOCATION, MODIFICATION, AND TERMINATION OF TRUSTS

**Sec. 112.051. REVOCATION, MODIFICATION, OR AMENDMENT BY SETTLOR. (a) A settlor may revoke the trust unless it is irrevocable by the express terms of the instrument creating it or of an instrument modifying it.**

**(b) The settlor may modify or amend a trust that is revocable, but the settlor may not enlarge the duties of the trustee without the trustee's express consent.**

**(c) If the trust was created by a written instrument, a revocation, modification, or amendment of the trust must be in writing.**

Ask Your Own Estate Law Question

**Expert: RayAnswers**

Al here is a very detailed article about amending trusts in Texas under the law.

http://www.galliganmanning.com/documents/Modification-and-Termination-of-Trusts-and-Trustee-Resignations.pdf

An amendment would allow the settlors to add a third one and to incorporate the contract details into the trust where needed.

Thanks again.

Ask Your Own Estate Law Question

**Customer:**

(D) is a foundation. It was added to the trust as follows:

3.1 Beneficiaries: The beneficiaries, and percentage of beneficial interests, are as follows:

Kenneth Vern Gibbs: 25.011614 % of the trust:

360

**Exhibit** C

Page 4 of 9

Candace Gibbs Walton: 25.011613 % of the trust:

Howard Kirk Gibbs: 25.011613 % of the trust:

Pentex Royalty Trust: 24.96516 % of the trust.

3.2 Voting Shares: Actions and decisions concerning the trust shall be governed by vote of the beneficiaries hereto. Sixteen (16) votes will represent a majority of the votes on any issue unless specifically set herein at a different vote requirement. Each beneficiary shall have following votes in any matter of the trust for which a vote is called:

Kenneth Vern Gibbs: 5 votes:

Candace Gibbs Walton: 5 votes;

Howard Kirk Gibbs: 5 votes;

Pentex Foundation: 15 votes.

Pentex Foundation actually has 50% vote in matters concerning the trust. Does that make a difference.

361

Exhibit C

Page 5 of 6

**Expert: RayAnswers**

Unless the trust allows for the person D to retrieve his contribution or the beneficiaries all agree he woudl have to file suit against the trust to seek his contribution and add a breach of contract claim as well.He might be able to prevail on either one and the court might revoke the trust divide out the assets here and any otehr orders they feel neecssary to resolve the exiting trust.

Unless ther is voluntary agreement here of all the beneficiaries such a suit would be necessary and the court here would decide whether he gets the full contribution back.Ther eis some uniqueness or case by case.

For example if there was real estae contributed to the trust and it went down and had less value the court would have to use its equitable powers for a fiar resolution.Base on what you present there is no language that allows a party to get out here short of a suit and the court revoking the trust or awarding him his contribution here.

This section really doesn't address any refund of contribution.Unless the trsut does the options are amend the trust again, resolve it with the beneficiaeies, or a civil suit to seek to have the court revoke it or resolve it.

Thanks for the follow up.

Ask Your Own Estate Law Question

**Customer:**

One last follow up in this case.

There is a dispute in this case as to the trust document. The document filed in the court case is a copy that has many flaws, including no date and some of the pages not being number in sequence. To perform on the trust if there is a dispute, would it be necessary for the moving party to actually present the original trust document?

**Expert: RayAnswers**

Yes either the original here or convince the copy is a trust correct and completed one.From what you present that might be hard to do here.

362

The following are the legal requirements for a valid trust in Texas:

The Settlor must have a present intent to create a trust. According to the Texas statutes, a trust is created if the Settlor manifests an intention to create a trust. No specific words are required."

The Settlor must have capacity to convey assets to the trust. The Settlor has capacity if:
he or she is over the age of 18 or has been lawfully married or a member of the armed forces, and

is of sound mind, which means he knows the nature and extent of his property, the persons who are the natural objects of his bounty, the disposition that he is making, and how these elements relate to form an orderly plan for the disposition of his property.

**The trust must comply with the Statute of Frauds. A trust may be created orally through a declaration of trust; however, if it involves the transfer of real property, it must be in writing.**

The trust must have a legal purpose. The terms of a trust may not require the trustee to commit a criminal or tortious act or an act that is contrary to public policy.

The Settlor must identify the property covered by the trust and place it in the trust for the benefit of the beneficiary. The Texas statutes specify that a trust cannot be created unless there is trust property.

The trust must have a Trustee who holds legal title of property for the benefit of the trust's Beneficiaries. If there is no Trustee named, or if the Trustee that is named does not want to serve or cannot serve for any reason, the court can appoint a Trustee for the trust.

The trust must have ascertainable Beneficiaries. If the Settlor does not name the Beneficiaries with sufficient certainty, the trust will fail.

The trust my not violate the Rule Against Perpetuities, which says that an interest is not good unless it must vest, if at all, not later than 21 years after some life in being at the time of the creation of the interest, plus a period of gestation.

AI thanks for letting me be of service.I wish you the best with all of this.

Ask Your Own Estate Law Question

**Customer:**

Thank you for good answers. Most not what I wanted to hear, but what I needed.
363

Exhibit C

Page___1___of___9

You have answered my questions in the past, and you give much more complete answers than the others I have had. Is there any way to request you? I have more question about the Contract in which the 30% was sold to me, but those questions are unrelated to the trust questions and would require me to pay again.

Tweet    8+1    Share    Like

## Ask RayAnswers Your Own Question

RayAnswers, Attorney
Category: Estate Law
Satisfied Customers: 29595
Experience: Texas lawyer for 20 years in Estate law

```
Type Your Estate Law Question Here...
```

RayAnswers is online now

**Get an Answer**

DISCLAIMER: Answers from Experts on JustAnswer are not substitutes for the advice of an attorney. JustAnswer is a public forum and questions and responses are not private or confidential or protected by the attorney-client privilege. The Expert above is not your attorney, and the response above is not legal advice. You should not read this response to propose specific action or address specific circumstances, but only to give you a sense of general principles of law that might affect the situation you describe. Application of these general principles to particular circumstances must be done by a lawyer who has spoken with you in confidence, learned all relevant information, and explored various options. Before acting on these general principles, you should hire a lawyer licensed to practice law in the jurisdiction to which your question pertains.

The responses above are from individual Experts, not JustAnswer. The site and services are provided "as is". To view the verified credential of an Expert, click on the "Verified" symbol in the Expert's profile. This site is not for emergency questions which should be directed immediately by telephone or in-person to qualified professionals. Please carefully read the Terms of Service (last updated February 8, 2012).

364

Exhibit C

Page 8 of 9

 **TRUSTe**

# A+ rating with BBB



Contact Us | Terms of Service | Privacy & Security | About Us | Our Network
© 2003-2014 JustAnswer LLC

365

**Exhibit** C

**Page** 9 **of** 9

| | | |
|---|---|---|
| PENTEX FOUNDATION,<br>      *Plaintiff* | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| V. | §<br>§ | |
| KENNETH VERN GIBBS, CANDACE<br>GIBBS WALTON and HOWARD<br>KIRK GIBBS,    *Defendants* | §<br>§<br>§<br>§ | FANNIN COUNTY, TEXAS<br><br>336ᵗʰ JUDICIAL DISTRICT |

## PENTEX FOUNDATION'S RESPONSE
## TO DISCOVERY FROM KENNETH GIBBS

TO:   Kenneth Vern Gibbs, by and through his attorney of record.

COMES NOW, Pentex Foundation, files this its response to the First Request for Discovery received on August 11, 2014, and would show as follows:

## GENERAL OBJECTION

Pentex Foundation objects to the Instructions and Definitions to the extent they enlarge the responsibilities of a litigant under the Texas Rules of Civil Procedure. Pentex Foundation specifically objects to the definition of "You" and "Your" to the extent it combines the existence of Pentex Foundation with "Albert Barcroft, as Legal Representative." They are not one in the same. Pentex Foundation answers and responds only in its own right. Pentex Foundation will respond subject to the Rules.

Pentex Foundation objects to producing any documents in the offices of counsel. To the extent there are documents to be produced, they will be produced at the offices of counsel for the responding party.

## RESPONSE TO DISCOVERY REQUESTS

As a predicate to responding, pursuant to the laws of Panama, a foundation is required to keep records only for the current year. Submitted herewith are documents marked as Plaintiff/Intervenor 00001-000257.

DISCOVERY REQUESTS REQUEST FOR PRODUCTION NO. 1: Produce all documents dating back to September 1, 2008, that you have concerning distribution of attorney fees from the Estate.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request, except those marked Plaintiff/Intervenor 000135-

366

Exhibit *D*

Page ___1___ of ___29___

175.

REQUEST FOR PRODUCTION NO. 2: Produce all documents dating back to January 1, 2013, that you have concerning the GBU Trust.

    RESPONSE:  Objection.  This request is overly broad and fails to direct Plaintiff to any class or type of documents.  *See, Loftin v. Martin*, 766 S.W.2d 145 (1989).

REQUEST FOR PRODUCTION NO. 3: Produce all documents proving your existence and validity, including names of the Board of Directors and Legal Representatives who have served since the inception of the entity; and letters, emails, bank records, correspondence, and accountings related to Albert's involvement in your formation.

    RESPONSE: Objection.  This request is overly broad and outside the scope of discovery to the extent it requests "letters, emails, bank records, correspondence, and accountings related to Albert's involvement in your formation."  Subject to this objection, please see the documents attached hereto as Plaintiff/Interpleader 00001-00033.

REQUEST FOR PRODUCTION NO. 4: Produce a copy of every federal tax return that you and Pentex Trust has filed with the Internal Revenue Service since 2008.

    RESPONSE:  Objection, the request is made merely to harass and no other purpose, as tax returns are generally not discoverable, see *Hall v. Lawlis*, 907 SW2d 493 (Tex. 1995); *Chamberlain v. Cherry*, 818 SW2d 201 (Amarillo 1991).

REQUEST FOR PRODUCTION NO. 5: Produce a copy of the Pentex Trust.

    RESPONSE: Objection.  This request seeks information which is outside the scope of discovery.

REQUEST FOR PRODUCTION NO. 6: Produce all communication dating back to September 1, 2008. including letters, tape recordings, or emails, that you have had with any representative of ConocoPhillips concerning you yourself, Albert, GWB Trust, Pentex Trust, or GBU Trust.

    RESPONSE:  Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 7: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had

Exhibit D

Page 2 of 29

with Danny Unger concerning GBU Trust.

> RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 8: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Howard Kirk concerning the Estate's attorney fees.

> RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 9: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Howard Kirk concerning GBU Trust.

> RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request. None

REQUEST FOR PRODUCTION NO. 10: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Rickey Brantley or Scott Pelley concerning the Estate's attorney fees.

> RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 11: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Danny Unger concerning GBU Trust.

> RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 12: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Ken concerning the Estate's attorney fees.

> RESPONSE: Pentex Foundation has no documentation in its possession

368

Exhibit _D_

Page __3__ of __24__



responsive to this request.

REQUEST FOR PRODUCTION NO. 13: Produce all documentation dating back to September 1, 2008, which you have concerning Renhaw, Inc., including the transfer of rights of the CSL to you, letters, emails, tape recordings, and any other records involving Renhaw, Inc..

RESPONSE: Please see Plaintiff/Intervenor 000123, 000034.

REQUEST FOR PRODUCTION NO. 14: Produce any communication dating back to May 1, 2008, including letters, tape recordings, or emails, that you have had with Albert concerning GWB Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 15: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Albert concerning GBU Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 16: Produce any communication dating back to May 1, 2008, including letters, tape recordings, or emails, that you have had from Albert concerning distributions from the Estate.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 17: Produce any communication dating back to May 1, 2008, including letters, tape recordings, or emails, that you have had

369

Exhibit *D*

Page ___4___ of __29__

with Albert concerning Pentex Trust.

RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Additionally, this request is outside the scope of discovery. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 18: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Candy concerning GWB Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 19: Produce any communication dating back to January 1, 2013, including letters, tape recordings, or emails, that you have had with Candy concerning GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 20: Produce all documents related to Pentex Trust's interest in the Estate and GWB Trust, and dating back to September 1, 2008, including, but not limited to, documents verifying its existence, letters, emails, bank records, correspondence, and accountings.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 21: Produce any communication dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller involving Albert.

RESPONSE: Pentex Foundation objects to any such communications protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to this objection, Pentex Foundation has no documentation in its possession responsive to this request other than as may be produced herewith.

REQUEST FOR PRODUCTION NO. 22: Produce all documents upon which you

370

base the claims against Candy and Ken in your Original Petition.

> RESPONSE: Pentex Foundation objects to this request as overly broad and fails to direct Plaintiff to any class or type of documents. *See, Loftin v. Martin*, 766 S.W.2d 145 (1989). Subject to this objection, please see the documents attached to the Motion for Partial Summary Judgment submitted in this case.

REQUEST FOR PRODUCTION NO. 23: Produce any communication dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller concerning Pentex Trust.

> RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery, and additionally as to any such communications protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to this objection, Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 24: Produce any communications dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller concerning GBU Trust.

> RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Additionally, this request is outside the scope of discovery. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request other than as may be produced herewith.

REQUEST FOR PRODUCTION NO. 25: Produce any communications dating back to January 1, 2011, including letters, tape recordings, or emails, that you have had with Beverly Miller concerning GWB Trust.

> RESPONSE: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Additionally, this request is outside the scope of discovery. Subject to these objections, Pentex Foundation has no documentation in its possession responsive to this request other than as may

Exhibit $D$

Page __6__ of __29__


be produced herewith.

REQUEST FOR PRODUCTION NO. 26: Produce all documents and communications dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Rickey Brantley concerning the Estate's distributions to Heirs and the calculations of the Heirs' attorneys' fees.
RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 27: Produce all documents and communications dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with Scott Pelley concerning the Estate's distributions to Heirs and the calculations of the Heirs' attorneys' fees.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 28: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with any representative of JW Operating Company concerning you yourself, Albert, GWB Trust, Pentex Trust, and GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 29: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with any representative of Trio Consulting and Management, LLC, concerning you yourself, Albert, GWB Trust, Pentex Trust, and GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

REQUEST FOR PRODUCTION NO. 30: Produce any communication dating back to September 1, 2008, including letters, tape recordings, or emails, that you have had with any representative of Devon Energy concerning you yourself, Albert, GWB Trust, Pentex Trust, and GBU Trust.

RESPONSE: Pentex Foundation has no documentation in its possession responsive to this request.

INTERROGATORY NO. 1: Explain your relationship with Pentex Trust, including details concerning your agreement with Pentex Trust to receive distributions from GWB Trust; your arrangement with Albert to act as Legal

372

Representative for both entities; whether you or Pentex Trust was formed first; the management associated with Pentex Trust in Texas, as effected from a Panamanian locale; the manner in which you determine tax obligations; and arrangement with Pentex Trust concerning voting rights in GWB Trust

ANSWER: Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Interrogatories may be used to ascertain basic legal and factual claims and defenses, but may not be used to force a party to marshal evidence." *See*, Rule 197 of the Texas Rules of Civil Procedure, at comment 1. Subject to this objection, Pentex Foundation answers as follows:

Pentex Royalty Trust is a trust domestic to the United States that was created as a trust to take in all revenue due from taxable sources within the United States, pay any U.S. taxes or other obligations due, and then distribute its remaining beneficial interests. Pentex Foundation is the sole beneficiary of Pentex Royalty Trust. Pentex Royalty Trust has a paid trustee who is not associated, or familiar with, any other phase of Pentex Foundation. The tax obligations are figured by computing and filing a Return 1042 with the Internal Revenue Service meeting the requirements of the Internal Revenue Code. The voting rights issue was always a problem because the purported trustees of GWB trust never had a clear and defined way of doing anything. For that reason, Pentex Foundation assigned it voting shares by proxy to Jim Walton as long as he was the purported trustee. We have no record of any official votes after Beverly Miller became the purported trustee.

INTERROGATORY NO. 2: Detail your relationship with Albert, including specifics concerning his activities within your entity; on whose authority Albert serves as your Legal Representative; amounts of payment for Albert's services to you; percentages of distributions to you from GWB Trust which Albert ultimately receives; Albert's arrangements to pay Estate attorneys in order to uphold his responsibilities to the CSL and the FSA; Albert's payments of legal fees with regard to this lawsuit; Albert's involvement in this lawsuit (i.e., whether Albert was responsible for instigating the lawsuit); and all other involvement of Albert concerning your involvement with GWB Trust.

ANSWER: Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Interrogatories may be used to ascertain basic legal and factual claims and defenses, but may not be used to force a party to marshal evidence." *See*, Rule 197 of the Texas Rules of Civil Procedure, at comment 1. Pentex Foundation objects to the terms of payments as confidential under the laws of Panama, and outside the scope of discovery in any event. Subject to these objection, Pentex Foundation answers as follows, and under a defintion of "you" and "your" to refer to

Exhibit D
Page 8 of 27

Pentex Foundation only as specified in the general objections:

Pentex Foundation purchased an interest in the Contract for Sale that Albert Barcroft originally owned. It was mutually advantageous to continue to work with Albert to bring the terms of the contract to conclusion, and he served and serves on our behalf in the matter. To the knowledge of Pentex Foundation, Albert had no responsibilities to pay any attorneys other than John Skotnik in the matter, and such was not shown in any documentation presented to Pentex Foundation. When Pentex was forced to hire new counsel in the case, it did not have sufficient funds in the United States to pay the full retainer. Mr. Barcroft did. Pentex Foundation gave Mr. Barcroft money here, and he sent that money to Scott Smith in the United States. Mr. Barcroft definitely made Pentex Foundation aware that he thought there was a problem in the way proceeds were being paid by GWB Trust, if that qualifies as instigation. In brief, Barcroft was our express liaison with GWB trust, whatever it is.

INTERROGATORY NO. 3: Explain the reasons you came to believe that contingency fee attorneys were deducting their fees from the total due you, Ken, Candy, and Howard Kirk, then issuing one check to GWB Trust, including the rationale for believing that in excess of $ 1 million in attorney fees were due from Ken, Candy, and Howard Kirk; when and how you arrived at these alleged facts; and the reason that Beverly Miller was instructed to assign 57.19% interest in GWB Trust to GBU Trust, when you were entitled to a far smaller percentage.

ANSWER: Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Interrogatories may be used to ascertain basic legal and factual claims and defenses, but may not be used to force a party to marshal evidence." *See*, Rule 197 of the Texas Rules of Civil Procedure, at comment 1. Subject to these objection, Pentex Foundation answers as follows, and under a defintion of "you" and "your" to refer to Pentex Foundation only as specified in the general objections:

The percentage due Pentex Foundation under the Contract for Sale. Barcroft's share was 30% of everything Ken, Candy and Howard received. Ken, Candy and Howard each received 25%, for a total of 75%, of the estates. Of the 75%, Pentex Foundation owned 30%, equaling 22.5% of everything distributed by the estate (75% X 30%=22.5%). The estate distributed mineral interests to GWB Trust equaling 35.04% of the total minerals owned by the estate. It also distributed 2.46% directly to John Skotnik in payment for his services as attorney (an amount due solely by Barcroft). Of the 35.04% distributed to GWB Trust, Pentex Foundation owned 20.04% (22.5% minus the 2.46% already distributed to Skotnik). 20.04% is 57.19% of 35.04%; thus, Pentex Foundation owned 57.19% of the

374

Exhibit _D_

Page___9___ of _29_

minerals transferred to GWB Trust by the estate.

INTERROGATORY NO. 4: Detail and explain the contents of all oral communications dating back to September 1, 2008, which you have had with Howard Kirk, including all agreements to cooperate with you, Albert or Danny Unger in this lawsuit; including your communications with Howard Kirk at the Tarrant case hearing on July 31, 2014, including the reason for conferring with him, when he is a Defendant in this case; and disclose whether you consulted Howard Kirk in drafting your requests for Admissions and whether you assisted Howard Kirk in producing his responses to your demands for discovery, since he was capable of response to you within fewer than five (5) hours of receiving your Requests; and disclose whether John Skotnik, when acting as your Counsel, cooperated with Howard Kirk in motioning the Court to remove Ken as Independent Administrator of the Estate.

> ANSWER: Pentex Foundation objects to any such communications initiated after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Pentex Foundation objects to this interrogatory as outside the scope of permissible discovery and overly broad. Subject to these objection, Pentex Foundation answers as follows, and under a defintion of "you" and "your" to refer to Pentex Foundation only as specified in the general objections:
>
> Pentex Foundation has had no such communications with Howard Kirk.

REQUEST FOR ADMISSION NO. 1: Admit or deny that Scott Smith and Howard Kirk consulted with each other at the July 31, 2014, hearing in the Tarrant County case.

> RESPONSE: Pentex Foundation objects to this request as (1) well outside the scope of legitimate discovery; (2) a communication initiated after the anticipation of litigation; (3) protected pursuant to the work product exemption from discovery; and/or (4) protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding).

REQUEST FOR ADMISSION NO. 2: Admit or Deny that you, Ken, Candy, and Howard Kirk are members of the GWB Family and Friends Trust.

> RESPONSE: Admit that Pentex Foundation is an an assignee of the business organization created pursuant to the CSL, if "you" refers to Pentex

375

Foundation as discussed in the general objections; otherwise, deny.

REQUEST FOR ADMISSION NO. 3: Admit or Deny that you were formed specifically because Albert stood to receive proceeds from the Estate as a result of the CSL and FSA, and Albert wanted the funds to flow through a third party in order to avoid federal tax and similar obligations.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 4: Admit or Deny that you have received no money from GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections: admit, as all money was received by Pentex Trust).

REQUEST FOR ADMISSION NO. 5: Admit or Deny that Albert is your Primary Beneficiary.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 6: Admit or Deny that Pentex Trust is your Primary Beneficiary.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 7: Admit or Deny that the GWB Trust document established the process and percentages by which Howard Kirk, Candy, Ken, and you received interest from the Estate.

RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 8: Admit or Deny that the GWB Trust Trustee is responsible for distributing assets to the Beneficiaries according to the

376

Exhibit D

Page 11 of 29



percentages specified in the GWB Trust document.

> RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 9: Admit or Deny that if the percentages of interest specified in the GWB Trust document are incorrect, then you are fully responsible for the inaccuracy because Albert, as your Legal Representative, entered into negotiations with the Estate's attorneys concerning the appropriate distributions.

> RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 10: Admit or Deny that you authorized Albert to serve as your Legal Representative with regard to GWB Trust, GBU Trust, Pentex Trust, and the Estate.

> RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 11: Admit or Deny that Pentex Trust is a Trust which Albert, acting on your behalf, established in the United States in order to receive funds because you are a foreign entity, and as such, it is difficult to receive distributions from the Estate.

> RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 12: Admit or Deny that Albert, acting on your behalf, resisted Candy and Ken's inquiries into the legitimacy of your existence.

> RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 13: Admit or Deny that there are active United States Federal Tax Liens filed against you in Texas.

377

Exhibit D

Page 12 of 29

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 14: Admit or Deny that Albert approached you previous to 2008 to invest in the settlement of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 15: Admit or Deny that you invested $250,000 for expenses related to the settlement of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 16: Admit or Deny that you were established after Albert entered into discussions with Candy, Howard Kirk, and concerning the settlement of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery, unclear and ambiguous, and unspecified as to time.

REQUEST FOR ADMISSION NO. 17: Admit or Deny that, Pentex Trust was a Beneficiary of GWB Trust with 24.965 16% interest.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied. Pentex Foundation held the Barcroft interests in the original Contract for Sale, but it is unclear as to how that was interpreted by the original purported trustee.

REQUEST FOR ADMISSION NO. 18: Admit or Deny that you compensated Albert, John Skotnik, and Danny Unger for their services regarding the Estate and GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

378

Exhibit D
Page 13 of 29

REQUEST FOR ADMISSION NO. 19: Admit or Deny that the GWB Trust owns 35.04% of the assets that are still left in the estate, including real estate.

**RESPONSE:** Pentex Foundation objects to this request as calling for pure legal question. Plaintiff has made reasonable inquiry and the information known to it or easily obtainable to it is insufficient with which to either admit or deny this request.

REQUEST FOR ADMISSION NO. 20: Admit or Deny that GWB Trust receives oil and gas royalties from the Estate, from which administrative costs are deducted before the Trustee distributes the assets to the Beneficiaries, yourself including, according to the percentages as stated in the GWB Trust document.

RESPONSE: Pentex Foundation objects to this request as misleading and assuming facts which do not exist. There is no known GWB Trust document. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 21: Admit or Deny that you have not received any funds from GWB Trust or the Estate.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, it is admitted that all funds to Pentex Foundation have come through Pentex Royalty Trust.

REQUEST FOR ADMISSION NO. 22: Admit or Deny that Albert drafted the Pentex Trust document.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 23: Admit or Deny that your Board of Directors profit, or have profited, from GWB Trust.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Subject to this objection, and assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 24: Admit or Deny that you have distributed, or will distribute, to Albert any proceeds from GWB Trust in excess of the $250,000 which Albert claimed you originally invested in settlement of the Estate.

RESPONSE: Pentex Foundation objects to this request as multifarious and

379

speculative (when speaking about future events which may or may not occur). Pentex Foundation objects to this request as outside the scope of legitimate discovery.

REQUEST FOR ADMISSION NO. 25: Admit or Deny that you authorized Albert to vote on your behalf in decisions concerning GWB Trust, from its' inception to around February 2014.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit that Albert had the authority to carry on all business in the United States for Pentex Foundation.

REQUEST FOR ADMISSION NO. 26: Admit or Deny that Beverly Miller acts according to your instructions in performing her duties as Trustee of GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 27: Admit or Deny that on September 11, 2013, Albert, acting on your behalf, stated in an email that he refused to allow for Candy and Ken to remove their interest from GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 28: Admit or Deny that, in or around November 2013, you, or Albert acting on your behalf, instructed the GWB Trust Trustee, Beverly Miller, to transfer 57.19% of the existing GWB Trust assets into a newly created trust, the GBU Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit.

REQUEST FOR ADMISSION NO. 29: Admit or Deny that you, or Albert acting on your behalf, informed Beverly Miller that, if she did not transfer 57.19% of GWB Trust assets into the GBU Trust, she would be held personally liable for any losses.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit that she was told she "could" be held responsible for not doing her duties.

REQUEST FOR ADMISSION NO. 30: Admit or Deny that upon your instructions, or upon instructions from Albert acting on your behalf, Beverly Miller

380



Exhibit D

Page 15 of 29

transferred 57.19% interest from GWB Trust to GBU Trust.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, admit that Pentex Foundation demand to split the assets according to the Contract for Sale was honored by the Trustee, Beverly Miller.

REQUEST FOR ADMISSION NO. 31: Admit or Deny that GWB Trust was formed to receive the Heirs' distributions from the Estate.

RESPONSE: Admit that GWB trust was created by the expression of the Contract for Sale to help facilitate the terms of that Contract for Sale.

REQUEST FOR ADMISSION NO. 32: Admit or Deny that your Original Petition admits that the FSA, as an extension of the CSL, is the subject of this suit.

RESPONSE: Objection. The pleadings speak for themselves. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 33: Admit or Deny that you protested moving this case to Tarrant County Probate Court No. 2 because the Estate was responsible for establishing the amounts of the distributions to the heirs, but you could not challenge the Estate because you would be disqualified as recipient of Estate assets due to the tenns of the FSA.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 34: Admit or Deny that you instigated the Fannin County lawsuit.

RESPONSE: Pentex Foundation objects to this request as argumentative. Subject to this objection, assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, admit that it is the Plaintiff and filed this suit.

REQUEST FOR ADMISSION NO.35: Admit or Deny that your lawsuit against Candy and Ken was filed as revenge because of their inquiries into the administration of GWB Trust.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

381

REQUEST FOR ADMISSION NO. 36: Admit or Deny that you have ordered and received assets from GWB Trust in addition to the 24.96515% you were originally assigned.

RESPONSE: Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 37: Admit or Deny that you willingly engaged in discussions of the creation of Pentex Trust in order to avoid having to observed United States and Texas State law.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 38: Admit or Deny that you existed prior to 2008 and that you provide multiple benefits to Beneficiaries other than Albert.

RESPONSE: Pentex Foundation objects to this request as outside the scope of legitimate discovery. Assuming that "you" refers solely to Pentex Foundation as discussed in the general objections, denied as to the date, and admit the balance of this request.

REQUEST FOR ADMISSION NO. 39: Admit or Deny that the Estate is responsible for the flow of cash to GWB Trust, which in turn flows to the Beneficiaries.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 40: Admit or Deny that Candy does not have the authority to control the Estate's distributions to the Heirs.

RESPONSE: Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 41: Admit or Deny that Ken does not have the authority to control the Estate's distributions to the Heirs.

RESPONSE: Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 42: Admit or Deny that suing Ken individually


Exhibit D
Page 17 of 29

was inappropriate, as Ken individually does not have the authority to control the Estate's distributions to the Heirs.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO.43: Admit or Deny that Renhaw, Inc., received your interest in GWB Trust, then transferred it back to you.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUESTFORADMISSIONNO.44: Admit or Deny that you were effectively rendered a "nonentity" with regard to GWB Trust, because of the transfers as follows: Albert Barcroft> Renhaw > GWB Trust.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 45. Admit or Deny that Howard Kirk and you worked together to remove assets from GWB Trust which did not belong to you in order to benefit unjustly from those assets.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, denied.

REQUEST FOR ADMISSION NO. 46: Admit or Deny that prior to around November 2013, you did not question the distributions from GWB Trust.

RESPONSE: If "you" refers solely to Pentex Foundation as discussed in the general objections, admit.

REQUEST FOR ADMISSION NO. 47: Admit or Deny that you issued instructions via Albert to Beverly Miller concerning the administration of GWB Trust.

RESPONSE: Ojbection. This request is ambiguous. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 48: Admit or Deny that you occasionally hired and paid Danny Unger to perform minor accounting work, as well as research.

RESPONSE: Admit that he did some accounting for Pentex Foundation.

REQUEST FOR ADMISSION NO.49: Admit or Deny that you were aware that you were entitled to less than a quarter of the proceeds in GWB Trust, after

383

Exhibit _D_

Page __18__ of __29__



expenses, when you, or Albert acting on your behalf, instructed Beverly Miller to transfer 57.19% interest in GWB Trust to GBU Trust.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 50: Admit or Deny that you were aware that you were entitled to only 24.96516% interest of GWB Trust at the time you instructed Beverly Miller to transfer 57.19% to GBU Trust.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 51: Admit or Deny that you benefitted substantially from GWB Trust since the time it was established in September 2008.

RESPONSE: Pentex Foundation objects to this request as vague and ambiguous.

REQUEST FOR ADMISSION NO. 52: Admit or Deny that Albert drafted the Original Petition in this lawsuit.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 53: Admit or Deny that no changes could be made to GWB Trust distributions unless approved by unanimous vote.

RESPONSE: Pentex Foundation objects to this request as assuming facts that have not been established, namely the terms of the GWB Trust. Admit that the CSL which established GBW Trust required that all 4 parties to the CSL sign any amendments before a notary.

REQUEST FOR ADMISSION NO. 54: Admit or Deny that, once Renhaw transferred its share of assets to the GWB Trust, Ken, Candy, and Howard Kirk are the only three (3) remaining members, as well as Beneficiaries, of the GWB Trust, and that therefore you are no longer a Beneficiary of GWB Trust.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 55: Admit that Albert authorized the percentages of interest which the Estate assigned to the Heirs.

RESPONSE: Objection. This request is ambiguous and vague. It is also outside the scope of legitimate discovery. Pentex Foundation has made



reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 56: Admit or Deny that, under the terms of the FSA, an Heir who disputes the terms can lose his or her interest in the Estate.

RESPONSE: Denied.

REQUEST TO ADMISSION NO. 57: Admit or Deny that Admit your inclusion of Howard Kirk as a Defendant in this Cause is a smoke screen designed to deflect from the fact that Howard Kirk is cooperating with you in this lawsuit and in the lawsuit filed in Tarrant County, which involves Albert, Howard Kirk, Candy, and Ken.

RESPONSE: The Intervenor objects to this request as argumentative, multifarious, and outside the scope of legitimate discovery. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 58: Admit or Deny that John Skotnik was forced to withdraw from representing you in this case, as he originally assisted in the Estate settlement involving the Heirs.

RESPONSE: Pentex Foundation objects to this request as calling for a legal conclusion as to why Mr. Skotnik withdrew, and as being outside the scope of any legitimate discovery. Subject to these objections, Pentex Foundation admits that it was agreed in the CSL that John Skotnik could represent Barcroft's interests if a dispute ever arose, admit that Defendants reneged on that provision of the CSL, thereby breaching the contract.

REQUEST FOR ADMISSION NO. 59: Admit or Deny that you, or your representative, assisted Howard Kirk in his Answer and his Admission responses in this case.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections: Denied.

REQUEST FOR ADMISSION NO. 60: Admit or Deny that you, or your representative, assisted Howard Kirk in his Answer in the Tarrant County case.

385

Exhibit D

Page 20 of 29

RESPONSE: Objection. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections: Denied.

REQUEST FOR ADMISSION NO. 61: Admit or Deny that you function as a shell entity for Albert.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 62: Admit or Deny that, on or about December 2, 2013, Albert sent Candy Walton and Ken letters stating that Albert, as agent for Pentex and Renhaw, were invoking the right to demand a split of the GWB Trust assets, as you wished to withdraw from GWB Trust.

RESPONSE: Admit that Pentex demanded a split of assets under the CSL.

REQUEST FOR ADMISSION NO. 63: Admit or Deny that Albert has been your Legal Representative up until there was a demand to have Albert deposed.

RESPONSE: Objection. This request is ambiguous with respect to the term "Legal Representative." Subject to this objection, Mr. Danny Unger is the designated representative for Pentex Foundation in this litigation.

REQUEST FOR ADMISSION NO. 64: Admit or Deny that you informed GWB Trust Beneficiaries of all transfers of your interest in GWB Trust each time a transfer was effected.

RESPONSE: Admit that the beneficiaries were informed.

REQUEST FOR ADMISSION NO. 65: Admit or Deny that on December 18, 2013, signing in the capacity of "Legal Representative" of Pentex, you noticed the Estate, including Executor Kenneth Gibbs, and the Estate's (3) three attorneys that a substantial part of GWB's Trust assets must be distributed and made payable to the GBU Trust.

RESPONSE: Pentex Foundation objects to this request as multifarious. Subject to this objection, it is admitted that the document numbered Plaintiff/Intervenor 00035 is authentic and speaks for itself.

REQUEST FOR ADMISSION NO. 66: Admit or Deny that, you are a not-for-profit private foundation established and operated in Panama.

RESPONSE: Admit

REQUEST FOR ADMISSION NO. 67: Admit or Deny that in a very small sentence, at the end of a long tirade of explanations, GWB Trust accounting reflected that 20.04% of the 35.04% of GWB Trust's assets had been transferred to GBU.

RESPONSE: Pentex Foundation objects to this request as argumentative and vague. Subject to this objection, admitted that the document numbered Plaintiff/Intervenor 00035 is authentic and speaks for itself.

REQUEST FOR ADMISSION NO. 68: Admit or Deny that GWB Trust is responsible for paying administrative costs, such as property taxes, for assets assigned to GWB Trust by the Estate and which benefit you.

RESPONSE: Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 69: Admit or Deny that Albert, as your Legal Representative, exerted undue influence over Beverly Miller.

RESPONSE: Objection vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 70: Admit or Deny that, although you are based in Panama, the majority of your affairs originate in Texas.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 71: Admit or Deny that Albert, not you, is the one ultimately receiving income out of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 72: Admit or Deny that you donate funds to a medical facility that is located outside of the United States, claiming the act to be the primary reason for your existence.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied, other than to admit that Pentex Foundation donates to numerous causes.

Exhibit *D*
Page 22 of 27

REQUEST FOR ADMISSION NO. 73: Admit or Deny that Albert assisted in calculating the percentages due Heirs from the Estate and that Albert provided the calculations to the attorneys of the Estate.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 74: Admit or Deny that neither Ken individually nor Candy individually had or now have the authority or the ability to control the distributions from the Estate to the Heirs.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 75: Admit or Deny that Albert assigned John Skotnik a percentage of his interest as detailed in the FSA.

RESPONSE: Objection. The terms of the FSA speak for themselves. Subject to this objection, Pentex Foundation admits that the FSA, as submitted as Plaintiff/Intervenor 00059-122 is authentic and that John Skotnik was assigned a share.

REQUEST FOR ADMISSION NO. 76: Admit or Deny that the subject matter in this case is not in the Fannin County Court's jurisdiction, since land in which GWB Trust holds interest remains in and under the control of the Estate.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 77: Admit or Deny that you drafted and persuaded Howard Kirk Gibbs to file documents in this Cause and in the Fannin County District Court Cause on your behalf.

RESPONSE: Objection *again*. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation and/or protected pursuant to the "joint defense doctrine" recognized in TEX. R. EVID. 503(b)(1) and such cases as *Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex. App.—Dallas 1989, orig. proceeding). Subject to these objections: Denied.

REQUEST FOR ADMISSION NO. 78: Admit or Deny that GWB Trust document, not the CSL or the FSA, establishes the exact percentage of interest which Pentex held.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 79: Admit or Deny that Candace Walton and Kenneth Gibbs do not want to sell the Homeplace.

RESPONSE: Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 80: Admit or Deny that the land in which GWB Trust holds interest belongs to the Estate, and therefore GWB Trust issues must be handled as Estate matters.

RESPONSE: Objection. This calls for a pure legal question. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 81: Admit or Deny that you transferred interest in GWB Trust to Renhaw, Inc., because doing so aided Albert in eluding the Internal Revenue Service's collection activities against him.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery and is vague. Subject to this objection: Denied.

REQUEST FOR ADMISSION NO. 82: Admit or Deny that GWB Trust is a legitimate Trust, which was designed to receive interest from the Estate and which has distributed you substantial assets in the past.

RESPONSE: Objection. This calls for a pure legal question. Subject to this objection, Admit that it is a business organization created under the terms of the CSL.

REQUEST FOR ADMISSION NO. 83: Admit or Deny that the FSA is a legitimate and binding contract.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 84: Admit or Deny that Albert drafted the CSL.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 85: Admit or Deny that Albert drafted the GWB Trust agreement.

RESPONSE: Objection. This request assumes facts in dispute, to wit: whether there even is a GWB Trust agreement. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 86: Admit or Deny that the Estate is being mismanaged.

RESPONSE: Pentex Foundation objects to this request as outside the scope of discovery. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 87: Admit or Deny that the Estate's calculations concerning the percentages of the Heirs' interest in the Estate impact GWB Trust.

RESPONSE: Objection. This request is confusing and vague, and seems to suggest a pure question of law. Subject to this objection, Pentex Foundation has made reasonable inquiry and the information known or easily obtainable is insufficient to enable it to admit or deny this request.

REQUEST FOR ADMISSION NO. 88: Admit or Deny that you have a true and correct copy of the CSL.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 89: Admit or Deny that you have a true and correct copy of the FSA.

RESPONSE: Admit we believe we do.

REQUEST FOR ADMISSION NO. 90: Admit or Deny that, according to the FSA, Albert is responsible for paying his own attorneys' fees.

RESPONSE: Objection this calls for a pure legal conclusion. Subject to this objection, admit as to our understanding of that to be the case.

REQUEST FOR ADMISSION NO. 91: Admit or Deny that Candy and Ken are not responsible for any tortious interference between GWB Trust and yourself, as neither Candy nor Ken ever interfered with the appropriate distributions to you of approximately one-quarter (1/4) interest in GWB Trust.

RESPONSE: Object to this request as multifarious and vague. Subject to these objections: Denied.

REQUEST FOR ADMISSION NO. 92: Admit or Deny that Albert breached the FSA.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 93: Admit or Deny that Albert breached the CSL.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 94: Admit or Deny that you are bound by the conditions of the FSA.

RESPONSE: Admit that some of the provisions of the FSA apply to Pentex Foundation and any other successor to the interest originally conveyed to Mr. Barcroft.

REQUEST FOR ADMISSION NO. 95: Admit or Deny that Danny Unger has been your Legal Representative since the inception of this lawsuit.

RESPONSE: Objection. This request is ambiguous with respect to the term "Legal Representative." Subject to this objection, it is admitted that Mr. Danny Unger is the designated representative for Pentex Foundation in this litigation.

REQUEST FOR ADMISSION NO. 96: Admit or Deny that Albert, not Danny Unger, initiated this lawsuit on your behalf.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. It invades the protections for communications made after the anticipation of litigation, the attorney/client privilege and work product communication.

Exhibit D

Page 26 of 29

REQUEST FOR ADMISSION NO. 97: Admit or Deny that on a yearly basis, GWB Trust provided you accountings concerning income and distributions to Beneficiaries.

RESPONSE: Objection. This request is vague. Subject to that objection, it is admitted that only tax returns were submitted.

REQUEST FOR ADMISSION NO. 98: Admit or Deny that you breached the FSL.

RESPONSE: Denied.

REQUEST FOR ADMISSION NO. 99: Admit or Deny that Scott Smith stated during the July 31, 2014, hearing in Tarrant County, that he received his retainer from beneficiaries of GBU Trust, including Danny Unger.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. Additionally, the transcript of that proceeding would be the best evidence of what was said.

REQUEST FOR ADMISSION NO. 100: Admit or Deny that Scott Smith stated during the July 31, 2014, hearing in Tarrant County, that he took this case because, he like most attorneys, will take any case that can pay him a retainer.

RESPONSE: Objection. This request is outside the scope of legitimate discovery. Additionally, the transcript of that proceeding would be the best evidence of what was said.

Respectfully submitted,

By: _____

Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by certified mail, return receipt requested number 7009 2250 0000 2311 4187 toChristy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this the 3rd day of September, 2014.

Scott Smith

Exhibit D

Page 28 of 29

<u>Unsworn Delcaration Pursuant to</u>
<u>TEX. CIV. PRAC. & REM. CODE § 132.001</u>

My name is Danny Unger. My date of birth is ___*1952*___. I reside at ___*General Delivery Gr Apeland, TX 75447*___. I am the designated representative of Pentex Foundation, that I have read the above and foregoing Answers to Interrogatories and subscribes to the same on behalf of Pentex Foundation; that said responses, subject to inadvertent or undiscovered errors, are based on and therefore limited by the records and information still in existence, presently recollected and this far discovered in the course of the preparation of these responses; that, consequently, I reserve the right to make changes in responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein, the said responses are true and correct and within my personal knowledge. I have been advised that Rule 197.2(d)(2) does not require that I swear to interrogatory answers about persons with knowledge of relevant facts, trial witnesses or legal contentions. Since I am not an attorney, I therefore do not swear to the truth of any interrogatory answers containing information about persons with knowledge of relevant facts, trial witnesses or legal contentions. I declare under penalty of perjury that the foregoing instrument is true and correct.

Dated: ___*09/02*___, 2014

*Danny Unger, Representative*
Danny Unger, Declarant



PLAINTIFF'S
EXHIBIT
F

## Statement Given Under Penalty of Perjury

I, Albert Lynn Barcroft, being born on August 20, 1946 in Rotan, Texas, give the following statement under penalty of perjury under the laws of the United States of America.

I am a resident of Guatemala, Central America, and have resided here for more than five (5) years without interruption. I am aware that I have been asked to attend a hearing and other legal proceedings in the United States. I hereby certify and affirm the following for the record:

1.      I am not an employee of PENTEX FOUNDATION;

2.      I do not receive a salary or other compensation for the services I provide for PENTEX FOUNDATION;

3.      PENTEX FOUNDATION does not, and cannot, control my activities, time or movement, nor can it compel me to attend legal matters in the United States;

4.      I am currently under doctor's care for heart and arthritic conditions that have recently gotten worse;

5.      My doctors has informed me that any extended travel would be life threatening for me; and,

6.      While I am still technically an agent for PENTEX FOUNDATION, my duties have been greatly reduced in recent months due to my health, and I am not authorized to give testimony on behalf of PENTEX FOUNDATION at this point in time.

I hereby certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Further, I certify under penalty of perjury under the prevailing laws of the State of Texas that the statements in this document are true and correct, and not intended to mislead.

Executed this 3rd day of September, 2014, in San Marcos, Izabal, Guatemala, Central America.

Albert Lynn Barcroft
Agent/Legal Representative
PENTEX FOUNDATION

**Exhibit**

**Page** ___ **of** ___

395



# SCOTT SMITH
## ATTORNEY AND COUNSELOR AT LAW

E-MAIL: smithlaw@airmail.net
FACSIMILE: (903) 870-1446
TELEPHONE: (903) 868-8686

120 SOUTH CROCKETT STREET
P.O. BOX 354
SHERMAN, TEXAS 75091-0354

September 18, 2014

Nancy Young, District Clerk
Fannin County Courthouse
101 East Sam Rayburn Dr., Ste. 201
Bonham, Texas 75418

> RE: *Pentex Foundation v. Kenneth Vern Gibbs, et al.*; Cause Number CV-14-41665 in the 336th Judicial District Court of Fannin County, Texas.

Dear Ms. Young:

Enclosed please find an original and one copy of the Sworn Affidavit of Fact of Angelli Martha Pollanco Carrasco. This is submitted in support of the previously filed Motion to Quash or for Protective Order Relating to Subpoenas and Deposition Notices (filed September 4, 2014). Please return a file marked copy to me in the enclosed envelope.

A copy of this letter and the enclosed is being forward to all counsel of record, by electronic transmission pursuant to a Rule 11 Agreement. I thank you for your attention to this matter.

Yours very truly,

T. Scott Smith

TSS/bhs

396





# SWORN AFFIDAVIT OF FACT

**Subscribed, Sworn, and Sealed**

I, Angelli Martha Polanco Carrasco, being of sound mind, over age of majority, competent to testify, and having a first hand knowledge of the facts contained herein, hereby certify and declare that the following facts are true, correct and complete as stated, and are so stated under the penalty of perjury:

I am currently serving as Board Member and Officer of Pentex Foundation, a not for profit foundation created under the laws of the Republic of Panama, Central America. I am a resident of the Republic of Panama, Central America. I am aware that I have been asked to attend a hearing and participate in other legal proceedings in the United States.

Originally, John Skotnik was hired to prosecute the lawsuit on behalf of Pentex Foundation; however, based upon what was relayed to Pentex Foundation as a possible conflict of interest, he resigned, and Scott Smith was hired to proceed with the matter on behalf of Pentex Foundation. I have no other knowledge of particulars of the lawsuit.

I am not employed by Pentex Foundation, and I am not paid by Pentex Foundation. I am a voluntary, unpaid, board member and officer of Pentex Foundation, and Pentex Foundation does not control my activities or time. Pentex Foundation cannot compel me to attend to matters in the United States, and I do not have a visa to travel to the United States.

Further, I am an attorney licensed under the laws of the Republic of Panama, and I understand law. I am not subject to personal service under the laws of the State of Texas as I do not have "minimum contact" with the State of Texas. I conduct no business in the State of Texas. I have no interest in the State of Texas. I have never even visited the State of Texas. As such, I am not subject to service from Texas courts under Texas law.

**FURTHER, AFFIANT SAYETH NOT.**

**Signed and Acknowledged under penalty of perjury on this 16th day of September, 2014, in Panama City, Republic of Panama, Central America.**

Angelli Martha Polanco Carrasco
PENTEX FOUNDATION - Board Member and Officer.

Yo, JULIA H. CORREA ORTIZ, Notaria Pública Duodécim el Circuito de Panamá, con cédula No. 9-53-77:
CERTIFICO:

ue la(s) firma(s) anterior(es) ha(n) sido reconocida(s) com ya(s) por los firmantes por lo consiguiente dicha(s) firma( (son) auténtica(s).

**1 5 SEP 2014**

Testigos                Testigos

Licda. JULIA H. CORREA ORTIZ
Notaria Pública Duodécima

397





## SWORN AFFIDAVIT OF FACT

### Subscribed, Sworn, and Sealed

I, Angelli Martha Polanco Carrasco, being of sound mind, over age of majority, competent to testify, and having a first hand knowledge of the facts contained herein, hereby certify and declare that the following facts are true, correct and complete as stated, and are so stated under the penalty of perjury:

I am currently serving as Board Member and Officer of Pentex Foundation, a not for profit foundation created under the laws of the Republic of Panama, Central America. I am a resident of the Republic of Panama, Central America. I am aware that I have been asked to attend a hearing and participate in other legal proceedings in the United States.

Originally, John Skotnik was hired to prosecute the lawsuit on behalf of Pentex Foundation; however, based upon what was relayed to Pentex Foundation as a possible conflict of interest, he resigned, and Scott Smith was hired to proceed with the matter on behalf of Pentex Foundation. I have no other knowledge of particulars of the lawsuit.

I am not employed by Pentex Foundation, and I am not paid by Pentex Foundation. I am a voluntary, unpaid, board member and officer of Pentex Foundation, and Pentex Foundation does not control my activities or time. Pentex Foundation cannot compel me to attend to matters in the United States, and I do not have a visa to travel to the United States.

Further, I am an attorney licensed under the laws of the Republic of Panama, and I understand law. I am not subject to personal service under the laws of the State of Texas as I do not have "minimum contact" with the State of Texas. I conduct no business in the State of Texas. I have no interest in the State of Texas. I have never even visited the State of Texas. As such, I am not subject to service from Texas courts under Texas law.

**FURTHER, AFFIANT SAYETH NOT.**

**Signed and Acknowledged under penalty of perjury on this 16ᵗʰ day of September, 2014, in Panama City, Republic of Panama, Central America.**

Angelli Martha Polanco Carrasco
PENTEX FOUNDATION, Board Member and Officer.

Yo, JULIA H. CORREA ORTIZ, Notaria Pública Duodécim
el Circuito de Panamá, con cédula No. 9-53-77:

CERTIFICO:

ue la(s) firma(s) anterior(es) ha(n) sido reconocida(s) com
ya(s) por los firmantes por lo consiguiente dicha(s) firma(
(son) auténtica(s).

**1 5 SEP 2014**

Testigos          Testigos

Licda. JULIA H. CORREA ORTIZ
Notaria Pública Duodécima

398

APOSTILLE
Convention de la haye du 5 de octubre 190?
Pais PANAMÁ.
El presente documento público
? h sido fir ? por Julia Cruz
quier ?tu alidad notaria
y esta ve del sello/timbre de ?
CERTIFICADO
EN Panamá 5 de 17 SEP 2014
por DIRECCION ADMINISTRATIVA
Bajo el número 54380
?bre ? Firr Canna Elz



Esta Autorización no
o implica responsabilidad
? quanto al ? ?enid

E 003492889

| Fecha de Pago | | |
|---|---|---|
| Día | Mes | Año |
| 1  6 | 0  9 | 1  4 |

**REPÚBLICA DE PANAMÁ**
**AUTORIDAD NACIONAL DE INGRESOS PÚBLICOS**
**ITBMS**

AN P

No válida para arreglo de pago

6 - 712 - 1842          CO

R.U.C. / Cédula / NT          D.V.

Angelli martha Polonca

Nombre o Razón Social:

| Código | Descripción | Balboas |
|---|---|---|
|  | ITBMS |  |
|  | Retención ITBMS |  |
|  | Multa ITBMS |  |
|  | ?bres Fiscales |  |

7126/PAGO DE IMPUESTOS EN EFECTIVO  Suc: 0056
16/09/2014  14:39:45  CA14507  9693
Concepto :          0306 Timbres Fiscales
Importe :          *10.00*
Declaracion/No. Recibo:  *003492889*
Todas las comisiones y servicios que cobra el
Banco incluyen el ITBMS

CONTRIBUYENTE

| Total Pagado | Balboas | Cts. |
|---|---|---|
| Efectivo | 10 | 00 |
| Cheques |  |  |
| Otros Títulos |  |  |
| Total | 10 | 00 |

67504482

Teléfono

Minerva Oralle R

Nombre legible de quien efectúa el pago

Correo electrónico

CAJA DE AHORROS
CAJERO
SUPLENTE 1
16 SEP 2014
SUC. ALBROOK

Sello entidad recaudadora

399



## Scott Smith

| | |
|---|---|
| **From:** | "Scott Smith" <smithlaw@airmail.net> |
| **To:** | "Christy Lee" <clee@christyleelaw.com>; "Howard Gibbs" <hkgibbs@gmail.com> |
| **Sent:** | Thursday, September 18, 2014 10:15 AM |
| **Attach:** | 14-9-18 Clerk re Affidavit.pdf |
| **Subject:** | CV-14-41665 Letter to Clerk Attached |

Scott Smith
Attorney and Counselor At Law
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
Facsimile 903.870.1446
Telephone 903.868.8686

400



9/18/2014

CAUSE NO. CV-14-41665

PENTEX FOUNDATION                )        IN THE DISTRICT COURT
    PLAINTIFF,                    )
                                  )
VS.                              )        336TH JUDICIAL DISTRICT
                                  )
KENNETH VERN GIBBS; AND          )
CANDACE GIBBS WALTON; AND        )
HOWARD KIRK GIBBS,               )
    DEFENDANTS.                   )        FANNIN COUNTY, TEXAS

## OBJECTIONS TO MOTION TO QUASH OR FOR PROTECTIVE ORDER RELATING TO SUBPOENAS AND DEPOSITION NOTICES AND MOTION TO COMPEL DEPOSITIONS OF ALBERT BARCROFT AND ANGELLI CARRASCO ON OCTOBER 13, 2014

Come now, Defendants Kenneth "Ken" Vern Gibbs and Candace "Candy" Walton, through their Counsel of Record, Law Offices of Christy Lee, P.C., and, in response to Pentex's Motion to Quash or for Protective Order Relating to Subpoenas and Deposition Notices, respectfully move the Court to compel the depositions of Albert Barcroft, Pentex Foundation's ("Pentex") Legal Representative; and Angelli Carrasco, President, Director, and Chairman of Pentex; and further request that the Court disallow Pentex's Objections to the requests for production of documents by the named Deposed.

### I. LAW.

1.      Texas Disciplinary Rules of Professional Conduct Rule No. 4.02 requires that, in representing a client, a lawyer should not communicate with, nor "cause or encourage," another to communicate about the subject of the representation with a person or entity the lawyer "knows to be represented by another lawyer" without consent of the other lawyer.

OBJECTIONS TO MOTION TO QUASH OR FOR PROTECTIVE ORDER
RELATING TO SUBPOENAS AND DEPOSITION NOTICES AND
MOTION TO COMPEL DEPOSITIONS OF ALBERT BARCROFT AND            CAUSE NO. CV-14-41665
ANGELLI CARRASCO ON OCTOBER 13, 2014                                          -1-

*PENTEX FOUNDATION V. GIBBS, ET AL.*

401



2.      Texas Rules of Evidence Rule No. 503(d)(1) specifically disallows a claim of privilege when there is furtherance of crime or fraud: "If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."

3.      The Court determined that a joint defense or common interest privilege under Texas evidentiary rules did not apply to prevent production of communications occurring between an attorney and a non-represented, non-named, but relevant party in a proceeding. The Court observed that "Rule 503(b)(1)(C)'s privilege is more appropriately termed an 'allied litigant' privilege." The Court found that "joint client" rule of privilege is inapplicable when there are no arguments or evidence offered that the attorney represents the party claiming privilege. *In re XL Specialty Insurance Company and Cambridge Integrated Services, Group, Inc.*, 2012 WL 2476851 (Tex. June 29, 2012).

4.      The scope of discovery is any unprivileged information relevant to the subject matter of the lawsuit, even if it would be inadmissible at trial, as long as the information sought is reasonably calculated to discovery of admissible evidence. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 500, 553 (Tex. 1990).

5.      In general, attorneys' fees are not shielded from disclosure. *Borden, Inc. v. Valdez*, 773 S.W.2d 718, 720-21 (Tex.App. – Corpus Christi 1989, orig. proceeding); *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 634 (Tex. App. – Amarillo 1983, writ ref'd n.r.e.). An exception to this general rule is in the instance when revelation of fee arrangements would implicate the client in the commission of a crime or to show an admission

OBJECTIONS TO MOTION TO QUASH OR FOR PROTECTIVE ORDER
RELATING TO SUBPOENAS AND DEPOSITION NOTICES AND
MOTION TO COMPEL DEPOSITIONS OF ALBERT BARCROFT AND           CAUSE NO. CV-14-41665
ANGELLI CARRASCO ON OCTOBER 13, 2014                                              -2-

*PENTEX FOUNDATION V. GIBBS, ET AL.*

402



subjecting the client to civil liability. *Jim Walter Homes, Inc. v. Foster*, 593 S.W.2d 749, 752 (Tex. Civ. App. – Eastland 1979, no writ).

## II. DEPOSITION OF ALBERT BARCROFT.

6. On September 2, 2014, Ken and Candy issued Albert a State of Texas Subpoena Duces Tecum for Oral Deposition, to be conducted on October 13, 2014, at 10 o'clock a.m., at the office of Pentex's Counsel Scott Smith, 120 South Crockett Street, Sherman, Texas 75091-0354. *See* Exhibit A.

7. Albert Barcroft's deposition is paramount to achieving justice in this matter. Evidence proves, and Ken and Candy know, that Albert is the alter ego of legal representative of Pentex; Pentex Royalty Trust; Renhaw, Inc.; and GBU Friends and Associates Trust ("GBU Trust"); all of which are major players in this Cause. The evidence obtained thus far during this lawsuit proves that Albert possesses exclusive information pertinent to this suit. Albert is the touchstone for this matter.[1]

8. Service of the Subpoena to Albert was appropriately made through Pentex's Counsel, Scott Smith. Texas Rules of Civil Procedures require communications between opposing parties to occur between counsel when the parties are represented by counsel. Albert has portrayed himself as Legal Representative of Pentex since Pentex was founded in 2008. During discovery, Pentex admitted that Albert is its Legal Representative in matters based in the United States. Since Scott represents Pentex, service of a Subpoena to the asserted Legal

---

[1] A more thorough examination of Albert's services as Pentex's Legal Representative can be found in Defendants' Motion for Leave of Court to File Third-Party Petition, filed with this Court on September 18, 2014.

OBJECTIONS TO MOTION TO QUASH OR FOR PROTECTIVE ORDER
RELATING TO SUBPOENAS AND DEPOSITION NOTICES AND
MOTION TO COMPEL DEPOSITIONS OF ALBERT BARCROFT AND          CAUSE NO. CV-14-41665
ANGELLI CARRASCO ON OCTOBER 13, 2014                                      -3-

*PENTEX FOUNDATION V. GIBBS, ET AL.*



Representative of Pentex would be highly inappropriate if effected through any party but Scott. Any suggestion that Scott does not represent Albert perpetrates a fraud before the Court.

9. While deliberately withholding information as to the named representative for Pentex, Scott stated that, on multiple occasions, he spoke with Albert concerning this Cause. Also, during the discovery process, on September 3, 2014, Pentex admitted that, at the time of the alleged damage done to Pentex, Albert "had the authority to carry on all business in the United States for Pentex Foundation." *See* Exhibit B, Admission No. 25. Pentex stated that it worked with Albert concerning what would evolve into some of the major points of contention in this lawsuit because doing so was "mutually advantageous." And, affirmed Pentex, **"Barcroft was our express liaison with GWB Trust"** (emphasis added). *See* Exhibit B, Interrogatory No. 2.

10. On September 3, 2014, Albert signed a statement under penalty of perjury, in which he admitted that he is "an agent for Pentex." *See* Exhibit C.

11. The Court is clear on the point that a claim to joint defense does not necessarily translate into client-attorney privilege. Joint defense applies only in cases of the "allied litigant." Pentex and Albert refuse to admit that Albert is Pentex's allied litigant. Pentex cannot arbitrarily state that Albert is not Scott's client, and therefore Pentex has no control over him, and Pentex is not required to produce him for questioning, while at the same time Pentex states that the proposed questions to be posited to Albert during the deposition are covered by attorney/client communication privilege. In other words, Pentex cannot have it both ways. Either Albert and Pentex are working together, jointly, or they are not. Either Albert is not Scott's client, in which case Albert can be freely questioned regarding the suit because there is no client-attorney

OBJECTIONS TO MOTION TO QUASH OR FOR PROTECTIVE ORDER
RELATING TO SUBPOENAS AND DEPOSITION NOTICES AND
MOTION TO COMPEL DEPOSITIONS OF ALBERT BARCROFT AND          CAUSE NO. CV-14-41665
ANGELLI CARRASCO ON OCTOBER 13, 2014                          -4-

*PENTEX FOUNDATION V. GIBBS, ET AL.*

404



privilege, or Albert is Scott's client, in which case Albert was appropriately noticed the Subpoena, and Pentex **must** produce him for the deposition. Those are the only two (2) options available. To suggest otherwise insults the Court, particularly since Albert has been the Counsel's point of contact for Pentex throughout these proceedings, and Pentex only recently determined who would represent it regarding this suit.

12.     The law has established that a broad scope of discovery is appropriate in the likelihood of the discovery leading to relevant facts. Albert possesses information to which Ken and Candy are entitled as Defendants in this matter, information which Albert alone knows, and information which is highly pertinent to this case or which promises to lead to highly relevant facts. Albert was at Pentex's helm throughout all events relevant to this suit, including: (1) the drafting the Contract for Sale of Land ("the CSL")[2]; (2) agreeing, on behalf of Pentex, to the distributions of attorney fees as relevant to the Estate; (3) signing the Family Settlement Agreement ("the FSA"), which addressed the methods by which some of the Heirs to the Estate would receive their inheritances and which involved Albert; (4) on behalf of Pentex drafted and issued a "formal Notice of Revocation of GWB . . . Trust and split of assets pursuant to the original contract between the parties"; and (5) on behalf of Pentex, threatened the GWB Trust Trustee to inappropriately assign 57.19% interest of GWB Trust assets to GBU Trust.

13.     Albert orchestrated the inappropriate assignment of GWB Trust interest to GBU Trust. Also, Albert's history is rife with federal income tax issues, including lost battles in Court and seizure of his personal residence in Texas. As a result, Albert turned to the "funnel"

---

[2] Albert illegally drafted the CSL, a fact established on July 31, 2014, in Tarrant County Probate Court No. 2, Cause No. 2005-0000126-2-D. The parties to the CSL involved the three (3) Defendants in this matter and Albert himself.

OBJECTIONS TO MOTION TO QUASH OR FOR PROTECTIVE ORDER
RELATING TO SUBPOENAS AND DEPOSITION NOTICES AND
MOTION TO COMPEL DEPOSITIONS OF ALBERT BARCROFT AND                      CAUSE NO. CV-14-41665
ANGELLI CARRASCO ON OCTOBER 13, 2014                                              -5-

*PENTEX FOUNDATION V. GIBBS, ET AL.*

